STRADLEY RONON STEVENS & YOUNG, LLP
A Pennsylvania Limited Liability Partnership
Francis X. Manning
Woodland Falls Corporate Park
200 Lake Drive East, Suite 100
Cherry Hill, NJ 08002
(856) 321-2400
and
BURKE, WARREN, MacKAY & SERRITELLA, P.C.
LeAnn Pedersen Pope (*pro hac vice*)
Stephen R. Meinertzhagen (*pro hac vice*)
330 N. Wabash Avenue, 22nd Floor
Chicago, IL 60611-3607
312-840-7000 (Telephone)
312-840-7900 (Facsimile)

Attorneys for Defendant
Chase Home Finance LLC

## UNITED STATES COURT DISTRICT
## FOR THE DISTRICT OF NEW JERSEY
## (CAMDEN VICINAGE)

| | | |
|---|---|---|
| STACY COLEMAN, fka Stacy Kovilaritch:  individually and as a class representative on behalf of others similarly situated, | : | No.  1:08-cv-02215-NLH-JS |
| | : | |
| | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| vs. | : | |
| | : | DEFENDANT'S REPLY IN |
| CHASE HOME FINANCE, LLC, | : | SUPPORT OF ITS RULE |
| successor-by-merger to CHASE | : | 12(b)(6) MOTION TO DISMISS |
| MANHATTAN MORTGAGE | : | |
| CORP. and John Doe 1-100 and John | : | Return Date: November 3, 2008 |
| Doe Servicers 1-1-100, | : | |
| | : | |
| Defendant. | : | |
| | : | |

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ..................................................................................... iii

I.   THE ENTIRE CONTROVERSY BARS ALL OF
     COLEMAN'S CLAIMS. ................................................................................. 1

II.  COLEMAN'S BREACH OF CONTRACT CLAIM FAILS
     BECAUSE NO CONTRACT PROVISION WAS BREACHED. ................. 6

III. COLEMAN'S INTENTIONAL MISREPRESENTATION
     CLAIM FAILS BECAUSE SHE CANNOT ALLEGE
     REASONABLE RELIANCE ........................................................................... 6

IV.  THE INTENTIONAL MISREPRESENTATION AND
     CONSUMER FRAUD ACT CLAIMS SHOULD BE
     DISMISSED UNDER RULE 9(B). ................................................................ 7

V.   COLEMAN'S NEGLIGENCE CLAIM FAILS BECAUSE
     SHE ALLEGES NO EXTRA-CONTRACTUAL DUTY OF
     CARE OWED BY CHASE AND IT IS BARRED BY THE
     ECONOMIC LOSS DOCTRINE................................................................... 10

VI.  THE DUTY OF GOOD FAITH AND FAIR DEALING
     CLAIM FAILS BECAUSE THE COMPLAINED OF
     CHARGES WERE AUTHORIZED BY THE MORTGAGE. ...................... 11

VII. THE UNJUST ENRICHMENT CLAIM FAILS BECAUSE
     COLEMAN ALLEGES AN EXPRESS CONTRACT WITH
     CHASE ........................................................................................................ 12

VIII. COLEMAN'S CLAIMS UNDER VARIOUS NEW JERSEY
      STATE COURT RULES AND STATUTES RELATING TO
      TAXED COSTS FAIL BECAUSE NONE PROVIDES A
      PRIVATE RIGHT OF ACTION.................................................................. 12

IX.  COLEMAN'S "FORFEITURE OF INTEREST" CLAIM
     FAILS BECAUSE SHE DOES NOT ALLEGE THAT
     CHASE CHARGED INTEREST ABOVE THE PERMITTED
     RATE............................................................................................................ 13

X.   COLEMAN'S TRUTH-IN-CONSUMER CONTRACT
     ACT CLAIM SHOULD BE DISMISSED BECAUSE SHE
     HAS NOT ALLEGED ANY UNLAWFUL CONTRACT
     OR NOTICE. .................................................................................................15

# TABLE OF AUTHORITIES

<u>Federal Cases</u>

*Barrows v. Chase Manhattan Mortgage Corp.*, 465 F. Supp. 2d 347
(D.N.J. 2006) ..................................................................................11

*Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955 (2007).............................................1

*Boyle v. D'Onofrio*, 99 F. Supp. 2d 541 (D.N.J. 2000).........................................9

*Bubbles N' Bows, LLC v. Fey Publ'g Co.*, Civ.A.No. 06-5391, 2007
WL 2406980 (D.N.J. Aug. 20, 2007) .........................................................10

*Crispino v. Chem. Bank New Jersey (In re Crispino)*, 160 B.R. 749
(Bankr. D.N.J. 1993)..................................................................................4, 5

*Disabled in Action of Pa. v. Se. Pa. Transp. Auth.*, 539 F.3d 199 (3d
Cir. 2008)..................................................................................................14

*Fleming Cos., Inc. v. Thriftway Medford Lakes, Inc.*, 913 F. Supp. 837
(D.N.J. 1995) ...............................................................................................11

*In re 865 Centennial Ave. Assoc. Ltd. P'ship*, 200 B.R. 800 (Bankr.
D.N.J. 1996)..............................................................................................4, 5

*In re: A & P Diversified Tech. Rlty., Inc.*, 467 F.3d 337 (3d Cir. 2006).............8

*Loehwing v. Washington Mut. Bank (In re Loehwing)*, 320 B.R. 281
(Bankr. D.N.J. 2005)..................................................................................9

*Union Trust Co. of Maryland v. Wakefern Food Corp.*, Civ. No. 86-
728 (CSF), 1989 WL 120756 (D.N.J. Sept. 8, 1989)....................................7

*Whittingham v. Amended Mortgage Elec. Registration Serv., Inc.*, Civ.
No. 06-3016 (RBK), 2007 WL 1456196 (D.N.J. May 15, 2007) ...............13

<u>State Cases</u>

*Brown v. Brown*, 208 N.J. Super. 372, 506 A.2d 29 (App. Div. 1986)................2

*Circle Chevrolet Co. v. Giordano, Halleran & Ciesla*, 142 N.J. 280,
662 A.2d 509  (1995)....................................................................................2

*Delta Funding Corp. v. Harris*, 189 N.J. 28, 912 A.2d 104 (2006).....................4

*DiTrolio v. Antiles*, 142 N.J. 253, 662 A.2d 494 (1995) ......................................6

*Jewish Ctr. of Sussex County v. Whale*, 86 N.J. 619, 432 A.2d 521
(1981)..........................................................................................................7

*LaSalle Nat'l Bank v. Johnson*, 2006 WL 551563 (Ch. Div. March 3, 2006) ....................................................................................2, 4, 5

*Margulies v. Chase Manhatten Mortgage Corp.*, 2005 WL 2923580 (App. Div. Nov. 7, 2005).............................................................11

*MetLife Capital Fin. Corp. v. Washington Ave. Assoc. L.P.*, 159 N.J. 484, 732 A.2d 493 (1999)...........................................................12

*NCP Litig. Trust v. KPMG*, 187 N.J. 353, 901 A.2d 871 (2006) ......................10

*Olds v. Donnelly*, 150 N.J. 424, 696 A.2d 633 (1997) .........................................2

*Ryno, Inc. v. First Nat'l Bank of South Jersey*, 208 N.J. Super. 562, 506 A.2d 762 (App. Div. 1986).......................................................3

*Sovereign Bank, FSB v. Kuelzow*, 297 N.J. Super. 187, 687 A.2d 1039 (App. Div. 1997)...............................................................................4

*United Jersey Bank v. Kensey*, 306 N.J. Super. 540, 704 A.2d 38 (App. Div. 1997)..............................................................................10

Federal Statutes

12 U.S.C. § 2605(e) ...........................................................................................15

State Statutes

N.J.S.A. § 31:1-3................................................................................................14

N.J.S.A. §§ 31:1-1..............................................................................................13

N.J.S.A. §§ 56:12-14 to -18 ..............................................................................15

N.J.S.A. 22A:4-8..................................................................................................9

N.J.S.A. 2A:50-57(a) ...........................................................................................8

## ARGUMENT

I.   THE ENTIRE CONTROVERSY BARS ALL OF COLEMAN'S CLAIMS.

In her Opposition, Coleman fails to identify any factual or legal basis to avoid the application of the entire controversy doctrine.[1]  Coleman's arguments against imposing the entire controversy doctrine are as follows:

> First, the doctrine does not apply to foreclosure actions; second, the cause of action arose after the entry of the 2002 foreclosure judgment; third, the Defendant's continuing course of conduct from 2002 through 2007 provides an independent basis for suit.

(Opposition, p. 9.)  None of her arguments have merit.

First Coleman provides no authority and no argument to support her assertion that the entire controversy doctrine "does not apply to foreclosure actions." Oddly, in the very next sentence of her brief she concedes the point when she states that "[t]he entire controversy doctrine as it applies to foreclosure actions is codified in R:4:64-5." (Response, p. 9.)

Under the express provisions of Rule 4:30A and Rule 4:64-5, the entire controversy doctrine applies to foreclosures, and all foreclosure defenses and germane counterclaims that are not raised in a foreclosure action are thereafter barred.  All Coleman's claims relate to the amount of foreclosure charges and

---

[1] Coleman relies upon an overturned motion to dismiss standard.  The standard articulated in *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955 (2007), and cited in Chase's opening memorandum, governs Chase's motion to dismiss.

1

interest she paid Chase to reinstate her mortgage. The "computation of amounts due" is a "germane" foreclosure matter under Rule 4:64-5. *LaSalle Nat'l Bank v. Johnson*, 2006 WL 551563, at *2 (Ch. Div. March 3, 2006) (citing Scott T. Tross, NEW JERSEY FORECLOSURE LAW AND PRACTICE § I, at 162-65 (New Jersey Law Journal Books 2001)). Consequently, all Coleman's claims are barred by the entire controversy doctrine.

For her second argument, Coleman asserts (without citation) that "[t]he key to the entire controversy doctrine is that the cause of action be known at the time of the institution of the foreclosure proceeding." (Response, p. 9.)   The New Jersey Supreme Court expressly rejected Coleman's argument in *Circle Chevrolet Co. v. Giordano, Halleran & Ciesla*, 142 N.J. 280, 290, 662 A.2d 509, 513 (1995), *abrogated on other grounds*, *Olds v. Donnelly*, 150 N.J. 424, 696 A.2d 633 (1997), where it held that "[t]he entire controversy doctrine applies to constituent claims that arise during the pendency of the first action[.]"   In so holding, that court looked to *Brown v. Brown*, 208 N.J. Super. 372, 380, 506 A.2d 29, 34 (App. Div. 1986), which held as follows:

> Leaving out of the litigation a claim which belongs in that bundle and saving it for another day has precisely the same consequences whether the claim arose prior to institution of the action or after it. In either case, the judgment rendered in the action will not be conclusive of the entire controversy, and the consequent risk of future litigation finally to resolve it cannot but gravely undermine all that the parties have attempted to accomplish in the original litigation[.] (Citations omitted).

2

The only authority Coleman cites in support of her dubious proposition that her claims are not barred because they arise from a reinstatement payment she made during (and not before) the underlying foreclosure action is *Ryno, Inc. v. First Nat'l Bank of South Jersey*, 208 N.J. Super. 562, 570, 506 A.2d 762, 766 (App. Div. 1986), which undercuts her argument. The *Ryno* court stated that "any conduct of a mortgagee known to the mortgagor prior to the institution of a foreclosure that *could* be the basis of an independent action . . . could be raised as an equitable defense in foreclosure." *Id.* (Emphasis added.) The *Ryno* court was commenting on the breadth of the entire controversy doctrine in the foreclosure context. It did not use any terms of limitation, and nothing in *Ryno* (which pre-dates *Circle Chevrolet*) restricts the entire controversy doctrine to claims that arise before the underlying foreclosure.

Coleman argues that because she reinstated her mortgage in January 2006, several years after the judgment of foreclosure was entered in August 2002, "the issues raised by the Defendant's actions in 2006 could not have been brought as a counterclaim." (Opposition, p. 10.) However, Coleman ignores the fact that the foreclosure court retained jurisdiction at the time Coleman reinstated her mortgage. In New Jersey, a "final judgment" does not extinguish a foreclosure court's jurisdiction, which is retained until at least such time as the deed is conveyed following a sheriff's sale. *Sovereign Bank, FSB v. Kuelzow*, 297 N.J. Super. 187,

3

196, 687 A.2d 1039, 1043 (App. Div. 1997). Coleman was required to raise any dispute concerning the amount of her payment in the underlying foreclosure proceeding. Instead, she made a payment to reinstate her mortgage without protest and pursuant to "settlement," then turned around and filed this putative class action lawsuit alleging claims based upon this payment.[2]

Coleman provides no coherent explanation for her third argument, that "the actions of the Defendant represent a continuing course of conduct with the Plaintiff from 2002 through 2007." (Opposition, p. 11). She cites to *Delta Funding Corp. v. Harris*, 189 N.J. 28, 912 A.2d 104 (2006), which addresses the enforceability of an arbitration clause in a mortgage agreement, but involves neither the entire controversy doctrine nor any "continuing course of conduct" theory.

Finally, Coleman's attempt to distinguish *LaSalle Nat'l Bank v. Johnson*, 2006 WL 551563 (Ch. Div. March 3, 2006); *In re 865 Centennial Ave. Assoc. Ltd. P'ship*, 200 B.R. 800 (Bankr. D.N.J. 1996); and *Crispino v. Chem. Bank New Jersey (In re Crispino)*, 160 B.R. 749 (Bankr. D.N.J. 1993) fails. These cases stands for the proposition that Coleman's claims are barred because she failed to

---

[2] Coleman does not argue (or allege) that she "discovered" her claims after the underlying foreclosure action was dismissed. Because Coleman was represented by her counsel in this lawsuit at the time she made her reinstatement payment, it seems that her intention all along was to make the payment without dispute, then turn around and file a separate "class action" lawsuit. Coleman nonetheless improperly submits what purports to be a Rule 56(f) affidavit (even though Chase has filed a motion to dismiss under Rule 12(b)(6), not a motion for summary judgment), which the Court should simply ignore.

raise them in the underlying foreclosure proceeding. *LaSalle Nat'l Bank*, 2006 WL 551563, at *3 held that a mortgagor's defenses to foreclosure based upon the mortgagee's failure to comply with HUD regulations requiring the mortgagee to arrange a face-to-face interview was a matter that was "germane" to the foreclosure action. *In re 856 Centennial Ave.*, 200 B.R. at 815, held that New Jersey Banking Act claim that the mortgagor attempted to assert subsequent to a foreclosure was barred under the entire controversy doctrine because:

> The claim arises from the same core set of facts upon which the foreclosure action and debtor's defenses . . . are based . . . [T]he claim is related to the original action, because if successful would require re-litigation of the entire matter . . . to resolve the 'respective bundles of rights and liabilities that derive from a single transaction or a related series of transactions.'

*In re Crispino*, 160 B.R. at 756, held that "any claim the debtor might have made against [the mortgagee] regarding the debt in question is barred by application of the entire controversy doctrine to the default judgment obtained in the New Jersey Superior Court." Coleman's argument that these cases do not apply to her claims in the instant case is baseless.[3]

By making a reinstatement payment in the underlying foreclosure when she was represented by the same counsel, then turning around and seeking to assert claims in this putative class action lawsuit based upon that payment, Coleman is

---

[3] Coleman does not even attempt to distinguish other cases cited in Chase's opening brief that also stand for the proposition that her claims are barred.

engaging in exactly the type of "manipulat[ion of] the judicial system to get the monetary damages [s]he could have sought in the first action" that the Supreme Court has identified as the purpose for the entire controversy doctrine. *DiTrolio v. Antiles*, 142 N.J. 253, 276, 662 A.2d 494, 506 (1995). If Coleman wished to dispute the calculation of her payment, she should have raised the issue in that foreclosure. Instead, they are now barred by the entire controversy doctrine.

## II.    COLEMAN'S BREACH OF CONTRACT CLAIM FAILS BECAUSE NO CONTRACT PROVISION WAS BREACHED.

In her Opposition, Coleman does not address and therefore concedes Chase's argument that her breach of contract claim fails because her mortgage expressly authorized Chase to collect the charges that she complains about.[4]

## III.    COLEMAN'S INTENTIONAL MISREPRESENTATION CLAIM FAILS BECAUSE SHE CANNOT ALLEGE REASONABLE RELIANCE

Coleman concedes that she has not (because she cannot) alleged the essential element of reasonable reliance on the alleged misrepresentation. Instead, Coleman argues that reasonable reliance is not required to state a claim for fraud, and she needs only to allege actual reliance. Coleman misstates the law. In *Union Trust Co. of Maryland v. Wakefern Food Corp.*, Civ. No. 86-728 (CSF), 1989 WL

---

[4] Coleman submits a proposed amended complaint with her Opposition that contains additional breach of contract allegations based upon Coleman's incorrect interpretation of FHA regulations. Although this new breach of contract claim is also subject to dismissal under Rule 12(b) (6), Chase does not address it in this Reply because Coleman has not obtained leave to file an amended pleading.

120756, at *20 (D.N.J. Sept. 8, 1989) the court examined the reasonable reliance requirement under New Jersey law and held that reliance is unreasonable where it permits a plaintiff to ignore its "actual knowledge of falsehood[.]"  The court examined *Jewish Ctr. of Sussex County v. Whale*, 86 N.J. 619, 626 n.1, 432 A.2d 521, 524 (1981), which Coleman relies on, and determined that the holding in that case was merely that reasonable reliance does not require a plaintiff to "follow a policy of *caveat auditor,*" imposing a duty to investigate to uncover a falsehood.

That is not the issue here.  Coleman cannot allege reasonable reliance because (at least according to her own allegations) she knew that the reinstatement quote she received contained higher taxed fees and costs figures than were contained in the foreclosure judgment previously entered against her.  There was nothing for her to investigate further; rather, according to her theory of the amounts due, she had actual knowledge that the reinstatement quote was false when she paid it.

## IV.    THE INTENTIONAL MISREPRESENTATION AND CONSUMER FRAUD ACT CLAIMS SHOULD BE DISMISSED UNDER RULE 9(b).

Coleman's intentional misrepresentation and NJCFA claims fail to comply with Rule 9(b) because she fails to allege with particularity the "various loan charges" which were misrerepresented to her (or represent unlawful conduct under the NJCFA). (Complaint, para. 49).  To sidestep this issue, Coleman argues that the reinstatement quote "misrepresented that the amount due in attorneys' fees and

7

costs in the foreclosure [w]as $6,691.73" when the "legal amount due was $1,600.52 as reflected in the final judgment of foreclosure." (Opposition, p. 14.) In other words, Coleman argues that the misrepresentation in the payoff quote was the inclusion of any charges besides those stated in the foreclosure judgment, but this is contrary to the law and makes no sense.

As the following examples demonstrate, simply comparing the foreclosure judgment and the reinstatement payment fails to comply with Rule 9(b) because it does not put Chase on notice of its alleged misrepresentation:

- First, the foreclosure judgment[5] that Coleman now argues established the amount of charges she should pay was "vacated and set aside" by the foreclosure court in its January 20, 2006 order dismissing the foreclosure pursuant to settlement. (Manning Decl., Ex. D). When Coleman made her reinstatement payment to Chase, she entered into an independent agreement to vacate the foreclosure judgment and reinstate the mortgage. This is why the foreclosure court's January 20, 2006 order expressly found that the foreclosure "action has been amicably settled between the parties," and ordered the foreclosure judgment "vacated and set aside" and the mortgage "reinstated and in full force and effect as if the above-entitled action had never been instituted."

- Second, Coleman ignores the fact that under New Jersey Court Rule 4:65-6, Chase could seek an order directing the Sheriff to pay additional sums up until the time the deed was conveyed following a Sheriff sale. But

---

[5] Under the New Jersey merger doctrine, when the foreclosure judgment was entered, Coleman's mortgage merged into the judgment, and (except for those provisions that were expressly preserved) the judgment, not the mortgage, governed the parties' obligations. *In re: A & P Diversified Tech. Rlty., Inc.*, 467 F.3d 337, 341 (3d Cir. 2006). Likewise, Coleman's right to reinstate terminated upon the entry of the foreclosure judgment. N.J.S.A. 2A:50-57(a).

Chase was not required to obtain such an order before sending the payoff quote or receiving payment.[6]

- Third, under New Jersey procedural rules for taxed costs, certain costs are automatically added to the judgment amount without the judgment having to be amended. For instance, N.J.S.A. 22A:4-8 provides that the Sheriff is entitled to recover costs expended to schedule and hold Sheriff's sales and to receive commissions. Regardless of whether the foreclosure settles or proceeds to sale, these amounts are automatically added to the foreclosure judgment and were properly included in Colman's reinstatement quote. *Loehwing v. Washington Mut. Bank (In re Loehwing)*, 320 B.R. 281, 289 (Bankr. D.N.J. 2005).

Coleman's argument that the payoff quote was fraudulent because it contained charges that differed from a vacated four-year old foreclosure judgment, which was subject to amendment, and to which charges were automatically added, fails to satisfy Rule 9(b). To comply with Rule 9(b) Coleman must allege with particularity both those charges that she contends were improper, and a coherent theory sufficient to put Chase on notice of why she contends such charges were improper. See, e.g., *Boyle v. D'Onofrio*, 99 F. Supp. 2d 541, 549 (D.N.J. 2000) (conclusory allegation that documents contained false and misleading information failed to plead fraud with particularity because the allegation did not explain how or why the documents were fraudulent). Because Coleman's complaint fails to

---

[6] Indeed the docket in the foreclosure action discloses that on September 18, 2002 the foreclosure court entered an order directing Sheriff to pay additional sums of $3,343.45. See Supplemental Manning Declaration filed herewith at Exhibit A. Because this document is a public record, the Court may take judicial notice of it.

provide these allegations, the Court should enforce Rule 9(b) and dismiss her fraud and NJCFA claims.

V.    COLEMAN'S NEGLIGENCE CLAIM FAILS BECAUSE SHE ALLEGES NO EXTRA-CONTRACTUAL DUTY OF CARE OWED BY CHASE AND IT IS BARRED BY THE ECONOMIC LOSS DOCTRINE.

Coleman entirely fails to address Chase's arguments for why Coleman's negligence claim fails as a matter of law. First, it fails because a lender generally does not owe an extra-contractual duty to a borrower and Coleman alleges no facts that would give rise to such a duty here. *United Jersey Bank v. Kensey*, 306 N.J. Super. 540, 553, 704 A.2d 38, 45 (App. Div. 1997). Second, it is barred by the economic loss doctrine because her negligence allegations are "essentially contractual in nature" and she alleges no "actual physical harm" to herself or her property. *Bubbles N' Bows, LLC v. Fey Publ'g Co.*, Civ.A.No. 06-5391, 2007 WL 2406980, at *10 (D.N.J. Aug. 20, 2007). Rather then addressing these arguments, Coleman argues that "the instant case is more than about the loan" and that she was "emotional[ly] upset from the defendant's egregious actions[.]" (Opposition, p. 16.) This neither provides a basis for finding an extra-contractual duty of care, nor does it overcome the economic loss doctrine.[7]

---

[7] Coleman also cites to *NCP Litig. Trust v. KPMG*, 187 N.J. 353, 901 A.2d 871 (2006), which responds to neither of Chase's arguments, and is irrelevant to Coleman's negligence claim against Chase. Rather, it involves a litigation trust's claims against an auditor on behalf of a bankrupt corporation.

VI.   THE DUTY OF GOOD FAITH AND FAIR DEALING CLAIM FAILS
      BECAUSE THE COMPLAINED OF CHARGES WERE AUTHORIZED
      BY THE MORTGAGE.

As set forth in Chase's opening brief, Coleman's mortgage agreement
expressly authorized Chase to receive the charges she complains about – interest
payments and attorneys' fees and charges incurred in the foreclosure action against
her. Because the implied duty of good faith and fair dealing cannot "alter the clear
terms of an agreement and may not be invoked to preclude a party from exercising
its express rights under such an agreement," Coleman's claim for breach of the
implied duty of good faith and fair dealing fails as a matter of law. *Fleming Cos.,
Inc. v. Thriftway Medford Lakes, Inc.*, 913 F. Supp. 837, 846 (D.N.J. 1995)
(citation omitted).

Coleman argues that "Chase made this same exact argument which this court
rejected" in *Barrows v. Chase Manhattan Mortgage Corp.*, 465 F. Supp. 2d 347,
366 (D.N.J. 2006), but this is false. In *Barrows,* Chase moved only to dismiss the
breach of the duty of good faith and fair dealing claim based upon lack of standing
under Rule 12(b)(1), and did not seek dismissal under Rule 12(b)(6). The contract
terms were not before the Court in that case.[8]

---

[8] Coleman's claim also fails because she does not allege that Chase interfered with
her "enjoying the fruits of the contract, namely . . . the loan," as is required to state
a claim for breach of the duty of good faith and fair dealing under *Margulies v.
Chase Manhatten Mortgage Corp.*, 2005 WL 2923580, at *6 (App. Div. Nov. 7,
2005). In an attempt to rebut Chase's citation to *Margulies*, Coleman cites to

## VII.   THE UNJUST ENRICHMENT CLAIM FAILS BECAUSE COLEMAN ALLEGES AN EXPRESS CONTRACT WITH CHASE

Coleman concedes that a party may only assert a breach of contract claim and an unjust enrichment claim if the subject matters of the two claims are distinct. (Opposition, p. 20.)   According to Coleman's own allegations, the subject matter of her two claims is exactly the same.  Coleman alleges that Chase was unjustly enriched when it "collected monies that are not due and owing under applicable contract law, because the contract or other applicable law does not permit Chase to collect such fees and charges."   (Complaint, para. 67.)   Because Coleman's argument is that the parties' contract (their mortgage agreement) establishes the charges she was required to pay, her breach of contract claim is identical to her unjust enrichment claim, and should be dismissed.

## VIII. COLEMAN'S CLAIMS UNDER VARIOUS NEW JERSEY STATE COURT RULES AND STATUTES RELATING TO TAXED COSTS FAIL BECAUSE NONE PROVIDES A PRIVATE RIGHT OF ACTION.

Coleman concedes that courts will not imply a private right of action unless a statute demonstrates a legislative intent to create such a right. (Opposition, p. 24.)   She then fails to identify any hint that the Legislature enacted the Fair Foreclosure Act, or any of the other procedural statutes that she seeks to assert

---

*MetLife Capital Fin. Corp. v. Washington Ave. Assoc. L.P.*, 159 N.J. 484, 732 A.2d 493 (1999), which is unavailing because the court did not find that a breach of the covenant of good faith had occurred, but merely affirmed a remand to the trial court for an accounting.

claims under, with the purpose of providing a private right of action relating to payments to reinstate mortgages. She likewise fails to cite any authority for the notion that there is a private right of action for alleged violations of the New Jersey State Court Rules under which she also seeks to assert claims. Coleman also fails to address the fact that her arguments for inferring a private right of action under these various foreclosure rules and statutes were previously rejected by this court in *Whittingham v. Amended Mortgage Elec. Registration Serv., Inc.*, Civ. No. 06-3016 (RBK), 2007 WL 1456196, at *6 (D.N.J. May 15, 2007). Accordingly, the court should dismiss Coleman's claims under Counts VII, VIII and IX.

IX.    COLEMAN'S "FORFEITURE OF INTEREST" CLAIM FAILS BECAUSE SHE DOES NOT ALLEGE THAT CHASE CHARGED INTEREST ABOVE THE PERMITTED RATE.

New Jersey's usury statute prohibits charging an interest rate above a statutory maximum set under section 1(b) of the statute. *See* N.J.S.A. §§ 31:1-1, *et seq.* Coleman does not allege (or argue) that Chase charged interest above this statutory maximum. For this simple reason, her claim should be dismissed.

Nevertheless, Coleman argues that she has stated a claim because she alleged that Chase collected the contract rate on her loan after entry of a final judgment of foreclosure, which she alleged required the collection of the judgment interest rate. (Response, p. 28.) Coleman relies on section 3 of the usury statute, which gives a borrower in certain proceedings a defense where a lender charges a

"higher rate of interest ... than was or is allowed by the law of the place where the contract was made or is to be performed." N.J.S.A. § 31:1-3.  According to Coleman, the judgment interest rate is set by a court rule, and Chase violated section 3 of New Jersey's usury statute because it charged the contract rate rather than the judgment interest rate, even though Coleman does not allege that the contract rate was usurious under section 1(b).  (Response, pp. 28-29.)

To accept Coleman's position, this Court would have to read section 3 of the usury statute in isolation and ignore section 1(b), something it cannot do under well-settled rules of statutory construction.  *See Disabled in Action of Pa. v. Se. Pa. Transp. Auth.*, 539 F.3d 199, 210 (3d Cir. 2008) (A court must ensure "that every word in a statute has meaning and avoid interpreting one part of a statute in a manner that renders another part superfluous.") (citations omitted).  Here, when the statute is read as a whole, the usury statute requires Coleman to allege that Chase charged interest above the statutory maximum set in section 1(b).  She has not and her claim should therefore be dismissed.[9]

---

[9]Moreover, Coleman brings her claim under section 31:1-3 of New Jersey's usury statute, which can only be asserted by a borrower in defense of an action enforcing a note.  *See* N.J.S.A. § 31:1-3.  Coleman does not dispute this, but instead points to section 31:1-4 of the usury statute (nowhere mentioned in her complaint) to argue that her claim is authorized under *that* section.  Even if section 31:1-4 permits Coleman's claim, her claim should still be dismissed because Coleman has not alleged that Chase charged an usurious interest rate – a necessary prerequisite to stating a claim under section 31:1-4 – and because the foreclosure judgment she relies on was vacated and the mortgage was reinstated.

14

X.    COLEMAN'S TRUTH-IN-CONSUMER CONTRACT ACT CLAIM
      SHOULD BE DISMISSED BECAUSE SHE HAS NOT ALLEGED ANY
      UNLAWFUL CONTRACT OR NOTICE.

Coleman argues that she has stated a claim under New Jersey's Truth-In-Consumer Contract, Warranty and Notice Act, N.J.S.A. §§ 56:12-14 to -18 (the "Act"), for two reasons, neither of which save her claim. First, she argues that "to the extent that . . . the terms of the mortgage and note entitle[s Chase] to be reimbursed for the attorneys fees and costs in the foreclosure in excess of the amount allowed under New Jersey law and FHA regulations, those clauses violate" the Act. (Opposition, pp. 30-31.) But Coleman bases her claim under the Act on the reinstatement quote, not her note and mortgage. Second, Coleman argues the quotes she received are "notices" covered under the Act because, under RESPA, a borrower may inquire regarding her account, and a loan servicer then must send a "written notification" containing certain information to the borrower. 12 U.S.C. § 2605(e). There are, of course, no factual allegation in Coleman's complaint suggesting that the quotes she complains about are written notifications sent under RESPA. Because, as Chase showed in its opening brief, the payoff and reinstatement quotes are not notices, contracts, or warranties covered under the Act, Coleman's claim should be dismissed.[10]

---

[10] Finally, even if the payoff and reinstatement quotes are "notices" under the Act, those quotes do not contain any provisions violating Coleman's clearly established rights, as set forth above in section IV of this Reply.

Respectfully submitted,


s/Francis X. Manning
Francis X. Manning
Andrew K. Stutzman
STRADLEY RONON,STEVENS & YOUNG, LLP
A Pennsylvania Limited Liability  Partnership
Woodland Falls Corporate Park
200 Lake Drive East, Suite 100
Cherry Hill, NJ 08002
(856) 321-2400
fmanning@stradley.com
astrutzman@stradley.com


Of Counsel
LeAnn Pedersen Pope (*pro hac vice*)
Stephen R. Meinertzhagen (*pro hac vice*)
Burke, Warren, MacKay & Serritella, P.C.
330 North Wabash Avenue, 22nd Floor
Chicago, IL 60611
(312) 840-7000
lpope@burkelaw.com
smeinertzhagen@burkelaw.com

09135\00292\484166.2

## CERTIFICATE OF SERVICE

I, Francis X. Manning, Esquire, hereby certify that on the 27th day of October, 2008, I caused a true and correct copy of the within pleading to be served via the court's electronic server upon the following:

Lewis G. Adler, Esq.
26 Newton Avenue
Woodbury, NJ 08096

/s/ Francis X. Manning