The Supreme Court reiterated the public policy rationale of the CFA. "When confronted, as we are here, with a plaintiff who asserts that she was the victim of an overcharge which itself is small in amount, and who seeks recovery for herself and on behalf of numerous others with 'nominal' claims, we cannot overlook the reality that, without the remedy the CFA affords, all of those wrongs might go unvindicated." *Id at 22.* "We discern in the CFA a clear expression of the Legislature's intent to empower consumers who seek to secure relief for themselves and for others who may not be aware that they have been victimized." *Id at 23.*

In the instant case, the Plaintiff seeks to redress the wrongs not just to herself but also to others similarly situated.

Just as in *Bosland,* the Plaintiff has also pled a prima facie case under the TCCNWA. The Plaintiff has pled a prima facie case under the CFA. The same FHA regulations, New Jersey Statutes and New Jersey Court Rules establish the legal rights which were violated by the Defendant in the CFA claim form the basis of the violation of the TCCNWA.

In light of the New Jersey Supreme Court's decision, the Plaintiff would dismiss count V for unjust enrichment.

As a matter of law, the Court must deny the Defendant's motion to dismiss the Plaintiff's claims for violation of the CFA and the TCCNWA.


Respectfully submitted,

/s/Lewis G. Adler, Esquire

Lewis G. Adler, Esq.

Cc:    Honorable Joel Schneider, USMJ
       Francis X. Manning, Esq.

SYLLABUS

(This syllabus is not part of the opinion of the Court.  It has been prepared by the Office of the Clerk for the convenience of the reader.  It has been neither reviewed nor approved by the Supreme Court.  Please note that, in the interests of brevity, portions of any opinion may not have been summarized.)

**Rhonda Bosland v. Warnock Dodge, Inc. (A-97-07)**

**Argued October 6, 2008 -- Decided February 19, 2009**

**HOENS, J., writing for a unanimous Court.**

This matter calls upon the Court to consider whether a plaintiff, prior to instituting litigation pursuant to the Consumer Fraud Act (CFA), N.J.S.A. 56:8-1 to -20, must first request a refund of a claimed overcharge from an allegedly culpable merchant.

The facts that give rise to this dispute are not complicated.  On March 13, 2003, plaintiff Rhonda Bosland purchased a new 2003 Jeep Grand Cherokee from defendant Warnock Dodge, Inc. (Warnock).  She did not arrange for financing through the dealer, instead paying the full purchase price listed in the Retail Buyer's Order that served as Warnock's invoice.  That Retail Buyer's Order included a $117 charge that was described only as a "Registration Fee."

Bosland asserts that she later learned that the applicable title and registration fees charged by the Motor Vehicle Commission at the time of her purchase were less than the $117 fee the dealer required her to pay.  Bosland asserts that the applicable fee could only have been either $77 or $97, depending on how it was calculated.  She therefore reasoned that the $117 charge must have included an additional documentary service fee that was neither disclosed nor itemized as required by the applicable automobile sales regulations.

Rather than demanding that Warnock refund to her the amount that she had been overcharged, Bosland filed a complaint, seeking relief both individually and on behalf of a class of similarly situated car buyers.  Bosland's complaint included two statutory claims, one asserting that Warnock had violated the CFA, and the other relying on the provisions of the Truth-in-Consumer Contract, Warranty, and Notice Act, N.J.S.A. 56:12-14 to -18.  The third cause of action was based on an alternative quasi-contractual theory of unjust enrichment.

The trial court granted Warnock's motion to dismiss.  In explaining its basis for dismissing the CFA claim, the court reasoned that because Bosland had never complained about the fees and had paid them without objection, they could not be considered "unconscionable" or "an ascertainable loss."  In analyzing the Truth-in-Consumer Contract claim, the court found that Bosland could not meet the requirements of that cause of action because her factual allegations were insufficient to establish that the contract violated any clearly established legal right.

The Appellate Division, in a published opinion, affirmed in part and reversed in part.  Bosland v. Warnock Dodge, Inc., 396 N.J. Super. 267 (App. Div. 2007).  The appellate panel concurred in the trial court's rejection of Bosland's unjust enrichment claim, but disagreed with the trial court's dismissal of the two statutory causes of action.  In particular, the panel rejected the trial court's conclusion that Bosland's CFA claim was barred by her failure to demand a refund prior to filing her lawsuit.  As part of the analysis about whether a pre-suit demand for a refund is required by the CFA, the panel explicitly rejected the reasoning of Feinberg v. Red Bank Volvo, Inc., 331 N.J. Super. 506 (App. Div. 2000), an earlier Appellate Division decision in which the court had referred to such a demand as "a necessary element of proof."  The Appellate Division also reinstated Bosland's Truth-in-Consumer Contract claim, concluding that the complaint's CFA allegations also sufficed to support her claim that the contract violated a clearly established legal right.

The Supreme Court granted Warnock's petition for certification in order to decide whether an attempt to obtain a refund from a merchant is an essential prerequisite for a CFA claim.  194 N.J. 262 (2008).

**HELD**:  The Consumer Fraud Act does not require a consumer to seek a refund from an offending merchant prior to filing a complaint.

1. The Court's task in statutory interpretation is to determine and effectuate the Legislature's intent.  This task is often assisted by interpreting a statute consistently with the overall statutory scheme in which it is found. (pp. 10-12)

2. The CFA, in its original form, authorized only the Attorney General to seek redress for violations of its provisions.  In 1971, the Legislature amended the CFA, expanding it significantly to include a private right of action through the enactment of what was subsequently codified as N.J.S.A. 56:8-19.  That section, which is central to this dispute, provides that "any person who suffers any ascertainable loss . . . as a result of" defendant's violation of the CFA may file an action.  Although the legislative history surrounding this enactment is sparse, it is clear that the intention was to greatly expand protections for New Jersey consumers. (pp. 12-15)

3. In analyzing claims under the CFA, the Court has found that there are only three elements required for the prima facie proofs:  1) unlawful conduct by defendant; 2) an ascertainable loss by plaintiff; and 3) a causal relationship between the unlawful conduct and the ascertainable loss.  Each of these elements is found within the plain language of the statute itself; each is, without any question, a prerequisite to suit.  The plain language of the CFA does not impose upon any putative plaintiff the requirement that he or she first seek a remedy directly from the offending merchant.  The question is whether the term "ascertainable loss" or the causal nexus requirement embodied in the statutory phrase "as a result of" or the public policy considerations that underlie the CFA suggest that a pre-suit refund demand is implicit in the CFA. (pp. 15-18)

4. The Court has previously considered the meaning of the term "ascertainable loss" and has concluded that it means that plaintiff must suffer a definite, certain and measurable loss, rather than one that is merely theoretical.  Here, Bosland was the victim of an overcharge that can be easily quantified and thus is ascertainable within the meaning of the CFA.  That she could have requested a refund and, theoretically, could have secured complete relief in no way diminishes the fact that she sustained an immediate, quantifiable loss when she paid the fee representing the overcharge.  Nor is the Court persuaded that the causal nexus element of the prima facie proofs required for CFA relief implicitly includes the requirement that the victimized purchaser make a pre-suit demand for a refund.  Such an interpretation is contrary to the plain language that the Legislature chose and to its clear intent. (pp. 18-21)

5. Warnock urges the Court to embrace the decision of the appellate panel in Feinberg on public policy grounds.  The Court declines to do so for two reasons.  First, the Court considers the Feinberg decision to be far narrower than Warnock suggests, involving a plaintiff whose claim was rejected, in large part, because the proofs were inadequate to demonstrate what part of the loss was caused by the merchant's allegedly unlawful practice.  Second, the Court disagrees with Warnock's view of the public policy it urges the Court to embrace, finding it to be contrary to that expressed by the Legislature.  When confronted, as the Court is here, with a plaintiff who asserts that she was the victim of an overcharge which itself is small in amount, and who seeks recovery for herself and on behalf of numerous others with "nominal" claims, the Court cannot overlook the reality that, without the remedy that the CFA affords, all of those wrongs might go unvindicated.  If the Court were to require plaintiffs, as a precondition to filing a complaint under the CFA, to first demand a refund, it would create a safe harbor for an offending merchant.  A merchant could rely on the pre-suit refund demand requirement, boldly imposing inflated charges at no risk, and planning to refund the overcharges only when asked.  Such an analysis of the CFA would limit relief by making it available only to those consumers who are alert enough to ask for a refund, while allowing the offending merchant to reap a windfall.  The court sees in the broad remedial purposes of the CFA a strong contrary expression of public policy. (pp. 21-24)

6. In theory, there may be circumstances in which requiring a pre-suit demand for relief might be appropriate or in which a consumer's failure to seek a refund or other remedy in advance of turning to the courts should operate to limit the recovery otherwise available under the CFA.  Nevertheless, because the language and the intent of the statute are clear and its purposes are plain, the Court considers the concerns raised by Warnock to be matters that call for an examination and a weighing of public policy considerations not within the language of the CFA itself.  As such, they are for the Legislature, and not for this Court, to entertain. (pp. 24-25)

The judgment of the Appellate Division is **AFFIRMED** and the matter is **REMANDED** to the Law Division for further proceedings.

**CHIEF JUSTICE RABNER and JUSTICES LONG, LaVECCHIA, WALLACE, and RIVERA-SOTO join in JUSTICE HOENS' opinion.  JUSTICE ALBIN did not participate.**

SUPREME COURT OF NEW JERSEY
A-97 September Term 2007

RHONDA BOSLAND, on behalf of
herself and all others
similarly situated,

    Plaintiff-Respondent,

       v.

WARNOCK DODGE, INC., D/B/A
WARNOCK DODGE/CHRYSLER/JEEP,

    Defendant-Appellant,

      and

JOHN DOES 1-10 and ABC
CORPORATIONS 1-10,

    Defendants.

        Argued October 6, 2008 – Decided February 19, 2009

        On certification to the Superior Court,
        Appellate Division, whose opinion is
        reported at 396 N.J. Super. 267 (2007).

        Eric L. Chase argued the cause for appellant
        (Bressler, Amery & Ross, attorneys; Mr.
        Chase, Ronald J. Campione and Stephen R.
        Knox, on the briefs).

        Andrew R. Wolf argued the cause for
        respondent (Galex Wolf and Glen H. Chulsky,
        attorneys; Mr. Wolf, Mr. Chulsky and Lora B.
        Glick, on the letter briefs).

        Marvin J. Brauth submitted a brief on behalf
        of amicus curiae New Jersey Coalition of
        Automotive Retailers, Inc. (Wilentz, Goldman
        & Spitzer, attorneys; Mr. Brauth and Jeffrey
        J. Brookner, on the brief).

Bruce D. Greenberg submitted a brief on
behalf of amicus curiae Consumers League of
New Jersey (Lite DePalma Greenberg & Rivas,
attorneys).

Michael R. McDonald submitted a brief on
behalf of amicus curiae New Jersey Lawsuit
Reform Alliance (Hughes, Hubbard & Reed,
attorneys; Mr. McDonald and Diane E. Lifton,
of counsel and on the brief).

JUSTICE HOENS delivered the opinion of the Court.

The Consumer Fraud Act (CFA), N.J.S.A. 56:8-1 to -20,
affords broad protections to New Jersey consumers.  From 1960,
when the Legislature first enacted the CFA in its original form
and when it only authorized actions by the Attorney General, see
L. 1960, c. 39, until its most recent amendment in 2007, L.
2007, c. 14, (amending N.J.S.A. 56:8-1.1 as it relates to
transportation for temporary service workers), the history of
the Act demonstrates a strong and consistent pattern of
expanding the rights of consumers and protecting them from a
wide variety of marketplace tactics and practices deemed to be
unconscionable.

This matter calls upon this Court to consider whether a
plaintiff, prior to instituting litigation pursuant to the CFA,
must first request a refund of a claimed overcharge from an
allegedly culpable merchant.  Our reading of the plain language
of the statute and our understanding of the Legislature's

overall intent, both in enacting the CFA and in expanding its scope, compels us to answer this question in the negative.  We therefore conclude that the CFA does not require a consumer, who has been victimized by a practice which the statute is designed to remedy, to seek a refund from the offending merchant as a prerequisite to filing a complaint.

Although there may be sound reasons for adopting a different approach entirely or for limiting the available remedies to ameliorate the harsh consequences of the CFA in circumstances in which a consumer does not first offer the merchant the opportunity to make amends in advance of pursuing litigation, we conclude that those concerns implicate public policy choices that are for the Legislature, rather than this Court, to make.

I.

The facts that give rise to this dispute are not complicated.  On March 13, 2003, plaintiff Rhonda Bosland purchased a new 2003 Jeep Grand Cherokee from defendant Warnock Dodge, Inc.  She did not arrange for financing through the dealer, instead paying the full purchase price listed in the Retail Buyer's Order that served as defendant's invoice.  That Retail Buyer's Order included a $117 charge that was described only as a "Registration Fee."

Plaintiff asserts that she later learned that the

3

applicable title and registration fees charged by the Motor
Vehicle Commission at the time of her purchase were less than
the $117 fee the dealer required her to pay.  Although there
were two ways to calculate what that $117 sum might have
represented, plaintiff discovered that the applicable fee could
only have been either $77 (comprised of a $74 registration fee
and a $3 temporary registration fee) or $97 (representing the
sum if an additional $20 title fee could properly be included as
a "registration fee").  She therefore reasoned that, regardless
of how the $117 charge had been calculated, it must have
included an additional documentary service fee that was neither
disclosed nor itemized as required by the applicable automobile
sales regulations.  See N.J.A.C. 13:45A-26B.1, -26B.2(a)(2)(i).

    Rather than demanding that defendant refund to her the
amount that she had been overcharged, plaintiff filed a
complaint, seeking relief both individually and on behalf of a
class of similarly situated car buyers.  Plaintiff's complaint
included three separate causes of action.  Two were statutory
claims, one asserting that defendant had violated the CFA, and
the other relying on the provisions of the Truth-in-Consumer
Contract, Warranty, and Notice Act (TCCWNA), N.J.S.A. 56:12-14
to -18.  The third cause of action was based upon an alternative
quasi-contractual theory of unjust enrichment.  Defendant
promptly moved to dismiss the complaint for failure to state a

claim on which relief may be granted, see R. 4:6-2(e).  After
considering the arguments, the motion court denied the motion to
dismiss and directed plaintiff to file an amended complaint that
more specifically explained the basis for each of the claims
asserted.

After plaintiff filed her amended complaint, defendant
again moved to challenge the sufficiency of the complaint.  The
motion court, after briefing and argument, issued an order and
letter opinion dated September 25, 2006, in which the court
granted defendant relief and dismissed the complaint.  In
explaining its basis for dismissing the CFA claim, the court
reasoned:

> Plaintiff never complained about these
> overages, so it seems counterintuitive to
> consider these fees unconscionable and an
> ascertainable loss.  Instead, these fees
> were Defendant[']s profit or fees for
> processing or handling these papers which
> Plaintiff, as a consumer, paid without
> objection.

In analyzing the TCCWNA claim, the court found that
plaintiff could not meet the requirements of that statutory
cause of action, because her factual allegations were
insufficient to establish that the contract violated any
"clearly established legal right," N.J.S.A. 56:12-15.  Finally,
the trial court rejected plaintiff's unjust enrichment claim,
reasoning that there was no evidence that defendant had obtained

any benefit "separate and distinct from the written contract," as a result of which plaintiff could not prevail on that quasi-contractual claim.

The Appellate Division, in a published opinion, affirmed in part and reversed in part.  Bosland v. Warnock Dodge, Inc., 396 N.J. Super. 267 (App. Div. 2007).  Although concurring in the trial court's rejection of plaintiff's unjust enrichment claim, the appellate panel disagreed with the trial court's dismissal of the two statutory causes of action.  Id. at 269-70.  In particular, the panel concluded that the allegations provided a sufficient factual basis for plaintiff's claim that the $20 or $40 overcharge constituted an undisclosed documentary service fee, id. at 274, and rejected the trial court's conclusion that plaintiff's CFA claim was barred by her failure to demand a refund prior to filing her lawsuit.  Id. at 277-78.  As part of the analysis about whether a pre-suit demand for a refund is required by the CFA, the appellate panel explicitly rejected the reasoning of Feinberg v. Red Bank Volvo, Inc., 331 N.J. Super. 506 (App. Div. 2000), an earlier Appellate Division decision in which the court had referred to such a demand as "a necessary element of proof." Id. at 511-12.

Having concluded that plaintiff's CFA claim should not have been dismissed, the Appellate Division also reinstated her TCCWNA claim, concluding that the complaint's CFA allegations

6

also sufficed to support her claim that the contract violated a clearly established legal right.  Bosland, supra, 396 N.J. Super. at 278.

 We granted defendant's petition for certification in order to decide whether an attempt to obtain a refund from a merchant is an essential prerequisite for a CFA claim.  194 N.J. 262 (2008).  We thereafter granted leave to the New Jersey Coalition of Automotive Retailers, Inc. (NJCAR), the New Jersey Lawsuit Reform Alliance (NJLRA), and the Consumers League of New Jersey (CLNJ) to submit briefs as amici curiae.

II.

 Defendant asks us to reverse the Appellate Division's conclusion that a pre-suit demand for a refund is not a prerequisite to a CFA complaint, relying on three arguments. First, defendant urges us to conclude that the Appellate Division erred by departing from the rationale expressed by the court in Feinberg and in failing to appreciate that, even though an attempt to secure a refund is not explicitly required under the CFA, there can be no ascertainable loss in the absence of having made that effort.  Second, defendant argues that we should reject plaintiff's claimed cause of action on the ground that the alleged $20 overpayment, when compared to the value of the vehicle plaintiff has used and enjoyed without any complaint, is not the type of loss that the CFA was intended to

remedy.  Finally, defendant contends that the Appellate Division's decision will lead to an inequitable result, contrary to the purposes and goals of the CFA because instead of promoting truth and fair dealing in the marketplace, and instead of providing a remedy for those who have no option but to resort to the court system, it will encourage consumers to litigate, in the hope of obtaining awards of treble damages and attorneys' fees, rather than simply asking for a refund that would make them whole.

Plaintiff responds by arguing that there are only three elements necessary to establish a cause of action for relief pursuant to the CFA, none of which is a requirement that a claimant first ask for a refund.  Plaintiff asserts that the Appellate Division correctly recognized that the contrary language in Feinberg was dicta and that the Feinberg decision itself did not extend to CFA claims generally, but was intentionally limited to fact patterns similar to the one that the court there confronted.  See Feinberg, supra, 331 N.J. Super. at 511 ("We consider . . . [pre-suit demand of a refund] a necessary element of proof in a matter such as this.").  Finally, plaintiff argues that imposing on consumers a pre-litigation requirement that they seek direct relief from an offending merchant would subvert the CFA's purposes, because merchants would be free to violate the CFA, providing refunds

only to those consumers savvy enough to request them while reaping unfair profits from unconscionable practices committed against all other consumers without fear of reprisal.

Amicus NJCAR argues that the Appellate Division's analysis would permit the CFA to be used to punish merchants for accidental violations or honest mistakes as opposed to affirmative misconduct, thus expanding the remedies of the statute beyond the scope intended by the Legislature.  NJCAR urges this Court to conclude that the remedial purposes of the CFA are most properly effectuated when a consumer is required to make a demand for a refund first because the consumer can then be made whole without the need for court intervention.

Amicus NJLRA argues that the Appellate Division erred by failing to recognize that the requirement that a consumer first seek a refund is implicit in both the ascertainable loss and causal nexus elements of the CFA cause of action.  Moreover, NJLRA cautions that permitting consumers to initiate CFA actions without first demanding a remedy from the merchant will overwhelm our courts with litigation that could and should have been amicably resolved.

Amicus CLNJ disagrees with the positions espoused by the other amici, arguing that the Appellate Division's judgment should be affirmed and that this Court should make clear that the CFA does not require a consumer to demand a refund prior to

initiating suit.  It points out that the Legislature chose not
to include such a requirement and that, in light of the broad
remedial purposes of the CFA, the courts should not read any
additional requirements into the statute.  At the same time,
CLNJ urges us to confine the Feinberg decision to its unique
factual circumstances, arguing that public policy considerations
militate against imposing such a requirement generally.  In
short, CLNJ asserts that requiring a pre-suit refund demand will
confuse consumers and lawyers, limit the ability of consumers to
pursue class actions, and undermine the CFA's goal of deterring
violations, because it will create a means for dishonest
merchants to avoid CFA lawsuits by providing refunds only to
consumers who know that they should request one.

III.

This matter calls upon us to decide whether the CFA
includes, either explicitly or implicitly, a requirement that a
consumer first demand a refund of an overcharged sum from a
merchant prior to instituting litigation.  In engaging in the
task of discerning a statute's meaning, our role is clear and
well-defined.

A.

Our task in statutory interpretation is to determine and
effectuate the Legislature's intent.  See D'Annunzio v.
Prudential Ins. Co. of Am., 192 N.J. 110, 119 (2007); Daidone v.

10

Buterick Bulkheading, 191 N.J. 557, 565 (2007).  As we have
explained, in carrying out this important role, "we look first
to the plain language of the statute, seeking further guidance
only to the extent that the Legislature's intent cannot be
derived from the words that it has chosen."  Pizzullo v. N.J.
Mfrs. Ins. Co., 196 N.J. 251, 264 (2008).  We will, in this
effort, read the words selected by the Legislature in accordance
with their ordinary meaning, D'Annunzio, supra, 192 N.J. at 119-
20, unless the Legislature has used technical terms, or terms of
art, which are construed "in accordance with those meanings,"
In re Lead Paint Litig., 191 N.J. 405, 430 (2007).  See N.J.S.A.
1:1-1 (declaring that "words . . . having a special or accepted
meaning in the law, shall be construed in accordance with such .
. . meaning.").  Nor will we "rewrite a plainly-written
enactment of the Legislature . . . [or] presume that the
Legislature intended something other than that expressed by way
of the plain language."  O'Connell v. State, 171 N.J. 484, 488
(2002).

     If, however, the plain language of a statute is not clear
or if it is susceptible to more than one possible meaning or
interpretation, the Court looks to extrinsic secondary sources
to serve as its guide.  We have traditionally looked to a
variety of such sources to aid us in our interpretation,
including, for example, legislative history, see Daidone, supra,

191 <u>N.J.</u> at 565-66, statements of the sponsor or sponsors of bills that were enacted, <u>see</u> <u>Panzino v. Cont'l Can Co.</u>, 71 <u>N.J.</u> 298, 301-03 (1976), and, where relevant, a Governor's press release, <u>see</u> <u>Cox v. Sears, Roebuck & Co.</u>, 138 <u>N.J.</u> 2, 15 (1994), or his or her conditional veto message, <u>see</u> <u>Roberts v. State, Div. of State Police</u>, 191 <u>N.J.</u> 516, 521-22 (2007).

Regardless of whether the language is plain or whether ambiguities cause us to seek guidance from sources other than the words the Legislature has chosen, our "primary task . . . is to effectuate the legislative intent in light of the language used and the objects sought to be achieved." <u>State v. Hoffman</u>, 149 <u>N.J.</u> 564, 578 (1997) (quoting <u>Merin v. Maglaki</u>, 126 <u>N.J.</u> 430, 435 (1992) (internal quotation marks omitted)). This task is often assisted by interpreting a statute consistently with the overall statutory scheme in which it is found. <u>See</u> <u>Merin</u>, <u>supra</u>, 126 <u>N.J.</u> at 436.

B.

The CFA, in its original form, authorized only the Attorney General to seek redress for violations of its provisions. As we have explained, "[t]he Legislature enacted the CFA in 1960 to address rampant consumer complaints about fraudulent practices in the marketplace and to deter such conduct by merchants." <u>Thiedemann v. Mercedes-Benz USA, L.L.C.</u>, 183 <u>N.J.</u> 234, 245 (2005) (citing <u>Furst v. Einstein Moomjy, Inc.</u>, 182 <u>N.J.</u> 1, 11

12

(2004)); see Cox, supra, 138 N.J. at 21 (citing Senate

Committee, Statement to the Senate Bill No. 199 (1960)).

　　　In 1971, the Legislature amended the CFA, expanding it

significantly to include a private right of action through the

enactment of L. 1971, c. 247, § 7, the provision subsequently

codified at N.J.S.A. 56:8-19.  That section, which is central to

the dispute before this Court, provides as follows:

> Any person who suffers any ascertainable
> loss of moneys or property, real or
> personal, as a result of the use or
> employment by another person of any method,
> act, or practice declared unlawful under
> this act or the act hereby amended and
> supplemented may bring an action or assert a
> counterclaim therefor in any court of
> competent jurisdiction. In any action under
> this section the court shall, in addition to
> any other appropriate legal or equitable
> relief, award threefold the damages
> sustained by any person in interest. In all
> actions under this section, including those
> brought by the Attorney General, the court
> shall also award reasonable attorneys' fees,
> filing fees and reasonable costs of suit.
>
> [N.J.S.A. 56:8-19.]

　　　Although the legislative history surrounding this enactment

is sparse, it is clear that the intention was to greatly expand

protections for New Jersey consumers.  The sponsor of the

amendments, then-Assemblyman Thomas H. Kean, was quoted at the

time as saying that "the amendments represent an enlightened

approach to provide greater protection for the consumer against

fraud."  Governor's Press Release for Assembly Bill No. 2402, at

1 (Apr. 19, 1971) (issued in support of the introduction of the
bill containing amendments).  Echoing that sentiment, Governor
William Cahill described these amendments to the CFA as being
intended to "give New Jersey one of the strongest consumer
protection laws in the nation."  Ibid.  Upon signing the bill
into law, the Governor further explained that he believed that
the amendments would "provide easier access to the courts for
the consumer, [would] increase the attractiveness of consumer
actions to attorneys and [would] also help reduce the burdens on
the Division of Consumer Affairs."  Governor's Press Release, at
2 (June 29, 1971).

     There are distinctions between the CFA requirements that
govern claims pursued by the Attorney General and those
permitted to be brought by private parties.  In particular, a
private party seeking to recover must demonstrate that he or she
has suffered an "ascertainable loss."  Meshinsky v. Nichols
Yacht Sales, Inc., 110 N.J. 464, 472-73 (1988).  In addition,
the CFA requires a consumer to prove that the loss is
attributable to the conduct that the CFA seeks to punish by
including a limitation expressed as a causal link.  See id. at
473; Daaleman v. Elizabethtown Gas Co., 77 N.J. 267, 271 (1978).
In considering these requirements, we have been careful to
interpret the CFA, and its prima facie proof requirements, so as
to be faithful to the Act's broad remedial purposes.  Weinberg

v. Sprint Corp., 173 N.J. 233, 251 (2002) (interpreting CFA so
as to effectuate the legislative intent of limiting private
causes of action to claims based on assertions of ascertainable
loss); see Thiedemann, supra, 183 N.J. at 247 ("[T]he prima
facie proofs necessary for a private cause of action under the
CFA must be applied compatibly with the CFA's remedial
nature."). In particular, we have recognized that "[t]he
history of the [CFA] is one of constant expansion of consumer
protection." Gennari v. Weichert Co. Realtors, 148 N.J. 582,
604 (1997). Similarly, our Appellate Division has noted that we
"construe the [CFA] broadly, not in a crabbed fashion." New Mea
Constr. Corp. v. Harper, 203 N.J. Super. 486, 502 (App. Div.
1985).

    We have traditionally recognized that CFA claims brought by
consumers as private plaintiffs can be divided, for analytical
purposes, into three categories. See Cox, supra, 138 N.J. at
17. Broadly defined, the categories are claims involving
affirmative acts, claims asserting knowing omissions, and claims
based on regulatory violations. Ibid. To some extent, the
proofs required will vary depending upon the category into which
any particular claim falls. For example, we have concluded that
if a claimed CFA violation is the result of a defendant's
affirmative act, "intent is not an essential element." Id. at
17-18. Likewise, intent is not an element if the claim is based

on a defendant's alleged violation of a regulation, because "the regulations impose strict liability for such violations." Id. at 18; see Fenwick v. Kay Am. Jeep, Inc., 72 N.J. 372, 378 (1977).  In contrast, we have required that a plaintiff seeking to recover based on a defendant's omission, "must show that the defendant acted with knowledge, and intent is an essential element of the fraud." Cox, supra, 138 N.J. at 18 (emphasis in original).  Viewed against this framework, we can evaluate the dispute before us.

C.

We turn then to the nature of the proofs required of plaintiff and their relationship to the need to demand a refund prior to filing suit.  Plaintiff's CFA claim is straightforward; it is premised on her assertion that the single, unified charge in the invoice for a "registration fee" exceeded the amount, however calculated, that was permitted to be charged for such a fee and therefore included an undisclosed "documentary service fee" in violation of the applicable regulations.  See N.J.A.C. 13:45A-26B.1, -26B.2(a)(2)(i).  Because plaintiff's complaint is based on a claimed regulatory violation, she is not required to prove defendant's intent.  See Cox, supra, 138 N.J. at 18.

In analyzing claims under the CFA, we have found that there are only three elements required for the prima facie proofs:  1) unlawful conduct by defendant; 2) an ascertainable loss by

plaintiff; and 3) a causal relationship between the unlawful
conduct and the ascertainable loss.  Int'l Union of Operating
Eng'rs Local No. 68 Welfare Fund v. Merck & Co., Inc., 192 N.J.
372, 389 (2007) (explaining three prima facie elements); see
Weinberg, supra, 173 N.J. at 247-48 (declining to abolish
ascertainable loss requirement for private cause of action);
Meshinsky, supra, 110 N.J. at 473 (recognizing that private
plaintiff, unlike Attorney General, must demonstrate
"ascertainable loss [. . .] as a result of" unlawful conduct);
Daaleman, supra, 77 N.J. at 271 (explaining that private
plaintiff must show that he or she "suffers a loss due to"
defendant's unlawful practice).  Each of the elements of the
prima facie case is found within the plain language of the
statute itself; each is, without any question, a prerequisite to
suit.

    The plain language of the CFA does not, however, impose
upon any putative plaintiff the requirement that he or she first
seek a remedy directly from the offending merchant.  Instead, it
refers to the right of "any person who suffers any ascertainable
loss . . . as a result of" defendant's violation of the CFA to
file an action.  N.J.S.A. 56:8-19.  On its face, then, the
statute makes no demand upon plaintiff to try to obtain a refund
first as a pre-condition of instituting suit.  The question,
however, is whether the term "ascertainable loss" or the causal

nexus requirement embodied in the statutory phrase "as a result of" or the public policy considerations that underlie the CFA suggest that a pre-suit refund demand is implicit in the CFA.

We have previously considered the meaning of the term "ascertainable loss," and have concluded that it means that plaintiff must suffer a definite, certain and measurable loss, rather than one that is merely theoretical. Thiedemann, supra, 183 N.J. at 248.  We found it appropriate to resort to the definition of the words, noting that "'[a]scertain' is defined as 'to make (a thing) certain; establish as a certainty; determine with certainty;' and 'ascertainable,' the adjective, is similarly defined as 'capable of being ascertained.'" Ibid. (quoting Webster's Third New International Dictionary 126 (1981)).  "The certainty implicit in the concept of an 'ascertainable' loss is that it is quantifiable or measurable." Ibid.

Apart from relying on the definition of the term, we have further considered a variety of issues that relate to the meaning of the "ascertainable loss" requirement.  We have held that a consumer who had repairs to a vehicle performed under warranty at no cost did not sustain such a loss.  Id. at 251-52. Nor does it exist for a customer who considered, but never purchased, a product and thus suffered no damages because of a fraudulent loan application submitted by the merchant in

anticipation of a sale. Meshinsky, supra, 110 N.J. at 475 n.4.
On the other hand, we have described our understanding of the
ascertainable loss requirement generally in terms that make it
equivalent to any lost "benefit of [the] bargain." Furst,
supra, 182 N.J. at 11-13 (quantifying lost benefit of the
bargain by reference to out-of-pocket expenses for purposes of
ascertainable loss analysis).

Even so, we have not always equated an ascertainable loss
with one that is demonstrated by an immediate, out-of-pocket
expense suffered by the consumer. See Thiedemann, supra, 183
N.J. at 248. For example, we have found that a consumer who had
not paid for repairs nonetheless suffered an ascertainable loss
caused by a home improvement contractor's failure to comply with
applicable regulations requiring the work to be inspected. Cox,
supra, 138 N.J. at 22. We analyzed the ascertainable loss
requirement by evaluating the consumer's proofs about the
reasonable cost of repair in the context of damages that had
been awarded by the jury. Id. at 22-24. We held that requiring
a consumer to actually make the expenditures needed to incur the
loss would be contrary to the remedial purposes of the CFA. Id.
at 22. The CFA does not demand that a plaintiff necessarily
point to an actually suffered loss or to an incurred loss, but
only to one that is "ascertainable."

Although this appeal, like Thiedemann, involves a claim

19

against an automobile dealer, they are not otherwise similar.
Unlike a defect in a vehicle that is appropriately remedied by
resort to the warranty or through alternate means of relief
created by our Legislature, such as the New Jersey Lemon Law,
N.J.S.A. 56:12-29 to -49, plaintiff was the victim of an
overcharge.  More to the point, the overcharge in question is
one that can be readily quantified and thus is ascertainable
within the meaning of the CFA.  That she could have requested a
refund and, theoretically, could have secured complete relief in
no way diminishes the fact that she sustained an immediate,
quantifiable loss when she paid the fee representing the
overcharge.

    Nor are we persuaded that the causal nexus element of the
prima facie proofs required for CFA relief implicitly includes
the requirement that the victimized purchaser make a pre-suit
demand for a refund.  Reading the causal nexus requirement as
defendant suggests would add to it the notion that a loss that
is ascertainable is not caused by the merchant's offending act
if it might have been remedied by the consumer through means
other than the one that the CFA creates.  Such an interpretation
of the CFA would be contrary to the plain language that the
Legislature chose and to its clear intent.  Indeed, we see in
defendant's arguments an effort to import into the CFA obstacles
that would impede access to the broad remedial protections for

consumers that our Legislature so obviously intended to create.

D.

Although we do not find in the "ascertainable loss" or causal nexus elements of the CFA cause of action any requirement that consumers first attempt to extinguish a loss by seeking a refund, defendant urges us to embrace the decision of the appellate panel in Feinberg on public policy grounds. We decline to do so for two reasons. First, we consider the Feinberg decision to be far narrower than defendant suggests. Second, we disagree with defendant's view of the public policy it urges us to embrace, finding it to be contrary to that expressed by the Legislature.

The decision in Feinberg arose in rather unique circumstances, revolving around a plaintiff's attempt to recover from a vehicle dealer that failed to explain that its "Sign and Drive" program was subject to a credit check. Feinberg, supra, 331 N.J. Super. at 509-10. In large part, plaintiff's claim was rejected because the proofs were inadequate to demonstrate what part of the loss, asserted to be bank fees incurred when the plaintiff was rejected based on his fraudulent credit application, were caused by the dealer's allegedly unlawful practice. Id. at 511 (citing Roberts v. Cowgill, 316 N.J. Super. 33, 41 (App. Div. 1998)). We agree that a plaintiff who cannot prove the causal link between the asserted regulatory

21

violation and his loss cannot find relief within the CFA.
Moreover, we see no unfairness in refusing to find a CFA remedy
for a plaintiff whose entire claim was premised on his own
decision to engage in a fraudulent transaction.  Ibid.

     We do not, however, agree with the broad reading that
defendant would have us give to the language in Feinberg that
suggested that consumers are first required to demand
reimbursement of charges or that such an effort is "a necessary
element of proof," ibid., closing the courthouse doors to any
who fail to do so.  We reach this conclusion not only because
our reading of the plain language of the statute demands it, but
because of our view about one aspect of the public policy
rationale that undergirds the CFA, but that played no role in
the Feinberg matter.  When confronted, as we are here, with a
plaintiff who asserts that she was the victim of an overcharge
which itself is small in amount, and who seeks recovery for
herself and on behalf of numerous others with "nominal" claims,
we cannot overlook the reality that, without the remedy that the
CFA affords, all of those wrongs might go unvindicated.  See
Local 68, supra, 192 N.J. at 382-85.  As with our view of the
rationale that underlies the class action mechanism, ibid.; see
Iliadis v. Wal-Mart Stores, Inc., 191 N.J. 88, 115 (2007)
(explaining significance of availability of class actions in
context of nominal damages), we see in the CFA an underlying

public policy rationale that gives no support to the suggestion
that a pre-suit demand for a refund is required.

There are sound reasons why a pre-suit demand requirement
is not implicit in the CFA.  This dispute in particular
illustrates how reading such a requirement into the CFA would
potentially permit practices, that the statute is designed to
deter, instead to continue unabated and unpunished.  Plainly, if
we require plaintiffs, as a precondition to filing a complaint
under the CFA, to first demand a refund, we will create a safe
harbor for an offending merchant.  A merchant could rely on the
pre-suit refund demand requirement, boldly imposing inflated
charges at no risk, and planning to refund the overcharges only
when asked.  Such an analysis of the CFA would limit relief by
making it available only to those consumers who are alert enough
to ask for a refund, while allowing the offending merchant to
reap a windfall.  We see in the broad remedial purposes of the
CFA a strong contrary expression of public policy.  We discern
in the CFA a clear expression of the Legislature's intent to
empower consumers who seek to secure relief for themselves and
for others who may not be aware that they have been victimized.
Because reading a pre-suit demand for refund requirement into
the CFA would thwart those salutary purposes, we will not
endorse it.

We recognize that defendant and amici have argued that

permitting litigation to proceed without requiring an initial demand for an amicable resolution might lead to unduly harsh consequences for a merchant's honest error.  Some of those concerns, however, are unfounded.  We do not share their concern, for example, that a small overcharge will result in a treble damage award based on the vehicle's sales price.  Even if plaintiff, for example, demonstrates that she was overcharged for the registration fee, it is that overpayment that constitutes her ascertainable loss; she cannot demonstrate that her use of the vehicle was in any way diminished and therefore would not be entitled to CFA recovery based on that vehicle's full value.

In theory, there may be circumstances in which requiring a pre-suit demand for relief might be appropriate or in which a consumer's failure to seek a refund or other remedy in advance of turning to the courts for relief should operate to limit the recovery otherwise available under the CFA.  Nevertheless, because the language and the intent of the statute are clear and its purposes are plain, we consider the concerns raised by defendant and by amici to be matters that call for an examination and a weighing of public policy considerations not within the language of the CFA itself.  As such, they are for the Legislature, and not for this Court, to entertain.

IV.

24

The judgment of the Appellate Division is affirmed and the matter is remanded to the Law Division for further proceedings.

CHIEF JUSTICE RABNER and JUSTICES LONG, LaVECCHIA, WALLACE, and RIVERA-SOTO join in JUSTICE HOENS' opinion.  JUSTICE ALBIN did not participate.

SUPREME COURT OF NEW JERSEY

NO.   A-97                              SEPTEMBER TERM 2007

ON CERTIFICATION TO        Appellate Division, Superior Court

_____

RHONDA BOSLAND, on behalf of
herself and all others
similarly situated,

      Plaintiff-Respondent,

          v.

WARNOCK DODGE, INC., D/B/A
WARNOCK DODGE/CHRYSLER/JEEP,

      Defendant-Appellant.

DECIDED        February 19, 2009
_____
      Chief Justice Rabner                PRESIDING
OPINION BY      Justice Hoens
CONCURRING/DISSENTING OPINIONS BY
DISSENTING OPINION BY

| CHECKLIST | AFFIRM AND REMAND | |
|---|---|---|
| CHIEF JUSTICE RABNER | X | |
| JUSTICE LONG | X | |
| JUSTICE LaVECCHIA | X | |
| JUSTICE ALBIN | -------------------- | ------------------------- |
| JUSTICE WALLACE | X | |
| JUSTICE RIVERA-SOTO | X | |
| JUSTICE HOENS | X | |
| TOTALS | 6 | |