STRADLEY, RONON, STEVENS & YOUNG, LLP
A Pennsylvania Limited Liability Partnership
By: Francis X. Manning
Woodland Falls Corporate Park
200 Lake Drive East, Suite 100
Cherry Hill, NJ 08002
(856) 321-2400
Attorneys for Defendant
Chase Home Finance LLC

## UNITED STATES COURT DISTRICT
## FOR THE DISTRICT OF NEW JERSEY
## (CAMDEN VICINAGE)

| | |
|---|---|
| STACY COLEMAN, fka Stacy Kovilaritch: individually and as a class representative on behalf of others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>CHASE HOME FINANCE, LLC, successor-by-merger to CHASE MANHATTAN MORTGAGE CORP. and John Doe 1-100 and John Doe Servicers 1-1-100,<br><br>Defendant. | No. 1:08-cv-02215-NLH-JS<br><br><br><br>DEFENDANT'S BRIEF IN SUPPORT OF ITS RULE 12(b)(1) AND (6) MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT<br><br>Return Date: August 3, 2009 |

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................ iii

INTRODUCTION.............................................................................. 1

ALLEGATIONS OF THE COMPLAINT AND THE FORECLOSURE
DISMISSAL ORDER ........................................................................ 4

ARGUMENT ..................................................................................... 6

    I.     LEGAL STANDARD. ........................................................... 6

    II.    COLEMAN FAILS TO ALLEGE SUBJECT MATTER
          JURISDICTION. .................................................................. 8

    III.   ALL OF COLEMAN'S CLAIMS ARE BARRED BY THE
          ENTIRE CONTROVERSY DOCTRINE. ........................... 12

    IV.   EACH COUNT ALSO FAILS TO STATE A CLAIM FOR
          RELIEF............................................................................... 19

          A.    The Count I Breach Of Contract Claim Fails Because
                 Coleman Fails To Allege A Contract Provision That Was
                 Breached.................................................................. 19

          B.    The Count II Intentional Misrepresentation Claim Should
                 Be Dismissed Because The Allegations Of The
                 Complaint Preclude The Element Of Reasonable
                 Reliance, And Because It Fails To Meet The Particularity
                 Requirements Of Fed. R.Civ. P. 9(b)...................... 22

          C.    The Count III Negligence Claim Fails Because Chase
                 Owed Coleman No Extra-Contractual Duty Of Care And
                 It Is Barred By The Economic Loss Doctrine........................... 26

          D.    The Count IV Claim For Breach Of The Duty Of Good
                 Faith And Fair Dealing Fails Because Her Mortgage
                 Expressly Authorized The Complained Of Conduct, And

She Does Not Allege That Chase Deprived Her Of The Loan Proceeds. .......................................................................... 28

E.    The Count V Unjust Enrichment Claim Fails Because Coleman Has Alleged An Express Contract With Chase. ........ 29

F.    The New Jersey Consumer Fraud Act Claims Fail To Comply With The Requirements Of Rule 9(b). ........................ 30

G.    The Claims For Violation Of The Fair Foreclosure Act, New Jersey State Court Rules And New Jersey Statutes Relating To Taxed Costs Fail Because None Provide A Private Right Of Action. ........................................................... 31

H.    The Count XI "Forfeiture Of Interest" Claim Fails Because She Does Not Allege That Chase Charged Interest Above The Permitted Rate. ........................................... 34

I.    The Count XII New Jersey Truth-In-Consumer Contract Act Claim Should Be Dismissed Because Coleman Has Not Alleged That Any Contract Or Notice From Chase Contained Provisions Violating Her Clearly Established Legal Rights. .......................................................................... 36

CONCLUSION ..................................................................................... 39

## TABLE OF AUTHORITIES

Page(s)

Federal Cases

*ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855 (3d Cir. 1994)............................................. 8

*Baer v. Chase*, 392 F.3d 609 (3d Cir. 2004)........................................................... 29

*Barrows v. Chase Manhattan Mortg. Corp.*, 465 F. Supp. 2d 347
    (D.N.J. 2006)................................................................................................ 36-37

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955 (2007)............. 7, 35

*Boyle v. D'Onofrio*, 99 F. Supp. 2d 541 (D.N.J. 2000)........................................... 25

*Bubbles N' Bows, LLC v. Fey Publishing Co.*, Civ.A.No. 06-5391, 2007 WL
    2406980 (D.N.J. Aug. 20, 2007)...................................................................... 27

*Common Cause of Pennsylvania v. Pennsylvania*, 558 F.3d 249
    (3d Cir. 2009)................................................................................................ 6, 7

*Crispino v. Chem. Bank New Jersey (In re Crispino)*, 160 B.R. 749
    (Bankr. D.N.J. 1993)......................................................................................... 17

*F.D.I.C. v. Bathgate*, 27 F.3d 850 (3d Cir. 1994)................................................... 30

*Fleming Cos., Inc. v. Thriftway Medford Lakes, Inc.*, 913 F. Supp. 837
    (D.N.J. 1995)..................................................................................................... 28

*Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567, 124 S. Ct. 1920
    (2004)................................................................................................................. 6

*Highlands Ins. Co. v. PRG Brokerage, Inc.*, No. 01 Civ. 2272 (GBD),
    2004 WL 35439 (S.D.N.Y. Jan. 6, 2004)......................................................... 20

*In re 865 Centennial Ave. Assoc. Ltd. P'ship.*, 200 B.R. 800
    (Bankr. D.N.J. 1996)......................................................................................... 17

*In re Burlington Coat Factory Litig.*, 114 F.3d 1410 (3d Cir. 1997) ............... 5, 8, 9

*Lewison Bros. v. Washington Sav. Bank (In re Lewison Bank)*, 162 B.R. 974
   (Bankr. D.N.J. 1993) ................................................................................ 17

*Lightfoot v. U.S.*, 564 F.3d 625 (3d Cir. 2009) ........................................................ 6

*Lum v. Bank of America*, 361 F.3d 217 (3d Cir. 2004), *cert. denied*, 543 U.S. 918,
   125 S. Ct. 271 (2004) ......................................................................... 4-5, 8, 9

*Nappier v. PriceWaterhouse Coopers LLP*, 227 F. Supp. 2d 263
   (D.N.J. 2002) ............................................................................................. 7

*Paszek v. Froehlich*, Civ. No. 08-455 (WJM), 2008 WL 3887610
   (D.N.J. Aug. 18, 2008) ............................................................................. 17

*Pell v. Weinstein*, 759 F. Supp. 1107 (M.D. Pa. 1991) ........................................ 25

*Phillips v. County of Allegheny*, 515 F.3d 224 (3d Cir. 2008) ........................... 7, 35

*Public Service Enter. Group, Inc. v. Philadelphia Elec. Co.*, 722 F. Supp. 184
   (D.N.J. 1989) ........................................................................................... 27

*Resolution Trust Corp. v. Minassian*, 777 F. Supp. 385 (D.N.J. 1991) ................. 36

*Sakhrani v. Washington Mut. Bank, F.A.*, Civ.A.No. 06-1760 (PGS), 2006 WL
   2040256 (D.N.J. July 20, 2006) ............................................................... 13

*Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786
   (3d Cir. 1984) .......................................................................................... 24

*Simon v. Eastern Kentucky Welfare Rights Org.*, 426 U.S. 26, 96 S. Ct. 1917
   (1976) ...................................................................................................... 12

*Slim CD, Inc. v. Heartland Payment Sys.*, No. 06-2256, 2007 WL 2459349 (D.N.J.
   Aug. 24, 2007) ........................................................................................ 30

*Temp-Way Corp. v. Continental Bank*, 139 B.R. 299
   (Bankr. E.D. Pa. 1992) ............................................................................ 26

*United States v. Philip Morris, Inc.*, 263 F. Supp. 2d 72 (D.D.C. 2003) ............... 31

*Venner v. Bank of America*, Civil No. 07-4040 (JBS/JS), 2009 WL 1416043
   (D.N.J. May 19, 2009) ............................................................................. 17

*Warth v. Seldin*, 422 U.S. 490, 95 S. Ct. 2197 (1975).............................................. 12

*Whittingham v. Amended Mortg. Elec. Registration Serv., Inc.*, No. 06-3016
   (RBK), 2007 WL 1456196 (D.N.J. May 15, 2007)............................................ 31

*Woods Corporate Assoc. v. Signet Star Holdings, Inc.*, 910 F. Supp 1019
   (D.N.J. 1995)............................................................................................. 28

<u>State Cases</u>

*Circle Chevrolet Co. v. Giordano, Halleran & Ciesla*, 142 N.J. 280, 662 A.2d 509
   (N.J. 1995).......................................................................................... 18-19

*Cogdell v. Hosp. Ctr.*, 116 N.J. 7, 560 A.2d 1169 (N.J. 1989)................................ 15

*DiTrolio v. Antiles*, 142 N.J. 253, 662 A.2d 494 (N.J. 1995) ...................... 15, 16, 18

*Glenfed Fin. Corp. v. Penick Corp.*, 276 N.J. Super. 163, 647 A.2d 852
   (N.J. Super. Ct. App. Div. 1994) ......................................................... 28

*Glynn v. Park Tower Apartments, Inc.*, 213 N.J. Super. 357, 517 A.2d 475
   (N.J. Super. Ct. App. Div. 1996) ......................................................... 33

*Genarri v. Weichert Co. Realtors*, 148 N.J. 582, 691 A.2d 350 (N.J. 1997)........... 22

*Jewish Ctr. of Sussex County v. Whale*, 86 N.J. 619, 432 A.2d 521 (N.J. 1981) ... 22

*LaSalle Nat'l Bank v. Johnson*, 2006 WL 551563 (N.J. Ch. March 3, 2006).... 16-17

*Leisure Tech. v. Klingveil*, 137 N.J. Super. 353, 349 A.2d 96 (N.J. Super. App.
   Div. 1975) ............................................................................................ 16

*Margulies v. Chase Manhattan Mortgage Corp.*, 2005 WL 2923580 (N.J. Super.
   Ct. App. Div. Nov. 7, 2005).............................................................. 29

*Moser v. Milner Hotels, Inc.*, 6 N.J. 278, 78 A.2d 393 (N.J. 1951)......................... 29

*Mystic Isle Dev. Corp. v. Perskie & Nehmad*, 142 N.J. 310, 662 A.2d 523
   (N.J. 1995)........................................................................................ 18

*Olds v. Donnelly*, 150 N.J. 424, 696 A.2d 633 (N.J. 1997) ............................... 15, 19

*Prevratil v. Mohr*, 145 N.J. 180, 678 A.2d 243 (N.J. 1996) .................................... 13

*R.J. Gaydos Ins. Agency, Inc. v. Nat'l. Consumer Ins. Co.*, 168 N.J. 255, 773 A.2d 1132 (N.J. 2001) ................................................................................................. 32

*Ryno, Inc. v. First Nat'l Bank of South Jersey*, 208 N.J. Super. 562, 506 A.2d 762 (N.J. Super. Ct. App. Div. 1986) ........................................................................ 16

*Smith v. Red Top Taxicab Corp.*, 111 N.J.L. 439, 168 A. 796 (N.J. 1933) ............ 14

*Sun NLF Ltd. P'ship v. Sasso*, 313 N.J. Super. 546, 713 A.2d 538 (N.J. Super. Ct. App. Div. 1998) ................................................................................................. 17

*United Jersey Bank v. Kensey*, 306 N.J. Super. 540, 704 A.2d 38 (N.J. Super Ct. App. Div. 1997) ................................................................................................. 26

*VW Credit, Inc. v. Coast Auto. Group, Ltd.*, 2005 WL 375052 (N.J. Super. Ct. App. Div. Feb. 14, 2006) ................................................................................... 17

Statutes

28 U.S.C. § 1332 ............................................................................................. 1, 11

N.J.S.A. § 2A:15-13 ............................................................................................. 31

N.J.S.A. § 2A:50-54 ............................................................................................. 33

N.J.S.A. § 2A:50-57 ............................................................................................. 33

N.J.S.A. § 22A:2-8 ............................................................................................... 31

N.J.S.A. § 22A:2-10 ............................................................................................. 31

N.J.S.A. § 31:1-1 ................................................................................................. 35

N.J.S.A. § 31:1-3 ............................................................................................. 34, 36

N.J.S.A. § 56:8-2 ................................................................................................. 30

N.J.S.A. § 56:12-1 ............................................................................................... 37

N.J.S.A. §§ 56:12-14 to -18 ............................................................................. 36, 37

Rules

Fed. R. Civ. P. 8(a)(2) ............................................................................... 27

Fed. R. Civ. P. 9(b) ................................................................................... 24

N.J. Ct. R. 4:30A ....................................................................................... 15

Constitutional Provisions

N.J. Const. art. VI ...................................................................................... 15

State Regulations

N.J. Admin. Code § 3:1-1.1(b) .................................................................. 35

## INTRODUCTION

Chase filed a state court foreclosure action against Coleman after she defaulted on her mortgage loan.  That foreclosure action was dismissed in 2006 after Coleman paid certain amounts to reinstate her loan.  Over two years later, Coleman filed this purported class action[1] alleging that her reinstatement payment to Chase was more than it should have been.

Coleman' first amended complaint (the "Complaint") fails to allege subject matter jurisdiction.[2]  Coleman's only asserted basis for jurisdiction is under the Class Action Fairness Act ("CAFA"), 28 U.S.C. Section 1332(d)(2).  Coleman acknowledges that both she and Chase are New Jersey citizens, but seeks to avoid CAFA's mandatory exception to federal jurisdiction over "home state" controversies, 28 U.S.C. Sections 1332(d)(4), by alleging a purported national class in which less than two-thirds of the members might be citizens of New

---

[1] Coleman's counsel in this case previously filed a putative class action against Chase's predecessor-in-interest, alleging nearly identical claims based on the same alleged wrongful conduct relating to foreclosure fees, costs and interest in New Jersey state court.  (*Polen v. Chase Manhattan Mortgage Corporation*, Superior Court of New Jersey, Gloucester County, No. 3-306-04.)  On April 17, 2007, after a lengthy class certification hearing, the Court in that case entered an order denying class certification.  Rather than appeal that decision, Plaintiffs' counsel chose to try a different venue and filed the case in this court.  A true and correct copy of the *Polen* order is attached to the Manning Declaration as Exhibit A.

[2] On May 11, 2009 this Court issued an opinion (Docket No. 24) holding that Coleman's original complaint failed to allege subject matter jurisdiction, and granting her leave to file an amended pleading.

Jersey.   Coleman's purported national class consists of borrowers "who were charged [foreclosure] attorneys fees [sic] . . . in excess of the amount . . . allowed by [Federal Housing Authority ("FHA")] regulation." (Complaint, para. 15.) However, Coleman's own allegations incontrovertibly refute that she paid such foreclosure attorneys' fees, and she therefore cannot assert such a claim in her own right.   Coleman admits that she reimbursed Chase significantly less than the attorneys' fee amount provided in the applicable FHA schedule.  Because this is the only claim she asserts on behalf of a national class, and it fails, she has not alleged jurisdiction under CAFA and the Complaint should be dismissed under Rule 12(b)(1).

Even if the Court determines that Coleman has adequately alleged federal jurisdiction, Chase is entitled to dismissal of all twelve Counts of the complaint under New Jersey's entire controversy doctrine, which requires that all claims and defenses that are "germane" to a foreclosure proceeding must be asserted in that action.  Because Coleman failed to raise the claims she now seeks to assert in the underlying foreclosure action, which was pending for over four years, she is barred from raising them in this case.

Each Count of the Complaint is also subject to dismissal for failure to state a claim as a matter of law.  The Count I breach of contract claim fails because Coleman fails to identify any provision of the mortgage that was breached.  The

2

express provisions of her mortgage required her to pay foreclosure related attorneys' fees and costs, and interest, which Coleman now claims was prohibited.

The Count II intentional misrepresentation claim fails because the allegations of the complaint preclude the essential element of reasonable reliance. In addition, the Count II intentional misrepresentation claim, and the Counts VI and X New Jersey Consumer Fraud Act claims, are all subject to dismissal because Coleman's fraud allegations fail to meet the particularity requirements of Fed. R. Civ. P. 9(b).

The Count III negligence claim fails because the complaint alleges no extra-contractual duty of care that Chase owed Coleman, and because it is barred by the economic loss doctrine.

The Count IV claim for breach of the duty of good faith and fair dealing fails because Coleman's duty of good faith and fair dealing theory – that Chase should not have collected reimbursement for foreclosure related attorneys fees and costs, or received interest payments – directly conflicts with the terms of her mortgage agreement. It also fails because the complaint does not allege that Chase's conduct interfered with Coleman's ability to receive the benefit of her mortgage contract, namely the loan proceeds which she received at closing.

The Count V claim for unjust enrichment fails because no such claim may lie where, as here, there is an express agreement between the parties regarding the same subject matter as the unjust enrichment claim.

The Count VII claim for violation of the Fair Foreclosure Act, the Count IX claim for violation of various New Jersey Court Rules, and the Count IX claim for violation of various New Jersey statutes relating to taxed costs all fail because there is no private right of action for any of these claims.

The Count XI claim for forfeiture of interest fails because Coleman does not (and cannot) allege that Chase charged her interest above the permitted rate.

Finally, the Count XII claim for violation of the New Jersey Truth-in-Consumer Contract Act fails because Chase did not send her the reinstatement quote she complains about and the quote is not a "warranty, notice or sign" covered by the Act.

## ALLEGATIONS OF THE COMPLAINT AND
## THE FORECLOSURE DISMISSAL ORDER

Coleman owns residential property located at 169 Columbia Avenue, Thorofare, Gloucester County, New Jersey, which was secured by a mortgage and note[3] held by Chase. (Complaint, paras. 1, 29 and 31.) In October 2001, Chase

---

[3] True and accurate copies of the mortgage and note are attached to the Manning Decl. as Exhibits B and C, respectively. Even though they are not attached to the Complaint, the Court may review these instruments because the mortgage agreement is "integral or explicitly relied upon in the Complaint." *Lum v. Bank of*

4

filed a foreclosure action against Coleman.[4] (Complaint, para. 32.) In August 2002, Chase obtained a final judgment and writ of execution in the foreclosure matter. (Complaint, Ex. A and para. 33.)

Coleman alleges that the final judgment "allowed total taxed costs of only $1,600.52, inclusive of attorneys' fees and all costs of suit." (Complaint, para. 36.) She alleges that on January 17, 2006 she reinstated her mortgage "by paying approximately $18,658.24 . . . which included mortgage arrears of $11,966.21, foreclosure fees of $900 and foreclosure costs of $5,791.73." (Complaint, para. 34.) According to the complaint, Coleman "paid costs and fees of $6,691.73, which was $5,091.21 over the amount allowed in the judgment," and the amount she paid to reinstate her loan "included excess and/or unincurred charges, including attorneys' fees and costs of suit which were in excess of the amount allowed under the law and final judgment." (Complaint, paras. 37 and 38.) However, other than attorneys' fees and costs, these "excess and/or unincurred" charges are not specified in the Complaint. Coleman also alleges that when she reinstated her loan her payment included interest at the rate provided under her mortgage agreement, "and not the judgment rate of interest." (Complaint, para. 39.)

---

*America*, 361 F.3d 217, 222 n.3 (3d Cir. 2004), *cert. denied*, 543 U.S. 918, 125 S. Ct. 271 (2004) (quoting *In re Burlington Coat Factory Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)).

[4] A true and accurate copy of the foreclosure complaint date-stamped October 12, 2001, is attached to the Manning Decl. as Exhibit D.

Although Coleman alleges that Chase "failed to reinstate the mortgage, and vacate and/or dismiss the foreclosure" after receiving Coleman's reinstatement payment (Complaint, para. 41), this allegation is demonstrably wrong. Following her reinstatement payment, on January 20, 2006, the foreclosure court entered an order vacating the previously entered final judgment and writ of execution, and "dismissed without prejudice" the foreclosure action. (See January 20, 2006 Order Setting Aside Judgment and Execution[,] Dismissing Foreclosure Proceeding and Reinstating Bond and Mortgage, attached to the Manning Decl. as Exhibit E.) The foreclosure court's dismissal was based upon its finding that the foreclosure proceeding "has been amicably settled between the parties." (*Id.*)

## ARGUMENT

I.   LEGAL STANDARD.

Subject matter jurisdiction is a threshold issue which should be resolved before a court reaches the merits of the case. *Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567, 593, 124 S. Ct. 1920, 1937 (2004) (citations omitted). Under Rule 12(b)(1), a plaintiff "bears the burden of demonstrating subject matter jurisdiction." *Lightfoot v. U.S.*, 564 F.3d 625, 627 (3d Cir. 2009). "Challenges to subject matter jurisdiction under Rule 12(b)(1) may be facial or factual." *Common Cause of Pennsylvania v. Pennsylvania*, 558 F.3d 249, 257 (3d Cir. 2009). Facial

attacks, like this one, "contest the sufficiency of the pleadings, and the trial court must accept the complaint's allegations as true." *Id.*

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a complaint. To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007). Under *Twombly*, a plaintiff's blanket assertion of an entitlement to relief is not enough to withstand a Rule 12(b)(6) motion to dismiss. *Phillips v. County of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008). Rather, the complaint must contain enough factual allegations to make out a "showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Id.* (quoting *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964). Thus, "[a]fter *Twombly*, it is no longer sufficient to allege mere elements of a cause of action; instead 'a complaint must allege facts suggestive of [the proscribed] conduct.'" *Id.* at 233 (quoting *Twombly*, 550 U.S. at 588 n.8, 127 S. Ct at 1969 n.8). On a Rule 12(b)(6) motion to dismiss, the Court need not accept conclusory recitations of law in determining whether the pleading is sufficient to state a cause of action. *Nappier v. PriceWaterhouse Coopers LLP*, 227 F. Supp. 2d 263, 272 (D.N.J. 2002); see also *Twombly*, 550 U.S. at 555-56, 127 S. Ct. at 1964-65.

In deciding whether to dismiss a claim, the Court may consider the "allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim . . . A document forms the basis of a claim if the document is 'integral to or explicitly relied upon in the complaint.'" *Lum v. Bank of America*, 361 F.3d 217, 222 n.3 (3d Cir. 2004), *cert. denied*, 543 U.S. 918, 125 S. Ct. 271 (2004) (quoting *In re Burlington Coat Factory Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)). "Where there is a disparity between a written instrument annexed to a pleading and an allegation in the pleading based thereon, the written instrument will control." *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 n.8 (3d Cir. 1994).

## II.    COLEMAN FAILS TO ALLEGE SUBJECT MATTER JURISDICTION.

Although Coleman has amended her jurisdictional allegations to try to plead around CAFA's mandatory exception to federal jurisdiction over "home state" controversies, the Complaint still fails to allege subject matter jurisdiction. Coleman now alleges a purported national class in which, presumably, less than two-thirds of the class members might be citizens of New Jersey. However, Coleman's Complaint fails to allege subject matter jurisdiction because she lacks standing to pursue the only claim she asserts on a "national" class basis.

Coleman's "national" class action is based upon her breach of contract claim that Chase "requested" she reimburse foreclosure attorneys' fees in excess of the

8

amount set forth in an FHA fee schedule when she reinstated her mortgage. Coleman alleges that under the FHA fee schedule effective for foreclosures initiated between December 1, 1998 and September 30, 2001, "reasonable and customary [foreclosure] attorneys' fees in New Jersey [were] capped at $1,000.00." (Complaint, para. 50.)   She admits that this "figure was increased to $1,300 effective October 1, 2001."[5]   (Complaint, para. 50.) Coleman alleges that "in the final judgment of foreclosure dated August 1, *2001* [Chase] requested a total fee of $1,004," which was higher than the $1,000 fee in the FHA schedule she contends applied.   (Complaint, para. 51.)   However, she also alleges that when she "reinstated the mortgage with Chase on or about January 17, 2006," her payment included reimbursement for "foreclosure fees of $900," which is less than the $1,000 fee in the FHA schedule she contends applied. (Complaint, para. 34).

Coleman has her dates mixed up.   She attaches as Exhibit A to her Complaint a copy of the foreclosure judgment date-stamped August 1, *2002*, and

---

[5] True and accurate copies of FHA mortgagee letters to which are attached the attorneys' fee schedules Coleman relies upon in her Complaint, effective for foreclosures initiated on or after December 1, 1998 and October 1, 2001, are attached to the Manning Decl. as Exhibits F and G, respectively.   Even though they are not attached to the Complaint, the Court may review these letters because they are "integral or explicitly relied upon in the Complaint." *Lum v. Bank of America*, 361 F.3d 217, 222 n.3 (3d Cir. 2004), *cert. denied*, 543 U.S. 918, 125 S. Ct. 271 (2004) (quoting *In re Burlington Coat Factory Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)).   For purposes of this motion, Chase does not address whether the attorney fee schedules limit the amount of attorneys' fees a mortgagee may have reimbursed by a borrower, or merely the amount of attorneys' fees the FHA will pay for specified legal services.

elsewhere in her Complaint she correctly alleges that the foreclosure judgment was entered on this date, not in August *2001*. (Complaint, Ex. A and para. 33). She also alleges that Chase "began foreclosure proceedings against [her] on or about October 26, 2001," and the foreclosure complaint is date-stamped October 12, 2001. (Complaint, para. 32; Manning Decl. Ex. D).

Coleman's claim based upon the FHA foreclosure fee schedule thus fails for two reasons. First, when Chase "requested a total fee of $1,004" in the final judgment of foreclosure, this amount was less than the $1,300 provided in the FHA fee schedule in effect for New Jersey foreclosure actions initiated after October 1, 2001. Chase's foreclosure against Coleman was initiated after October 1, 2001, so the $1,300 fee amount applied. Second, Coleman admits that she only reimbursed $900 in foreclosure fees when she reinstated her loan, which is less than the amount she alleges was provided in the FHA fee schedules in effect both before or during October 2001. Consequently, Coleman fails to state a claim based upon the FHA attorneys' fee schedules, and this defeats her conclusory allegation that this Court has subject matter jurisdiction over the Complaint.

Coleman's only asserted basis for jurisdiction is under 28 U.S.C. Section 1332(d)(2) of CAFA, which provides in relevant part that "district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action

in which ...  (A) Any member of a class of plaintiffs is a citizen of a State different from any defendant." Coleman alleges that Chase "is a Delaware Limited Liability Company with its principal place of business in New Jersey." (Complaint, para. 6). She alleges that she is a New Jersey "resident" but that her proposed national class "will not be composed of or limited to citizens from the State of Delaware or New Jersey," and includes individuals with "FHA home loans held or serviced by" Chase "who were charged attorneys' fees ... in excess of the amount allowed by FHA regulation." (Complaint, paras. 7 and 8).

CAFA has an exception to federal jurisdiction over "home state" controversies.  28 U.S.C. Sections 1332 (d)(3) and (4).  As this Court held in its May 11, 2009 Opinion,

> This "home state" exception . . . identifies certain class actions over which subject mater jurisdiction may not exist, despite satisfaction of §1332(d)(2).  The home state exception has both a mandatory and a discretionary facet. *Hirschbach v. NVE Bank*, 496 F. Supp. 2d 451, 459.  A district court must decline jurisdiction over a class action in which two-thirds or more of the members of all proposed plaintiff classes in the aggregate and the primary defendants are citizens of the state in which the action was originally filed.  28 U.S.C. § 1332(d)(4).

(Docket No. 24, page 7) (full citation added).

Coleman's alleged "national" class is solely based upon her claim that Chase "requested" reimbursement from her for foreclosure attorneys' fees in excess of those provided under the applicable FHA schedule. Coleman's purported national class is defined as borrowers with FHA loans serviced by Chase "who were

charged [foreclosure] attorneys fees [sic] . . . in excess of the amount . . . allowed by FHA regulation."[6] (Complaint, para. 15.)  Because Coleman's claim based upon the FHA attorneys' fee schedules fails, she cannot pursue such a claim on a class wide basis.[7]   The other proposed classes defined in the Complaint are "state" classes based upon alleged violations of New Jersey state law, and the proposed class members are New Jersey citizens, as is Chase. (Complaint, para. 14.)

Coleman has not alleged a "national" class claim and therefore cannot avoid the "home state" exception to federal jurisdiction under CAFA.  Coleman therefore fails to allege subject matter jurisdiction, and the Court should dismiss the Complaint under Rule 12(b)(1).

III.   ALL OF COLEMAN'S CLAIMS ARE BARRED BY THE ENTIRE CONTROVERSY DOCTRINE.

Even if the Court finds that Coleman has alleged subject matter jurisdiction, all her claims are barred by the entire controversy doctrine.  "Generally speaking, the entire controversy doctrine requires whenever possible all phases of a legal

---

[6] Coleman's national class definition also allegedly includes all borrowers "who were charged attorneys fees [sic] and/or other costs which were in excess of the amount actually incurred," but the Complaint contains no corresponding factual allegations identifying these purportedly unincurred fees or costs. (Complaint, para. 15.)

[7] A class plaintiff must plead his or her own claims to have standing, and cannot bootstrap the claims of absent class members. *Simon v. Eastern Kentucky Welfare Rights Org.*, 426 U.S. 26, 40 n.20, 96 S. Ct. 1917, 1925 n.20 (1976); *Warth v. Seldin*, 422 U.S. 490, 499, 95 S. Ct. 2197, 2205 (1975).

dispute to be adjudicated in one action." *Prevratil v. Mohr*, 145 N.J. 180, 187, 678 A.2d 243, 246 (N.J. 1996). "A federal court deciding whether a federal cause of action is barred by a prior state court action is bound to follow New Jersey's entire controversy doctrine, by virtue of the Full Faith and Credit Act. 28 U.S.C. § 1738 (1994)." *Sakhrani v. Washington Mut. Bank, F.A.*, Civ.A.No. 06-1760 (PGS), 2006 WL 2040256, at *3 (D.N.J. July 20, 2006) (holding that claim under Truth in Lending Act, 15 U.S.C. § 1601 should have brought as counterclaim in state court foreclosure action, and it was barred from being asserted in separate federal court proceeding by entire controversy doctrine). Because Coleman failed to raise the claims she seeks to assert in this case in the underlying state court foreclosure proceeding, they are now barred by this doctrine.

Coleman alleges that after she defaulted on her mortgage payments, Chase filed a foreclosure action against her in October 2001. (Complaint, para. 32.) Over four years later (and after she had filed three successive bankruptcy petitions[8] to delay the foreclosure), she reinstated her mortgage loan with Chase "on or about

---

[8] When Coleman reinstated her loan and paid the now disputed charges, she had been represented for almost four years by her attorney of record in this case, Lew Adler. Mr. Adler had filed all three bankruptcy petitions on her behalf in an effort to delay the foreclosure action. (See printouts of United States Bankruptcy Court for the District of New Jersey, docket numbers 02-10429, 02-19883 and 03-38329, attached to the Manning Decl. as Exhibit H.)

January 17, 2006,[9] by paying approximately $18,658.24." (Complaint, para. 34.)
On January 20, 2006, following her reinstatement payment, the foreclosure action
was "dismissed without prejudice," with the foreclosure court finding that the
foreclosure action "has been amicably settled between the parties." (See Manning
Decl., Exhibit E (January 20, 2006 Order Setting Aside Judgment and Execution[,]
Dismissing Foreclosure Proceeding and Reinstating Bond)).  All of the claims here
are based on the allegation that Coleman paid certain amounts in reinstating her
loan in excess of the amounts allowed "under the law" and the 2002 foreclosure
judgment.  (Complaint, para. 38.)  However, because all Coleman's claims are
transactionally related to the underlying foreclosure action (and emanate from it),
but were not asserted therein, the entire controversy doctrine precludes Coleman
from now pursuing these claims in this lawsuit.

In New Jersey jurisprudence, "no principle of law is more firmly established
than that a single or entire cause of action cannot be subdivided into several claims,
and separate actions maintained thereon." *Smith v. Red Top Taxicab Corp.*, 111
N.J.L. 439, 440-41, 168 A. 796, 796 (N.J. 1933).  This principle, known in New
Jersey as the entire controversy doctrine, is so embedded in the New Jersey legal
system that it is contained in the 1947 New Jersey Constitution:

---

[9] In fact, Coleman reinstated her mortgage several weeks earlier than this, but for
purposes of this motion to dismiss, her allegation must be taken as true.

14

> Subject to the rules of the Supreme Court, the Law Division and the Chancery Division shall each exercise the powers and functions of the other division when the ends of justice so require, and legal and equitable relief should be granted in any cause so that all matters in controversy between the parties may be completely determined.

N.J. CONST. art. VI, § 3, ¶4.  The entire controversy doctrine is now codified as

New Jersey Court Rule 4:30A, which provides as follows:

> Non-joinder of claims required to be joined by the entire controversy doctrine shall result in the preclusion of the omitted claims to the extent required by the entire controversy doctrine, except as otherwise provided by R. 4:64-5 (foreclosure actions) and R. 4:67-4(a) (leave required for counterclaims or cross-claims in summary actions).

N.J. Ct. R. 4:30A.

The entire controversy doctrine exists "to assure that all aspects of a legal dispute occur in a single lawsuit." *Olds v. Donnelly*, 150 N.J. 424, 431, 696 A.2d 633, 637 (N.J. 1997).  The purposes behind the doctrine are threefold:  "(1) the need for complete and final disposition through the avoidance of piecemeal decisions; (2) fairness to parties to the action and those with a material interest in the action; and (3) efficiency and the avoidance of waste and the reduction of delay." *DiTrolio v. Antiles*, 142 N.J. 253, 267, 662 A.2d 494, 502 (N.J. 1995). "[T]he entire controversy doctrine encompasses 'virtually all causes, claims and defenses relating to a controversy' between parties engaged in litigation." *Olds*, 150 N.J. at 433, 696 A.2d at 638 (quoting *Cogdell v. Hosp. Ctr.*, 116 N.J. 7, 16, 560 A.2d 1169, 1173 (N.J. 1989)).  "[I]f parties or persons will, after final judgment is entered, be likely to have to engage in additional litigation to

15

conclusively dispose of their respective bundles of rights and liabilities that derive from a single transaction or related series of transactions, the omitted components of the dispute or controversy must be regarded as constituting an element of one mandatory unit of litigation." *DiTrolio*, 142 N.J. at 268, 662 A.2d at 502.

In the foreclosure context, New Jersey Court Rule 4:64-5 limits joinder to only those counterclaims and cross-claims that are "germane" to the foreclosure proceeding. In applying the entire controversy doctrine to preclude counterclaims that should have been brought as part of foreclosure proceedings, the courts have held that "germane" means "the counterclaim must be for a claim arising out of the mortgage foreclosed." *Ryno, Inc. v. First Nat'l Bank of South Jersey*, 208 N.J. Super. 562, 570, 506 A.2d 762, 766 (N.J. Super. Ct. App. Div. 1986) (citing *Leisure Tech. v. Klingveil*, 137 N.J. Super. 353, 356, 349 A.2d 96, 98 (N.J. Super. App. Div. 1975)).

The matters "which courts have considered to be germane in foreclosure actions include payment and discharge, failure of consideration, incorrect computation of the amounts due, fraud, mistake, waste, credit for rental value of the mortgaged premises, usury, unjust enrichment, set-off, recoupment, non-compliance with regulatory pre-requisites to foreclosure, and abatement of mortgaged debt." *LaSalle Nat'l Bank v. Johnson*, 2006 WL 551563, at *2 (N.J.

16

Ch. March 3, 2006) (citing SCOTT T. TROSS, NEW JERSEY FORECLOSURE LAW AND

PRACTICE § I, 162-65 (New Jersey Law Journal Books 2001)).[10]

All of Coleman's claims involve the "computation of the amounts due" under

her mortgage to reinstate her loan.  Under the entire controversy doctrine, these are

precisely the type of claims that should have been asserted in the foreclosure

action.  The causes of action alleged in Coleman's complaint, including breach of

---

[10] See also *In re 865 Centennial Ave. Assoc. Ltd. P'ship.*, 200 B.R. 800, 813 (Bankr. D.N.J. 1996) (debtor's claim under the New Jersey Banking Act, N.J.S.A., 17:9A-330 was precluded under the entire controversy doctrine where debtor failed to raise it in prior foreclosure proceedings, because all claims related to the "negotiation, execution and performance of the credit agreement"); *Crispino v. Chem. Bank New Jersey (In re Crispino)*, 160 B.R. 749, 756 (Bankr. D.N.J. 1993) ("any claim the debtor might have made against Chemical Bank regarding the debt in question is barred by the application of the entire controversy doctrine to the default judgment obtained in the New Jersey Superior Court"); *Lewison Bros. v. Washington Sav. Bank (In re Lewison Bank)*, 162 B.R. 974 (Bankr. D.N.J. 1993) (entire controversy doctrine precluded relitigation in bankruptcy court of lender liability claims seeking avoidance of liens and disgorgement of funds where those claims were germane to prior foreclosure action); *VW Credit, Inc. v. Coast Auto. Group, Ltd.*, 2005 WL 3750752, at * 6-7 (N.J. Super. Ct. App. Div. Feb. 14, 2006) (borrowers lawsuit seeking a declaration invalidating note was barred by the entire controversy doctrine because it "would have been entirely germane" to a prior foreclosure action); *Sun NLF Ltd. P'ship v. Sasso*, 313 N.J. Super. 546, 551, 713 A.2d 538, 540 (N.J. Super. Ct. App. Div. 1998) (a lender's material breach of its obligations under a mortgage is a "germane" counterclaim); *Paszek v. Froehlich*, Civ. No. 08-455 (WJM), 2008 WL 3887610, at *3 (D.N.J. Aug. 18, 2008) ("Plaintiff is prohibited from raising additional grounds against foreclosure that could have been raised in defense of the foreclosure suit."); *Venner v. Bank of America*, Civil No. 07-4040 (JBS/JS), 2009 WL 1416043, at *3 (D.N.J. May 19, 2009) ("The Entire Controversy Doctrine bars Plaintiff's claim against BOA, because Plaintiff had the opportunity to raise her FDCPA claim in the [underlying foreclosure] action.").

the mortgage agreement, fraud and unjust enrichment, read like a laundry list of "germane" foreclosure counterclaims.

That the underlying foreclosure was dismissed without prejudice (and the foreclosure judgment vacated) upon a finding that a settlement occurred when Coleman made her reinstatement payment, does not permit Coleman to avoid the entire controversy doctrine. In *DiTrolio*, the New Jersey Supreme Court held that as long as there is a fair opportunity to present the additional claims or defenses, the entire controversy doctrine applies where the original action is dismissed without prejudice, or pursuant to settlement. 142 N.J. at 278-79, 662 A.2d at 507-08 (holding that the doctrine barred the plaintiff's claims "because the original case had been vigorously litigated for one year before it was dismissed without prejudice pursuant to a settlement," and there would be "an obvious waste of judicial resources if the second litigation would have been obviated or rendered unnecessary by mandatory joinder"); see also *Mystic Isle Dev. Corp. v. Perskie & Nehmad*, 142 N.J. 310, 332-33, 662 A.2d 523, 534 (N.J. 1995) (holding that a "dismissal without prejudice is immaterial" because "it is the party's original compliance with the [entire controversy] doctrine, rather than the absence of a conclusive determination of a claim, that ensures preservation of that claim.")[11]

---

[11] Coleman also cannot avoid the entire controversy doctrine on the basis that her alleged claims arose during the pendency of the foreclosure action, and not before it commenced. *Circle Chevrolet Co. v. Giordano, Halleran & Ciesla*, 142 N.J.

Here, Coleman had ample opportunity to raise her claims in the underlying foreclosure action which was pending for over four years, and repeatedly delayed by her counsel's litigation strategy of filing successive bankruptcy proceedings. She voluntarily made the reinstatement payment, which forms the basis of all her instant claims, during the foreclosure proceeding. If she wanted to contest the amounts due, she could have done so in the foreclosure action, either before the dismissal order was entered on January 20, 2006, or afterwards, under one of New Jersey's provisions for post-judgment relief or reinstatement. Because her claims arise directly *out of* the foreclosure proceeding, there can be no serious dispute that they are *germane* to the transaction encompassed by the foreclosure proceeding, and are barred in this litigation.

IV.    EACH COUNT ALSO FAILS TO STATE A CLAIM FOR RELIEF.

In addition to entire controversy doctrine, each count should also be dismissed for failure to state a claim upon which relief may be granted for the following reasons.

A.    The Count I Breach Of Contract Claim Fails Because Coleman Fails To Allege A Contract Provision That Was Breached.

To the extent Coleman's breach of contract claim is based upon her allegations relating to the FHA attorneys' fees schedules, it should be dismissed

---

280, 289, 662 A.2d 509, 513 (N.J. 1995), *abrogated on other grounds, Olds v. Donnelly*, 150 N.J. 424, 696 A.2d 633 (N.J. 1997).

under Rule 12(b)(6) for the reasons stated above in Section II of this brief.  Apart from those allegations, Coleman merely alleges that Chase (1) services notes and mortgages, (2) "imposed or collected amounts that are not due . . . by contract or applicable law including interest, default related fees, costs, attorneys fees [sic] and other charges," and (3) has "breached its contracts with plaintiff and members of the class." (Complaint, paras. 45, 46, 54 and 55.) The complaint is entirely devoid of any allegations specifically relating to Coleman's mortgage or how Chase's alleged conduct breached Coleman's mortgage.

The Court should dismiss the breach of contract claims because Coleman fails to allege what contract provisions she contends Chase breached, and fails to provide Chase with any other facts that would put it on notice of her contract claim, such as the actual charges she paid which she contends breached these unspecified provisions. See e.g., *Highlands Ins. Co. v. PRG Brokerage, Inc.*, No. 01 Civ. 2272 (GBD), 2004 WL 35439, at *8 (S.D.N.Y. Jan. 6, 2004) (citations and internal quotations omitted) (a "breach of contract claim will be dismissed . . . as being too vague and indefinite, where the plaintiff fails to allege, in nonconclusory fashion, the essential terms of the parties' purported contract, including the specific provisions of the contract upon which liability is predicated").

The terms of her mortgage agreement actually *contradict* Coleman's conclusory breach of contract claim.  With respect to her conclusory assertion that

Chase breached "contracts with plaintiff and members of the Class" by charging "interest," section 5 of Coleman's Adjustable Rate Note expressly requires Coleman to pay interest. (See Manning Decl., Exhibit C.)

Likewise, Coleman's conclusory allegation that Chase breached "contracts" by collecting "default related fees, costs, attorneys fees [sic] and other charges" is contradicted by the terms of Coleman's mortgage instrument, which provides as follows:

> Reinstatement. Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, *foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding.*

(Emphasis added) (see Manning Decl, Exhibit B, para. 10.) Paragraph 18 of the mortgage also provides as follows:

> Foreclosure Procedure. If Lender requires immediate payment in full under paragraph 9 [providing grounds for acceleration of debt where the borrower defaults], Lender may foreclose this Security Instrument by judicial proceeding. *Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, attorney's fees and costs of title evidence.*

(Emphasis added) (*Id.*, para. 18.) Coleman's mortgage contract expressly authorized Chase to obtain reimbursement for both "attorneys' fees" and

"expenses" incurred in connection with the foreclosure preceding it instituted when Coleman defaulted on her mortgage obligations.  Accordingly, the Count I breach of contract claim should be dismissed.

B.    The Count II Intentional Misrepresentation Claim Should Be Dismissed Because The Allegations Of The Complaint Preclude The Element Of Reasonable Reliance, And Because It Fails To Meet The Particularity Requirements Of Fed. R. Civ. P. 9(b).

Coleman's intentional misrepresentation[12] claim fails because she alleges facts that preclude her from establishing the essential element of reasonable reliance.  To state a claim for intentional misrepresentation in New Jersey, a plaintiff must allege (1) a material misrepresentation of fact; (2) defendant's knowledge of its falsity; (3) an intention that the plaintiff rely on the misrepresentation; (4) reasonable reliance on the misrepresentation by the plaintiff; and (5) resulting damages.  *Genarri v. Weichert Co. Realtors*, 148 N.J. 582, 610, 691 A.2d 350, 367 (N.J. 1997).

Although Coleman never specifies the improper charges allegedly misrepresented to her, or provides a basis for why they were improper, the essential contours of her intentional misrepresentation claim are as follows.  In August 2002, a foreclosure judgment was entered which "allowed a total of $1,600.52 in taxed costs inclusive of attorneys' fees and costs of suit." (Complaint,

---

[12] A claim for "intentional misrepresentation" is construed as one for fraud.  *Jewish Ctr. of Sussex County v. Whale*, 86 N.J. 619, 624, 432 A.2d 521, 524 (N.J. 1981).

paras. 33, 36 and 60.)  In November 2005, she received payoff and reinstatement
quotes in which "Chase demanded $6,691.73 in taxed costs inclusive of attorneys'
fees and costs of suit." (Complaint, paras. 34, 37 and 58.) She paid this amount to
reinstate her mortgage, and as a result, she "suffered damages of at least
$5,091.21" – the difference between the amounts of alleged taxed costs in the
foreclosure judgment and the reinstatement or payoff quote. (Complaint, paras. 37
and 64.) Thus, her fraud theory is that the quote misrepresented the total amount
of foreclosure related charges she was required to pay to reinstate her loan, which
(under her theory) was limited to the amount stated in the foreclosure judgment.

Assuming, for purposes of this motion only, that a quote contained a
misrepresentation as to the amount of "taxed costs" that Coleman should have paid
to reinstate her loan, she could not have reasonably relied upon this quote given
existence of the alleged foreclosure judgment. Either Coleman was actually aware
of the foreclosure judgment or she should have been aware of it because it was
entered in the foreclosure action to which she was a party. According to her own
allegations, it was this very foreclosure judgment that established the taxed costs
she should have paid. Because Coleman's own pleading establishes that she was or
should have been aware of the amount she was required to pay to reinstate her loan
based on the foreclosure judgment (at least under her theory of what this amount
was), she could not have reasonably relied on a quote from Chase stating a

different amount.    Consequently, the Court should dismiss the intentional misrepresentation claim as a matter of law.

Coleman's intentional misrepresentation claim also fails to meet the heightened requirements for pleading fraud.   Rule 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."   Fed. R. Civ. P. 9(b).   Rule 9(b) requires a plaintiff to plead with particularity "the circumstances of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard against spurious charges of immoral and fraudulent behavior." *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984).

Coleman alleges that Chase's intentional misrepresentations were contained in the November 2005 payoff and reinstatement quotes in which "Chase has represented to the Plaintiff that Chase is entitled to collect *various loan charges* that were not legally due and owing as Chase demanded $6,691.73 in taxed costs inclusive of attorneys' fees and cost of suit."   (Emphasis added) (Complaint, paras. 34, 35, 49 and 58.)   She further alleges that "[t]he representations of Chase concerning the right to collect *such fees and charges* were false[.]"   (Emphasis added) (Complaint, para. 59.)

24

Coleman fails to meet the particularity requirements of Rule 9(b) because she does not identify the particular "fees and charges" that were allegedly improperly charged her. Instead, she merely alleges that because "the judgment in the foreclosure allowed a total of $1,600.52 in taxed costs inclusive of attorney's fees and costs of suit," and "Chase demanded $6,691.73 in taxed costs," she "suffered damages of at least $5,091.21." (Complaint, paras. 58, 60 and 64.) Surely, Coleman is not contending that Chase misrepresented its entitlement to recover *all* of the fees or costs that Coleman paid Chase when she reinstated her loan, but there is no way to discern what charges she is complaining about based upon the allegations of the complaint. Not only does she fail to allege the identity of "*various loan charges* that were not legally due and owing" (Complaint, para. 58), but she also fails to allege why Chase's representations "concerning the right to collect *such fees and charges* were false," with respect to each of the unidentified charges. (Complaint, para. 59.) See *Boyle v. D'Onofrio*, 99 F. Supp. 2d 541, 549 (D.N.J. 2000) (conclusory allegation that documents contained false and misleading information failed to plead fraud with particularity under Rule 9(b) because the allegation did not explain how or why the documents were fraudulent); *Pell v. Weinstein*, 759 F. Supp. 1107, 1118-19 (M.D. Pa. 1991) (plaintiffs failed to satisfy Rule 9(b) where they did not identify the errors in financial statements or

the amounts of any inaccuracies and failed to identify any specific accounting or auditing standard which was violated), *aff'd.*, 961 F.2d 1568 (3d Cir. 1992).

Because Coleman's own allegations preclude her from establishing the reasonable reliance element, and also because she fails to comply with Rule 9(b) by alleging with particularity the misrepresentations contained in the reinstatement or payoff quotes, or alleging why they were misrepresentations, the Court should dismiss her Count II intentional misrepresentation.

C.   The Count III Negligence Claim Fails Because Chase Owed Coleman No Extra-Contractual Duty Of Care And It Is Barred By The Economic Loss Doctrine.

Coleman makes the conclusory allegation that Chase owed her "a duty of care with respect to servicing" her mortgage loan, which Chase then breached. (Complaint, paras. 67 and 68).  Coleman's negligence claim fails as a matter of law because a lender generally does not owe an extra-contractual duty to a borrower, and Coleman alleges no facts that would give rise to such an extra-contractual duty in the present case. *United Jersey Bank v. Kensey*, 306 N.J. Super. 540, 553, 704 A.2d 38, 45 (N.J. Super. Ct. App. Div. 1997) ("[t]here is . . . a general presumption that the 'relationship between lenders and borrowers is conducted at arms-length, and the parties are each acting in their own interest'" (quoting *Temp-Way Corp. v. Continental Bank*, 139 B.R. 299, 318 (Bankr. E.D. Pa. 1992))).  Further, by failing to specify how Chase breached this "duty of care with respect to servicing" her

loan, Coleman's claim fails to comply with Fed. R. Civ. P. 8(a)(2), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Accordingly, the Court should dismiss Coleman's Count III claim for negligence.

In addition, Coleman's negligence claim is barred by the economic loss doctrine. The economic loss doctrine "bars a plaintiff from recovering purely economic losses suffered as a result of a defendant's negligent or otherwise tortious behavior, absent proof that the defendant's conduct caused actual physical harm to a plaintiff or his property." *Public Service Enter. Group, Inc. v. Philadelphia Elec. Co.*, 722 F. Supp. 184, 193 (D.N.J. 1989). Where a "Plaintiff's allegations are essentially contractual in nature," she is barred from bringing a tort claim. *Bubbles N' Bows, LLC v. Fey Publishing Co.*, Civ.A.No. 06-5391, 2007 WL 2406980, at *10 (D.N.J. Aug. 20, 2007). Here, Coleman alleges no physical harm to her person or property, her negligence claim is essentially identical to her breach of contract claim, and it is based upon exactly the same alleged misconduct by Chase. The breach of contract claim is based on the conclusory allegations that Chase "breached its contracts with plaintiff and members of the class" in "service[ing] loans," while her negligence claim is based on the conclusory allegation that Chase breached "a duty of care with respect to servicing the[] mortgage loans" of "plaintiff and other Class members." (Complaint, paras. 45, 55, 67 and 68.)

Consequently, the Court should dismiss Coleman's negligence claim as barred by the economic loss doctrine.

> D.     The Count IV Claim For Breach Of The Duty Of Good Faith And Fair Dealing Fails Because Her Mortgage Expressly Authorized The Complained Of Conduct, And She Does Not Allege That Chase Deprived Her Of The Loan Proceeds.

Coleman alleges that "New Jersey recognizes a duty of good faith and fair dealing with respect to conduct encompassed by contractual relations," and "Chase's conduct as aforesaid breached said duty." (Complaint, paras. 72 and 73.) This claim fails because, as described more fully above in section (III)(A) of this brief, her mortgage agreement expressly authorized Chase to receive the charges she complains about – interest payments and attorneys' fees and charges incurred in the foreclosure action against her.  "[T]he implied duty of good faith and fair dealing does not operate to alter the clear terms of an agreement and may not be invoked to preclude a party from exercising its express rights under such an agreement." *Fleming Cos., Inc. v. Thriftway Medford Lakes, Inc.*, 913 F. Supp. 837, 846 (D.N.J. 1995) (citing *Glenfed Fin. Corp. v. Penick Corp.*, 276 N.J. Super. 163, 175, 647 A.2d 852, 857-58 (N.J. Super. Ct. App. Div. 1994)); see also *Woods Corporate Assoc. v. Signet Star Holdings, Inc.*, 910 F. Supp 1019, 1034 (D.N.J. 1995) (lender did not breach duty of good faith and fair dealing where it "did nothing more than exercise its contractual rights to protect its interest in the security.").

28

Coleman's claim also fails because she does not (and cannot) allege that Chase's conduct in any way interfered with her "enjoying the fruits of the contract, namely . . . the loan," as is required to state a claim for breach of the duty of good faith and fair dealing under New Jersey law. *Margulies v. Chase Manhattan Mortgage Corp.*, 2005 WL 2923580, at *6 (N.J. Super. Ct. App. Div. Nov. 7, 2005) (holding that Chase could not have breached the duty of good faith and fair dealing because even if the plaintiff/borrower alleged wrongful conduct by Chase, he received the "fruits of the contract, namely the $177,500 loan.") Consequently, Coleman's claim for breach of the duty of good faith and fair dealing fails as a matter of law.

E.    The Count V Unjust Enrichment Claim Fails Because Coleman Has Alleged An Express Contract With Chase.

New Jersey law does not permit an unjust enrichment claim where there is an express agreement between the parties regarding the subject matter of the unjust enrichment claim. *Baer v. Chase*, 392 F.3d 609, 617 (3d Cir. 2004) ("New Jersey law . . . recognizes the mutual exclusivity of express and implied contracts"); *Moser v. Milner Hotels, Inc.*, 6 N.J. 278, 280, 78 A.2d 393, 394 (N.J. 1951) ("Having pleaded an express contract, the plaintiff cannot. . . recover on quasi-contract. It is a well settled rule that an express contract excludes an implied one. An implied contract cannot exist when there is an existing express contract about the identical subject") (quotations and citations omitted).

Coleman alleges she held a contract with Chase by virtue of the mortgage and note she signed in October 1997, which were later assigned to Chase. (Complaint, paras. 29 and 31). She also alleges that Chase was unjustly enriched because it "collected monies that are not due and owing *under applicable contract law, because the contract* or other applicable law does not permit Chase to collect such fees and charges." (Emphasis added) (Complaint para. 77.) Because the parties' mortgage agreement is a contract that establishes the charges that are the subject of her unjust enrichment claim, it precludes her unjust enrichment claim, and the Court should dismiss it.

F.    The New Jersey Consumer Fraud Act Claims Fail To Comply With The Requirements Of Rule 9(b).

In Counts VI and X, Coleman purports to assert claims under the New Jersey Consumer Fraud Act ("NJCFA"), N.J.S.A. 56:8-2. "The pleading requirements of Rule 9(b) apply to . . . NJCFA claims as well as . . . common law fraud claims." *Slim CD, Inc. v. Heartland Payment Sys.*, No. 06-2256, 2007 WL 2459349, at * 11 (D.N.J. Aug. 24, 2007) (citing *F.D.I.C. v. Bathgate*, 27 F.3d 850, 876 (3d Cir. 1994)). Coleman's NJCFA claims contain no factual allegations in addition to the insufficient allegations contained in her Count II common law fraud

claim, and therefore likewise fail to meet the particularity requirements of Rule 9(b).[13]

      G.     The Claims For Violation Of The Fair Foreclosure Act, New Jersey State Court Rules And New Jersey Statutes Relating To Taxed Costs Fail Because None Provide A Private Right Of Action.

Count VII is brought under the Fair Foreclosure Act ("FFA"), N.J.S.A. 2A:50-57(b)(3), Count VIII is brought under New Jersey Court Rules 4:42-9(a)(4) and 4:42-10(a), and Count IX is brought under the following New Jersey procedural statutes: N.J.S.A. 22A:2-8, 22A:2-10 and 2A:15-13. There is no private right of action under any of these provisions.[14]

---

[13] Her Count VI claim is captioned "unfair and deceptive assessment and collection of fees." For this Count she makes the conclusory allegation that Chase's "acts or practices constitute unfair and deceptive acts or practices in or affecting commerce in violation of Section 5(a) of the Federal Trade Commission Act, 15 U.S.C. § 45(a) which constitutes a violation of the [NJCFA] and are therefore actionable by the Plaintiff." (Complaint, para. 87.) However, only the Federal Trade Commission, not private parties such as Coleman, may enforce provisions under the Federal Trade Commission Act. *United States v. Philip Morris, Inc.*, 263 F. Supp. 2d 72, 78 (D.D.C. 2003) ("the FTA Act is enforced exclusively by the FTC; there is no private right of action under the statute").

[14] In each of these Counts, Coleman alleges that "the Defendants' acts or practices in violation of [the cited provision(s)] are either directly actionable under the [cited provision(s)] or constitute unconscionable business practices in violation of the New Jersey Consumer Fraud Act." (Complaint, paras. 96, 105 and 111.) However, to the extent that Coleman's claims are brought pursuant to the NJCFA, they contain no additional factual allegations and should be dismissed for the same reasons as her Count VI and X NJCFA claims discussed above in Section III(F) of this brief.

None of the cited provisions contains any express grant of a private right of action, and there is no basis for implying one. In *Whittingham v. Amended Mortg. Elec. Registration Serv., Inc.*, No. 06-3016 (RBK), 2007 WL 1456196, at *6 (D.N.J. May 15, 2007), this Court specifically held there is no private right of action under the FFA or New Jersey Court Rules 4:42-9(a)(4) and 4:42-10(a), and granted the defendants' motion to dismiss claims brought under those provisions. There is no reason for the Court to hold differently in this case.

Where the legislature has not expressly provided for a private right of action, Courts are reluctant to infer one. *R.J. Gaydos Ins. Agency, Inc. v. Nat'l. Consumer Ins. Co.*, 168 N.J. 255, 271, 773 A.2d 1132, 1142 (N.J. 2001). "To determine if a statute confers an implied private right of action, courts consider whether: (1) plaintiff is a member of the class for whose special benefit the statute was enacted; (2) there is any evidence that the Legislature intended to create a private right of action under the statute; and (3) it is consistent with the underlying purposes of the legislative scheme to infer the existence of such a remedy." *Id.* at 272, 773 A.2d at 1143. The "primary goal has almost invariably been a search for the underlying legislative intent." *Id.* at 272-73, 773 A.2d at 1143 (internal citation and quotation omitted).

The FFA gives residential mortgagors a statutory right to cure defaults to further the public policy of allowing homeowners to pay their mortgages and keep

their homes.  To that end, the FFA requires mortgagees to notify mortgagors of such right before acceleration and commencement of a foreclosure action, and before entry of final judgment of foreclosure or an order for redemption.  N.J.S.A. 2A:50-57.  While Coleman may be a member of the class for whose benefit the Legislature enacted the FFA, there is no evidence the Legislature intended to create a private right of action under it.  Further, inferring a private right of action for FFA violations would be inconsistent with the underlying purpose of the legislative scheme.

As expressed in the body of the statute, the FFA was enacted to give residential mortgagors a statutory right to cure default, up until the entry of a final judgment.  N.J.S.A. 2A:50-54.  Its purpose, then, is not to create a new legal theory for homeowners to assert claims lenders after completion of the foreclosure process.  Likewise, there is no hint that the Legislature enacted the FFA to provide an additional remedy (i.e., a private right of action) if a homeowner pays more to reinstate a mortgage, especially after a final judgment is entered.  See *Glynn v. Park Tower Apartments, Inc.*, 213 N.J. Super. 357, 362, 517 A.2d 475, 478 (N.J. Super. Ct. App. Div. 1996) (when determining legislative intent where a statute expressly provides a particular remedy or remedies, courts should be cautious to read others into it).

Likewise, there is no implied right of action under New Jersey Court Rules 4:42-9(a)(4) or 4:42-10(a). These rules address the amount of "counsel fees" and "search fees" the court may tax in foreclosure actions. They are merely procedural. Clearly a court rule does not involve an expression of legislative intent because court rules are not even a product of the Legislature.

Finally, there is no implied private right of action under N.J.S.A. 22A:2-8, 22A:2-10 or 2A:15-13. These provisions are also procedural in nature and set forth various costs that may be taxed by the New Jersey Superior Court. Nothing in these statutes evidences a legislative intent to create a private right of action. Moreover, Coleman is not even in the class for whose special benefit these provisions were enacted because they provide for the Court to tax costs under certain circumstances in favor of the party incurring those costs. All the costs Coleman vaguely complains about were incurred by Chase, not Coleman.

Accordingly, the Court should dismiss Counts VII, VIII and IX for failure to state a claim upon which relief may be granted.

H.   The Count XI "Forfeiture Of Interest" Claim Fails Because She Does Not Allege That Chase Charged Interest Above The Permitted Rate.

Coleman's claim for "Forfeiture of Interest" under New Jersey's usury statute, N.J.S.A. § 31:1-3, should be dismissed because she has not alleged that Chase charged an interest rate above that permitted under New Jersey's usury statute. Coleman alleges only that Chase charged "illegal and/or excessive

34

interest" on her loan by "collecting the contract rate after entry of the final judgment of foreclosure which requires the collection of the judgment interest rate." (Complaint, para. 121.) But New Jersey's usury statute does not prohibit charging the "contract" interest rate instead of the "judgment" interest rate. Rather, New Jersey's usury statute and the applicable regulations prohibit only the charging of an interest rate above the maximum rate allowed. See N.J.S.A. § 31:1-1(b) (granting Commissioner of Banking the authority to set the maximum interest rate for loans secured by a first lien on real property); N.J. ADMIN. CODE § 3:1-1.1(b) (setting the maximum interest rate for loans secured by a first lien on real property at "at least six percent per annum but not more than the Monthly Index of Long Term United States Government Bond Yields, compiled by the Board of Governors of the Federal Reserve System and as published by said Board of Governors in the monthly Federal Reserve Bulletin, for the second preceding calendar month plus an additional 3.5 percent per annum rounded off to the nearest quarter of one percent per annum"). Absent allegations of some fact suggestive of the proscribed conduct – charging an interest rate above the maximum amount permitted – Coleman's claim should be dismissed. See *Phillips*, 515 F.3d at 232 (3d Cir. 2008) (To withstand a motion to dismiss, "'a complaint must allege facts suggestive of [the proscribed] conduct.'") (quoting *Twombly*, 550 U.S. at 588 n.8, 127 S. Ct at 1969 n.8). As Coleman does not allege that Chase ever collected an

interest rate above the rate permitted under New Jersey's usury statute, the Court should dismiss her claim.[15]

Coleman's claim also should be dismissed because section 31:1-3, the section she relies upon, does not create an independent cause of action. *See* N.J.S.A. § 31:1-3. Rather, a borrower can only assert this section in defense of an action to enforce a mortgage, note, or contract. N.J.S.A. § 31:1-3 (Section 31:1-3 governs only "all actions to enforce any note, bill, bond, mortgage, contract, covenant, conveyance, or assurance, for the payment or delivery of any money, wares, merchandise, goods, or chattels lent...").[16]

I.     The Count XII New Jersey Truth-In-Consumer Contract Act Claim Should Be Dismissed Because Coleman Has Not Alleged That Any Contract Or Notice From Chase Contained Provisions Violating Her Clearly Established Legal Rights.

New Jersey's Truth-In-Consumer Contract, Warranty and Notice Act, N.J.S.A. §§ 56:12-14 to -18 (the "Act"), protects consumers by requiring that consumer contracts be clearly written and understandable. *Barrows v. Chase*

---

[15] Even if Coleman could state a claim under the act by alleging that Chase charged the contract rate rather than the judgment interest rate, the Court still should dismiss her claim because the judgment that she relies upon was vacated.

[16] While it is true that N.J.S.A. § 31:1-4 permits a borrower to commence an action in New Jersey Superior Court attacking the interest rate charged on a loan, that section does not save Coleman's claims. A borrower's claim under this section fails where the rate of interest charged is not prohibited by New Jersey law. *See Resolution Trust Corp. v. Minassian*, 777 F. Supp. 385, 389-90 (D.N.J. 1991). As explained above, Coleman does not allege that Chase charged an interest rate above that permitted under the statute.

*Manhattan Mortg. Corp.*, 465 F. Supp. 2d 347, 361 (D.N.J. 2006).  Section 15 the Act provides that no "seller, lessor, creditor, lender or bailee" may offer to any consumer or prospective consumer "any written consumer contract or give or display any written consumer warranty, notice or sign" that "includes any provision that violates any clearly established legal right of a consumer or responsibility of a seller, lessor, creditor, lender or bailee as established by State or Federal law."  See N.J.S.A. 56:12-15.  Here, Coleman alleges that the reinstatement and payoff quotes she received included illegal and/or excessive charges and are therefore in violation of the Act.  (Complaint, paras. 34-39, 125-26.)

The Court should dismiss Coleman's claim because reinstatement and payoff quotes are not documents constituting a "written consumer contract," "written consumer warranty," "notice," or "sign" under the Act.  See N.J.S.A. § 56:12-1 (defining a "consumer contract" under the Act).  The quotes do not purport to be a written agreement between Coleman and anyone else, and, under the ordinary meaning of the remaining terms, the quotes are not "warranties," "notices," or "signs."  *Barrows*, 465 F. Supp. 2d at 362 n.12 (noting that "notice" is not defined under the Act and there is no case law addressing the issue).  Rather, the quotes are offers of amounts sufficient to either reinstate or pay off her loan, and not a notice of Coleman's rights or liabilities.

Finally, the Court should dismiss Coleman's claim under the Act because, even if the quotes are written contracts or notices attributable to Chase, those quotes contain no provision violating any clearly established legal right of Coleman.   Coleman's claim is premised on the assumption that the quotes attempted to impose upon her illegal or excessive charges.  As explained above, however, Coleman has cited no federal or state law giving her a clearly established right to pay costs at a certain amount.  Coleman relies almost exclusively on procedural statutes that do not create on rights on her behalf.  And to the extent that Coleman actually does cite statutes that grant her certain rights – e.g., New Jersey's Consumer Fraud Act or usury statute – Coleman has failed to allege that Chase or anyone else violated those statutes.

For these reasons, the Court should dismiss Coleman's claim under the Truth-In-Consumer Contract, Warranty and Notice Act.

## CONCLUSION

For the foregoing reasons, Chase Home Finance LLC respectfully requests this Court grant its motion under Rule 12(b)(1) and dismiss Coleman's Complaint for lack of subject matter jurisdiction.   In the alternative, if the Court finds that Coleman has alleged subject under jurisdiction, Chase respectfully requests this Court dismiss Coleman's complaint under Rule 12(b)(6), in its entirety and with prejudice.

Respectfully submitted,


/s/ Francis X. Manning
Francis X. Manning
Andrew K. Stutzman
STRADLEY, RONON,
STEVENS & YOUNG, LLP
A Pennsylvania Limited Liability
Partnership
Woodland Falls Corporate Park
200 Lake Drive East, Suite 100
Cherry Hill, NJ 08002
(856) 321-2400
fmanning@stradley.com
astrutzman@stradley.com

39

<u>Of Counsel</u>
LeAnn Pedersen Pope (*pro hac*
pending)
Stephen R. Meinertzhagen (*pro hac*
pending)
BURKE, WARREN, MACKAY &
SERRITELLA, P.C.
330 North Wabash Avenue, 22nd
Floor
Chicago, IL 60611
(312) 840-7000
lpope@burkelaw.com
smeinertzhagen@burkelaw.com

09135\00292\511493.1

40