STRADLEY, RONON, STEVENS & YOUNG, LLP
A Pennsylvania Limited Liability Partnership
By: Francis X. Manning
Woodland Falls Corporate Park
200 Lake Drive East, Suite 100
Cherry Hill, NJ 08002
(856) 321-2400
Attorneys for Defendant
Chase Home Finance LLC

UNITED STATES COURT DISTRICT
FOR THE DISTRICT OF NEW JERSEY
(CAMDEN VICINAGE)

| | | |
|---|---|---|
| STACEY COLEMAN, fka Stacey Kovilaritch:  individually and as a class representative on behalf of others similarly situated, | : : : : | No.  1:08-cv-02215-NLH-JS |
| Plaintiff, | : : : | DECLARATION OF FRANCIS X. MANNING |
| vs. | : : : | |
| CHASE HOME FINANCE, LLC, successor-by-merger to CHASE MANHATTAN MORTGAGE CORP. and John Doe 1-100 and John Doe Servicers 1-1-100, | : : : : : : | |
| Defendant. | : : : | FILED ELECTRONICALLY |
| | : | |

I, Francis X. Manning, pursuant to 28 U.S.C. § 1746, declare and state:

1.      I am a partner in the law firm Stradley Ronon Stevens & Young, LLP.

The firm is counsel to defendant Chase Home Finance LLC, in this matter.

2.    I submit this declaration in support of Defendant's Rule 12(b)(1) and (6) Motion to Dismiss Plaintiff's First Amended Complaint.

3.    Attached hereto as Exhibit A is a true and correct copy of the Order as to Plaintiff's Motion for Class Certification in *Veronica A. Polen v. Chase Manhattan Mortgage Corp.*, Superior Court of New Jersey, Gloucester County, Law Division-Civil Part, Docket No.  L-306-04.

4.    Attached hereto as Exhibit B is a true and correct copy of the October 28, 1997 Mortgage of Stacy Kovilaritch (Mortgagor) for property located at 169 Columbia Avenue, Thorofare, Gloucester County, New Jersey.

5.    Attached hereto as Exhibit C is a true and correct copy of the October 28, 1997 Adjustable Rate Note between Stacy Kovilaritch and Chase Manhattan Mortgage Corp.

6.    Attached hereto as Exhibit D is a true and correct copy of the Civil Action Foreclosure Complaint in *Chase Manhattan Mortgage Corp. v. Stacey A. Kovilaritch et al.*, Superior Court of New Jersey, Gloucester County, Chancery Division, Docket No. F-18980-01.

7.    Attached hereto as Exhibit E is a true and correct copy of the January 20, 2006 Order Setting Aside Judgment and Execution Dismissing Foreclosure Proceeding and Reinstating Bond and Mortgage in *Chase Manhattan Mortgage*

2

*Corp. v. Stacey A. Kovilaritch et al.*, Superior Court of New Jersey, Gloucester County, Chancery Division, Docket No. F-18980-01.

8.     Attached hereto as Exhibit F is a true and correct copy of a September 22, 1998 letter from the U.S. Department of Housing and Urban Development to All Approved Mortgagees (Mortgagee Letter 98-26) regarding Single Family Default and Foreclosure Servicing Policy and Procedural Changes Including HUD Schedule of Allowable Attorney Fees.

9.     Attached hereto as Exhibit G is a true and correct copy of an August 24, 2001 letter from the U.S. Department of Housing and Urban Development to All Approved Mortgagees (Mortgagee Letter 2001-19) regarding Single Family Foreclosure Policy and Procedural Changes.

10.     Attached hereto as Exhibit H is a true and correct copy of Docket Reports in the matters of *In re Michael Coleman and Stacey Coleman a/k/a Stacey Kovilaritch*, U.S. Bankruptcy Court, District of New Jersey (Camden), Bankruptcy Petition No. 02-10429-GMB; *In re Michael Coleman and Stacey Coleman a/k/a Stacey Kovilaritch*, U.S. Bankruptcy Court, District of New Jersey (Camden), Bankruptcy Petition No. 02-19883-JHW; and *In re Michael Coleman and Stacey Coleman a/k/a Stacey Kovilaritch*, U.S. Bankruptcy Court, District of New Jersey (Camden), Bankruptcy Petition No. 03-38329-GMB.

I declare under penalty of perjury that the foregoing is true and correct.


Executed on July 7, 2009.


/s/ Francis X. Manning
Francis X. Manning

4

# 964686  v. 1

# EXHIBIT A

| | | |
|---|---|---|
| VERONICA A. POLEN, | : | SUPERIOR COURT OF NEW JERSEY |
| | : | LAW DIVISION – CIVIL PART |
| PLAINTIFF, | : | GLOUCESTER COUNTY |
| | : | |
| | : | DOCKET NO: L-306-04 |
| vs. | : | |
| | : | **ORDER as to Plaintiff's Motion** |
| | : | **for Class Certification** |
| CHASE MANHATTAN | : | |
| MORTGAGE CORPORATION, | : | |
| | : | |
| DEFENDANT. | : | |

FILED
BY JUDGE SUPERIOR COURT OF NJ
APR 1 7 2007
JEAN B. McMASTER, J.S.C.

## RELIEF REQUESTED

Plaintiff represented by Roger Mattson, Esq., Lewis G. Adler, Esq. and Louis D Fletcher, Esq., moves for an Order granting Class Certification and Appointment of Counsel.

Defendant, represented locally by Jay Blumberg, Esq., and principally by Leann Pedersen Pope, Esq., admitted Pro Hac Vice, opposes this motion.

## SUMMARY OF FACTS & ARGUMENTS

### Summary of Facts

1. Plaintiff had owned real property located at 649 Fox Run Road, Woodbury, New Jersey since 1985.
2. On December 11, 1998, Plaintiff obtained a $50,000 loan from New America Financial, Inc., secured by the aforementioned property, and she executed a Note and a Mortgage on that loan.
3. Sections of the 1998 mortgage required Plaintiff to reimburse reasonable attorney's fees and costs incurred in protecting the mortgagee's interests in foreclosure and bankruptcy proceedings.
4. In April of 1999, New America assigned Plaintiff's loan to Defendant at which time Advanta Mortgage Corporation began servicing the loan.
5. Plaintiff failed to make loan payments. On June 11, 1999, Advanta filed a foreclosure complaint and named the Plaintiff as Defendant.
6. Plaintiff reinstated her mortgage on December 3, 1999 when she made a reinstatement payment to Advanta. The reinstatement payments included reimbursement for attorneys' fees and costs that were billed to Advanta.

Plaintiff alleges these fees and costs were in excess of what is permitted under the law.

7       Following the reinstatement, Plaintiff failed to resume her monthly loan payments.

8.      Consequently, on April 5, 2000, Advanta filed a second foreclosure complaint.  A foreclosure judgment was subsequently entered against Plaintiff.

9.      Plaintiff filed two bankruptcy proceedings and postponed a sheriff's sale twice before voluntarily dismissing her last bankruptcy proceeding in December of 2001.

10.     In February of 2001, Defendant purchased the servicing rights to Plaintiff's mortgage from Advanta.

11.     A sheriff's sale was scheduled for April 17, 2002.  Prior to that date, Plaintiff requested that the Defendant postpone the sale so that Plaintiff could sell the property herself and pay off her loan.  In exchange, Plaintiff agreed to pay Defendant $10,000.  Plaintiff's payment included reimbursement for attorneys' fees and costs.

12.     On May 9, 2002, Plaintiff again arranged with Defendant to postpone the sale, this time in exchange for $6,767.  The fee again included reimbursement for attorneys' fees and costs.

13.     On May 17, 2002, Plaintiff paid off her mortgage by paying $68,855.00 to Defendant.  This sum did not include reimbursement for attorneys' fees and costs.

14.     Plaintiff claims that her payments of attorneys' fees and costs to Defendant exceeded the amounts permitted by law, specifically R. 4:42-9(a)(4) and R.4:42-10(a)

**Plaintiff's Argument in Favor of Class Certification & Appointment of Counsel**

Plaintiff argues that the Court should approve the request for class certification because it satisfies the requirements of New Jersey Court Rule 4:32 and the general rule that class certification should be liberally granted unless there is a clear showing of inappropriateness.  Plaintiff argues that this burden is placed on the defendant.  Plaintiff contends that she has satisfied each of the four required elements as required by R. 4:32-1(a), namely numerosity, commonality, typicality and adequacy.

Plaintiff is seeking a putative class defined as all New Jersey mortgagors who entered into Mortgage agreements that are held by Chase or serviced by Chase or serviced by others on behalf of Chase, and who were subject to one or more of the following practices engaged in by the Defendants: (1) charging the mortgagor for attorneys fees either in excess of the actual amount incurred and/or greater than allowed by statute and court rule; (2) charging the mortgagor interest on a loan after the entry of a final judgment of foreclosure in excess of the amount allowed under statute and court rule; (3) charging the mortgagor for reimbursement of costs and/or fees in excess or in violation of statute and/or court rule; (4) charging the mortgagor for reimbursement of costs and/or fees in excess of the actual charge incurred or for charges never incurred

2

Plaintiff argues that numerosity is satisfied in this matter because Defendants do not deny that from 1998 to 2004 Chase had over 5000 foreclosures filed on its behalf and that since 2002 Chase has instituted from 600 to 1000 foreclosures per month in New Jersey. Therefore, joinder of all class members is impracticable.

Plaintiff contends that commonality has been established because there is a single fundamental law which establishes the formula to regulate how much the defendant is allowed to collect for a delinquent mortgage loan. Defendant's actions of ignoring this formula have caused a unity of the class in a common interest.

Typicality has been satisfied according to the Plaintiff, because Polen, as a representative party, has suffered the essential, same injury as the class has as a whole, and as evidenced by the payment of certain fees and costs.

To determine adequacy, Plaintiff argues that one must determine if the representative is a part of the class, possessing the same interest and suffering the same injury as the class members. Two factors are reviewed (1) the qualifications and experience of the representative plaintiff's attorney; and (2) the interest of the plaintiff must not be in conflict with those of the class. Plaintiff argues that the Court should appoint Roger Mattson, Lewis Adler, and Louis Fletcher as class counsel. Plaintiff contends that all three individuals are "highly qualified" to represent the class because they have experience in class action lawsuits, have litigated a similar case, and have experience in cases involving banking and mortgages. However, the Plaintiff concedes that since Roger Mattson may be called as a witness, it would be appropriate for him to step down as counsel of record.

Plaintiff notes specifically certain parties it believes are representative of the class as a whole, however contends that discovery, since it was bifurcated, has been either unavailable or hindered as to any other potential class members. However, Plaintiff still contends that the key legal issues for every class member are the same and that the amounts payable for fees and costs are capped by Court Rules.

Regarding the key issue of predominance pursuant to R.4:32-1(b)(3), plaintiff alleges this is satisfied because common questions of law and fact predominate over individual issues, however it is acknowledged that a court is less likely to find predominance in cases where individualized proof is required of specific factual issues.

### Defendant's Opposition

Defendant argues that Plaintiff's motion is "based entirely on unsupported, conclusory statements" and that the requirements for class certification are not met. Defendant contends that Plaintiff does not mention the causes of action for which Plaintiff seeks class treatment, she does not make a showing of the evidence needed to prove those causes of action, nor does Plaintiff suggest how the evidence relevant to her claims could possibly prove any class member's claims.

3

Defendant further argues that where individual determinations are required to establish class claims, the predominance and superiority requirements of New Jersey Court Rule R.4-32(1)(b)(3) are not satisfied, such as in this instance.

Defendant also argues that class certification should be denied because Plaintiff's proposed class definition requires individual inquiries to determine the threshold question of whether someone is a class member, and results in an improper "fail-safe" class (which is a class that would be bound only by a judgment favorable to the plaintiffs, but not an adverse judgment). Defendant contends that both types of class definitions are rejected in New Jersey.

It is indicated that the question is not whether the Plaintiff can prevail on her individual claims, but whether Plaintiff has established that the claims of all of the potential members are subject to generalized proof as required per case law cited.

Defendant contends that Plaintiff has failed to satisfy the numerosity, commonality, typicality and adequacy threshold requirements for class certification. Their contention that each class member will require such highly individualized evidence to prove their claims that class certification is inappropriate in this matter. As to the specific individuals analyzed by the Plaintiff, Defendant believes this analysis only serves to prove the widely varying circumstances required of each which defeats the class certification argument. Since individual factual determinations are needed, Plaintiff fails to meet the requirements of predominance.

## CONCLUSIONS OF LAW

### Class Certification Standard

New Jersey Court Rule 4:32-1 provides that before a class may be certified, the proposed class must meet the following four prerequisites:

(1) The class must be so numerous that joinder of all members is impracticable;

(2) There are questions of law or fact common to the class;

(3) The claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) The representative parties will fairly and adequately protect the interests of the class.

*N.J. Court Rules, R.4.32-1(a) (2006).*

4

In addition, the proposed class must satisfy one of the following requirements:

(1)   The prosecution of separate actions of individual members of the class would create a risk of either (a) inconsistent or varying adjudications that would establish incompatible standards of conduct or (b) adjudications of individual class members which would be dispositive of the interests of other members who were not parties to the adjudication would substantially impair or impede those members' ability to protect their interests; or

(2)   The party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

(3)   The Court finds that the common questions of law or fact predominate over any questions affecting only individual members, and that a class action is superior to the other available methods to the fair and efficient adjudication of the controversy.  The factors pertinent to the findings include:

(a)   The interest of members of the class individually controlling the prosecution or defense of separate actions;

(b)   The extent and nature of any litigation concerning the controversy already commenced by or against members of the class;

(c)   The desirability or undesirability in concentrating the litigation of the claims in the particular forum; and

(d)   The difficulties likely to be encountered in the management of a class action.

*N.J. Court Rules, R 4:32-1(b)(1)-(3) (2006)*

When a person sues as a representative of a class, the court as soon as practicable shall determine by Order whether to certify the action as a class action. *N.J. Court Rules, R.4:32-2(a) (2006)*.  An Order certifying class action shall define the class, the class claims, issues or defenses, and shall appoint class counsel. *Id.*

Certification of class action suits is designed to further the efficient administration of justice, to "save time and money for the parties and the public, and to promote consistent decisions for people with similar claims." *In re Cadillac V-8-4 Class Action*, 93 N.J. 412,

5

430 (1983). Nonetheless, the burden of establishing class status is on the plaintiff, and the court must undertake a rigorous analysis to ascertain whether the requirements for certification have been met. *Goasdone v American Cyanamid*, 354 N.J. Super. 519, 527 (Law Div. 2002); *Carroll v Cellco Partnership*, 313 N.J. Super. 488, 512 (App. Div. 1998). Under New Jersey law, class action rules should be liberally construed and certification granted unless there is a clear showing that certification is inappropriate or improper. See *Delgozzo v. Kenny*, 266 N.J. Super 169, 179 (App Div. 1993). A liberal interpretation is appropriate in cases involving consumer fraud. See *Strawn v Canuso*, 140 N.J. 43, 68 (1995); See also *Varacallo v. Mass. Mutual Life Ins. Co.*, 332 N.J. Super. 31, 44 (App. Div. 2000). To hold otherwise would be to impair the legislatively-mandated objections of the Consumer Fraud Act. *Lemelledo v. Beneficial Mgmt. Corp of America*, 150 N.J. 255, 267 (1997).

### R.4:32-2(a) – Class Definition

#### Definite, Ascertainable Class

Defendants cite to unpublished decisions and New Jersey Court Rule 4:32-2(a) to support their contention that the Court, prior to looking at any other class certification requirements, must make a determination that a precisely defined and ascertainable class exists and that the named plaintiffs are members of the proposed class. *N.J. Court Rule, R 4:32-2(a) (2006); Pratt v Panasonic Consumer Electronics Co.*, 2006 WL 1933660, at *10 (N.J. Super. Law Div. Jul. 12, 2006) (unpublished decision) (citing 6A Fed. Proc., L Ed. §12:56); *Iliadis v. Wal-Mart Stores Inc.*, 387 N.J Super. 405, 415 (App. Div. 2006); *Holmes v. Pension Plan of Bethlehem Steel Corp.*, 213 F.3d 124, 136 (3d Cir. 2000) (class definition precluded certification).

Defendant argues that Plaintiff attached a document labeled "Chase Mortgage Foreclosures" to her Motion, which identifies mortgage foreclosures in New Jersey over a seven-year period wherein Chase was the plaintiff. Defendant contends that this list is too broad to constitute a class, because there is no record evidence to suggest that any of the persons on this list have any claim against Defendant. Defendant further contends that certain borrowers on the list did not pay any foreclosure attorneys' fees or costs, or paid such fees in an amount less than those statutorily permitted. Defendant also argues that the class definition is improper because it necessarily requires individualized inquiries to determine whether any person falls within the class.

This Court finds that this class cannot be properly defined and clearly ascertained. Due to the individual inquiries necessary, the class cannot be adequately determined. This essential flaw prevents the suit from proceeding. Certainly, a court could attempt to narrow an overly broad class definition; however this would still require highly individualized inquiries, which cannot be overcome

6

Numerosity

To meet the numerosity requirement, class representatives must demonstrate only that "common sense" suggests that it would be difficult or inconvenient to join all class members. *Varacallo v. Mass. Mutual Life Ins. Co.*, 226 F.R.D. 207, 229 (D.N.J. 2005) (quoting *In re Prudential Ins. Co. of America Sales Practices Litigation*, 962 F.Supp. 450, 510 (D.N.J. 1997)). When a proposed class "numbers in the hundreds," joinder of all members has been held to be impracticable. *Varacallo v Mass Mutual Life Ins Co.*, 226 F.R.D. at 229. However, "mere conclusory or speculative allegations that joinder is impracticable are not sufficient" to satisfy the numerosity requirement. *Liberty Lincoln Mercury Inc v. Ford Marketing Corp.*, 149 F.R.D. 247, 250 (D.N.J. 1992).

In this case, Plaintiff asserts only that "thousands of mortgage loans are at issue and therefore the proposed class includes thousands of borrowers. These borrowers are dispersed throughout New Jersey. Joinder of all proposed Plaintiff Class members is impracticable." However, this is based on conclusory and speculative allegations. Plaintiff does make the argument that just the sheet total number of foreclosure actions per month would support a finding that the putative class members number in the thousands. But, that argument alone is insufficient.

This prerequisite requires more than just looking at large numbers on a foreclosure list. This Court finds that the Plaintiff has not made the necessary connection between the large numbers, the claims of herself and what is anticipated to be the class claims as they have proposed per their definition. The leap between Plaintiff's claims and those of the entire class has not been sufficiently connected by the offer of generalized proof to maintain the viability of a class action. If there were a goal of judicial economy, it would be defeated in this matter by the need for a detailed analysis in every instance.

Commonality

Commonality means that "common questions of law and fact" must govern the parties' claims. *Weiss v. York Hospital*, 745 F.2d 786, 808-809 (3d Cir. 1984), *cert. denied*, 470 U.S. 1060 (S.Ct. 1985). This requirement is satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class. *Varacallo v. Mass. Mutual Life Ins. Co*, 226 F.R.D. at 230 (quoting *In re Prudential Ins. Co. of America Sales Practices Litigation*, 962 F.Supp. at 510). Common questions of law and fact must be capable of being proven through generalized evidence applicable to the entire class. *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591 (S.Ct. 1997). While a single common question is sufficient, simply alleging the same theory of recovery for all class members does not guarantee the existence of legal or factual commonality. *West Morris Pediatrics P.A v Henry Schein, Inc.*, 385 N.J. Super. 581, 600 (Law Div. 2004).

In this case, Plaintiff states that the common issues of fact include a uniform clause in each mortgage and note to all borrowers. However, even if all of the putative class members' mortgages contain the same language concerning foreclosure attorneys' fees and costs, this alone does not establish Defendant's liability. Instead, Defendant's

7

liability can be established only by individual inquiry into each putative class members' factual situation and circumstances.

<u>Typicality</u>

Representative plaintiffs must show that their claims are sufficiently typical that they can fairly stand as a proxy for all of the other class members' claims. *Amchem Prod., Inc. v. Windsor,* 521 U.S. at 591. Typicality exists where there is a strong similarity of legal theories or where the claims of the class representatives and the class members arise from the same alleged course of conduct by the Defendant. *Varacallo v. Mass. Mutual Life Ins. Co.,* 226 F.R.D. at 232. Even where there may be factual differences between the claims, it does not rule out a finding of typicality. *Id.*

In this case, although Plaintiff alleges that she paid excessive attorneys' fees and costs, Plaintiff has not presented any evidence which would show that any of the putative class members had the same experience as the Plaintiff, which would make Plaintiff truly representative of the class, as a whole. It is noted that Plaintiff had a unique history with Defendant, had filed two separate Bankruptcy actions during this period of time, was represented by counsel when negotiating reinstatement agreements, and made separate payments as consideration for those agreements Therefore, in determining whether the amounts paid were impermissible, this Court would be required to review not only the court rules and statutes, but contract terms, separately negotiated individual agreements, and the bankruptcy code, as well as common law theories. As a result, this Plaintiff cannot prove that she is typical of the potential class.

During oral argument, Plaintiff contended that there is <u>one simple formula</u> for the determination of fees in all of these matters and that, in effect, "one size fits all". However, this is an incorrect assumption. In support of their position, they cite the recent, unpublished Appellate decision of *Amboy National Bank v. Ahmed,* A-4690-05T54690-05T5. However, in this matter, Judge Williams determined that R.4:42-9 did not preclude the allowance of attorney's fees in connection with the forbearance agreement, wherein it stated, that "the judge reasoned that the parties by their contractual agreement intended that plaintiff would be entitled to attorney's fees and costs arising out the delays associated with the forbearance agreements." To determine the amount, she did require the proper affidavit of services as required by R. 4:42-9(b). Therefore, amounts for fees and costs may vary depending upon the contractual arrangements when dealing with forbearance agreements, provided the amounts are still proper in accordance with R. 4:42-9(b).

<u>Adequacy</u>

The adequacy requirement serves to uncover conflicts of interest between named parties and the class they seek to represent. *Amchem Prod. Inc. v. Windsor,* 521 U.S. at 594-595. Representatives must be part of the class and possess the same interest and suffer the same injury as class members. *Id.* Courts look at two factors in determining the adequacy of class representation: (1) the qualifications and experience of the

8

representative plaintiff's attorney(s); (2) the interest of the representative plaintiffs which cannot conflict with those of the class. See *Varacallo v. Mass  Mutual Life Ins  Co*, 226 F.R.D. at 233.

Defendant asserts that Plaintiff's counsel, Roger Mattson, who represented Plaintiff in the two foreclosure actions with the Defendant, has knowledge of the fees and costs at issue as well as information concerning the application of the voluntary payment or entire controversy doctrines. Further, Defendant contends that Plaintiff has testified that she does not remember: (i) entering into the subject mortgage, (ii) whether she was a party to two bankruptcy proceedings, (iii) making any reinstatement payment or payoff payment, (iv) entering into any agreement for Defendant to postpone the Sheriff's sale of her property, or (v) receiving proceeds from the sale of her home. Consequently, Defendant contends that the proof of these issues must come from Mr. Mattson.

Defendant also argues that, in order to find Plaintiff an adequate class representative, Plaintiff's interests must be co-extensive with the interests of the other members of the class, and the Court must be assured that the representative will vigorously prosecute or defend that interest, which usually requires the assistance of responsible and able counsel. Defendant contends that Plaintiff has testified that she does not seek to represent a class, and that this thus raises doubts as to whether Plaintiff would be an adequate class representative. Defendant additionally contends that Plaintiff's counsel has filed this class action motion without first consulting Plaintiff.

On the other hand, Plaintiff maintains that no conflicts of interest exist between the Plaintiff and the proposed class members. Furthermore, Plaintiff's counsel asserts that they are "experienced attorneys who have diligently represented the proposed class' interest throughout this litigation." Plaintiff has now also provided an additional certification dated 2/21/07, indicating that when she attended the deposition she had indicated that she only wanted to represent herself, since she didn't know anyone else's circumstances. Her counsel then informed her that it was acceptable that she would only have knowledge of her own situation. Now, based on her recent certification, she understands and agrees to proceed as the class representative, despite acknowledging the difficulties with her memory.

However, upon a detailed review of the Polen Deposition, it is noted on pg. 34, beginning on line 17, after being handed certain Exhibits and questioned about reinstatement amounts, Ms. Polen states, "I had no idea what this is about at all." Further along, when questioned as to whether she reimbursed a lender or loan servicer, either Chase or Advanta for any amounts, she indicated that she did not remember. When asked on page 46, beginning on line 19, do you remember having to make certain payments to Chase in order to postpone the sale; she indicates "No, I don't." It appears that she does not specifically remember making any payments, nor any specific amounts, nor the purposes for those specifically designated amounts.

Plaintiff's contentions are insufficient to satisfy the adequacy requirement, particularly in light of the history of her remarks. Furthermore, if Plaintiff's counsel, Mr. Mattson, must

9

testify as a witness in the Plaintiff's case due to her limitations, then Mr. Mattson would not be qualified to represent the putative class members in this litigation.

### 4:32-1(b) – Predominance & Superiority

<u>Predominance Requirement</u>

In addition to the above four factors, a class can achieve certification if the common questions of law and fact to the class "predominate over individual issues." *Varacallo v Mass. Mutual Life Ins. Co.*, 226 F.R.D. at 231. Even a few common questions can satisfy this requirement where their resolution can significantly advance the litigation. *Id.* The predominance requirement is satisfied in cases where it is alleged that the defendant made "similar misrepresentations, non-disclosures or engaged in a common course of conduct." *Id.* A court is less likely to find predominance in cases where "individualized proof of highly case-specific factual issues" is required. *Id.* The predominance requirement is "readily met" in cases alleging consumer fraud. *Amchem Prod. Inc.*, 521 U.S. at 625.

When determining whether common or individual issues predominate, the court must scrutinize the questions surrounding liability, noting those which must be made on an individual basis and those which can be decided on a class-wide basis. *Goasdone v. American Cyanamid*, 354 N.J. Super. at 540. The Court must understand the claims, defenses, relevant facts and applicable substantive law in order to make a meaningful determination of the certification issues *Carroll v. Cellco Partnership*, 313 N.J. Super. 488, 512 (App. Div. 1998) The requirement for commonality is distinct from the predominance requirement *Saldana v City of Camden*, 252 N.J. Super. 188 (App. Div. 1991). "Commonality becomes obscured when the probable unique issues of liability, causation and damages in each case are considered, requiring individualized treatment at trial." *Id.* Fact-sensitive issues which require fact-specific proofs are not appropriate for class certification. *Id.*

New Jersey courts have repeatedly denied class certification when faced with individualized inquiries that cannot be proved with common evidence. See e.g. *Muise v. GPU Inc.*, 371 N.J. Super. 13, 37 (App. Div. 2004); *Carroll v. Cellco Partnership*, 313 N.J. Super. at 502-505; *Romano v. Kimmelman*, 190 N.J. Super. 554, 560-561 (App. Div 1983); *Goasdone v. American Cyanamid*, 354 N.J. Super. at 541; *Gross v Johnson & Johnson-Merck Consumer Pharmaceuticals Co*, 303 N.J. Super 336, 346 (Law Div. 1997).

Defendant argues that an examination of the evidence relevant to Plaintiff's claims and Defendant's defenses demonstrates that there is no common evidence to establish the class claims. Instead, resolution of Plaintiff's claims depends on evidence regarding her individual costs and charges. Further, Defendant contends that Plaintiff must establish that her claims are not barred because she failed to raise them in underlying foreclosure proceedings. Ultimately, Defendant argues that the evidence relevant to prove Plaintiff's

10

claims are irrelevant to prove the claims of any other purported class member as the circumstances surrounding each borrower's foreclosure are different and the documentary evidence relative to determining the fees, costs and interest paid by other borrowers varies widely. Defendant argues there is no common evidence that Plaintiff and the putative class can use to prove any of their claims. Moreover, there are many individualized inquiries for each borrower in the putative class to establish Defendant's liability to each class member.

In this case, the disposition of Plaintiff's case relies on individual inquiries into unique facts and circumstances. The resolution of this case is dependent upon the facts and circumstances as they are presented. In addition, the putative class members' cases are equally dependent upon the unique facts and circumstances which apply to them. Each putative member would require an individual inquiry, which would subvert the purpose of class certification.

For instance, one of Plaintiff's claims in this case is for breach of contract. In order to prove that the two foreclosure transactions involving Plaintiff were unconscionable or unreasonable, the decision must necessarily be based on the consideration of individual negotiations and payments that took place. This determination must be made on a case-by-case basis. Were there voluntary payments made based on an attorney's negotiations and recommendation? This cannot be proved with common evidence. As a result, determining each class member's claims would require a series of highly individualized factual inquiries.

<u>Superiority Requirement</u>

In addition to the predominance requirement, Plaintiff must establish that a class action is the best method for the fair and efficient adjudication of the controversy. *N.J. Court Rules, R.4:32-1(b)(3) (2006)* The Court must consider the difficulties likely to be encountered in the management of the class action. *Id.*; *Iliadis v. Wal-Mart Stores Inc.*, 387 N.J. Super. at 415. Whether a class action is superior to other forms of adjudication turns on its fairness to all parties and the effect of class certification on efficient judicial management. *Gross v. Johnson & Johnson-Merck Consumer Pharmaceuticals Co.*, 303 N.J. Super. at 350 (citing *In re Cadillac V8-6-4 Class Action*, 93 N.J. 412, 436 (1983)). One fact that prevents the efficient judicial management of litigation is the existence of individual issues. See *Goasdone v. American Cyanamid*, 354 N.J. Super. at 542; See also *Gross v. Johnson & Johnson-Merck Consumer Pharmaceuticals Co.*, 303 N.J. Super. at 350; *Johnston v. HBO Film Mgmt.*, 265 F.3d 178, 194 (3d Cir. 2001); *Newton v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 259 F.3d 154, 192 (3d Cir. 2001).

In this case, the potential for numerous and varying individual inquiries presents immense manageability problems which results in such a difficult obstacle not only to the Court, but also to the attorneys and litigants, that it cannot be overcome. As a result, class certification would not be the most efficient adjudication of this controversy.

11

<u>Appointing Class Counsel</u>

Pursuant to New Jersey Court Rule 4:32-2(g), the court that certifies a class must appoint class counsel. *N.J. Court Rules, R.4:32-2(g) (2006).* An attorney appointed to serve as class counsel must fairly and adequately represent the interests of the class. *Id.* In appointing class counsel, the court must consider: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation and claims of the type asserted in the action; (iii) counsel's knowledge of the applicable law, and (iv) the resources counsel will commit to representing the class. *Id.*

This Court finds that if the Plaintiff had satisfied the threshold criteria, then appointing Plaintiff's counsel, Lewis G. Adler, Esq., and Louis D. Fletcher, Esq., as the class counsel for this case would have been appropriate.

In conclusion, for the foregoing reasons, Class Certification in this matter is Denied.

4-17-07

Jean B. McMaster
Jean B. McMaster, JSC

# EXHIBIT B

MB3503-P329                                          EA40012866

098161

1500 378863
Kovilaritch S
47000

ORIGINAL

(Space Above This Line For Recording Data)

# MORTGAGE

State of New Jersey
This instrument was prepared by: ~~Sandra C. Degler~~

Eastern American Mortgage Company
Sandra C. Degler

| FHA Case No. |
| --- |
| 351-3311464-729 |

Section of the Act:
ADP Code: 729

851901

11-13-97

THIS MORTGAGE ("Security Instrument") is given on    October 28, 1997    . The Mortgagor is
Stacey A. Kovilaritch, Unmarried

("Borrower"). This Security Instrument is given to Eastern American Mortgage, Co., a Corporation

which is organized and existing under the laws of The State of New Jersey          , and whose
principal office and mailing address is 4A Eves Drive, Marlton, NJ 08053

("Lender"). Borrower owes Lender the principal sum of

Eighty-Two Thousand Four Hundred Thirteen and 00/100

Dollars (U.S.  $82,413.00      ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for
monthly payments, with the full debt, if not paid earlier, due and payable on  November 1, 2027.
This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all
renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under
paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and
agreements under this Security Instrument and the Note. This Security Instrument and the Note secured hereby are
subject to modification (including changes in the interest rate, the due date, and other terms and conditions), as defined in
New Jersey Laws 1985, ch. 353, Section 1 et seq., and upon such modification, shall have the benefit of the lien priority
provisions of that law. The maximum principal amount secured by this Security Instrument is    U.S. $82,413.00
       . For these purposes, Borrower does hereby mortgage, grant and convey to the Lender the following
described property located in Township  of  West Deptford, Gloucester                 County, New Jersey:

SEE ATTACHED 'SCHEDULE A' FOR LEGAL DESCRIPTION.

Being the same premises conveyed to the said mortgagors by deed bearing even date and to
be recorded simultaneously herewith, the principal of this mortgage having been used as
part payment of the purchase price, this being therefore a purchase money mortgage.

which has the address of 1633 East Columbia Avenue, West Deptford Township, (Thorofare), NJ
08086

("Property Address")

FHA New Jersey Mortgage
Modified (4165.1 CHG-3) 4/96          Page 1 of 7          INITIALS /SK          29Z18A

1500378863

MB3503-P331

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

Borrower and Lender covenant and agree as follows:

UNIFORM COVENANTS.

1. **Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

2. **Monthly Payments of Taxes, Insurance and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under Paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the Monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to the Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. Section 2601 et seq. and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by the Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's accounts shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a) (b), and (c).

INITIALS

MB3503-P330

SCHEDULE A-4          LAND DESCRIPTION          FILE NO.   P-20181

ALL that certain land in the Township of West Deptford, County of Gloucester and State of New Jersey described as follows:

BEGINNING at a point in the Southeasterly line of East Columbia Avenue, also known as East Columbia Boulevard (60 feet wide), distant 150.00 feet Northeastwardly from the intersection of the Southeasterly line of East Columbia Avenue with the Northeasterly line of Red Bank Avenue (66 feet wide), formerly Belmont Avenue, said beginning point being corner to Lot 367 on plan hereinafter mentioned;

thence (1) Northeastwardly along the Southeasterly line of East Columbia Avenue 100.00 feet to a point in the division line between Lots 361 and 363A, said plan;

thence (2) Southeastwardly along said division line, at right angles to East Columbia Avenue, 150.00 feet to a point for a corner common to Lots 361, 362, 363A and 364A, said plan;

thence (3) Southwestwardly along the Northwesterly line of Lots 364A, 364, 366A and 366, said plan, parallel with East Columbia Avenue, 100.00 feet to a point for a corner common to Lots 365, 366, 369A and 370, said plan;

thence (4) Northwestwardly along the Northeasterly line of Lots 369A, 369, 368A, 368, 367A and 367, said plan, at right angles to East Columbia Avenue, 150.00 feet to the point and place of beginning.

BEING Lots 363A, 363, 365A and 365 on plan of lots of City View Heights.

BEING known as No. 1633 East Columbia Avenue.

ALSO BEING known as Lot 13, Block 116, on Plate 8 of the Township of West Deptford tax maps.

MB3503-P332

**3. Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

<u>First</u> , to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

<u>Second</u> , to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

<u>Third</u> , to interest due under the Note;

<u>Fourth</u> , to amortization of the principal of the Note; and

<u>Fifth</u> , to late charges due under the Note.

**4. Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in Paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in Paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

**5. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines this requirement will cause undue hardship for Borrower, or unless extenuating circumstances exists which are beyond Borrower's control. Borrower shall notify Lenders of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

**6. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and Security Instrument, first to any delinquent amounts applied in the order provided in Paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in Paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

INITIALS: ✓ SK                29218C

MB3503-P333

**7. Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in Paragraphs 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by Paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in Paragraph 2.

Any amounts disbursed by Lender under this Paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement, at the Note rate, and at the option of the Lender, shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument. Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**8. Fees.** Lender may collect fees and charges authorized by the Secretary.

**9. Grounds for Acceleration of Debt.**

   **(a) Default.** Lender may, except as limited by regulations issued by the Secretary in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

   (i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or
   (ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

   **(b) Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all the sums secured by this Security Instrument if:

   (i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent) and
   (ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

   **(c) No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

   **(d) Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights in the case of payment defaults to require immediate payment in full and forclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

MB3503-P334

(e) Mortgage Not Insured. Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

10. Reinstatement. Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

11. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers. The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9.b. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

13. Notices. Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

14. Governing Law; Severability. This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

MB3503-P335

15. Borrower's Copy. Borrower shall be given one conformed copy of the Note and this Security Instrument.

16. Hazardous Substances. Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party, involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

17. Assignment of Rents. Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

18. Foreclosure Procedure. If Lender requires immediate payment in full under paragraph 9, Lender may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, attorney's fees and costs of title evidence.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke a nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law.

19. Release. Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

20. No Claim of Credit for Taxes. Borrower will not make deduction from or claim credit on the principal or interest secured by this Security Instrument by reason of any governmental taxes, assessments or charges. Borrower will not claim any deduction from the taxable value of the Property by reason of this Security Instrument.

INITIALS: _SK_

29218E

# MB3503-P338

21. **Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. (Check applicable box(es))

| | | |
|---|---|---|
| ☐ Condominium Rider | ☒ Adjustable Rate Rider | ☐ Growing Equity Rider |
| ☐ Planned Unit Development Rider | ☐ Graduated Payment Rider | ☒ Other (Specify)Legal Description |

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

_Deborah Kimble_ _____      _Stacey A. Kovilaritch_ _____ (Seal)
Pilgrim Title Agency, Inc.                    Stacey A. Kovilaritch            –Borrower

_____      _____ (Seal)
                                                                   –Borrower

CHARGE, RECORD, RETURN TO
PILGRIM TITLE AGENCY,
34 S. BROAD STREET
WOODBURY, N.J. 08096

                                         _____ (Seal)
                                                                  –Borrower

                                         _____ (Seal)
                                                                  –Borrower

STATE OF NEW JERSEY,                    Gloucester   County ss:

on this   28th   day of   October, 1997     , before me, this subscriber, personally appeared
Stacey A. Kovilaritch, Unmarried

                                                            who, I am satisfied
**is**   the person(s) named in and who executed the within instrument, and thereupon acknowledged that   she has
signed, sealed and delivered the same as her   act and deed, for the purposes therein expressed.

DEBORAH LIGHTCAP
Notary Public of New Jersey          _Deborah Kimble_ _____
My Commission Expires Oct. 2, 2001     Pilgrim Title Agency, Inc.

Receipt of a true copy of this instrument, provided without charge, is hereby acknowledged.
Witnesses:

_Deborah Kimble_ _____      _Stacey A. Kovilaritch_ _____ (Seal)
Pilgrim Title Agency, Inc.                   Stacey A. Kovilaritch          –Borrower

                                           _____ (Seal)
                                                                  –Borrower

97 31160

                                           _____ (Seal)
                                                                  –Borrower

'97 OCT 29 AM11:04

RECORDED
GLOUCESTER COUNTY

Page 7 of 7                            INITIALS: ✓ _____      292186

MB3503-P336                                                    EA40012866

Section of the Act:
ADP Code:  729

FHA Case No.
            351-3311464-729

# ADJUSTABLE RATE RIDER

THIS ADJUSTABLE RATE RIDER is made this            28th            day of
October, 1997      , and is incorporated into and shall be deemed to amend and
supplement the Mortgage, Deed of Trust or Security Deed ("Security Instrument") of the same date given
by the undersigned ("Borrower") to secure Borrower's Note ("Note") to
            Eastern American Mortgage, Co., a New Jersey Corporation

(the "Lender") of the same date and covering the property described in the Security Instrument and located
at:
      1633 East Columbia Avenue, West Deptford Township, (Thorofare), NJ 08086

[Property Address]

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE
INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE
AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE
TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.**

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

## 5. INTEREST RATE AND MONTHLY PAYMENT CHANGES
### (A) Change Date
The interest rate may change on the first day of January, 1999            , and on
that day of each succeeding year. "Change Date" means each date on which the interest rate could change.

### (B) The Index
Beginning with the first Change Date, the interest rate will be based on an Index. "Index" means the
weekly average yield on United States Treasury Securities adjusted to a constant maturity of one year, as
made available by the Federal Reserve Board. "Current Index" means the most recent Index figure available
30 days before the Change Date. If the Index (as defined above) is no longer available, Lender will use as a
new Index any index prescribed by the Secretary (as defined in paragraph 7(B)). Lender will give Borrower
notice of the new Index.

### (C) Calculation of Interest Rate Changes
Before each Change Date, Lender will calculate a new interest rate by adding a margin of
Two and Three-Quarters            percentage point(s) (      2.750%      )to the Current
Index and rounding the sum to the nearest one-eighth of one percentage point (0.125%). Subject to the limits
stated in paragraph 5(D) of this Note, this rounded amount will be the new interest rate until the next
Change Date.

### (D) Limits on Interest Rate Changes
The interest rate will never increase or decrease by more than one percentage point (1.0%) on any
single Change Date. The interest rate will never be more than five percentage points (5.0%) higher or lower
than the initial interest rate stated in paragraph 2 of this Note.

MB3503-P337

**(B) Calculation of Payment Change**

If the interest rate changes on a Change Date, Lender will calculate the amount of monthly payment of principal and interest which would be necessary to repay the unpaid principal balance in full at the maturity date at the new interest rate through substantially equal payments. In making such calculation, Lender will use the unpaid principal balance which would be owed on the Change Date if there had been no default in payment on the Note, reduced by the amount of any prepayments to principal. The result of this calculation will be the amount of the new monthly payment of principal and interest.

**(F) Notice of Changes**

Lender will give notice to Borrower of any change in the interest rate and monthly payment amount. The notice must be given at least 25 days before the new monthly payment amount is due, and must set forth (i) the date of the notice, (ii) the Change Date, (iii) the old interest rate, (iv) the new interest rate, (v) the new monthly payment amount, (vi) the Current Index and the date it was published, (vii) the method of calculating the change in monthly payment amount, and (viii) any other information which may be required by law from time to time.

**(G) Effective Date of Changes**

A new interest rate calculated in accordance with paragraphs 5(C) and 5(D) of this Note will become effective on the Change Date. Borrower shall make a payment in the new monthly amount beginning on the first payment date which occurs at least 25 days after Lender has given Borrower the notice of changes required by paragraph 5(F) of this Note. Borrower shall have no obligation to pay any increase in the monthly payment amount calculated in accordance with paragraph 5(E) of this Note for any payment date occurring less than 25 days after Lender has given the required notice. If the monthly payment amount calculated in accordance with paragraph 5(E) of this Note decreased, but Lender failed to give timely notice of the decrease and Borrower made any monthly payment amounts exceeding the payment amount which should have been stated in a timely notice, then Borrower has the option to either (i) demand the return to Borrower of any excess payment, with interest thereon at the Note rate (a rate equal to the interest rate which should have been stated in a timely notice), or (ii) request that any excess payment, with interest thereon at the Note rate, be applied as payment of principal. Lender's obligation to return any excess payment with interest on demand is not assignable even if this Note is otherwise assigned before the demand for return is made.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_Stacey A. Kovilaritch_
Stacey A. Kovilaritch ————————(Seal)
—Borrower

———————————————(Seal)
—Borrower

———————————————(Seal)
—Borrower

———————————————(Seal)
—Borrower

[Space Below This Line Reserved for Acknowledgement]

# EXHIBIT C

EA40012866

# ADJUSTABLE RATE NOTE

FHA Case No. 351-3311464-729
Section of the Act:
ADP Code:  729

State of New Jersey                          **ORIGINAL**

October 28, 1997
[Date]

1633 East Columbia Avenue, West Deptford Township, (Thorofare), NJ 08086
[Property Address]

## 1. PARTIES
"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means  Eastern American Mortgage, Co., a New Jersey Corporation

and its successors and assigns.

## 2. BORROWER'S PROMISE TO PAY: INTEREST
In return for a loan received from Lender, Borrower promises to pay the principal sum of   Eighty-Two Thousand Four Hundred Thirteen and 00/100
Dollars (U.S.    $82,413.00     ), plus interest, to the order of Lender. Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at a rate of   Six and One-Half
percent (       6.500%          )per year until the full amount of principal has been paid. The interest rate may change in accordance with Paragraph 5(C) of this Note.

## 3. PROMISE TO PAY SECURED
Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." That Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

## 4. MANNER OF PAYMENT
(A) Time
Borrower shall make a payment of principal and interest to Lender on the first  day of  each month  beginning  on December 1, 1997              . Any principal and interest remaining on the first day of  November, 2027, will be due on that date, which is called the "Maturity Date."
(B) Place
Payment shall be made at  4A Eves Drive, Suite 108, Marlton, NJ   08053

or at such other place as Lender may designate in writing by notice to Borrower.
(C) Amount
Initially, each monthly payment of principal and interest will be in the amount of        $520.92.
This amount will be part of a larger monthly payment required by the Security Instrument that shall be applied to principal, interest and other items in the order described in the Security Instrument. This amount may change in accordance with Paragraph 5(E) of this Note.

## 5. INTEREST RATE AND MONTHLY PAYMENT CHANGES
(A) Change Date
The interest rate may change on the first day of        January, 1999           , and on that day of each succeeding year. "Change Date" means  each date on which the interest rate could change.
(B) The Index
Beginning with the first Change Date, the interest rate will be based on an Index. "Index" means the weekly

---

FHA Multistate Adjustable Rate Note
Modified (4165.1 CHG-3) 10/1/95                    Page 1 of 3

99240A

average yield on United States Treasury Securities adjusted to a constant maturity of one year, as made available by the Federal Reserve Board. "Current Index" means the most recent Index figure available 30 days before the Change Date. If the Index (as defined above) is no longer available, Lender will use as a new Index any index prescribed by the Secretary (as defined in Paragraph 7(B)). Lender will give Borrower notice of the new Index.

**(C) Calculation of Interest Rate Changes**

Before each Change Date, Lender will calculate a new interest rate by adding a margin of Two and Three-Quarters percentage point(s)( 2.750% )to the Current Index and rounding the sum to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Paragraph 5(D) of this Note, this rounded amount will be the new interest rate until the next Change Date.

**(D) Limits on Interest Rate Changes**

The existing interest rate will never increase or decrease by more than one percentage point (1.0%) on any single Change Date. The interest rate will never be more than five percentage points (5.0%) higher or lower than the initial interest rate stated in Paragraph 2 of this Note.

**(E) Calculation of Payment Change**

If the interest rate changes on a Change Date, Lender will calculate the amount of monthly payment of principal and interest which would be necessary to repay the unpaid principal balance in full at the Maturity Date at the new interest rate through substantially equal payments. In making such calculation, Lender will use the unpaid principal balance which would be owed on the Change Date if there had been no default in payment on the Note, reduced by the amount of any prepayments to principal. The result of this calculation will be the amount of the new monthly payment of principal and interest.

**(F) Notice of Changes**

Lender will give notice to Borrower of any change in the interest rate and monthly payment amount. The notice must be given at least 25 days before the new monthly payment amount is due, and must set forth (i) the date of the notice, (ii) the Change Date, (iii) the old interest rate, (iv) the new interest rate, (v) the new monthly payment amount, (vi) the Current Index and the date it was published, (vii) the method of calculating the change in monthly payment amount, and (viii) any other information which may be required by law from time to time.

**(G) Effective Date of Changes**

A new interest rate calculated in accordance with Paragraphs 5(C) and 5(D) of this Note will become effective on the Change Date. Borrower shall make a payment in the new monthly amount beginning on the first payment date which occurs at least 25 days after Lender has given Borrower the notice of changes required by Paragraph 5(F) of this Note. Borrower shall have no obligation to pay any increase in the monthly payment amount calculated in accordance with Paragraph 5(E) of this Note for any payment date occurring less than 25 days after Lender has given the required notice. If the monthly payment amount calculated in accordance with Paragraph 5(E) of this Note decreased, but Lender failed to give timely notice of the decrease and Borrower made any monthly payment amounts exceeding the payment amount which should have been stated in a timely notice, then Borrower has the option to either (i) demand the return to Borrower of any excess payment, with interest thereon at the Note rate (a rate equal to the interest rate which should have been stated in a timely notice), or (ii) request that any excess payment, with interest thereon at the Note rate, be applied as payment of principal. Lender's obligation to return any excess payment with interest on demand is not assignable even if this Note is otherwise assigned before the demand for return is made.

## 6. BORROWER'S RIGHT TO PREPAY

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month. Lender shall accept prepayment on other days provided that borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

## 7. BORROWER'S FAILURE TO PAY

**(A) Late Charge for Overdue Payments**

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of Four percent( 4.000% )of the overdue amount of each payment.

**(B) Default**

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this

option without waiving its rights in the event of any subsequent default. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

(C) Payment of Costs and Expenses

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

## 8. WAIVERS

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

## 9. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

## 10. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

WITNESS:

_____ (Seal)
Stacey A. Kovilaritch          —Borrower

_____ (Seal)
                               —Borrower

Pilgrim Title Agency, Inc.

_____ (Seal)
                               —Borrower

_____ (Seal)
                               —Borrower

WITHOUT RECOURSE PAY TO THE ORDER OF:
CHASE MANHATTAN MORTGAGE CORPORATION

Eastern American Mortgage, Co
BY:
SANDRA C. DEGLER, ASST. SECRETARY

Pay to the Order of
Without Recourse
Chase Manhattan Mortgage Corporation
BY
DONNA JONES, ASST. TREASURER

99240C

# EXHIBIT D

**CH-3403**
FEDERMAN & PHELAN, P.C.
By: Rosemarie Diamond, Esquire
Suite 505, Sentry Office Plaza
216 Haddon Avenue
Westmont, New Jersey, 08108
(856) 858-5115
Attorneys for Plaintiff

REC'D. & FILED
SUPERIOR COURT
OF NEW JERSEY

OCT 12 2001

Donald F. Phelan
CLERK

| | |
|---|---|
| CHASE MANHATTAN MORTGAGE CORPORATION<br>PLAINTIFF<br><br>Vs.<br><br>STACEY A. KOVILARITCH AND MR. KOVILARITCH, HUSBAND OF STACEY A. KOVILARITCH<br>DEFENDANT(S) | SUPERIOR COURT OF NEW JERSEY<br>CHANCERY DIVISION<br>GLOUCESTER COUNTY<br><br>DOCKET NO: F- 15960 - 01<br><br>CIVIL ACTION<br>FORECLOSURE COMPLAINT |

Chase Manhattan Mortgage Corporation, having its place of business at 3415
Vision Drive, Columbus, OH 43219, by way of Complaint says:

### FIRST COUNT

1. On October 28, 1997, Stacey A. Kovilaritch, executed to Eastern American Mortgage
Co. an obligation (NOTE), to secure the sum of $82,413.00, payable on November 1, 2027,
with the initial rate of interest of 6.500% per annum, payable by payments of $520.92 per
month for interest and principal. The Note further provides for a late charge of 4 percent for
any payment not received 15 days from the date due.

2. To secure the payment of the aforesaid obligation, Stacey A. Kovilaritch, executed to
Eastern American Mortgage Co., a Purchase Money mortgage of even date with said Note,
and thereby conveyed to it, in fee the land hereinafter described, on the express condition
that such conveyance should be void if payment should be made at the time and times, and

in the manner described in said obligation. Said mortgage was duly recorded in the Office of the Clerk of Gloucester County, in Book 3503 of Mortgages, Page 329. Said mortgage was recorded October 29, 1997.

3. The mortgaged premises are described in the schedule annexed hereto and made a part hereof. (Exhibit"A").

4. The holder of the obligation and Mortgage referred to in paragraphs 1 and 2 above assigned said obligation and Mortgage as follows:

    a. By written assignment dated October 28, 1997, Eastern American Mortgage Co. assigned said mortgage to Chase Manhattan Mortgage Corporation. Recording information is unavailable.

5. Said mortgage contained a provision that, together with, and in addition to, the monthly payments of principal and interest payable under the terms of the note secured thereby, the mortgagors will pay the mortgagee, on the first day of each month until said note is fully paid, a sum equal to 1/12th of the annual taxes, insurance premiums that will next become due, which shall be applied by the mortgagee in payment of taxes and insurance on said premises.

6. No other instruments appear of record which affect or may affect the premises described in Paragraph 3 above except:

    a. Mr. Kovilaritch, husband of Stacey A. Kovilaritch, is named a party defendant herein as a precaution for any lien, claim or interest he may have in, to or on the mortgage premises, because he is the husband of Stacey A. Kovilaritch and it not being known whether or not Stacey A. Kovilaritch is married.

2

7.  The obligation aforesaid contained an agreement that if any installment payment of interest and principal, taxes and insurance premiums should remain unpaid for 30 days after the same shall fall due, the whole principal sum, with all unpaid interest, should at the option of the above named mortgagee or the heirs, executors, administrators, representatives or assigns, become immediately due and payable.

8.  The defendant(s) named in paragraph #1 above, or the grantee or grantees, if any, of said defendant, have defaulted in making the payments to the plaintiff herein as required by the terms of the obligation and Mortgage referred to in paragraphs #1 and #2 above, and said payments have remained unpaid for more than 30 days from the date the said payments were due, and are still unpaid.  Plaintiff, herein, by reason of said default, elected that the whole unpaid principal sum due on the aforesaid obligation and Mortgage referred to in paragraphs #1 and #2 above, with all unpaid interest and advances made thereon, shall now be due.

9.  Any interest or lien which the defendants herein have, or claim to have, in or upon the said mortgaged premises or some part thereof is subject to the lien of plaintiff's mortgage.

10. Notice was sent in compliance with the fair foreclosure act more than 31 days prior to filing of the within complaint.

WHEREFORE, plaintiff demands judgment:

(a) Fixing the amount due on its mortgage.

(b) Barring and foreclosing the defendants and each of them of all equity of redemption in to said lands.

(c) Directing that the plaintiff be paid the amount due on its mortgage with interest and costs.

(d) Adjudging that said lands be sold according to law to satisfy the amount due plaintiff.

(e) Appointing a receiver of rents, issues and profits of said lands.

4

## SECOND COUNT

1. By the terms of the Note/Bond and Mortgage referred to in paragraphs #1 and #2 of the First Count of this Complaint, the plaintiff herein is entitled to possession of a tract of land with the appurtenances as more particularly described in paragraph #3 of the First Count herein.

2. On July 1, 2001, the plaintiff, by the terms of the Note/Bond and Mortgage, aforesaid becomes entitled to possession of the premises described in paragraph #3 of the First Count of this Complaint except as against those tenants protected under N.J.S.A. 2A:18-61.1, et seq.

3. The defendants named in paragraph #1 and paragraph #6 of the First Count of this Complaint have or may claim to have certain rights in the premises described in paragraph #3 of the First Count of this Complaint and by reason thereof have since the date set forth in paragraph #2 above deprived the plaintiff herein of the possession of the premises aforesaid.

WHEREFORE, Plaintiff demands judgment against defendants except those persons protected under N.J.S.A. 2A:18-61.1, et seq.;

(a) For possession of the said premises to plaintiff, its successors or assignee and/or the purchaser at a foreclosure sale.

(b) For damages for mesne profits.

(c) For costs.

FEDERMAN and PHELAN, P.C.

Rosemarie Diamond, Esquire
Attorneys for Plaintiff

Dated: October 11, 2001

5

## CERTIFICATION PURSUANT TO RULE 4:5-1

The matter in controversy in this Complaint is not the subject of any other action pending in any other Court nor is it the subject of a pending Arbitration proceeding, nor are any other actions or Arbitration proceedings contemplated, and further, to the best of my knowledge, all parties who should be joined in this action have been joined, plaintiff however reserves its right to institute a deficiency suit following the foreclosure consistent with the appropriate New Jersey Statutes.

FEDERMAN and PHELAN, P.C.

Rosemarie Diamond, Esquire
Attorneys for Plaintiff

Dated: October 11, 2001

6

MB35ü  P330

SCHEDULE A-4          LAND DESCRIPTION          FILE NO.   P-20181

ALL that certain land in the Township of West Deptford, County of Gloucester and State of New Jersey described as follows:

BEGINNING at a point in the Southeasterly line of East Columbia Avenue, also known as East Columbia Boulevard (60 feet wide), distant 150.00 feet Northeastwardly from the intersection of the Southeasterly line of East Columbia Avenue with the Northeasterly line of Red Bank Avenue (66 feet wide), formerly Belmont Avenue, said beginning point being corner to Lot 367 on plan hereinafter mentioned;

thence (1) Northeastwardly along the Southeasterly line of East Columbia Avenue 100.00 feet to a point in the division line between Lots 361 and 363A, said plan;

thence (2) Southeastwardly along said division line, at right angles to East Columbia Avenue, 150.00 feet to a point for a corner common to Lots 361, 362, 363A and 364A, said plan;

thence (3) Southwestwardly along the Northwesterly line of Lots 364A, 364, 366A and 366, said plan, parallel with East Columbia Avenue, 100.00 feet to a point for a corner common to Lots 365, 366, 369A and 370, said plan;

thence (4) Northwestwardly along the Northeasterly line of Lots 369A, 369, 368A, 368, 367A and 367, said plan, at right angles to East Columbia Avenue, 150.00 feet to the point and place of beginning.

BEING Lots 363A, 363, 365A and 365 on plan of lots of City View Heights.

BEING known as No. 1633 East Columbia Avenue.

ALSO BEING known as Lot 13, Block 116, on Plate 8 of the Township of West Deptford tax maps.



EXHIBIT A

NOTICE REQUIRED BY THE FAIR DEBT COLLECTION PRACTICES ACT, (the act), 15.U.S.C. SECTION 1601 AS AMENDED

To the extent the act may apply, please be advised of the following:

1.   The amount of the original debt is stated in paragraph one of the Complaint attached hereto.

2.   The Plaintiff who is named in the attached Summons and Complaint is the Creditor to whom the debt is owed.

3.   The debt described in the Complaint attached hereto and evidenced by the copy of the Mortgage/Note will be assumed to be valid by the Creditor's law firm, unless the Debtor(s), within thirty days after receipt of this notice, disputes, in writing, the validity of the debt or some portion thereof.

4.   If the Debtor notifies the Creditor's law firm in writing within thirty days of the receipt of this notice that the debt or any portion thereof is disputed, the Creditor's law firm will obtain verification of the debt and a copy of the verification will be mailed to the Debtor by the Creditor's law firm.

5.   If the Creditor who is named as Plaintiff in the attached Summons and Complaint is not the original creditor, and if the Debtor makes written request to the Creditor's law firm within thirty (30) days from the receipt of this notice, the name and address of the original Creditor will be mailed to the Debtor by Creditor's law firm.

6.   Written request should be addressed to Federman and Phelan, P.C.216 Haddon Avenue, Suite 505, Westmont, NJ 08108.

# EXHIBIT E

ENTERED ON A.C.M.S.

FILED
SUPERIOR COURT OF NJ

JAN 20 2006

D.F.P.

CH-3403
PHELAN HALLINAN & SCHMIEG, PC
By: Rosemarie Diamond, Esq.
400 Fellowship Road
Suite 100
Mt. Laurel, New Jersey 08054
(856) 813-5500
Attorneys for Plaintiff

| | |
|---|---|
| CHASE MANHATTAN MORTGAGE CORPORATION | SUPERIOR COURT OF NEW JERSEY CHANCERY DIVISION GLOUCESTER COUNTY |
| PLAINTIFF, | |
| VS. | DOCKET NO: F-18980-01 |
| | CIVIL ACTION |
| STACEY A. KOVILARITCH, ET AL. | ORDER SETTING ASIDE JUDGMENT AND EXECUTION DISMISSING FORECLOSURE PROCEEDING AND REINSTATING BOND AND MORTGAGE |
| DEFENDANT (S) | |

This matter being opened to the Court by Federman & Phelan, P.C., Attorneys for Plaintiff, and it appearing that the above entitled action has been amicably settled between the parties, and for good cause shown;

IT IS ORDERED on this _20th_ day of _January_ 2006

ORDERED that the Final Judgment entered in the above-entitled action on August 1, 2002, the Writ of Execution issued on August 1, 2002, be and the same are hereby vacated and set aside; and it is further

ORDERED that the above entitled action is hereby dismissed without prejudice and without costs, in favor of or against any party; and it is further

ORDERED that the bond and mortgage referred to in the complaint, as follows

Dated: October 28, 1997, Made by: Stacey A. Jovilaritch
Mortgage recorded in Gloucester County in Mortgage book 3503, page 329

Be and the same are hereby reinstated and in full force and effect as if the above-entitled action had never been instituted.

Respectfully recommended

_____
J.S.C.

# EXHIBIT F

**U.S. Department of Housing and Urban Development**
Washington, D.C. 20410-8000
September 22, 1998

OFFICE OF THE ASSISTANT SECRETARY
FOR HOUSING-FEDERAL HOUSING COMMISSIONER

**MORTGAGEE LETTER 98- 26**

**TO: ALL APPROVED MORTGAGEES**

**ATTENTION: Single Family Servicing Managers**

**SUBJECT:** **Single Family Default and Foreclosure Servicing**
**Policy and Procedural Changes Including**
**HUD Schedule of Allowable Attorney Fees**

The purpose of this mortgagee letter is to provide guidance for several policy and procedural changes related to the acquisition of title and in the preparation and filing of Single Family Mortgage Insurance Claims.

1.     **HUD's Schedule of Allowable Attorney Fees**

**Background**

Historically, the Department has not published a reimbursement schedule for attorney fees. HUD usually deferred to Fannie Mae's Schedule of Standard Attorney's Fees as a reasonable standard for claim reimbursement because the requirements for default and foreclosure servicing between HUD and Fannie Mae were previously very similar. However, HUD has always reserved the right to reimburse only those costs which it considers to be reasonable and customary.

When HUD Handbook 4330.4, Single Family Insurance Claims, was issued in September 1994, the guidance in effect from Fannie Mae was the Standard Attorney Fee Schedule issued March 1, 1993, along with a May 1993 clarification for Pennsylvania cases. HUD has continued to accept that schedule, along with an additional clarification for Arkansas cases issued by Fannie Mae in November 1994, as the basis for determining reasonable and customary attorney fees.

Since that time, Fannie Mae has issued several changes to their foreclosure, eviction and bankruptcy related servicing requirements. The policy and procedural changes introduced by Fannie Mae relied heavily upon the exclusive use of specific vendors. Because the Department did not adopt that approach, it did not endorse the policy and procedural changes noted in Fannie Mae's Announcements 96-6, 96-12, and 97-5.

To simplify this issue, HUD is issuing its own schedule for establishing reasonable and customary limits for the reimbursement of attorney fees. HUD's Schedule of Attorney Fees is attached.

### Effective Dates for HUD's Schedule of Attorney Fees

### Foreclosures

The HUD Schedule of Attorney Fees will become effective for all cases where the first legal action taken to initiate foreclosure is on or after December 1, 1998. In the interim, mortgagees shall continue to follow the March 1, 1993, Fannie Mae schedule alone, with the May 1993 clarification for Pennsylvania cases and the November 1994 clarification for Arkansas cases.

### Bankruptcy Actions

The HUD Schedule will become effective for all bankruptcy clearances under-taken on or after December 1, 1998. In most cases this event will occur when a petition for a release of the bankruptcy stay is submitted to the bankruptcy court. HUD will not accept the date the lender requests its attorney begin legal action as sufficient. Bankruptcy clearances begun prior to the effective date shall be reimbursed according to the March 1993 Fannie Mae schedule.

### Possessory Actions (Evictions)

The HUD Schedule will become effective for all possessory actions undertaken on or after December 1, 1998. Possessory actions begun prior to the effective date shall be reimbursed according to the March 1993 Fannie Mae schedule.

### Deeds in Lieu of Foreclosure

The HUD Schedule will become effective for all deeds in lieu recorded into HUD's name on or after December 1, 1998. In the interim, mortgagees shall continue to follow the March 1993 Fannie Mae schedule.

**2.** **No Required use of Specific Attorneys**

HUD has not retained the services of a specific group of attorneys for foreclosures and related actions. Mortgagees are expected to use competent attorneys that have the requisite expertise to timely complete foreclosures and related legal actions in the subject jurisdictions. The Department also expects mortgagees to ensure that all foreclosures are completed within established HUD time frames.

**3.    Extension Date for Cases Released from Bankruptcy**

Mortgagee Letter 98-7, issued January 27, 1998, announced a consolidation of the 60 day allowance provided to initiate foreclosure (or otherwise meet the requirements of 24 CFR 203.355), and the 30 day allowance provided if a demand letter was required.

Cases released from bankruptcy on or after February 1, 1998, shall be provided this consolidated 90 day time period to initiate foreclosure or otherwise meet the requirements of 24 CFR 203.355.

**4.    Items Included in Claim Payment**

Mortgagee Letter 98-7, dated January 27, 1998, announced that HUD was changing the percentage of foreclosure and acquisition costs that would be reimbursed. These changes would become effective for all mortgages insured on or after February 1, 1998. This reimbursement percentage will be periodically revised based upon HUD's review of lender performance. All revisions will be announced by Mortgagee Letter in advance of the effective date of the change.

In addition to continuing to identify attorney fees in Item 306 of Form HUD-27011 and foreclosure and acquisition costs in item 307, mortgagees shall identify bankruptcy fees in item 310. (These costs should be carried forward to items 112, 113 and 114, respectively of Form HUD-27011, Part B.) HUD will calculate the appropriate percentage that will be reimbursed in accordance with the performance incentives.

Sincerely,


Ira G. Peppercorn
General Deputy Assistant
   Secretary for Housing


Attachments

## HUD SCHEDULE OF STANDARD ATTORNEY'S FEES

| State | Nonjudicial Foreclosure | Judicial Foreclosure | Bankruptcy Clearance | Possessory Action | Deed-in-Lieu |
|---|---|---|---|---|---|
| AK | $1,000 | | $750 | $350 | $250 |
| AL | $500 | - | $750 | $350 | $300 |
| AR | $500 | $750 | $750 | $250 | $250 |
| AZ | $500 | $500 | $750 | $250 | $200 |
| CA | $600 | - | $750 | $500 | $250 |
| CO | $700 | $550 | $750 | $250 | $200 |
| CT | - | $750 | $750 | $350 | $275 |
| DC | $500 | - | $750 | $350 | $300 |
| DE | - | $650 | $750 | $300 | $275 |
| FL | - | $1,000 | $750 | $350 | $300 |
| GA | $500 | - | $750 | $350 | $300 |
| GU | $1,200 | - | $750 | $350 | $250 |
| HI | - | $1,850 | $750 | $350 | $250 |
| IA | $500 | $725 | $750 | $300 | $250 |
| ID | $400 | - | $750 | $350 | $250 |
| IL | - | $800 | $750 | $300 | $250 |
| IN | - | $750 | $750 | $300 | $250 |
| KS | - | $750 | $750 | $300 | $200 |
| KY | - | $750 | $750 | $350 | $300 |
| LA | - | $750 | $750 | $300 | $200 |
| MA | - | $1,200 | $750 | $600 | $275 |
| MD | $750 | - | $750 | $350 | $300 |
| ME | - | $1,200 | $750 | $500 | $275 |
| MI | $500 | $700 | $750 | $300 | $250 |
| MN | $500 | $800 | $750 | $300 | $250 |
| MO | $550 | $550 | $750 | $300 | $200 |
| MS | $500 | - | $750 | $350 | $300 |
| MT | $575 | - | $750 | $350 | $250 |
| NC | $500 | - | $750 | $350 | $300 |
| ND | - | $800 | $750 | $300 | $250 |
| NE | $500 | $750 | $750 | $300 | $250 |
| NH | $750 | - | $750 | $400 | $275 |
| NJ | - | $1,000 | $750 | $350 | $275 |
| NM | - | 550 | $750 | $250 | $200 |
| NV | $550 | - | $750 | $350 | $250 |
| NY | $750 | 1100 | $750 | $700 | $275 |
| OH | - | $800 | $750 | $300 | $250 |

## HUD SCHEDULE OF STANDARD ATTORNEY'S FEES

| State | Nonjudicial Foreclosure | Judicial Foreclosure | Bankruptcy Clearance | Possessory Action | Deed-in-Lieu |
|-------|------------------------|---------------------|---------------------|-------------------|--------------|
| OK | - | $600 | $750 | $250 | $200 |
| OR | $550 | - | $750 | $350 | $250 |
| PA | - | $800 | $750 | $400 | $275 |
| PR | - | $625 | $750 | $275 | $275 |
| RI | $600 | - | $750 | $500 | $275 |
| SC | - | $750 | $750 | $350 | $300 |
| SD | $500 | $700 | $750 | $300 | $250 |
| TN | $500 | - | $750 | $350 | $300 |
| TX | $450 | - | $750 | $300 | $200 |
| UT | $425 | $550 | $750 | $250 | $200 |
| VA | $500 | - | $750 | $350 | $300 |
| VI | - | $625 | $750 | $275 | $275 |
| VT | - | $700 | $750 | $350 | $275 |
| WA | $550 | - | $750 | $350 | $250 |
| WI | - | $800 | $750 | $300 | $250 |
| WV | $500 | - | $750 | $350 | $300 |
| WY | $600 | - | $750 | $350 | $250 |

# EXHIBIT G



**U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT**
WASHINGTON, D.C. 20410-8000

OFFICE OF THE ASSISTANT SECRETARY
FOR HOUSING-FEDERAL HOUSING COMMISSIONER

**August 24, 2001**

## MORTGAGEE LETTER 2001-19

### TO:  ALL APPROVED MORTGAGEES

**ATTENTION:**       **Single Family Servicing Managers**

**SUBJECT:**       **Single Family Foreclosure Policy and Procedural Changes:**
                        **Non-Judicial Foreclosure in Hawaii;**
                        **First Legal Action to Commence Foreclosure in GU, IA, SD, & VI;**
                        **Reasonable Diligence for Acquiring Possession;**
                        **Update to HUD's Schedule of Allowable Attorney Fees; and**
                        **Update to HUD's Foreclosure Time Frames**

The purpose of this Mortgagee Letter is to provide guidance for several policy and procedural changes related to the acquisition of title and possession, and in the preparation and filing of Single Family Mortgage Insurance Claims.  Specifically, in response to several recent inquiries, this mortgagee letter clarifies under what circumstances non-judicial foreclosure will be acceptable in Hawaii.  In addition, this mortgagee letter provides updates to HUD's Reasonable Diligence Time Frames and Schedule of Attorney Fees for all jurisdictions.  The Department is also confirming its procedure for measuring compliance of the Reasonable Diligence time requirement where lenders must commence legal actions to acquire possession of property.

### 1.     Non-Judicial Foreclosure in Hawaii.

At the time HUD Handbook 4330.4, REV-1, was updated in September 1994, the most common form of foreclosure in Hawaii was judicial foreclosure.  Therefore, there was no reference to the use of non-judicial foreclosure in Hawaii.  However, the Department did not intend to prohibit the payment of claims where the mortgagee obtains title through non-judicial foreclosure in jurisdictions where this was a common form of foreclosure.  In Hawaii a number of mortgagees have begun to use this foreclosure method as a result of the increased willingness of title insurance companies to issue policies for non-judicial foreclosure sales.  Consequently, this Mortgagee Letter clarifies that non-judicial foreclosure is an acceptable foreclosure method in Hawaii, and establishes a reasonable diligence time frame and attorney fee schedule for this foreclosure method.

Effective for all Hawaiian cases where the first legal action to initiate non-judicial foreclosure occurs on or after October 1, 2001, mortgagees' performance in prosecuting non-

judicial foreclosures will be measured according to the reasonable diligence time frames provided in Attachment 2. Also, effective for all Hawaiian cases where the first legal action to initiate non-judicial foreclosure occurs on or after October 1, 2001, mortgagees must follow the updated Schedule of Attorney Fees in Attachment 3. The Department is updating Appendix 6 in Handbook 4330.4, REV-1, to reflect that, in the case of non-judicial foreclosures in Hawaii, publication of a notice of intent to foreclose is the first public action required by law to initiate foreclosure and a mortgage is the typical security instrument used. The updated list in Attachment 1 replaces the list in Appendix 6, Handbook 4330.4, REV-1.

For cases where the first legal action to initiate an Hawaiian non-judicial foreclosure was taken before October 1, 2001, the Department will pay claims for insurance benefits as long as the mortgagee conveys good and marketable title, which is accompanied by title evidence acceptable to the Department. The expectation is that a non-judicial foreclosure should be less time-consuming and expensive to complete than a judicial foreclosure. Consequently, the Department may require reimbursement if the costs claimed or the time to prosecute the foreclosure proceeding are excessive.

2.    **Update of First Legal Action to Commence Foreclosure in GU, IA, SD, & VI**

The Department recently reviewed the guidance it gave in Appendix 6 of Handbook 4330.4, REV-1, on what is the first legal action to commence foreclosure. As a result of this review, the Department has determined that it is necessary to update Appendix 6 to specify the first public action for foreclosure methods inadvertently left off the list. The updated list identifies the first public action for judicial foreclosures in the Virgin Islands and for non-judicial foreclosures in Guam, Iowa, and South Dakota. The updated list as provided in Attachment 1 replaces the list in Appendix 6, Handbook 4330.4, REV-1.

3.    **Reasonable Diligence for Acquiring Possession**

HUD regulation 24 CFR 203.356(b) provides that mortgagees "must exercise reasonable diligence in prosecuting the foreclosure proceedings to completion and in acquiring title to and possession of the property." This regulation also states that HUD will provide mortgagees with time frames in which they must complete reasonable diligence. Prior to the issuance of this Mortgagee Letter, the outstanding guidance listing the state by state time frames was provided in Appendix 7, HUD Handbook 4330.4, Rev-1, dated September 1994. These time frames identified the time between the first public legal action required by the jurisdiction to commence foreclosure and the date that the foreclosure deed (Sheriff's, Trustee's, etc.) or certificate of title is recorded. The Department does not require mortgagees to acquire possession within these time frames when a separate eviction or possessory action is necessary.

When a separate legal action is necessary to gain possession, the Department expects the lender to begin such action immediately after completion of the foreclosure. However, the Department has noted that some lenders are seriously delaying commencement of necessary eviction or possessory actions notwithstanding the reasonable diligence requirement in 24 CFR 203.356(b). Consequently, lenders must take the first public legal action to initiate the eviction or possessory action within thirty calendar days of foreclosure completion. This requirement is

effective for all cases where foreclosure completion occurs after the date of this Mortgagee Letter.

Lenders are cautioned that compliance with this time requirement for initiating legal action only partially satisfies a lender's obligation under 24 CFR 203.356(b) to use reasonable diligence to acquire possession. The thirty day time requirement is only for initiating the legal action, not completing the action. At this time, the Department is not issuing time frames in which lenders must acquire possession because of wide differences in time periods depending upon the location of the property and other factors outside of the lender's control such as sheriff's scheduling and the weather.

Pursuant to 24 CFR 203.365(c), lenders must retain in the claim review file supporting documentation that they acted with reasonable diligence to acquire possession of the property. Lenders will be required to provide written documentation to justify any delays in initiating the legal action to acquire possession. Lenders who do not provide adequate documentation will be required to reimburse the Department for debenture interest paid by HUD for the period after "the particular required action should have been taken." See 24 CFR 203.365(c)(1) and 203.402(k). Although it is impossible to specify all types of appropriate documentation, supporting documentation may include attorney's correspondence or copies of court records.

4.    **Effective Dates for HUD's Reasonable Diligence Foreclosure Time Frames**

The Department is revising the reasonable diligence foreclosure time frames for several jurisdictions. Effective for all cases where the first legal action to initiate foreclosure occurs on or after October 1, 2001, mortgagees' performance in prosecuting foreclosures will be measured according to the reasonable diligence time frames provided in Attachment 2. For cases where the first legal action occurred prior to October 1, 2001, mortgagees shall continue to follow the reasonable diligence time frames identified in Appendix 7 of Handbook 4330.4, REV-1.

5.    **Effective Dates for HUD's Schedule of Attorney Fees**

The Department has decided to revise the attorney fees that it will pay for various legal actions. The revised fees are provided in Attachment 3.

**Foreclosures**

The update to HUD's Schedule of Attorney Fees, as provided in Attachment 3, will become effective for all cases where the first legal action to initiate foreclosure occurs on or after October 1, 2001. In the interim, mortgagees shall continue to follow the HUD Schedule of Attorney Fees that was issued with Mortgagee Letter 98-26 on September 22, 1998.

4

### Bankruptcy Actions

The HUD Schedule of Attorney Fees will become effective for all bankruptcy clearances undertaken on or after October 1, 2001. A bankruptcy clearance begins when a petition for release of the bankruptcy stay is submitted to the bankruptcy court. Bankruptcy clearances begun prior to the effective date shall be reimbursed according to HUD's Schedule of Attorney Fees that was issued with Mortgagee Letter 98-26 on September 22, 1998.

### Possessory Actions (Evictions)

The HUD Schedule of Attorney Fees will become effective for all possessory actions undertaken on or after October 1, 2001. Possessory actions begun prior to the effective date shall be reimbursed according to HUD's Schedule of Attorney Fees that was issued with Mortgagee Letter 98-26 on September 22, 1998.

### Deeds-in-Lieu of Foreclosure

The HUD Schedule of Attorney Fees will become effective for all deeds-in-lieu recorded in HUD's name on or after October 1, 2001. In the interim, mortgagees shall continue to follow HUD Schedule of Attorney Fees that was issued with Mortgagee Letter 98-26 on September 22, 1998.

Sincerely,

John C. Weicher
Assistant Secretary for Housing-
 Federal Housing Commissioner

Attachments

Attachment 1

**ACTION CONSIDERED BY THE**
**DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT**
**AS THE FIRST LEGAL ACTION TO COMMENCE (INSTITUTE) FORECLOSURE**

| State Code | State | Typical Type of HUD Security Instrument | Normal Method of Foreclosure | First Foreclosure Action |
|---|---|---|---|---|
| 01 | Alabama | Mortgage | Non-Judicial | Publication |
| 11 | Alaska | Deed of Trust | Non-Judicial | Recording of Notice of Default |
| 02 | Arizona | Deed of Trust | Non-Judicial | Recording of Notice of Sale |
| 03 | Arkansas | Deed of Trust | Non-Judicial | Recording of Notice of Default |
| 04 | California | Deed of Trust | Non-Judicial | Recording of Notice of Default |
| 05 | Colorado | Deed of Trust | Non-Judicial | Filing of Foreclosure Documents with Public Trustee |
| 06 | Connecticut | Mortgage | Judicial | Delivering Complaint to Sheriff |
| 07 | Delaware | Mortgage | Judicial | Complaint |
| 08 | District of Columbia | Deed of Trust | Non-Judicial | Recording of Notice of Default |
| 09 | Florida | Mortgage | Judicial | Complaint |
| 10 | Georgia | Security Deed | Non-Judicial | Publication |
| 83 | Guam | Mortgage | Non-Judicial | Posting and Publishing of Notice of Sale |
| 14 | Hawaii | Mortgage | Judicial | Complaint |
| | | Mortgage | Non-Judicial | Publication of Notice of Intent to Foreclose |
| 12 | Idaho | Deed of Trust | Non-Judicial | Recording of Notice of Default |
| 13 | Illinois | Mortgage | Judicial | Complaint |
| 15 | Indiana | Mortgage | Judicial | Complaint |
| 16 | Iowa | Mortgage | Judicial | Petition |
| | | Deed of Trust | Non-Judicial | Delivering Notice to Clerk |
| 18 | Kansas | Mortgage | Judicial | Complaint |
| 20 | Kentucky | Mortgage | Judicial | Complaint |
| 22 | Louisiana | Mortgage | Judicial | Petition for Executory Process |
| 23 | Maine | Mortgage | Judicial | Complaint |
| 24 | Maryland | Mortgage | Judicial | Petition in Equity |
| | | Deed of Trust | Non-Judicial | Filing an Order to Docket |
| 25 | Massachusetts | Mortgage | Judicial | Filing of Complaint Relative to Soldiers' and Sailors' Relief Act |
| 26 | Michigan | Mortgage | Non-Judicial | Publication |
| 27 | Minnesota | Mortgage Deed | Non-Judicial | Publication |
| 28 | Mississippi | Deed of Trust | Non-Judicial | Publication |

Attachment 1

| 29 | Missouri | Deed of Trust | Non-Judicial | Publication |

**ACTION CONSIDERED BY THE**
**DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT**
**AS THE FIRST LEGAL ACTION TO COMMENCE (INSTITUTE) FORECLOSURE**

| State Code | State | Typical Type of HUD Security Instrument | Normal Method of Foreclosure | First Foreclosure Action |
|---|---|---|---|---|
| 31 | Montana | Trust Indenture | Non-Judicial | Recording of Notice of Sale |
| 32 | Nebraska | Mortgage | Judicial | Petition |
|  |  | Deed of Trust | Non-Judicial | Publication of Notice of Sale |
| 33 | Nevada | Deed of Trust | Non-Judicial | Recording of Notice of Default |
| 34 | New Hampshire | Mortgage | Non-Judicial | Publication |
| 35 | New Jersey | Mortgage | Judicial | Complaint |
| 36 | New Mexico | Mortgage | Judicial | Complaint |
| 37 | New York | Mortgage | Judicial | Complaint |
| 38 | North Carolina | Deed of Trust | Non-Judicial | Notice of Hearing |
| 40 | North Dakota | Mortgage | Judicial | Complaint |
| 41 | Ohio | Mortgage Deed | Judicial | Complaint |
| 42 | Oklahoma | Mortgage | Judicial | Petition |
| 43 | Oregon | Deed of Trust | Non-Judicial | Recording of Notice of Default |
| 44 | Pennsylvania | Mortgage | Judicial | Complaint |
| 50 | Puerto Rico | Mortgage | Judicial | Complaint |
| 45 | Rhode Island | Mortgage | Non-Judicial | Publication |
| 46 | South Carolina | Mortgage | Judicial | Complaint |
| 47 | South Dakota | Mortgage | Judicial | Complaint |
|  |  | Deed of Trust | Non-Judicial | Publication of Notice of Sale |
| 48 | Tennessee | Deed of Trust | Non-Judicial | Publication |
| 49 | Texas | Deed of Trust | Non-Judicial | Posting and Filing of the Notice of Sale |
| 52 | Utah | Mortgage | Judicial | Complaint |
|  |  | Deed of Trust | Non-Judicial | Recording of Notice of Default |
| 53 | Vermont | Mortgage | Judicial | Complaint |
| 54 | Virginia | Deed of Trust | Non-Judicial | Publication |
| 82 | Virgin Islands | Mortgage | Judicial | Complaint |
| 56 | Washington | Deed of Trust | Non-Judicial | Recording of Notice of Sale |
| 57 | West Virginia | Deed of Trust | Non-Judicial | Publication |
| 58 | Wisconsin | Mortgage | Judicial | Complaint |
| 59 | Wyoming | Mortgage | Non-Judicial | Publication |

Attachment 1

Attachment 3

## HUD SCHEDULE OF STANDARD ATTORNEY'S FEES – EFFECTIVE 10/1/2001

| STATE | NONJUDICIAL FORECLOSURE | JUDICIAL FORECLOSURE | BANKRUPTCY CLEARANCE | POSSESSORY ACTION | DEED-IN-LIEU |
|---|---|---|---|---|---|
| AK | $1,200 | | $750 | $350 | $350 |
| AL | $550[1] | | $750 | $350 | $350 |
| AR | $600 | | $750 | $250 | $350 |
| AZ | $625 | | $750 | $250 | $350 |
| CA | $600 | | $750 | $500 | $350 |
| CO | $800 | | $750 | $250 | $350 |
| CT | | $1300[2] | $750 | $350 | $350 |
| DC | $600[1] | | $750 | $350 | $350 |
| DE | | $950 | $750 | $300 | $350 |
| FL | | $1,200 | $750 | $350 | $350 |
| GA | $600[1,3] | | $750 | $350 | $350 |
| GU | $1,200 | | $750 | $350 | $350 |
| HI | $1,200 | $1,850 | $750 | $500 | $350 |
| IA | $550 | $850 | $750 | $300 | $350 |
| ID | $600 | | $750 | $350 | $350 |
| IL | | $1,100[5] | $750 | $300 | $350 |
| IN | | $1,000 | $750 | $300 | $350 |
| KS | | $850 | $750 | $300 | $350 |
| KY | | $1,100 | $750 | $350 | $350 |
| LA | | $900 | $750 | $300 | $350 |
| MA | | $1,250 | $750 | $600 | $350 |
| MD | $800[1,3] | $800 | $750 | $350 | $350 |
| ME | | $1,250 | $750 | $500 | $350 |
| MI | $650[6] | | $750 | $300 | $350 |
| MN | $650 | | $750 | $300 | $350 |
| MO | $650 | | $750 | $300 | $350 |
| MS | $550[1] | | $750 | $350 | $350 |
| MT | $600 | | $750 | $350 | $350 |
| NC | $550[1] | | $750 | $350 | $350 |
| ND | | $900 | $750 | $300 | $350 |
| NE | $600[7] | $850 | $750 | $300 | $350 |
| NH | $900 | | $750 | $400 | $350 |
| NJ | | $1,300 | $750 | $350 | $350 |
| NM | | $900 | $750 | $250 | $350 |
| NV | $600 | | $750 | $350 | $350 |
| NY | | $1,250[8] | $750 | $700 | $350 |
| OH | | $1,100 | $750 | $300 | $350 |
| OK | | $900[5] | $750 | $250 | $350 |
| OR | $675 | | $750 | $350 | $350 |
| PA | | $1,250[9] | $750 | $400 | $350 |
| PR | | $1,100[10] | $750 | $275 | $350 |

Attachment 3

| | | | | | |
|---|---|---|---|---|---|
| RI | $900 | | $750 | $500 | $350 |
| SC | | $800 | $750 | $350 | $350 |
| SD | $550 | $850 | $750 | $300 | $350 |
| TN | $550[1] | | $750 | $350 | $350 |
| TX | $550 | | $750 | $300 | $350 |
| UT | $600 | $550 | $750 | $250 | $350 |
| VA | $600[1,3] | | $750 | $350 | $350 |
| VI | | $1,100 | $750 | $275 | $350 |
| VT | | $950 | $750 | $350 | $350 |
| WA | $675 | | $750 | $350 | $350 |
| WI | | $1,100 | $750 | $300 | $350 |
| WV | $550[1,3] | | $750 | $350 | $350 |
| WY | $600 | | $750 | $350 | $350 |

**Footnotes:**

(1)   The fee covers the combined attorney's and notary's fees
(2)   This fee applies to strict foreclosures.  If the foreclosure orders a Foreclosure by Sale, the fee will be $1500.
(3)   The fee covers both the attorney's fee and the trustee's commission (or statutory fee).
(4)   The fee includes reimbursement of any fee for the attorney's certificate of title.
(5)   The fee increases by $100 if foreclosure is achieved by summary judgment.
(6)   The fee increases to $1050 for a nonjudicial foreclosure for a case in which the attorney provides services for "proceedings subsequent" that involve registered land.
(7)   This fee relates to the exercise of the power of sale under a deed of trust.
(8)   This fee applies to foreclosures other than those conducted in New York City  and Long Island.  A fee of $1800 applies to foreclosures conducted in the five boroughs of New York City (Bronx, Brooklyn/Kings, Manhattan, Queens and Staten Island) and in Long Island (Nassau and Suffolk Counties).
(9)   The fee covers certain additional legal actions necessary to complete the foreclosure, including motions to postpone or relist a sale and motions to reassess damages.
(10)  In addition to the allowable foreclosure fee, $150 is allowed for a notary fee for completed foreclosures.  However, if a deed of judicial sale cannot be executed contemporaneously with the foreclosure sale, $300 is allowed for the notary fee.

# EXHIBIT H

US Bankruptcy Court NJ - Live Database - Docket Report                    Page 1 of 4

**DISMISS, CLOSED**

# U.S. Bankruptcy Court
## District of New Jersey (Camden)
## Bankruptcy Petition #: 02-10429-GMB

| | |
|---|---|
| *Assigned to:* Judge Gloria M. Burns | *Date Filed:* 01/14/2002 |
| Chapter 13 | *Date Terminated:* 04/02/2003 |
| Voluntary | *Date Dismissed:* 08/12/2002 |
| Asset | |

**Debtor**
**Michael Coleman**                    represented by **Lewis G. Adler**
169 Columbia Avenue                            Law Office of Lewis Adler
Thorofare, NJ 08086                            26 Newton Avenue
SSN: xxx-xx-2353                               Woodbury, NJ 08096
*dba*                                          856-845-1968
**Outdoor Restoration**                        Fax : 856-848-9504
*dba*                                          Email:
**21st Century Deck Rebuilders**               lewisadler@verizon.net

**Debtor**
**Stacey Coleman**                     represented by **Lewis G. Adler**
169 Columbia Avenue                            (See above for address)
Thorofare, NJ 08086
SSN: xxx-xx-8132
*aka*
**Stacey Kovilaritch**

**Trustee**
**Isabel C. Balboa**
Chapter 13 Standing Trustee
Cherry Tree Corporate Center
535 Route 38, Suite 580
Cherry Hill, NJ 08002
(856) 663-5002

| Filing Date | # | Docket Text |
|---|---|---|
| 01/14/2002 | 1 | Chapter 13 Voluntary Petition filed. [eag] (Entered: 01/14/2002) |
| 01/14/2002 | | Filing Fee Paid, Receipt #: 231722 in the Amount of $ 185.00. [eag] (Entered: 01/14/2002) |
| 01/14/2002 | | First Meeting of Creditors Scheduled For 3:00 2/21/02 At Chp 13 Hearing Rm, Cherry Hill . Last Day to File Proofs Of Claim: 5/22/02 . [eag] (Entered: 01/14/2002) |

| 01/14/2002 | 2 | Chapter 13 Plan Filed. [ldc] (Entered: 01/16/2002) |
|---|---|---|
| 01/14/2002 | 3 | Notice and Order to Debtor and Debtor's Counsel to pay Trustee per Chapter 13 Plan with Court's Certificate of Mailing. # of Notices: 4. [ldc] Additional attachment(s) added on 8/21/2003 (jmv, ). (Entered: 01/18/2002) |
| 01/14/2002 | 5 | Summary of Chapter 13 Plan filed by Lewis G. Adler, Esq. for Debtors Michael and Stacey Coleman. Confirmation Hearing Set For 10:00 6/5/02 at Courtroom 4C, 4th Floor, Camden. Objection to Confirmation Due: 5/28/02. [klf] (Entered: 01/22/2002) |
| 01/16/2002 | 4 | Courts Certificate of Mailing Re: [0-0] First Meeting. # of Notices: 18. [ldc] Additional attachment(s) added on 8/21/2003 (jmv, ). (Entered: 01/18/2002) |
| 01/24/2002 | 6 | Courts Certificate of Mailing Re: [5-1] Summary Of Chapter 13 Plan and Confirmation Hearing. # of Notices: 18. [klf] Additional attachment(s) added on 8/21/2003 (jmv, ). (Entered: 01/25/2002) |
| 03/08/2002 | 7 | Notice of Appearance And Request For Service Of Notice By Rosemarie Diamond for Creditor Chase Manhattan Mortgage Corporation. [bed] Additional attachment(s) added on 8/21/2003 (jmv, ). (Entered: 03/12/2002) |
| 04/30/2002 | 8 | Motion for Relief from Stay re: 1633 E. Columbia Avenue, West Deptford, NJ Filed by Jaimie B. Finberg on behalf of Chase Manhattan Mortgage Corporation. Hearing scheduled for 5/28/2002 at 10:00 AM at GMB - Courtroom 4C, Camden. (Attachments: # 1 Certification # 2 Certificate of Service # 3 Proposed Order) (mef, ) (Entered: 05/07/2002) |
| 04/30/2002 | | Receipt of Motion Filing Fee -- Fee Amount $ 75, Receipt Number 000238789 (related document(s)8). (mef, ) (Entered: 05/07/2002) |
| 05/08/2002 | 9 | Certificate of Service re: Motion Relief from Stay filed by Jaimie B. Finberg on behalf of Chase Manhattan Mortgage Corporation (related document(s)8). (bed, ) (Entered: 05/13/2002) |
| 05/28/2002 | | Hearing Held, OUTCOME: Granted, order signed (related document (s)8). (cmf, ) (Entered: 05/30/2002) |
| 05/29/2002 | 10 | Order Dismissing Motion For Relief From Stay re: 1633 E. Columbia Avenue West Deptford, NJ (Related Doc # 8) Signed on 5/29/2002. (bed, ) (Entered: 05/31/2002) |
| 06/05/2002 | | Hearing Rescheduled from 6/5/02 (related document(s)5). Hearing |

US Bankruptcy Court NJ - Live Database - Docket Report                    Page 3 of 4

| | | |
|---|---|---|
| | | scheduled for 8/7/2002 at 10:00 AM at GMB - Courtroom 4C, Camden. (cmf, ) (Entered: 06/05/2002) |
| 06/17/2002 | 11 | Notice of Appearance and Request for Service of Notice filed by Barbara K. Hamilton on behalf of Household Bank and its Assgns by Ecast Settlement Corporation as its agent. (bed, ) (Entered: 06/19/2002) |
| 08/07/2002 | | Hearing Held, OUTCOME: Case dismissed (related document(s)5). (cmf, ) (Entered: 08/07/2002) |
| 08/12/2002 | 12 | Order Dismissing Case re: Debtors' Failure to File all Required Schedules, Plan, Tax Returns, Evidence of Income and to Attend Confirmation Hearing . The following parties were served: Trustee and Debtors' Attorney. Signed on 8/12/2002. (vab, ) (Entered: 08/13/2002) |
| 08/15/2002 | 13 | BNC Certificate of Service - Order Dismissing Case. No. of Notices: 23. Service Date 08/15/02. (Related Doc # 12) (Admin.) (Entered: 08/16/2002) |
| 10/16/2002 | 14 | Chapter 13 Trustee Final Report and Account (Dismissal). (Balboa, Isabel) (Entered: 10/16/2002) |
| 02/11/2003 | 15 | Objection to Debtor's Expenses Filed by Isabel C. Balboa on behalf of Isabel C. Balboa. (Attachments: # 1 Certificate of Service) (Balboa, Isabel) ERROR IN DOCKETING - PDF ENTERED ON WRONG CASE Modified on 4/2/2003 (mrm). (Entered: 02/11/2003) |
| 04/02/2003 | 16 | Final Decree; The following parties were served: Trustee and UST. Signed on 4/2/2003. (jpp, ) (Entered: 04/02/2003) |
| 04/02/2003 | | Bankruptcy Case (02-10429) Closed. (jpp, ) (Entered: 04/02/2003) |
| 04/02/2003 | | Correction Notice in Electronic Filing (related document:15 Objection to Debtor's Expenses filed by Trustee Isabel C. Balboa). Type of Error: PDF Entered on Wrong Case, filed by Isabel Balboa, Esq. Please correct and refile with the court. (mrm) (Entered: 04/02/2003) |

| PACER Service Center |
|---|
| **Transaction Receipt** |
| |

US Bankruptcy Court NJ - Live Database - Docket Report

| 08/28/2008 14:16:25 | | | |
|---|---|---|---|
| PACER Login: | bw0116 | Client Code: | 09135-00292 |
| Description: | Docket Report | Search Criteria: | 02-10429-GMB Fil or Ent: filed Doc From: 0 Doc To: 99999999 Term: included Format: HTML |
| Billable Pages: | 2 | Cost: | 0.16 |

**CLOSED**

# U.S. Bankruptcy Court
## District of New Jersey (Camden)
## Bankruptcy Petition #: 02-19883-JHW

*Assigned to:* Judge Judith H. Wizmur
Chapter 13
Voluntary
Asset

*Date Filed:* 10/10/2002
*Date Terminated:* 12/03/2003
*Date Dismissed:* 06/13/2003

*Debtor*
**Michael Coleman**
169 Columbia Ave
Thorofare, NJ 08086-0000
SSN: xxx-xx-2353
*aka*
**Outdoor Restoration**
*aka*
**21st Century Deck Builders**

represented by **Lewis G. Adler**
Law Office of Lewis Adler
26 Newton Avenue
Woodbury, NJ 08096
856-845-1968
Fax : 856-848-9504
Email:
lewisadler@verizon.net

*Joint Debtor*
**Stacey Coleman**
169 Columbia Ave
Thorofare, NJ 08086-0000
SSN: xxx-xx-8132
*aka*
**Stacey Kovilaritch**

represented by **Lewis G. Adler**
(See above for address)

*Trustee*
**Isabel C. Balboa**
Chapter 13 Standing Trustee
Cherry Tree Corporate Center
535 Route 38, Suite 580
Cherry Hill, NJ 08002
(856) 663-5002

| Filing Date | # | Docket Text |
|---|---|---|
| 10/10/2002 | 1 | Chapter 13 Voluntary Petition Filed by Lewis G Adler on behalf of Michael Coleman. (cg) Additional attachment(s) added on 10/11/2002 (lgr, ). (Entered: 10/10/2002) |
| 10/10/2002 | 2 | Receipt of Case Filing Fee -- Fee Amount $ 185.00, Receipt Number 249058. (cg) (Entered: 10/10/2002) |
| 10/10/2002 | 3 | Chapter 13 Summary, Chapter 13 Plan Filed by Michael Coleman, |

| | | |
|---|---|---|
| | | Stacey Coleman. Confirmation hearing to be held on 2/26/2003 at 02:00 PM at JHW - Courtroom 4B, Camden. Last day to Object to Confirmation 2/17/2003. (jpl, ) (Entered: 10/15/2002) |
| 10/11/2002 | | Meeting of Creditors. 341(a) meeting to be held on 11/21/2002 at 09:00 AM at Cherry Hill Chapter 13 (Camden). Proofs of Claim due by 2/19/2003. (lgr, ) (Entered: 10/11/2002) |
| 10/13/2002 | 5 | BNC Certificate of Service - Meeting of Creditors. No. of Notices: 17. Service Date 10/13/02. (Admin.) (Entered: 10/18/2002) |
| 10/13/2002 | 6 | Notice and Order to Pay Trustee No. of Notices: 4. Service Date 10/13/02. (Admin.) (Entered: 10/18/2002) |
| 10/17/2002 | 4 | BNC Certificate of Service - Chapter 13 Summary No. of Notices: 18. Service Date 10/17/02. (Related Doc # 3) (Admin.) (Entered: 10/18/2002) |
| 11/12/2002 | 7 | Notice of Appearance and Request for Service of Notice filed by Jaimie B. Finberg on behalf of Chase Manhattan Mortgage Corporation. (def, ) (Entered: 11/13/2002) |
| 11/12/2002 | 8 | Objection to Confirmation of Plan Filed by Jaimie B. Finberg on behalf of Chase Manhattan Mortgage Corporation (related document (s)3). (def, ) (Entered: 11/13/2002) |
| 01/14/2003 | 9 | Notice of Appearance and Request for Service of Notice filed by Becket & Lee on behalf of eCast Settlement Corporation. (def, ) (Entered: 01/16/2003) |
| 01/14/2003 | 10 | Notice of Appearance and Request for Service of Notice filed by Becket & Lee on behalf of eCast Settlement Corporation. (def, ) (Entered: 01/16/2003) |
| 02/26/2003 | | Hearing Rescheduled from 2/26/2003. (related document:3 Chapter 13 Summary, Chapter 13 Plan filed by Debtor Michael Coleman, Joint Debtor Stacey Coleman) Hearing scheduled for 4/23/2003 at 02:00 PM at JHW - Courtroom 4B, Camden. (bde, ) (Entered: 02/27/2003) |
| 03/06/2003 | 12 | Certificate of Consent (related document:11 Consent Order, filed by Creditor Chase Manhattan Mortgage Corporation). Filed by Jaimie B. Finberg on behalf of Chase Manhattan Mortgage Corporation. (hah, ) (Entered: 03/07/2003) |
| 03/07/2003 | 11 | Consent Order re: Resolving Objection to Confirmation, (related document:8 Objection filed by Creditor Chase Manhattan Mortgage |

| | | |
|---|---|---|
| | | Corporation). Filed by Jaimie B. Finberg on behalf of Chase Manhattan Mortgage Corporation . The following parties were served: debtors, debtors' attorney, trustee, movant's attorney. Signed on 3/7/2003. (hah) (Entered: 03/07/2003) |
| 03/09/2003 | 13 | BNC Certificate of Service - Order No. of Notices: 3. Service Date 03/09/2003. (Related Doc # 11) (Admin.) (Entered: 03/10/2003) |
| 03/21/2003 | | Confirmation Hearing Rescheduled (related document:3 Chapter 13 Summary, Chapter 13 Plan filed by Debtor Michael Coleman, Joint Debtor Stacey Coleman) Confirmation hearing to be held on 4/9/2003 at 10:00 AM at JHW - Courtroom 4B, Camden. (bc, ) (Entered: 03/21/2003) |
| 04/09/2003 | | Confirmation Hearing Rescheduled (related document: Confirmation Hearing Rescheduled,, 3 Chapter 13 Summary, Chapter 13 Plan and Motions filed by Debtor Michael Coleman, Joint Debtor Stacey Coleman) Confirmation hearing to be held on 6/11/2003 at 10:00 AM at JHW - Courtroom 4B, Camden. Last day to Object to Confirmation 6/4/2003. (bc, ) (Entered: 04/09/2003) |
| 04/23/2003 | | Minute of Hearing Held, OUTCOME: Confirmation to be held 6/11/2003 at 10 AM.(related document:3 Chapter 13 Summary, Chapter 13 Plan and Motions filed by Debtor Michael Coleman, Joint Debtor Stacey Coleman) (bde, ) (Entered: 04/23/2003) |
| 06/11/2003 | | Minute of Hearing Held, OUTCOME: case dismissed.(related document:3 Chapter 13 Summary, Chapter 13 Plan and Motions filed by Debtor Michael Coleman, Joint Debtor Stacey Coleman) (bc, ) (Entered: 06/11/2003) |
| 06/13/2003 | 14 | Order Dismissing Case re: Failure To File Tax Returns. The following parties were served: All Interested Parties. Signed on 6/13/2003. (kvr, ) (Entered: 06/13/2003) |
| 06/15/2003 | 15 | BNC Certificate of Service - Order Dismissing Case. No. of Notices: 27. Service Date 06/15/2003. (Related Doc # 14) (Admin.) (Entered: 06/16/2003) |
| 06/15/2003 | 16 | BNC Certificate of Service - Order No. of Notices: 3. Service Date 06/15/2003. (Related Doc # 14) (Admin.) (Entered: 06/16/2003) |
| 11/20/2003 | 17 | Chapter 13 Trustee Final Report and Account (Dismissal) filed by Isabel C. Balboa. (Balboa, Isabel) (Entered: 11/20/2003) |
| 12/03/2003 | 18 | Final Decree; Case Closed. The following parties were served: Trustee, UST. Signed on 12/3/2003. (er, ) (Entered: 12/03/2003) |

US Bankruptcy Court NJ - Live Database - Docket Report                    Page 4 of 4

| 12/03/2003 | | Bankruptcy Case Closed (er, ) (Entered: 12/03/2003) |
|---|---|---|

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 08/28/2008 14:17:11 | | | |
| PACER Login: | bw0116 | Client Code: | 09135-00292 |
| Description: | Docket Report | Search Criteria: | 02-19883-JHW Fil or Ent: filed Doc From: 0 Doc To: 99999999 Term: included Format: HTML |
| Billable Pages: | 2 | Cost: | 0.16 |

US Bankruptcy Court NJ - Live Database - Docket Report                    Page 1 of 6

**DISMISSED, CLOSED**

## U.S. Bankruptcy Court
### District of New Jersey (Camden)
### Bankruptcy Petition #: 03-38329-GMB

*Assigned to:* Judge Gloria M. Burns
Chapter 13
Voluntary
Asset

*Date Filed:* 08/27/2003
*Date Terminated:* 06/27/2006
*Date Dismissed:* 01/27/2006

*Debtor*
**Michael Coleman**
169 Columbia Avenue
Thorofare, NJ 08086-0000
SSN: xxx-xx-2353
*dba*
**Outdoor Restoration**
*dba*
**21st Century Deck Builders**

represented by **Lewis G. Adler**
Law Office of Lewis Adler
26 Newton Avenue
Woodbury, NJ 08096
856-845-1968
Fax : 856-848-9504
Email:
lewisadler@verizon.net

*Joint Debtor*
**Stacey Coleman**
169 Columbia Avenue
Thorofare, NJ 08086-0000
SSN: xxx-xx-8132
*aka*
**Stacey Kovilaritch**

represented by **Lewis G. Adler**
(See above for address)

*Trustee*
**Isabel C. Balboa**
Chapter 13 Standing Trustee
Cherry Tree Corporate Center
535 Route 38, Suite 580
Cherry Hill, NJ 08002
(856) 663-5002

| Filing Date | # | Docket Text |
|---|---|---|
| 08/27/2003 | 1 | Chapter 13 Voluntary Petition Filed by Lewis G Adler on behalf of Michael Coleman. (eg) Additional attachment(s) added on 8/28/2003 (lgr, ). (Entered: 08/28/2003) |
| 08/27/2003 | 2 | Receipt of Case Filing Fee -- Fee Amount $ 185.00, Receipt Number 269456. (eg) (Entered: 08/27/2003) |
| 08/27/2003 | 6 | Chapter 13 Plan, Motions Included: None. Filed by Lewis G. Adler |

| | | |
|---|---|---|
| | | on behalf of Michael Coleman, Stacey Coleman. (kaj, ) (Entered: 09/02/2003) |
| 08/28/2003 | 3 | Meeting of Creditors 341(a) meeting to be held on 10/2/2003 at 03:00 PM at Cherry Hill Chapter 13 (Camden). Proofs of Claim due by 12/31/2003. (lgr, ) (Entered: 08/28/2003) |
| 08/30/2003 | 4 | Notice and Order to Pay Trustee No. of Notices: 4. Service Date 08/30/2003. (Related Doc # 3) (Admin.) (Entered: 08/31/2003) |
| 08/30/2003 | 5 | BNC Certificate of Service - Meeting of Creditors. No. of Notices: 17. Service Date 08/30/2003. (Related Doc # 3) (Admin.) (Entered: 08/31/2003) |
| 09/03/2003 | 7 | Confirmation Hearing Scheduled (related document:6 Chapter 13 Plan, Motions Included: None. Filed by Lewis G. Adler on behalf of Michael Coleman, Stacey Coleman. (kaj). Confirmation hearing to be held on 1/21/2004 at 11:00 AM at GMB - Courtroom 4C, Camden. Last day to Object to Confirmation 1/14/2004. (kaj, ) (Entered: 09/03/2003) |
| 09/04/2003 | 8 | BNC Certificate of Service - Chapter 13 Plan No. of Notices: 18. Service Date 09/04/2003. (Related Doc # 6) (Admin.) (Entered: 09/06/2003) |
| 09/05/2003 | 9 | BNC Certificate of Service - Chapter 13 Confirmation Hearing No. of Notices: 18. Service Date 09/05/2003. (Related Doc # 7) (Admin.) (Entered: 09/06/2003) |
| 09/16/2003 | 10 | Notice of Appearance and Request for Service of Notice filed by R. A. Lebron on behalf of Chase Manhattan Mortgage Corporation. (Lebron, R.) (Entered: 09/16/2003) |
| 09/16/2003 | 11 | First Objection to (related document:6 Chapter 13 Plan and Motions filed by Debtor Michael Coleman, Joint Debtor Stacey Coleman) filed by R. A. Lebron on behalf of Chase Manhattan Mortgage Corporation. (Lebron, R.) (Entered: 09/16/2003) |
| 01/21/2004 | | Confirmation Hearing Rescheduled (related document:7 Confirmation Hearing Scheduled,, 6 Chapter 13 Plan and Motions filed by Debtor Michael Coleman, Joint Debtor Stacey Coleman) Confirmation hearing to be held on 3/3/2004 at 11:00 AM at GMB - Courtroom 4C, Camden. Last day to Object to Confirmation 2/25/2004. (cmf, ) (Entered: 01/21/2004) |
| 03/03/2004 | | Confirmation Hearing Rescheduled (related document: Confirmation Hearing Rescheduled,, 6 Chapter 13 Plan and Motions filed by |

|  |  | Debtor Michael Coleman, Joint Debtor Stacey Coleman) Confirmation hearing to be held on 4/21/2004 at 11:00 AM at GMB - Courtroom 4C, Camden. Last day to Object to Confirmation 4/14/2004. (cmf, ) (Entered: 03/03/2004) |
|---|---|---|
| 04/21/2004 |  | Confirmation Hearing Rescheduled (related document: Confirmation Hearing Rescheduled,, 6 Chapter 13 Plan and Motions filed by Debtor Michael Coleman, Joint Debtor Stacey Coleman) Confirmation hearing to be held on 5/19/2004 at 11:00 AM at GMB - Courtroom 4C, Camden. Last day to Object to Confirmation 5/12/2004. (cmf, ) (Entered: 04/21/2004) |
| 05/17/2004 | 13 | Consent Order Resolving Objection To Confirmation, (related document:11 Objection filed by Creditor Chase Manhattan Mortgage Corporation, 12 Certificate of Consent filed by Creditor Chase Manhattan Mortgage Corporation) Filed by R. A. Lebron. The following parties were served: Attorney for Debtors, Attorney for Chase Manhattan Mortgage Corporation, Trustee, UST. Signed on 5/17/2004. (amm, ) (Entered: 05/19/2004) |
| 05/18/2004 | 12 | Certificate of Consent. Filed by R. A. Lebron on behalf of Chase Manhattan Mortgage Corporation. (Lebron, R.) (Entered: 05/18/2004) |
| 05/19/2004 |  | Minute of Hearing Held, OUTCOME: Confirmed @ $580 for 51 mos..(related document:6 Chapter 13 Plan and Motions filed by Debtor Michael Coleman, Joint Debtor Stacey Coleman, Confirmation Hearing Rescheduled, ) (cmf, ) (Entered: 05/19/2004) |
| 06/07/2004 | 14 | Amended Schedule(s) : Schedules B and I filed by LEWIS G. ADLER ON BEHALF OF Michael Coleman, Stacey Coleman. (kvr, ) Modified on 6/8/2004 TO MODIFY DOCKET TEXT (er, ). (Entered: 06/08/2004) |
| 06/07/2004 | 15 | Certification of Non Compliance (related document:14 Amended Schedules filed by Debtor Michael Coleman, Joint Debtor Stacey Coleman) filed by Lewis G. Adler ON BEHALF OF LEWIS G. ADLER (kvr, ) Modified on 6/8/2004 TO REFLECT CORRECT FILER (er, ). Modified on 6/24/2004 TO DELETE NON-FILER (ld). (Entered: 06/08/2004) |
| 07/06/2004 | 16 | Order Confirming Chapter 13 Plan (related document: Confirmation Hearing Rescheduled, 6 Chapter 13 Plan and Motions filed by Debtor Michael Coleman, Joint Debtor Stacey Coleman). Payment Schedule: $580.00 monthly for 51 months. Attorney's Fee: $2,000.00. The following parties were served: Attorney for Debtors, Attorney for Chase Manhattan Mortgage Corp., Trustee, UST. Signed on 7/6/2004. (amm, ) (Entered: 07/07/2004) |
|  |  |  |

| | | |
|---|---|---|
| 07/09/2004 | 17 | BNC Certificate of Service - Order No. of Notices: 1. Service Date 07/09/2004. (Admin.) (Entered: 07/10/2004) |
| 10/22/2004 | 18 | Motion for Prospective Relief, Motion to Reinstate Case, Motion for Relief from Stay re: 169 Columbia Ave Thorofare, NJ. Fee Amount $ 150. Filed by R. A. Lebron on behalf of Chase Manhattan Mortgage Corporation. Hearing scheduled for 11/15/2004 at 10:00 AM at GMB - Courtroom 4C, Camden. (Attachments: # 1 Certificate of Service # 2 Attorney Cert# 3 Mortgagee Cert# 4 Proposed Order) (Lebron, R.) (Entered: 10/22/2004) |
| 10/22/2004 | | Receipt of filing fee for Motion for Relief From Stay(03-38329-GMB) [motion,mrlfsty] ( 150.00). Receipt number 4718814, amount $ 150.00. (U.S. Treasury) (Entered: 10/22/2004) |
| 11/15/2004 | | Minute of Hearing Held, OUTCOME: Settled, OTBS.(related document:18 Motion for Prospective ReliefMotion to Reinstate CaseMotion to Reinstate CaseMotion for Relief from Stay re: 169 Columbia Ave Thorofare, NJ. Fee Amount $ 150.Motion for Relief from Stay re: 169 Columbia Ave Thorofare, NJ. Fee Amount $ 150. filed by Creditor Chase Manhattan Mortgage Corporation) (cmf, ) (Entered: 11/15/2004) |
| 11/23/2004 | 19 | Certificate of Service (related document:18 Prospective Relief,, Motion to Reinstate Case,, Motion for Relief From Stay, filed by Creditor Chase Manhattan Mortgage Corporation) filed by R. A. Lebron on behalf of Chase Manhattan Mortgage Corporation. (Lebron, R.) Modified on 11/24/2004 TO REFLECT DOCUMENT FILED IN WRONG CASE (dac). (Entered: 11/23/2004) |
| 11/23/2004 | 20 | Certificate of Service (related document:18 Prospective Relief,, Motion to Reinstate Case,, Motion for Relief From Stay, filed by Creditor Chase Manhattan Mortgage Corporation) filed by R. A. Lebron on behalf of Chase Manhattan Mortgage Corporation. (Lebron, R.) (Entered: 11/23/2004) |
| 12/01/2004 | 21 | Order Resolving Motion for Prospective Relief and Resolving Motion For Relief From Stay re: 169 Columbia Avenue f/k/a 1633 E. Columbia Avenue, West Deptford, NJ 08086 (Related Doc # 18). The following parties were served: Debtor, Debtor's Attorney, Attorney for Chase Manhattan Mortgage Corporation, Trustee and US Trustee. Signed on 12/1/2004. (da) (Entered: 12/03/2004) |
| 12/05/2004 | 22 | BNC Certificate of Service - Order No. of Notices: 3. Service Date 12/05/2004. (Admin.) (Entered: 12/07/2004) |
| 02/02/2005 | 23 | Certification of Standing Trustee filed by Isabel C. Balboa. Objection deadline is 2/14/2005. (Attachments: # 1 Proposed Order # 2 |

US Bankruptcy Court NJ - Live Database - Docket Report                     Page 5 of 6

| | | |
|---|---|---|
| | | Certificate of Service)(Balboa (NA), Isabel) (Entered: 02/02/2005) |
| 02/11/2005 | 24 | Objection to (related document:23 Certification of Standing Trustee filed by Trustee Isabel C. Balboa) filed by Lewis G. Adler on behalf of Michael Coleman. (Adler, Lewis) (Entered: 02/11/2005) |
| 02/17/2005 | 25 | Notice of Hearing for: Debtor's Objection to Trustee's Certification and Proposed Order of Dismissal, (related document:23 Certification of Standing Trustee filed by Trustee Isabel C. Balboa, 24 Objection filed by Debtor Michael Coleman). Hearing scheduled for 3/18/2005 at 09:00 AM at GMB - Courtroom 4C, Camden. (dac) (Entered: 02/17/2005) |
| 02/17/2005 | | Certification of Standing Trustee Deadline Terminated, Reason: Objection Filed and Hearing Scheduled. (dac, ) (Entered: 02/17/2005) |
| 02/19/2005 | 26 | BNC Certificate of Service - Order No. of Notices: 2. Service Date 02/19/2005. (Admin.) (Entered: 02/20/2005) |
| 03/18/2005 | | Hearing Rescheduled from 3/18/05. (related document:25 Notice of Hearing -(Generic), Notice of Hearing -(Generic)) Hearing scheduled for 4/29/2005 at 09:00 AM at GMB - Courtroom 4C, Camden. (cmf, ) (Entered: 03/18/2005) |
| 04/28/2005 | | Minute of Hearing Held, OUTCOME: Trustee's affidavit withdrawn. (related document:25 Notice of Hearing -(Generic), Notice of Hearing -(Generic)) (cmf, ) (Entered: 04/28/2005) |
| 08/24/2005 | 27 | Creditor's Certification of Default (related document:18 Motion for Prospective ReliefMotion to Reinstate CaseMotion to Reinstate CaseMotion for Relief from Stay re: 169 Columbia Ave Thorofare, NJ. Fee Amount $ 150.Motion for Relief from Stay re: 169 Columbia Ave Thorofare, NJ. Fee Amount $ 150. filed by Creditor Chase Manhattan Mortgage Corporation) filed by Jaimie B. Finberg on behalf of Chase Home Finance, LLC. Objection deadline is 9/6/2005. (Attachments: # 1 Certificate of Service # 2 Proposed Order) (Finberg, Jaimie) (Entered: 08/24/2005) |
| 09/13/2005 | 28 | Order Granting Relief from the Automatic Stay AND RELIEF FROM STAY PROSPECTIVELY re: 169 Columbia Avenue, West Deptford, NJ and Relief from the Stay Prospectively (related document:27 Creditor's Certification of Default filed by Creditor Chase Home Finance, LLC). The following parties were served: Debtor, Debtor's Attorney, Trustee, US Trustee and Movant's Attorney. Signed on 9/13/2005. (mrm) Modified CAPTION OF THE ORDER on 9/16/2005 (da). (Entered: 09/15/2005) |
| | | |

US Bankruptcy Court NJ - Live Database - Docket Report                                    Page 6 of 6

| 09/17/2005 | 29 | BNC Certificate of Service - Order No. of Notices: 3. Service Date 09/17/2005. (Admin.) (Entered: 09/18/2005) |
|---|---|---|
| 12/02/2005 | 30 | Trustee's Motion to Dismiss Case Filed by Isabel C. Balboa (NA) on behalf of Isabel C. Balboa. Hearing scheduled for 1/27/2006 at 09:00 AM at GMB - Courtroom 4C, Camden. (Attachments: # 1 Certification # 2 Proposed Order # 3 Certificate of Service) (Balboa (NA), Isabel) (Entered: 12/02/2005) |
| 01/27/2006 | | Minute of Hearing Held, OUTCOME: Granted, Order Entered (related document:30 Trustee's Motion to Dismiss Case filed by Trustee Isabel C. Balboa) (cmf, ) (Entered: 01/27/2006) |
| 01/27/2006 | 31 | Order Granting Trustee's Motion to Dismiss Case (Related Doc # 30). The following parties were served: Debtor, Debtor's Attorney, Trustee and US Trustee. Signed on 1/27/2006. (da) (Entered: 01/30/2006) |
| 02/01/2006 | 32 | BNC Certificate of Service - Order Dismissing Case. No. of Notices: 23. Service Date 02/01/2006. (Admin.) (Entered: 02/02/2006) |
| 02/01/2006 | 33 | BNC Certificate of Service - Order No. of Notices: 3. Service Date 02/01/2006. (Admin.) (Entered: 02/02/2006) |
| 06/14/2006 | 34 | Chapter 13 Trustee Final Report and Account (Dismissal) filed by Isabel C. Balboa. (Balboa (NA), Isabel) (Entered: 06/14/2006) |
| 06/27/2006 | 35 | Final Decree; The following parties were served: Trustee and US Trustee. Signed on 6/27/2006. (mrm, ) (Entered: 06/27/2006) |
| 06/27/2006 | | Bankruptcy Case Closed. (mrm, ) (Entered: 06/27/2006) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 08/28/2008 14:17:56 | | | |
| PACER Login: | bw0116 | Client Code: | 09135-00292 |
| Description: | Docket Report | Search Criteria: | 03-38329-GMB Fil or Ent: filed Doc From: 0 Doc To: 99999999 Term: included Format: HTML |
| Billable Pages: | 4 | Cost: | 0.32 |