## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY
## (CAMDEN VICINAGE)

**LEWIS G. ADLER, ESQUIRE**
**26 NEWTON AVENUE**
**WOODBURY, NJ 08096**
**(856)845-1968**
**ATTORNEY FOR PLAINTIFF**
_____

|  |  |
|---|---|
| : |  |
| **STACY COLEMAN , fka Stacy Kovilaritch:** |  |
| **individually and as a class representative :** |  |
| **On behalf of others similarly situated    :** |  |
| **Plaintiff,**    : |  |
| : | **1:08-cv-2215 (NLH)(JS)** |
| **vs.**    : |  |
| : | **CIVIL ACTION** |
| **CHASE HOME FINANCE, LLC.**    : |  |
| **Successor by merger to**    : |  |
| **CHASE MANHATTAN MORTGAGE**    : | **Certification of Counsel** |
| **CORP.  and John Doe 1-100**    : |  |
| **and John Doe Servicers 1-100**    : |  |
| **Defendant.**    : |  |

_____

**I,  Lewis G. Adler, Esquire,** of full age hereby certify to the following:


1.      I have attached a copy of the opinion of *Whittingham v. Mortgage Electronic Regisration Services, Inc,* No. 06-3016,   slip opinion (D.N.J. May 15, 2007). Exhibit 1.

2.      I have attached a copy of the opinion of *Richenbach v. Wells Fargo, Case Number 08-cv-2687 (D.N.J. June 29, 2009).* Exhibit 2.

I hereby certify that the foregoing statements made by me are true.  I realize that

if any of these statements are willfully false, I am subject to punishment.


_/s/Lewis G. Adler, Esquire_____

DATED: 7/31/09      Lewis G. Adler, Esquire

Exhibit 1

(Docket Nos. 5, 10)

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

```
_____
                                :
DEBORAH ANN WHITTINGHAM,        :
                                :
          Plaintiff,            :    Civil No. 06-3016 (RBK)
     v.                         :    AMENDED OPINION
                                :
MORTGAGE ELECTRONIC             :
REGISTRATION SERVICES, INC.,    :
et al.                          :
                                :
          Defendants.           :
_____ :
```

**KUGLER**, United States District Judge:

This matter comes before the Court on two motions, one by Defendant Mortgage Electronic Registration Services, Inc. ("MERS") and Defendant HSBC Mortgage Services, Inc. ("HSBC"), and one by Defendant Zucker, Goldberg & Ackerman, LLC ("Zucker") to dismiss all or part of Plaintiff Deborah Ann Whittingham's ("Plaintiff") complaint for failure to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, the Court denies in part and grants in part Defendants MERS's and HSBC's motion to dismiss and denies in part and grants in part Defendant Zucker's motion to dismiss.

**I.   Background**

Plaintiff owns a residential property located at 825

Boundary Road in Woodbury Heights, New Jersey.  Defendant MERS held a mortgage on the property located at 825 Boundary Road in Woodbury Heights.  Defendant HSBC Mortgage Services ("HSBC") serviced the mortgage held by MERS, and Defendant Zucker represented MERS and HSBC in the foreclosure proceedings on the 825 Boundary Road property.

On or about June 30, 2005, HSBC and MERS initiated foreclosure proceedings against Plaintiff.  Plaintiff then requested a payoff amount from HSBC and MERS, to which HSBC responded on June 27, 2005 that Plaintiff's payoff balance was $17,997.86. Plaintiff alleges that this total is comprised of a principal balance of $14,411.77, interest of $1,352.59, unpaid fees of $2,193.50, and a recording fee of $40. On July 8, 2005, Plaintiff remitted the balance in full.

On July 7, 2006, Plaintiff filed a complaint in the United States District Court for the District of New Jersey, alleging that MERS, HSBC, and Zucker "engaged in a uniform scheme and course of conduct to inflate their profits by charging and collecting various fees not authorized by the loan documents or applicable law."  Specifically, Plaintiff alleges the following counts: (1) HSBC and Zucker violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et. seq, and the New Jersey Consumer Fraud Act, N.J.S.A. §§ 56:8-1-20, by attempting to collect amounts not permitted by law and by using unfair and

unconscionable collection methods; (2) MERS and HSBC breached their contract with Plaintiff; (3) MERS, HSBC, and Zucker engaged in intentional misrepresentation concerning Defendants' right to collect various fees; (4) MERS, Zucker and HSBC were negligent with respect to Plaintiff; (5) MERS, HSBC, and Zucker breached the duty of good faith and fair dealing with respect to their contractual relations with Plaintiff; (6) MERS, Zucker, and HSBC collected money not due and owing to them under applicable law, and this conduct unjustly enriched Defendants; (7) MERS's, Zucker's, and HSBC's acts and practices constitute unfair and deceptive acts or practices in or affecting commerce in violation of Section 5(a) of the Federal Trade Commission Act, 15 U.S.C. § 45(a), which also constitutes a violation of the New Jersey Consumer Fraud Act; (8) MERS, Zucker, and HSBC used false, deceptive, or misleading representations or means, in violation of 15 U.S.C. § 1692e, to collect debts in default, which also constitutes a violation of the New Jersey Consumer Fraud Act; (9) MERS, Zucker and HSBC used unfair or unconscionable means to collect or to attempt to collect debts; and (10) MERS, Zucker, and HSBC charged for costs and attorneys fees in excess of the amount allowed under New Jersey's Fair Foreclosure Act and New Jersey Court Rules.[1]

---

[1]     Plaintiff frames her complaint in terms of a class action.  However, to date, Plaintiff has not formally moved for class certification pursuant to Federal Rule of Civil Procedure

3

On October 3, 2006, Zucker moved to dismiss Plaintiff's complaint. On November 28, 2006, MERS and HSBC moved to dismiss Plaintiff's complaint. Plaintiff opposes both motions.

## II. Standard

In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept Plaintiff's allegations along with all reasonable inferences that may be drawn from them, as true. <u>Doe v. Delie</u>, 257 F.3d 309, 313 (3d Cir. 2001) (citing <u>Piecknick v. Commonwealth of Pennsylvania</u>, 36 F.3d 1250, 1255 (3d Cir. 1994)). The Court may dismiss the Complaint only if Plaintiff can prove no set of facts that would entitle them to relief. <u>Burstein v. Retirement Account Plan for Employees of Allegheny Health Educ. & Research Found.</u>, 334 F.3d 365, 374 (3d Cir. 2003) (citation omitted).

## III. Zucker's Motion

Zucker moves to dismiss all of Plaintiff's counts pursuant to Federal Rule of Civil Procedure 12(b)(6).

### A. Fair Debt Collections Practices Act

Zucker moves to dismiss counts I, VIII, IX and X of Plaintiff's complaint, which allege that Zucker violated the Fair

---

23. Therefore, the Court addresses the instant motions as though Plaintiff is the only Plaintiff in this action, rather than a class representative.

In addition, count XIV of Plaintiff's complaint is a "notice of class action." Class actions are not substantive in nature, but rather procedural. Therefore, the Court dismisses Count XIV of Plaintiff's complaint.

Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692k(d) <u>et seq.</u> Specifically, Zucker argues that Plaintiff failed to file her complaint within the FDCPA's one-year statute of limitations. To support this argument, Zucker points to Plaintiff's payoff letter, dated June 27, 2005. Zucker states that because Plaintiff did not file her complaint until July 5, 2006, her complaint is out of time, and dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) is proper. Plaintiff counters that the statute began to run when Plaintiff paid the debt on July 8, 2005, and therefore her complaint was timely.

The FDCPA provides, in pertinent part

A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

(1) The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

15 U.S.C. § 1692f(1). The FDCPA further provides, "An action to enforce any liability created by this [statute] may be brought in any appropriate United States district court . . . within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d).

Congress enacted the FDCPA to provide "a remedy for consumers who have been subjected to abusive, deceptive or unfair debt collection practices by debt collectors." <u>Piper v. Portnoff</u>

5

Law Assocs. Ltd., 396 F.3d 227, 232 (3d Cir. 2005) (citing

Pollice v. Nat'l Tax Funding, L.P., 225 F.3d 379, 400 (3d Cir.

2000)). The "threshold requirement of the FDCPA is that the

prohibited practices are used in an attempt to collect a 'debt.'"

Piper, 396 F.3d at 232 (citing Pollice, 225 F.3d at 400)); see

also 15 U.S.C. §§ 1692e-f. The FDCPA defines "debt" as "any

obligation of a consumer to pay money arising out of a

transaction in which the money, property, insurance, or services

which are the subject of the transaction are primarily for

personal, family, or household purposes, whether or not such

obligation has been reduced to judgment." 15 U.S.C. § 1692a(5).

"The term 'consumer' means any natural person obligated or

allegedly obligated to pay any debt." 15 U.S.C. § 1692a(3).

Accordingly, courts construe either the attempt to collect a

debt using prohibited practices, or the actual collection of an

amount greater than the amount actually owed by the consumer as

violations of the FDCPA.  See, e.g., Piper, 396 F.3d at 233

(finding that letters demanding payment in full for the amount

due from consumer plaintiffs to satisfy their water/sewer

services obligation to the municipality were within the scope of

the FDCPA); Sponaugle v. First Union Mortg. Corp., 40 F. A'ppx

715, 717 (3d Cir. 2002) ("The conduct prohibited under the FDCPA

includes 'The collection of any amount . . . unless such amount

is expressly authorized by the agreement creating the debt or

permitted by law.'") (quoting 15 U.S.C. § 1692f(1)).

The Court finds that because the statute has a one-year statute of limitations, that allegations in Plaintiff's complaint that the mortgage payoff letter constitutes a violation of the FDCPA are not timely.[2] However, Plaintiff's allegations that the actual payment of the debt constituted a violation of the FDCPA are timely. Therefore, the Court grants Zucker's motion to dismiss with regard to Count VIII of Plaintiff's complaint, as it alleges violation of 15 U.S.C. §§ 1692e(2)(A) and (B), which prohibit "false and misleading representations" by a debt collector in an attempt to collect a debt.[3]

The Court denies Zucker's motion to dismiss Counts I and X. Count I alleges that Defendants violated the FDCPA upon collection of the payoff balance from Plaintiff. Count X provides for civil penalties for the alleged violation of the FDCPA.

B.    Duty of Good Faith and Fair Dealing

Zucker argues that Plaintiff did not enter a contract with Zucker, therefore Zucker "could not possibly have violated the

---

[2]    The Court does not decide whether the payoff letter is an attempt to collect a debt as contemplated by the FDCPA.

[3]    Moreover, the Court grants Zucker's motion to dismiss with regard to Count IX, as it alleges a violation of 15 U.S.C. § 1692f(1), which is an exact duplicate of the allegation contained in Count I. Count I also alleges a violation of 15 U.S.C. § 1692f(1).

duty of good faith and fair dealing as to Plaintiff."
Specifically, Zucker argues that only parties to a contract are
bound by the duty of good faith and fair dealing. Plaintiff
counters that in New Jersey, "an attorney may be liable to a
third party for misrepresentations," notwithstanding a direct
contractual relationship.

In Petrillo v. Bachenberg, 655 A.2d 1354 (N.J. 1995), the
New Jersey Supreme Court "recognized that there are circumstances
in which an attorney may owe a duty to a third party with whom
the attorney does not have a contractual relationship." Banco
Popular N. Am. v. Gandi, 876 A.2d 253, 264 (N.J. 2005) (citing
Petrillo, 655 A.2d at 1360). Invoking the Restatement of the Law
Governing Lawyers, the Petrillo court elaborated that "attorneys
may owe a duty of care to non-clients when the attorneys know, or
should know, that non-clients will rely on the attorneys[']
representations and the non-clients are not too remote from the
attorneys to be entitled to protection. Petrillo, 655 A.2d at
1359. More specifically, if the attorneys intend their actions
"to induce a specific non-clients['] reasonable reliance on [the
attorneys'] representations, then there is a relationship between
the attorney and the third party. [Conversely], if the attorney
does absolutely nothing to induce reasonable reliance by a third
party, there is no relationship to substitute for the privity
requirement." Gandi, 876 A.2d at 265.

In <u>Petrillo</u>, the court found that the defendant attorney owed a duty to the plaintiff, a non-client.  655 A.2d at 1361. The plaintiff purchased property after relying on misleading reports provided by the seller's attorney.  <u>Id.</u> at 1355-56.  In this report, the defendant attorney stated that inspectors administered eight percolation tests on the subject property, two of which succeeded. <u>Id.</u> at 1355.  In fact, inspectors performed thirty tests, only two of which succeeded. <u>Id.</u> The court concluded that "by compositing the report, the attorney effectively made a representation to the plaintiff 'to provide reliable information regarding the percolation tests' and should have foreseen that the plaintiff would rely on the total number of tests when making the decision whether to sign the contract." <u>Gandi</u>, 876 A.2d at 264 (quoting <u>Petrillo</u>, 655 A.2d at 1361).

Applying these principles to the facts at issue, Plaintiff sufficiently pled a cause of action for breach of the duty of good faith and fair dealing by Defendant Zucker. Here, Plaintiff alleges that she "relied on . . . Zucker's . . . false representations concerning [Defendants'] entitlement to collect" the fees represented in the payoff letter.  (Pl.'s Compl. ¶ 28.) Therefore, Plaintiff adequately stated a cause of action for the breach of the duty of good faith and fair dealing against Zucker, and Zucker's motion to dismiss on Count V is denied.

C.   <u>New Jersey's Consumer Fraud Act</u>

9

Zucker moves to dismiss Counts VII and XIII of Plaintiff's complaint, alleging that New Jersey's Consumer Fraud Act does not apply to professionals, such as attorneys. In her brief opposing Zucker's motion, Plaintiff stipulates that she did not intend to allege that Zucker violated the New Jersey Consumer Fraud Act, and that her complaint was erroneous in that regard.

Therefore, the Court grants Zucker's motion to dismiss Counts VII and XIII as they pertain to Zucker.

### D.   Intentional Misrepresentation

Zucker moves to dismiss Count III[4] of Plaintiff's complaint with regard to Zucker because Plaintiff failed to plead "intentional misrepresentation" with specificity as required by Federal Rule of Civil Procedure 9(b).[5]

The Court construes a claim of "intentional misrepresentation" as one for fraud. See Jewish Ctr. of Sussex County v. Whale, 432 A.2d 521, 524 (N.J. 1981). Under New Jersey law, the five elements of fraud are: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an

---

[4]    In their brief supporting the instant motion, Zucker moves to dismiss "Count IV" because "Plaintiff failed to plead 'Intentional Misrepresentation' with sufficient specificity." However, Plaintiff alleges intentional misrepresentation in Count III.

[5]    Zucker alleges Plaintiff's complaint did not comply with Federal Rule of Civil Procedure. 9(d).  In fact, the Rule dealing with the pleading requirements for fraud is Rule 9(b).

intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." Gennari v. Weichert Co. Realtors, 691 A.2d 350, 367 (N.J. 1997).

With regard to pleading a claim for fraud, Federal Rule of Civil Procedure requires that, "In all averments of fraud . . . the circumstances constituting fraud . . . shall be stated with particularity." Fed. R. Civ. P. 9(b). The Third Circuit stated that, "to satisfy Rule 9(b), plaintiffs must plead with particularity the circumstances of the alleged fraud by pleading the date, place or time of the fraud, or through alternative means of injecting precision and some measure of substantiation into their allegations of fraud." Lum v. Bank of Am., 361 F.3d 217, 223-24 (3d Cir. 2004) (internal quotations omitted). More succinctly, courts interpret this to mean that "the plaintiff should plead the date, place or time of the fraud, and allege with specificity who made the relevant misrepresentations. Id. at 224.

Plaintiff in this case failed to meet these requirements of Rule 9(b). Specifically, Plaintiff fails to state who allegedly made the misrepresentations. Rather, Plaintiff speaks amorphously of MERS, HSBC and Zucker making the alleged misrepresentations. Such imprecise pleading is not adequate under the heightened pleading requirements of Rule 9(b). Therefore, the Court grants Zucker's motion to dismiss Count III

11

of Plaintiff's complaint.

E.   Negligence

Zucker moves to dismiss Count IV of Plaintiff's complaint by arguing that Zucker, as attorney representing HSBC in the foreclosure proceeding, owed no duty to Plaintiff, the adverse party.  Accordingly, Zucker argues that the Court cannot find Zucker liable for negligence.

As stated in section III.B., supra, attorneys are generally not liable to third parties for the consequences of their actions because of privity requirements.  However, New Jersey law recognizes some limited situations in which an attorney can be held liable to non-client third parties.  This analysis regarding duty to a non-client is the same as the analysis the Court performed in section III.B., supra, where the Court denied Zucker's motion to dismiss Plaintiff's claim of the breach of the duty of good faith and fair dealing.  Accordingly, the Court denies Zucker's motion to dismiss Count IV.

F.   New Jersey's Fair Foreclosure Act

Zucker moves to dismiss Count XI of Plaintiff's complaint, which alleges that Defendants violated New Jersey's Fair Foreclosure Act ("FFA"), N.J.S.A. § 2A:50-53 et seq. Specifically, Plaintiff alleges that Defendants violated N.J.S.A. § 2A:50-57(b)(3) by charging attorneys fees and costs in excess of those permitted by New Jersey Court Rules.

12

The policy behind the FFA is that "homeowners should be given every opportunity to pay their home mortgages, and thus keep their homes . . . ." N.J.S.A. § 2A:50-53.  To that end, the FFA creates a variety of procedures by which a debtor can cure a default on a mortgage, including a provision that "limits the amount of attorneys' fees to be paid by a mortgagor who is curing a mortgage default to 'the amount permitted under the Rules Governing the Courts of the State of New Jersey.'" In re Lipscomb, No. 05-18722, 2006 WL 4452988, *5 (Bankr. D.N.J. 2006) (citing N.J.S.A. § 2A:50-57). The FFA is essentially a notice provision, which provides specific guidance to residential mortgage lenders on the steps necessary to foreclose.  N.J.S.A. § 2A:50-56.

Plaintiff alleges that Defendants violated the attorney's fees provision of the FFA by including unreasonable and unallowable counsel fees in the payoff balance, which Plaintiff paid.  As a remedy, Plaintiff demands reimbursement of the excess counsel fees from Zucker. The Court finds that the FFA does not provide such a remedy to Plaintiff.  The statutory language is silent as to reimbursement of fees in this manner, and plaintiff cites no case law to support her contention that the FFA provides a private right of action.  Therefore, the Court grants Zucker's motion to dismiss with regard to Count XI.

G.   Violation of New Jersey Court Rules

13

_____Plaintiff alleges that Zucker violated New Jersey Court
Rules 4:42-9(a)(4) and 4:42-10(a), and demands the return of
excess charges, with interest.  However, the New Jersey Court
Rules are procedural in nature, and provide no independent cause
of action whereby a plaintiff can pursue a remedy for a violation
of the rules.  Therefore, the Court grants Zucker's motion to
dismiss Count XII.

###### H.   Unjust Enrichment

_____Plaintiff alleges that Defendants "collected monies not due
and owing under applicable contract law," and that this conduct
unjustly enriched Defendants.  Zucker argues that Plaintiff never
conferred a benefit on Zucker for which Plaintiff expected
remuneration, and therefore Zucker argues that the Court should
dismiss Count VI of Plaintiff's complaint. The crux of Zucker's
argument for dismissal of this count is that there was "never any
contractual or quasi-contractual relationship between Plaintiff
and Zucker that might trigger an unjust enrichment claim."

Under New Jersey law, there are two basic elements to a
claim for unjust enrichment.  First, the plaintiff must
demonstrate "both that defendant received a benefit and that
retention of that benefit without payment would be unjust." VRG
Corp. v. GKN Realty Corp., 641 A.2d 519, 526 (N.J. 1994). To
establish the injustice, the plaintiff must further demonstrate
"that it expected remuneration from the defendant at the time it

14

performed or conferred a benefit on defendant and that the failure of remuneration enriched defendant beyond its contractual rights." <u>Id.</u>

As stated by the Third Circuit, "the essence of the doctrine of unjust enrichment is that there is no direct relationship between the parties." <u>Benefit Trust Life Ins. Co. v. Union Nat'l Bank</u>, 776 F.2d 1174, 1177 (3d Cir. 1985).[6] Therefore, Zucker's argument regarding no direct contractual or even quasi-contractual relationship is misplaced. Plaintiff alleges that she overpaid Zucker for counsel fees for work Zucker allegedly performed in the foreclosure proceeding on her property. Assuming Plaintiff's allegations are true, as required by the standard on a motion to dismiss, this is sufficient to state a claim for unjust enrichment, because Plaintiff alleges she paid Zucker, albeit indirectly, fees above what the contract entitled Zucker to receive. That is the essence of an unjust enrichment claim. For this reason, the Court denies Zucker's motion to dismiss Count VI.

<u>I.   Class Action</u>

Finally, Zucker moves to dismiss Count XIV of Plaintiff's complaint, which is a notice of class action. As discussed in note 1, <u>supra</u>, the Court grants Zucker's motion to dismiss count

---

[6]   The Court notes that this case deals with Pennsylvania law. However, the doctrine of unjust enrichment im Pennsylvania is substantially similar to the law in New Jersey.

XIV.

## IV.  MERS's and HSBC's Motion to Dismiss

Defendants MERS and HSBC move to dismiss certain counts in
Plaintiff's complaint, including Counts I, VIII, IX, and X which
allege violations of the FDCPA; Counts XI and XII, which allege
violations of the FFA and New Jersey Court Rules, respectively;
and Count XIII, which alleges a violation of the New Jersey
Consumer Fraud Act.

### A.  Fair Debt Collections Practices Act

MERS and HSBC move to dismiss all the counts in Plaintiff's
complaint that allege violations of the FDCPA.  Primarily, MERS
and HSBC argue that they are not "debt collectors" as defined by
the statute.  Alternatively, MERS and HSBC argue that the statute
of limitations expired.

The FDCPA defines a "debt collector" as "any person
. . . who regularly collects or attempts to collect . . . debts
owed or due or asserted to be owed or due another." 15 U.S.C. §
1692a(6). The term "debt collector" does not include:

> [A]ny person collecting or attempting to collect any debt
> owed or due or asserted to be owed or due another to the
> extent such activity . . . (ii) concerns a debt which was
> originated by such person [or] (iii) concerns a debt
> which was not in default at the time it was obtained by
> such person.

15 U.S.C. § 1692a(6)(G).  Importantly, the legislative history of
the FDCPA demonstrates that the term "debt collectors" does not
encompass a mortgage servicing company. Perry v. Stewart Title

16

Co., 756 F.2d 1197, 1208 (5th Cir. 1985) (citing S. Rep. No. 95-382, at 3 (1977)); see also Dawson v. Dovenmuehle Mortgage, Inc., No. 00-6171, 2002 WL 501499, at *5 (E.D. Pa. Apr. 3, 2002) ("A loan servicer, someone who services but does not own the debt, is not a 'debt collector' if the servicer begins servicing of the loan before default. . . . [T]he statute applies to a mortgage servicing company only where the mortgage at issue was already in default at the time when servicing began.").

With regard to MERS, the mortgage holder, Plaintiff fails to allege sufficient facts to bring MERS within the statute's definition of a "debt collector." Plaintiff does not allege that MERS collects or attempts to collect debts owed to another. Nor does Plaintiff allege that the loan was in default that the time MERS acquired it.

With regard to HSBC, the mortgage servicing company, Plaintiff failed to allege in her complaint that the mortgage was in default at the time HSBC began servicing the loan.[7] Therefore, HSBC is not a debt collector, and the FDCPA is inapplicable. Therefore, the Court grants MERS's and HSBC's motion to dismiss counts I, VIII, IX, and X as they pertain to MERS and HSBC.

### B.   FFA and New Jersey Court Rules

As discussed in sections III.F. and III.G., supra, neither

---

[7]     Moreover, HSBC notes in its brief supporting its motion to dismiss that HSBC began servicing the mortgage before Plaintiff defaulted.

the FFA nor the New Jersey Court Rules provide a private right of action.  For that reason, the Court grants MERS's and HSBC's motion to dismiss Counts XI and XII with regard to MERS and HSBC.

### C.   New Jersey Consumer Fraud Act

MERS and HSBC move to dismiss Count XIII of Plaintiff's complaint, which alleges that by charging and receiving illegal or excessive charges, Defendants engaged in unconscionable business practices in violation of the New Jersey Consumer Fraud Act ("CFA"), N.J.S.A. §§ 56:8-1-20.

> The CFA provides, in pertinent part
>
> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice . . . .

N.J.S.A. § 56:8-2 (emphasis added). Courts hold that this provision is disjunctive in nature; therefore, to allege a violation of the CFA, a plaintiff need only allege "either an unconscionable commercial practice, or fraud, or deception . . . in connection with sale or advertisement of [merchandise or real estate] . . . to demonstrate statutory violation. Hyland v. Aquarian Age 2,000, Inc., 372 A.2d 370, 372 (N.J. Super. Ch. 1977).

18

Plaintiff alleges "unconscionable conduct" and "fraud" in her complaint. Moreover, Plaintiff alleges that this conduct was in connection with MERS's and HSBC's subsequent performance of the contract related to the mortgage (i.e., sale of real estate). See Weiss v. First Unum Life Ins. Co., No. 05-5428, 2007 U.S. App. LEXIS 7613, at *34 (3d Cir. Apr. 3, 2007) ("CFA covers fraud both in the initial sale (where the seller never intends to pay), and fraud in the subsequent performance (where the seller at some point elects not to fulfill its obligations)."). Therefore, the Court finds that Plaintiff adequately stated a cause of action under the CFA, and the Court accordingly denies MERS's and HSBC's motion to dismiss count XIII.

## IV. Conclusion

With regard to Zucker's motion to dismiss, the Court grants Zucker's motion on counts III, VII, XI, XII, XIII, and XIV. The Court denies Zucker's motion with regard to counts I, IV, V, VI, X.

With regard to Defendants MERS and HSBC, the Court grants their motion on counts I, VIII, IX, X, XI, and XII. The Court denies their motion on count XIII.

Dated: <u>5/15/2007</u>                    <u>s/Robert B. Kugler</u>
                                        ROBERT B. KUGLER
                                        United States District Judge

Exhibit 2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| EDWARD RICKENBACH, JACK MCTAGUE as executor of the estate of James McTague, and HATTIE MCTAGUE by and through her attorney, on behalf of themselves and all others similarly situated, | : : : : : : : : : | HON. JEROME B. SIMANDLE |
| | : | Civil No. 08-2687 (JBS/KMW) |
| Plaintiffs, | : : | **OPINION** |
| v. | : : | |
| WELLS FARGO BANK, N.A., et al., | : : : | |
| Defendants. | : : | |

APPEARANCES:

Lewis G. Adler, Esq.
LAW OFFICE OF LEWIS ADLER
26 Newton Avenue
Woodbury, NJ 08096
      Attorneys for Plaintiffs Edward Rickenbach, Jack McTague and
      Hattie McTague

Diane A. Bettino, Esq.
Mark S. Melodia, Esq.
REED SMITH, LLP
Princeton Forrestal Village
136 Main Street
Suite 250
Princeton, NJ 08540
      Attorneys for Defendants Wells Fargo, N.A. and Mortgage
      Electronic Registration Systems, Inc.

Andrew Christopher Sayles, Esq.
CONNELL FOLEY, LLP
85 Livingston Avenue
Roseland, NJ 07068
      Attorney for Defendant Zucker, Goldberg, and Ackerman

**SIMANDLE**, District Judge:

## I.   INTRODUCTION

This matter is before the Court on two motions to dismiss, one brought by the defendants Wells Fargo, N.A. ("Defendant Wells") and Mortgage Electronic Registration Systems, Inc. ("Defendant MERS") [Docket Item 20], and the other by the defendant law firm Zucker, Goldberg, and Ackerman ("Defendant Zucker") [Docket Item 21].   Together, Defendants seek dismissal of Plaintiffs' myriad claims under New Jersey law arising out of allegedly excessive and illegal mortgage processing fees.   This opinion will address the voluntary payment rule, the limited reach of the 16-year statute of limitations for documents under seal pursuant to N.J. Stat. Ann. § 2A:14-4, whether a private right of action arises under the Fair Foreclosure Act and New Jersey Court Rules pertaining to attorney's fees and foreclosure fees; further, the opinion will consider whether various claims against the defendant law firm are barred by the litigation privilege.

The Court has addressed the many arguments raised by all sides and will grant Defendant Zucker's motion in full and Defendants Wells' and MERS' motion in part, noting that while potentially meritorious, several of Defendants' arguments cannot be resolved in a motion to dismiss which must be confined to the pleadings.   As a result of this opinion, Plaintiff Rickenbach's

contract claim against Defendants Wells and MERS survives dismissal, while Plaintiffs McTague may continue to assert claims for breach of contract, negligence, breach of an implied duty of good faith and fair dealing, and violations of the New Jersey Consumer Fraud Act and the New Jersey Truth-In-Consumer Contract, Warranty, and Notice Act against Defendants Wells and MERS only.

## II.  BACKGROUND

### A.  Factual Allegations

This matter being before the Court on a motion to dismiss, the following factual recital takes the allegations in Plaintiffs' Amended Complaint as true and construes them in the light most favorable to Plaintiffs.

#### 1.  Plaintiff Edward Rickenbach

Plaintiff Edward Rickenbach ("Plaintiff Rickenbach") executed the mortgage and note at issue in this case under seal on June 26, 1996.  (Am. Compl. ¶ 15.)  On November 11, 2001, Defendant Zucker filed a foreclosure proceeding on behalf of Defendant Wells against Plaintiff Rickenbach.  (Id. ¶ 16.)  In response, Plaintiff Rickenbach sought and received reinstatement of his mortgage, which occurred on or about December 26, 2001. (Id. ¶¶ 17-18.)  The foreclosure action and lis pendens were dismissed.  (Id. ¶ 19.)  Plaintiff Rickenbach then requested a statement of the amount needed to satisfy his mortgage along with any fees ("payoff statement"), so that he could refinance his

3

home with a new mortgage company.  (Id. ¶ 20.)  According to the
Amended Complaint, "on or about May 30, 2002," Plaintiff
Rickenbach paid his remaining mortgage in full.  (Id. ¶ 21.)  The
check for that payment is dated April 9, 2002.  (Dzura
Certification, Ex. 2.)

   According to Plaintiffs, the reinstatement and ultimate
satisfaction of Plaintiff Rickenbach's mortgage "were improperly
calculated as [] Defendant Wells included charges which were in
excess of the amounts allowed either pursuant to the terms of the
note and mortgage or New Jersey law."  (Id. ¶ 22.)  Specifically,
Plaintiff Rickenbach alleges that the fee charged to him included
attorneys fees and costs for an entire foreclosure proceeding,
despite the termination of foreclosure proceedings.  (Id. ¶
33(a).)

         2.   Plaintiffs McTague

   On June 6, 1976, Plaintiff Hattie McTague and her late
husband James McTague, whose estate is now represented by Jack
McTague, (collectively, "Plaintiffs McTague") executed their
mortgage and note under seal.  (Id. ¶ 23.)  On or about March,
2005, Defendant Zucker filed a foreclosure proceeding on behalf
of Defendants MERS and Wells, the servicer of the loan for
Defendant MERS, against Plaintiffs McTague.  (Id. ¶¶ 25-26.)
After receiving the foreclosure complaint, counsel for Plaintiffs
McTague requested a payoff statement for the mortgage.  (Id. ¶

                              4

27.)  According to the Amended Complaint, Defendant Zucker, on
behalf of Defendants MERS and Wells, provided Plaintiffs McTague
with a statement dated June 7, 2007 in the amount of $7,061.28,
of which $910.00 was for attorney fees and $1,009.00 was for
costs.  (Id. ¶¶ 28, 30.)  The June 7, 2007 date appears to be
incorrect, however, because attached to the Amended Complaint is
the actual payoff letter from Defendant Zucker, and it is dated
March 11, 2005.[1]  (Am. Compl. Ex. A.)  That letter explains "the
amounts required to reinstate and payoff our client's mortgage
and for dismissal of the foreclosure action."  (Id.)  Defendant
Wells participated in the preparation of that statement.  (Am.
Compl. ¶ 29.)  On or about April 21, 2005, Plaintiffs McTague
paid the sums demanded in full and Defendants dismissed the
foreclosure action and discharged the mortgage.  (Id. ¶ 31-32.)
Plaintiffs McTague allege that under New Jersey Court Rules,
Defendants could charge no more than $177.13 for attorney fees.
(Id. ¶ 33(a).)

---

[1] In addition, the actual payoff statement includes slightly
different numbers, such that the total was $9,831.42, but the
portions for attorney fees and costs are correctly listed in the
Amended Complaint ($1009.00 and $910.00, respectively).  (Am.
Compl. Ex. A.)  The Court notes that, even on a motion to
dismiss, it is appropriate to rely on exhibits attached to a
complaint.  Lum v. Bank of America, 361 F.3d 217, 222 n.3 (3d
Cir. 2004).

3.   Defendants Allegedly Wrongful Conduct Towards
     Defaulting Borrowers of Residential Mortgages

Plaintiffs accuse Defendants, generally, of having "engaged in a uniform scheme and course of conduct to inflate their profits by charging and collecting various fees not authorized by the loan documents or applicable law" thereby "overcharging defaulting borrowers of residential mortgages." (Id. ¶ 33.)  The Amended Complaint alleges that Defendants overcharge defaulting borrowers of residential mortgages by charging:

  (a)   attorneys fees and costs in excess of those actually incurred and beyond the amount permitted by New Jersey Court Rules;

  (b)   excessive costs in violation of statute and New Jersey Court Rules;

  (c)   recording fees in excess of the actual fee;

  (d)   service of process fees beyond what is permissible under statute and Court Rules; and

  (e)   impermissible fees for obtaining a certificate of regularity.

(Id. ¶ 33.)  In addition, the Amended Complaint alleges that Defendants overcharged the putative class by (1) failing to credit deposits made toward sheriff's commissions, and (2) continuing to charge the contract interest rate when the judgment interest rate should be used.  (Id. ¶ 33(f).)

6

**B.   Procedural History**

On May 30, 2008, Plaintiffs brought this putative class action against Defendant Wells.  On August 15, 2008, Plaintiffs filed their Amended Complaint against Defendant Wells, along with Defendants MERS and Zucker.  The Amended Complaint sets forth the following claims: breach of contract against Defendant Wells (Count I); negligence against all Defendants (Count II); breach of duty of good faith and fair dealing against all Defendants (Count III); unjust enrichment against all Defendants (Court IV); unfair and deceptive assessment and collection of fees against Defendants Wells and MERS (Count V); violations of the Fair Foreclosure Act against Defendants Wells and MERS (Count VI); violations of the New Jersey State Court Rules against Defendants Wells and MERS (Count VII); violations of the New Jersey Consumer Fraud Act ("NJCFA") against Defendants Wells and MERS (Count VIII); and violations of the New Jersey Truth-In-Consumer Contract, Warranty, and Notice Act against Defendants Wells and MERS (Count IX).  Plaintiffs also named various John Doe parties to the action (Count X).[2]

On November 17, 2008, Defendant Zucker and Defendants Wells and MERS filed their separate motions to dismiss, along with exhibits [Docket Items 20 & 21].  On January 2, 2009, Plaintiffs

_____

[2] Though listed among the various other causes of action, Count X is not a cause of action, but instead lists other potential unnamed defendants to Plaintiffs' suit.

opposed each motion separately [Docket Items 24 & 25].

Defendants Wells and MERS replied on January 12, 2009 and

Defendant Zucker replied on January 26, 2009 [Docket Items 26 &

26].  On February 27, 2009, after receiving permission from the

Court, Plaintiffs submitted a sur-reply and on March 6, 2009, all

defendants responded to Plaintiffs' sur-reply [Docket Items 30,

31, 32 & 33].   Through Plaintiffs' sur-reply Plaintiffs

voluntarily dismissed their claims of unjust enrichment (Count

IV) [Docket Item 30].

## III. DISCUSSION

### A.   Standard of Review

On a Rule 12(b)(6) motion to dismiss for failure to state a

claim for which relief may be granted, the Court must "accept all

factual allegations as true, construe the complaint in the light

most favorable to the plaintiff, and determine whether, under any

reasonable reading of the complaint, the plaintiff may be

entitled to relief."  Phillips v. County of Allegheny, 515 F.3d

224, 231 (3d Cir. 2008) (quoting Pinker v. Roche Holdings Ltd.,

292 F.3d 361, 374 n.7 (3d Cir. 2002)).

"While a complaint attacked by a Rule 12(b)(6) motion to

dismiss does not need detailed factual allegations, a plaintiff's

obligation to provide the 'grounds' of his 'entitle[ment] to

relief' requires more than labels and conclusions, and a

formulaic recitation of the elements of a cause of action will

8

not do." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007)
(quoting <u>Papasan v. Allain</u>, 478 U.S. 265, 286 (1986)).  "In
deciding motions to dismiss pursuant to Rule 12(b)(6), courts
generally consider only the allegations in the complaint,
exhibits attached to the complaint, matters of public record, and
documents that form the basis of a claim." <u>Lum v. Bank of
America</u>, 361 F.3d 217, 222 n.3 (3d Cir. 2004) (citation omitted).

### B.   Defendants Wells' and MERS's Motion to Dismiss

Defendants Wells and MERS challenge Plaintiffs' Amended
Complaint on numerous grounds.  They maintain that Plaintiffs'
Amended Complaint cannot state a claim because of the voluntary
payment rule, and that Plaintiffs McTague have not suffered any
injury and so their action must be dismissed.  The Court,
however, cannot resolve arguments based upon unpleaded facts on a
motion to dismiss.  Wells and MERS ask the Court to dismiss
Plaintiff Rickenbach's claims for falling outside the statute of
limitations, and the Court will dismiss all but Rickenbach's
contract claim as untimely.  Defendants also attack specific
claims as insufficient to survive a Rule 12(b)(6) motion.  The
Court agrees that Plaintiffs McTague cannot bring a private
action under the Fair Foreclosure Act and New Jersey Court Rules,
nor can they state a claim for "unfair and deceptive assessment
and collection of fees," and so will dismiss those counts.  The
remaining claims against Defendants Wells and MERS by Plaintiffs

McTague will survive this motion to dismiss.

     1.   Voluntary Payment Rule

Wells and MERS suggest that dismissal is required because Plaintiffs voluntarily paid the allegedly improper fees. The common law voluntary payment rule "provides that 'where a party, without mistake of fact, or fraud, duress or extortion, voluntarily pays money on a demand which is not enforcible against him, he cannot recover it back.'" Matter of New Jersey State Bd. of Dentistry, 423 A.2d 640, 643 (N.J. 1980) (quoting City of Camden v. Green, 25 A. 357, 358 (N.J. 1892)). Without determining whether the voluntary payment rule is applicable to any or all of Plaintiffs' claims against Defendants,[3] the Court finds that the rule raises questions of fact that cannot be resolved at this stage. This Court has previously determined that application of the voluntary payment rule cannot be resolved on a motion to dismiss, where the complaint does not establish whether the plaintiff's payment was truly voluntary and made without mistake of fact. Carducci v. Aetna U.S. Healthcare, 247

---

[3] The Court observes, without deciding, that the New Jersey Consumer Fraud Act appears to conflict with the common law voluntary payment rule, for the CFA permits suit based solely on regulatory violations, even in the absence of fraud or duress. See Bosland v. Warnock Dodge, Inc., 964 A.2d 741, 748 (N.J. 2009) ("[I]ntent is not an element if the [CFA] claim is based on a defendant's alleged violation of a regulation, because 'the regulations impose strict liability for such violations.'") (quoting Cox v. Sears Roebuck & Co., 647 A.2d 454, 462 (N.J. 1994)).

10

F. Supp. 2d 596, 619 (D.N.J. 2003), <u>overturned on other grounds by Levine v. United Healthcare Corp.</u>, 402 F.3d 156 (3d Cir. 2005). This Court explained:

> Plaintiffs are correct that this Court cannot dismiss at this juncture based on the voluntary payment doctrine because facts exist under which plaintiffs could be relieved from its application. First, plaintiffs' payment may not have been voluntary because a payment is not voluntary when the plaintiff believed that the law which imposed it was not valid, but made the payment anyway. <u>N.J. State Bar Ass'n v. Berman</u>, [611 A.2d 1119, 1128 (N.J. Super. Ct. App. Div. 1992)]. Such situations generally arise when a plaintiff pays a fee that he believes is invalid, but pays it anyway so that he can continue to practice his profession or continue his business. <u>See State Board of Dentistry</u>, [423 A.2d at 644]. This Court cannot decide on a motion to dismiss whether plaintiffs believed that the subrogation and reimbursement liens were invalid, but paid in order to continue their health insurance coverage.
> Second, the Court cannot now determine whether plaintiffs acted under a mistake of fact when they made the payments or whether defendants acted improperly in making their claims.

<u>Carducci</u>, 247 F. Supp. 2d at 620.

In the present action, the Court cannot decide at this juncture whether Plaintiffs knew that mortgage fees were invalid but paid them in order to avoid foreclosure and eviction, thereby making the payments involuntary. Likewise, the Court cannot judge whether Plaintiffs made those payments without mistake of facts. The Court therefore declines to dismiss Plaintiffs' claims under the voluntary payment rule, without prejudice to Defendants Wells and MERS raising such an argument on a motion

for summary judgment.[4]

     2.   **Absence of Injury**

Defendants Wells and MERS submit as an attachment to their motion to dismiss evidence that Plaintiffs McTague received a full refund for the fees they were allegedly improperly charged and ask the Court to dismiss the McTagues' complaint because they suffered no injury. Defendants offer no argument to support this Court's consideration of evidence outside the complaint, where the evidence was not attached to the complaint and does not include documents that form the basis of Plaintiffs' allegations or are a matter of public record. See Lum, 361 F.3d at 222 n.3. The Court will not, therefore, consider any evidence that the McTagues received a full refund,[5] though Defendants may raise this potentially dispositive argument in a motion for summary

---

[4] In their reply to Plaintiffs' sur-reply, Defendants Wells and MERS raise for the first time the entire controversy doctrine, suggesting that Plaintiffs should have raised their objections to these fees in their foreclosure proceedings. The Court will not consider this argument, because it was not presented in Defendants' motion to dismiss or reply and so Plaintiffs had no opportunity to respond. See Bayer AG v. Schein Pharmaceutical, Inc., 129 F. Supp. 2d 705, 716 (D.N.J. 2001) (argument raised for first time in reply must be stricken).

[5] Wells and MERS assert that they issued a refund to Ms. McTague in October, 2005, for $1,790.00, resulting in her payment of a total of only $129.00 for attorneys' fees and costs for the foreclosure proceeding, or less than the amount the McTagues claim the Court Rules would have allow. If discovery shows this is correct, one would hope that appropriate admissions and stipulations would be forthcoming without the necessity of summary judgment practice.

judgment.

### 3.   Statute of Limitations

Defendants Wells and MERS attack the timeliness of Plaintiff Rickenbach's claims on two fronts. His contract claim, they argue, is not subject to the sixteen year statute of limitations for documents under seal, N.J. Stat. Ann. § 2A:14-4, but instead is subject to the six year limitation for contract claims, N.J. Stat. Ann. § 2A:14-1. Applying the six year limitation to all of his claims, Defendants argue that Plaintiff Rickenbach's claims are untimely because he paid the allegedly improper fees more than six years before bringing this action. In support of this argument, Defendants submit the check by which Rickenbach made this payment. The Court finds that the sixteen year statute of limitations is applicable to Plaintiff Rickenbach's contract claim, assuming that his mortgage and note were truly signed "under seal," but will dismiss Plaintiff Rickenbach's other claims as untimely.

Plaintiffs assert that their contracts claims are governed by the sixteen year statute of limitations set out in Section 2A:14-4, N.J. Stat. Ann., which reads in relevant part:

> Actions on lease, specialty, recognizance or award; 16 years; effect of payments; action on instrument under seal brought by merchant or financial institution; 6 years
>
> Every action at law for rent or arrears of rent, founded upon a lease under seal, <u>every action at law</u> upon a single or penal bill under seal for the

13

> payment of money only, <u>upon an obligation under
> seal conditioned for the payment of money only</u>,
> upon a recognizance or upon an award under the
> hands and seals of arbitrators for the payment of
> money only <u>shall be commenced within 16 years next
> after the cause of any such action shall have
> accrued</u>. If, however, any payment is made on any
> such lease, specialty, recognizance or award within
> or after such period of 16 years, an action thereon
> may be commenced within 16 years next after such
> payment, and not thereafter.

N.J. Stat. Ann. § 2A:14-4 (emphasis added).  Defendants respond
that the above provision only applies to actions brought "for the
payment of money only," whereas Plaintiffs seek a refund of
amounts they were allegedly overcharged.  Defendants ask the
Court to apply the six year statute of limitations provided for
in N.J. Stat. Ann. § 2A:14-1, even though that provision
expressly states that it does not apply to documents under seal.

The Court finds that Defendants misinterpret Section 2A:14-
4, because the phrase "for payment of money only" limits the
"obligation" and not the "action at law."  The plain language of
the provision leads to such a conclusion, for the clause "upon an
obligation under seal conditioned for the payment of money only"
is separate and apart from "every action at law."  If "for the
payment of money only" qualified the cause of action, and not the
instrument, there would be no need to repeat the phrase after
each instrument.  If the New Jersey legislature meant "every
action at law for the payment of money only upon a penal bill
under seal or an obligation under seal," the legislature could

14

have so written.  It did not.

The Court's reading of Section 2A:14-4 is compelled by the New Jersey courts.  Section 2A:14-4 is an antiquated provision, first construed in Elasser v. Haines, 18 A. 1095 (N.J. Sup. Ct. 1889) in its earlier form.  In Miller v. Bd. of Chosen Freeholders, 91 A.2d 729, 735-37 (N.J. 1952) the New Jersey Supreme Court adopted the Elasser construction, and the Court finds this interpretation conclusive.  The question before the Elasser and Miller courts was the meaning of "specialty" and "obligation" as used in N.J. Rev. Stat. § 2:24-5, the predecessor to Section 2A:14-4.[6]  The earlier provision applied to "every action of debt . . . upon any obligation with condition for payment of money only."  N.J. Rev. Stat. § 2:24-5.  The courts held that "obligation" and "specialty" were synonymous for the

---

[6] The earlier version of Section 2A:14-4 was found in N.J. Rev. Stat. § 2:24-5 and read:

> That every action of debt, or covenant for rent, or arrearages of rent, founded upon any lease under seal, whether indented or poll, and every action of debt upon any single or penal bill for the payments of money, or upon any obligation with condition for the payment of money only, or upon any award, under the hands and seals of arbitrators, for the payment of money only, shall be commenced and sued within sixteen years next after the cause of such action shall have accrued, and not after; but if any payment shall have been made, on any such lease, specialty, or award, within or after . . .

Elasser, 18 A. at 1099 (quoting N.J. Rev. Stat. § 2:24-5) (emphasis added).

15

purpose of the sixteen year statute of limitations, and were
"'made to express but a single class of instruments, those which
are under seal and stipulate for the payment of money.'" Miller,
91 A.2d at 736 (quoting Elasser, 18 A. at 1100); see United
States v. Jacobs, 155 F. Supp. 182, 193-94 (D.N.J. 1957) ("[I]n
the case of Miller [] that court approved the conclusions of
Chief Justice Beasley in Elasser [] to the effect that the words
'obligation' and 'specialty,' as used in the statute of
limitations, import an instrument under seal for the payment of
money."). The statute has since been amended to include the
terms "under seal," but the phrase "for payment of money only"
remains the same and continues to qualify the instrument, not the
cause of action. See Miller, 91 A.2d at 736. In addition, the
Court observes that while the original provision applied to
"every action of debt," the current provision, applicable to this
claim, applies broadly to "every action at law." N.J. Stat. Ann.
§ 2A:14-4; N.J. Rev. Stat. § 2:24-5. There being no argument
that the mortgages and notes at issue were for anything other
than payment of money, the Court will not dismiss Plaintiff
Rickenbach's breach of contract claim as untimely for it appears
that Section 2A:14-4 applies to that claim. Defendants have
reserved the right to challenge Plaintiffs' allegation that the
mortgage and note were "under seal" and may raise this question
in a motion for summary judgment.

16

By contrast, Plaintiff Rickenbach's other causes of action, all parties agree, are subject to the six year statute of limitation in N.J. Stat. Ann. § 2A:14-1.[7]  The Amended Complaint alleges that Rickenbach paid the disputed fees "on or about December 26, 2001" and "on or about May 30, 2002," (Am. Compl. ¶¶ 18, 21), but Defendants submit the document by which Rickenbach made his final payment, a check dated April 9, 2002 with a notation "satisfy mtg," (Dzura Certification, Ex. 2).  Plaintiffs do not dispute the authenticity of this document, for they did not challenge it in either of their two opposition briefs or their sur-reply, and defend only the McTagues' claims (except for the contract claim, which Plaintiffs argue survives dismissal for

---

[7] Section 2A:14-1 reads:

> Every action at law for trespass to real property, for any tortious injury to real or personal property, for taking, detaining, or converting personal property, for replevin of goods or chattels, for any tortious injury to the rights of another not stated in sections 2A:14-2 and 2A:14-3 of this Title, or for recovery upon a contractual claim or liability, express or implied, not under seal, or upon an account other than one which concerns the trade or merchandise between merchant and merchant, their factors, agents and servants, shall be commenced within 6 years next after the cause of any such action shall have accrued.
>
> This section shall not apply to any action for breach of any contract for sale governed by section 12A:2-725 of the New Jersey Statutes.

N.J. Stat. Ann. § 2A:14-1.

both Rickenbach and the McTagues).  The Court may therefore rely

on this check, for it is undisputedly authentic and integral to

Plaintiff Rickenbach's claims.  See  Pension Benefit Guar. Corp.

v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993) ("[A]

court may consider an undisputedly authentic document that a

defendant attaches as an exhibit to a motion to dismiss if the

plaintiff's claims are based on the document."); Lum, 361 F.3d at

222 n.3 ("A document forms the basis of a claim if the document

is 'integral to or explicitly relied upon in the complaint.'")

(quoting In re Burlington Coat Factory Sec. Litig., 114 F.3d

1410, 1426 (3d Cir. 1997)).  The check itself is not inconsistent

with Rickenbach's allegation that he made his payment "on or

about May 30, 2002," but even if it were the Court would rely on

the undisputedly authentic document for the date of payment.  See

ALA, Inc. v. CCAIR, Inc., 29 F.3d 855, 859 n.8 (3d Cir. 1994)

("Where there is a disparity between a written instrument annexed

to a pleading and an allegation in the pleading based thereon,

the written instrument will control.").  It being evident that

Plaintiff Rickenbach's cause of action accrued over six years

before bringing suit, the Court will dismiss those claims subject

to the six year statute of limitation -- negligence, breach of

duty of good faith and fair dealing, unfair and deceptive

assessment and collection of fees, and violations of the Fair

Foreclosure Act, New Jersey State Court Rules, New Jersey

18

Consumer Fraud Act, and Truth-in-Consumer Contract, Warranty and
Notice Act -- as to Defendant Zucker and Defendants Wells and
MERS.

####     4.     Unfair and Deceptive Assessment and Collection of
             Fees

The Court agrees with Defendants that there is no cause of
action for "unfair and deceptive assessment and collection of
fees" under New Jersey law (and Plaintiffs have presented no
argument to the contrary).  Plaintiffs' allegations of fraud are
subsumed in Count VIII under the New Jersey Consumer Fraud Act
and so the Court will dismiss Count V for failure to state a
claim for which relief may be granted.

####     5.     Fair Foreclosure Act

Defendants argue, and the Court agrees, that there is no
private right of action under the Fair Foreclosure Act.  As Judge
Kugler recently explained under similar circumstances and in
support of his conclusion that the FFA does not provide a private
right of action:

> The policy behind the FFA is that "homeowners
> should be given every opportunity to pay their home
> mortgages, and thus keep their homes...." [N.J.
> Stat. Ann.] § 2A:50-53.  To that end, the FFA
> creates a variety of procedures by which a debtor
> can cure a default on a mortgage, including a
> provision that "limits the amount of attorneys'
> fees to be paid by a mortgagor who is curing a
> mortgage default to 'the amount permitted under the
> Rules Governing the Courts of the State of New
> Jersey.'"  In re Lipscomb, No. 05-18722, 2006 WL
> 4452988, *5 (Bankr. D.N.J. 2006) (citing [N.J.
> Stat. Ann.] § 2A:50-57).  The FFA is essentially a

notice provision, which provides specific guidance to residential mortgage lenders on the steps necessary to foreclose. [N.J. Stat. Ann.] § 2A:50-56.

Whittingham v. Amended Mortgage Elec. Registration Servs., Inc., No. 06-3016, 2007 WL 1456196, at *5 (D.N.J. May 15, 2007). Contrary to Plaintiffs' suggestion, the mere fact that the legislature intended the FFA to protect homeowners by setting forth notice requirements for foreclosure proceedings and procedure to cure a default does not mean that the legislature intended to provide homeowners the right to bring an independent action (outside of the foreclosure proceeding) based on allegedly improper attorneys' fees. There is no evidence that the legislature intended to create a private right of action regarding excessive attorneys' fees through the FFA. Id. In the absence of any evidence that the legislature intended to create a private right of action, Plaintiffs cannot state a claim under the FFA. See Jalowiecki v. Levc, 440 A.2d 21, 25-26 (N.J. Super. Ct. App. Div. 1981).

### 6. New Jersey Court Rules

Plaintiffs similarly cannot state a claim under the New Jersey Court Rules, and in particular under Rules 4:42-9(a)(4) (governing attorneys' fees) or 4:42-10(a) (governing foreclosure fees), because the rules do not provide a private right of action. Whittingham, 2007 WL 1456196, at *6; Kearny Barge Co., Inc. v. Global Ins. Co., 943 F. Supp. 441, 462 (D.N.J. 1996);

<u>Leonardis v. Burns Intern. Sec. Services, Inc.</u>, 808 F. Supp. 1165, 1184-86 (D.N.J. 1992). New Jersey Court Rules are rules of procedure and do not provide substantive rights. <u>See</u> N.J. Rule 4:1 ("The rules in Part IV [Rules Governing Civil Practice], insofar as applicable, govern the practice and procedure of civil actions in the Superior Court, Law and Chancery Divisions . . ."). This is so because "the New Jersey Supreme Court has long held that its power to create rules governing the courts of New Jersey, as provided by Article VI, section 2, paragraph 6 of the New Jersey State Constitution, is limited to matters of court practice and procedure, and does not empower it to create substantive law or rights." <u>Leonardis</u>, 808 F. Supp. at 1185. Courts have consequently found that "Rule 4:42-9 is a rule of state court procedure and does not create an independent law claim." <u>Kearny Barge</u>, 943 F. Supp. at 462 (citing <u>Leonardis</u>, 808 F. Supp. at 1186); <u>see</u> <u>First State Underwriters Agency of New England Reinsurance Corp. v. Travelers Ins. Co</u>, 803 F.2d 1308, 1315-16 (3d Cir. 1986) (holding that a conflict of law regarding attorneys' fees is an issue of procedural law and so the forum state's law on that issue should be applied). Rule 4:42-10(a), which sets of "fees allowable" in a foreclosure action, likewise is a rule of state court procedure and does not create an independent cause of action. <u>Whittingham</u>, 2007 WL 1456196, at *6 (holding the neither Rule 4:42-10(a) nor 4:42-9(a)(4) create a

private right of action).  The Court will therefore dismiss
Plaintiffs' claim under the New Jersey Court Rules.

       7.    <u>Truth-in-Consumer Contract, Warranty and Notice
Act</u>

    Defendants argue on reply[8] that Plaintiffs cannot state a
claim under the New Jersey Truth-in-Consumer Contract, Warranty
and Notice Act because the letter to the McTagues that included
the allegedly improper charges was sent by Defendant Zucker, as
the attorney for Defendants Wells and MERS, not Wells or MERS.
The Court rejects this argument.  Plaintiffs McTague allege that
Defendant Zucker represented Wells and MERS throughout the
foreclosure proceeding and mailed the payoff statement to the
McTagues "on behalf of MERS and WELLS."  (Am. Compl. ¶¶ 4, 28.)
Defendants Wells and MERS cannot escape liability for conduct of
their alleged agent.  The Court finds that Plaintiffs have
sufficiently alleged that they received "notice" from Wells and
MERS through their attorney agent Zucker and so the Court will
not dismiss their claim under the Truth-in-Consumer Contract

---

    [8] Though generally courts will not consider arguments raised
only on reply, <u>supra</u> note 3, in this circumstance Plaintiffs were
given an opportunity to file a sur-reply and thus had an
opportunity to respond to Defendants' argument, so the Court will
take note of Defendants' argument.  <u>See</u> <u>Bayer</u>, 129 F. Supp. at
716 (noting the rationale for striking arguments raised in the
first instance on reply is that generally a sur-reply is not
permitted and so non-moving party has no opportunity to respond).

Act.[9]

### B.   Defendant Zucker's Motion to Dismiss

Defendant Zucker asks the Court to dismiss all claims against the law firm by all plaintiffs.  As to all plaintiffs, Defendant Zucker argues that the two remaining counts brought against the law firm should be dismissed because Defendant Zucker is protected by New Jersey's common law litigation privilege. Further, according to Defendant Zucker, Plaintiffs have failed to state a claim for either of the two alleged torts.  Having dismissed all of Plaintiff Rickenbach's claims against Defendant

---

[9] The New Jersey Truth-in-Consumer Contract, Warranty and Notice Act provides in relevant part:

> No seller, lessor, creditor, lender or bailee shall in the course of his business offer to any consumer or prospective consumer or enter into any written consumer contract or give or display any written consumer warranty, notice or sign after the effective date of this act which includes any provision that violates any clearly established legal right of a consumer or responsibility of a seller, lessor, creditor, lender or bailee as established by State or Federal law at the time the offer is made or the consumer contract is signed or the warranty, notice or sign is given or displayed. Consumer means any individual who buys, leases, borrows, or bails any money, property or service which is primarily for personal, family or household purposes.

N.J. Stat. Ann. § 56:12-15.  Defendants have not presented argument as to whether the payoff statement violated a "clearly established legal right" of the McTagues and the Court will not, <u>sua sponte</u>, take up this issue now.

Zucker as untimely, see Part III.B.3, the Court need not address
Zucker's attacks on the merits of those claims.  The Court finds,
as will be explained at length below, that Plaintiffs McTague's
claims fail under the litigation privilege.  There Court
therefore will grant Defendant Zucker's motion to dismiss in
full.

      1.   <u>Litigation Privilege</u>

     Defendant Zucker argues that the McTagues base their claims
against Defendant Zucker on "payoff statements" prepared and
provided as part of the foreclosure proceedings against the
various plaintiffs and so Zucker is protected by New Jersey's
litigation privilege.  Plaintiffs respond by suggesting that the
litigation privilege is limited to defamation actions, claims
under 42 U.S.C. § 1983, and the New Jersey Law Against
Discrimination.[10]  The Court finds Plaintiffs McTague's claims
against Defendant Zucker are based solely on communications made
for the purpose of litigation and thus fail under the litigation
privilege.

---

    [10] Plaintiffs further argue that the privilege does not
apply to claims under the Fair Debt Collection Practices Act
("FDCPA").  Plaintiffs, however, have not asserted claims under
the Fair Debt Collection Practices Act in this action.  Moreover,
in a recent case from this district, Judge Cavanaugh rejected
just this argument under similar circumstances (and by the same
counsel) where the plaintiffs did seek relief under the FDCPA.
<u>Ogbin v. Fein, Such, Kahn & Shepard, P.C.</u>, No. 08-4138, 2009 WL
1587896, at *2-3 (D.N.J. June 1, 2009) (finding litigation
privilege applies to claims under the FDCPA).

The litigation privilege has deep roots in the common law of New Jersey.  Loigman v. Twp. Comm. of Twp. of Middletown, 889 A.2d 426, 433 (N.J. 2006).  The privilege insures that "[s]tatements by attorneys, parties and their representatives made in the course of judicial or quasi-judicial proceedings are absolutely privileged and immune from liability."  Peterson v. Ballard, 679 A.2d 657, 659 (N.J. Super. Ct. App. Div. 1996) (citing Erickson v Marsh & McLennon Co., Inc., 569 A.2d 793 (N.J. 1990)).  The privilege is expansive.  New Jersey courts "have extended the reach of the litigation privilege even to statements made by attorneys outside the courtroom, such as in attorney interviews and settlement negotiations."  Loigman, 889 A.2d at 438.  The underlying principle is to allow parties to such proceedings "unfettered expression critical to advancing the underlying government interest at stake in those settings."  Perterson, 679 A.2d at 659-60 (quoting Erickson, 569 A.2d at 805).  As such, there are just four elements of the privilege.  It is applicable to

> any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action.

Hawkins v. Harris, 661 A.2d 284, 289 (N.J. 1995).  Whether the privilege applies in a particular case is a question of law. Peterson, 679 A.2d at 664.

Contrary to Plaintiffs' suggestion, the litigation privilege is well-established and broadly applicable. Loigman, 889 A.2d at 435-37. "In New Jersey, the litigation privilege protects attorneys not only from defamation actions, but also from a host of other tort-related claims." Id. at 436. As the New Jersey Supreme Court has long noted, "If the policy, which in defamation actions affords an absolute privilege or immunity to statements made in judicial and quasi-judicial proceedings, is really to mean anything then we must not permit its circumvention by affording an almost equally unrestricted action under a different label." Rainier's Dairies v. Raritan Valley Farms, Inc., 117 A.2d 889, 895 (N.J. 1955), cited with approval by Loigman, 889 A.2d at 436. Consequently, New Jersey courts have applied the litigation privilege to intentional and negligent infliction of emotional distress, see, e.g. Rabinowitz v. Wahrenberger, 966 A.2d 1091 (N.J. Super. Ct. App. Div. 2009), material misrepresentation, Commercial Ins. Co. of Newark v. Steiger, 928 A.2d 126 (N.J. Super. Ct. App. Div. 2007), and negligent misrepresentation, fraud, and malicious interference with prospective economic advantage, Ruberton v. Gabage, 654 A.2d 1002 (N.J. Super. Ct. App. Div. 1995). In Loigman, the New Jersey Supreme Court found it significant that "[i]n many jurisdictions, '[t]he spectrum of legal theories to which the privilege has been applied includes negligence, breach of confidentiality, abuse of

26

process, intentional infliction of emotional distress, negligent infliction of emotional distress, invasion of privacy, civil conspiracy, interference with contractual or advantageous business relations, [and] fraud.'"  889 A.2d at 436 (quoting Absolute Immunity from Civil Liability: Lessons for Litigation Lawyers, 31 Pepp. L. Rev. 915, 928 (2004)).

Far from being an exception, the litigation privilege is applicable as a general rule.  When considering whether a defendant in a New Jersey Law Against Discrimination ("LAD") claim could avail himself of its protections, the New Jersey Appellate Division looked to whether the New Jersey statute had "abrogated the litigation privilege."  Peterson, 679 A.2d at 659, cited with approval by Loigman, 889 A.2d at 438.  The court ultimately concluded that the LAD did not abrogate the well-established privilege, noting that "implied abrogation of the litigation privilege is not favored."  Id. at 662.  Recently, in Loigman the New Jersey Supreme Court held that the common law privilege is applicable even to a federal claim under 42 U.S.C. § 1983.  889 A.2d at 434-37.  In fact, it appears under New Jersey law that the only claim from which defendants expressly cannot seek protection through the litigation privilege is malicious prosecution.  Loigman, 889 A.2d at 436 n.4.

In light of the preceeding discussion, the Court has no difficulty in finding that the litigation privilege may be

27

applied to tort claims of negligence and breach of a duty of good faith and fair dealing. The Court must discern whether, taking the allegations as true and construing them in the light most favorable to Plaintiffs, those claims are barred by the litigation privilege. The Court will address each element in turn.

Plaintiffs McTague's allegations against Defendant Zucker focus entirely on the payoff statement Defendant Zucker provided the McTagues following the commencement of foreclosure proceedings. That letter was prepared in response to a request made by counsel for McTagues as a means to facilitate dismissal of the foreclosure action. The Court finds that this letter was a communication made in quasi-judicial proceedings and so meets the first element of the litigation privilege. "Absolute immunity is not limited to what a person may say under oath while on the witness stand; it extends to all statements or communications in connection with the judicial proceeding." <u>Ruberton</u>, 654 A.2d at 1006. New Jersey courts have recognized that statements made during an interview of a witness in anticipation of trial and during a settlement conference are privileged communications. <u>Loigman</u>, 889 A.2d at 438. Pre-litigation "demand letters" seeking resolution of a dispute before filing suit are likewise protected. <u>Waterloov Gutter Protection Sys. Co., Inc. v. Absolute Gutter</u>, 64 F. Supp. 2d 398,

415 (D.N.J. 1999) (citing <u>Kanengiser v. Kanengiser</u>, 590 A.2d 1223, 1230 (N.J. Super. Ct. Law Div. 1991)).  In the present case, Defendant Zucker's alleged negligence and breach of good faith stem from a letter prepared in response to a request by Plaintiffs' counsel and on behalf of Defendants Well and MERS, all parties in a judicial proceeding.  The first element is met.

The next three elements quickly follow.  Defendant Zucker represented Defendants Wells and MERS in judicial proceedings, meeting the second prong.  The communication was made by litigants in the judicial proceedings.  <u>See</u> <u>Hawkins</u>, 661 A.2d at 289.  The purpose of the letter was to resolve the foreclosure action, meeting the third prong.  The letter was prepared to achieve the object of the litigation.  <u>See</u> <u>id.</u>  And the letter was prepared in response to a request from the McTagues' counsel in those proceedings in order to resolve those proceedings, thus meeting the fourth prong.  The letter had a close connection to the judicial action.  <u>See</u> <u>id.</u>  Defendant Zucker is immune from suit based on the payoff statement it sent on behalf of parties involved in litigation.  <u>See</u> <u>Steiger</u>, 928 A.2d at 131-32 (claim that expert witness materially misrepresented facts during testimony barred by litigation privilege).

In a very recent case, Judge Cavanaugh of this district dismissed nearly identical claims on the grounds that they were barred by the litigation privilege.  <u>Ogbin v. Fein, Such, Kahn &</u>

Shepard, P.C., No. 08-4138, 2009 WL 1587896 (D.N.J. June 1, 2009). The plaintiffs in Ogbin brought suit after receiving two "payoff letters" sent during plaintiff's foreclosure proceedings from a law firm on behalf of plaintiff's mortgage provider and in response to the request of plaintiff's counsel. Id. at *1. The Ogbin plaintiffs sued the law firm for negligence, intentional misrepresentation, and for violating the Federal Debt Collection Practices Act. Id. at *1-2. Judge Cavanaugh dismissed all claims against the law firm finding that the payoff letters were subject to the litigation privilege and all of the plaintiffs' claims arose from and relied upon those letters and should be dismissed. Id. at *2-3.

Plaintiffs McTague's claims against Defendant Zucker are similarly barred by the litigation privilege. The McTagues' allegations against Defendant Zucker arise solely from the payoff statement Zucker sent to their counsel. Plaintiffs' broad accusations of Defendants' misconduct relating to "defaulting borrowers of residential mortgages" in general cannot save the McTagues' claim against Defendant Zucker in particular. Plaintiffs must state a claim for which relief may be granted, and cannot rely on injury to a proposed class. See Winer Family Trust v. Queen, 503 F.3d 319, 325-26 (3d Cir. 2007) ("A potential class representative must demonstrate individual standing vis-as-vis [sic] the defendant; he cannot acquire such standing

30

merely by virtue of bringing a class action.") (quoting <u>Fallick</u>
<u>v. Nationwide Mut. Ins. Co.</u>, 162 F.3d 410, 423 (6th Cir. 1998)).
The Court will grant Defendant Zucker's motion to dismiss
Plaintiffs McTague's claims.[11]

## IV. CONCLUSION

For the foregoing reasons, the Court will grant Defendant
Zucker's motion to dismiss in full, and Defendants Wells' and
MERS's motion to dismiss in part. As to Plaintiff Rickenbach,
the Court will dismiss all but his contract claim (Count I)
against Defendant Wells and MERS. As to Plaintiffs McTague, the
Court will dismiss their claims for unfair and deceptive
assessment and collection of fees (Count V), for violations of
the Fair Foreclosure Act (Count VI), and for violations of the
New Jersey Court Rules (Count VII). In light of Plaintiffs'
voluntary dismissal of their unjust enrichment claims (Count IV),
the Court will likewise dismiss those claims. Plaintiffs McTague
may continue to pursue their claims for breach of contract (Count
I), negligence (Count II), breach of the implied duty of good
faith and fair dealing (Count IV), for violations of the New

---

[11] The Court notes that Defendants Wells and MERS may also
be protected from the McTagues' claims under the litigation
privilege. <u>See</u> <u>Loigman</u>, 889 A.2d at 439 (holding that a party is
entitled to the same litigation privilege as its representative).
The Court will not, however, decide this matter as it was not
raised by Wells or MERS, was not briefed by the parties, and
involves application of the privilege to statutory claims not
brought against Defendant Zucker.

Jersey Consumer Fraud Act (Count VIII), and for violations of the New Jersey Truth-in-Consumer Contract, Warrant and Notice Act (Count IX) against Defendants Wells and MERS only.  The above-recited dismissals are with prejudice for any attempt at amendment would be futile.


__June 22, 2009__                          __s/ Jerome B. Simandle__
Date                                      JEROME B. SIMANDLE
                                              United States District Judge