STRADLEY, RONON, STEVENS & YOUNG, LLP
A Pennsylvania Limited Liability Partnership
Francis X. Manning
Woodland Falls Corporate Park
200 Lake Drive East, Suite 100
Cherry Hill, NJ 08002
(856) 321-2400
and
BURKE, WARREN, MacKAY & SERRITELLA, P.C.
LeAnn Pedersen Pope (*pro hac vice*)
Stephen R. Meinertzhagen (*pro hac vice*)
330 N. Wabash Avenue, 22nd Floor
Chicago, IL 60611-3607
312-840-7000 (Telephone)
312-840-7900 (Facsimile)

Attorneys for Defendant
Chase Home Finance LLC

UNITED STATES COURT DISTRICT
FOR THE DISTRICT OF NEW JERSEY
(CAMDEN VICINAGE)

| | | |
|---|---|---|
| STACY COLEMAN, fka Stacy Kovilaritch:  individually and as a class representative on behalf of others similarly situated, | : | No.  1:08-cv-02215-NLH-JS |
| | : | |
| Plaintiff, | : | |
| | : | |
| vs. | : | |
| | : | DEFENDANT'S REPLY IN |
| CHASE HOME FINANCE, LLC, successor-by-merger to CHASE MANHATTAN MORTGAGE CORP. and John Doe 1-100 and John Doe Servicers 1-1-100, | : | SUPPORT OF ITS RULE 12(b)(6) MOTION TO DISMISS FIRST AMENDED COMPLAINT |
| | : | |
| Defendant. | : | Return Date: September 8, 2009 |
| | : | |
| | : | |

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ..................................................................... iii

I.   COLEMAN FAILS TO ALLEGE SUBJECT MATTER
     JURISDICTION. ................................................................................ 1

II.  THE ENTIRE CONTROVERSY BARS ALL COLEMAN'S
     CLAIMS. ........................................................................................... 2

III. COLEMAN'S BREACH OF CONTRACT CLAIM FAILS
     BECAUSE   NO   CONTRACT   PROVISION   WAS
     BREACHED. ...................................................................................... 6

IV.  COLEMAN'S   INTENTIONAL   MISREPRESENTATION
     CLAIM FAILS BECAUSE SHE CANNOT ALLEGE
     REASONABLE RELIANCE. .............................................................. 7

V.   THE   INTENTIONAL   MISREPRESENTATION   AND
     CONSUMER  FRAUD  ACT  CLAIMS  SHOULD  BE
     DISMISSED UNDER RULE 9(B)....................................................... 8

VI.  THE  NEGLIGENCE  CLAIM  IS  BARRED  BY  THE
     ECONOMIC LOSS DOCTRINE AND FAILS BECAUSE
     COLEMAN ALLEGES NO DUTY. .................................................... 10

VII. THE GOOD FAITH AND FAIR DEALING CLAIM FAILS
     BECAUSE   THE   MORTGAGE   AUTHORIZES   THE
     COMPLAINED OF CHARGES. ......................................................... 11

VIII. THE UNJUST ENRICHMENT CLAIM FAILS BECAUSE
     COLEMAN ALLEGES AN EXPRESS CONTRACT WITH
     CHASE ............................................................................................. 12

IX.  COLEMAN'S CLAIMS UNDER VARIOUS NEW JERSEY
     STATE COURT RULES AND STATUTES RELATING TO
     TAXED COSTS FAIL BECAUSE NONE PROVIDES A
     PRIVATE RIGHT OF ACTION. ........................................................ 12

X.   COLEMAN'S "FORFEITURE OF INTEREST" CLAIM
     FAILS BECAUSE SHE DOES NOT ALLEGE THAT CHASE
     CHARGED INTEREST ABOVE THE PERMITTED RATE. ................ 13

i

XI.  THE TRUTH-IN-CONSUMER CONTRACT ACT CLAIM
     FAILS BECAUSE SHE ALLEGES NO UNLAWFUL
     CONTRACT OR NOTICE................................................................ 15

## TABLE OF AUTHORITIES

<u>Federal Cases</u>

*Barrows v. Chase Manhattan Mortgage Corp.*, 465 F. Supp. 2d 347 (D.N.J. 2006) ............................................................................... 11

*Boyle v. D'Onofrio*, 99 F. Supp. 2d 541 (D.N.J. 2000)............................ 10

*Bubbles N' Bows, LLC v. Fey Publ'g Co.*, Civ.A.No. 06-5391 (FLW), 2007 WL 2406980, at *10 (D.N.J. Aug. 20, 2007)............................... 11

*Crispino v. Chem. Bank New Jersey (In re Crispino)*, 160 B.R. 749 (Bankr. D.N.J. 1993).............................................................................. 6

*Disabled in Action of Pa. v. Se. Pa. Transp. Auth.*, 539 F.3d 199 (3d Cir. 2008).......................................................................................... 14

*Fleming Cos., Inc. v. Thriftway Medford Lakes, Inc.*, 913 F. Supp. 837 (D.N.J. 1995) ................................................................................... 11

*In re 865 Centennial Ave. Assoc. Ltd. P'ship*, 200 B.R. 800 (Bankr. D.N.J. 1996)........................................................................... 6

*Loehwing v. Washington Mut. Bank (In re Loehwing)*, 320 B.R. 281 (Bankr. D.N.J. 2005)........................................................................... 9

*Union Trust Co. of Maryland v. Wakefern Food Corp.*, Civ. No. 86-728 (CSF), 1989 WL 120756, (D.N.J. Sept. 8, 1989)............................ 7

*Whittingham v. Amended Mortgage Elec. Registration Serv., Inc.*, Civ. No. 06-3016 (RBK), 2007 WL 1456196, (D.N.J. May 15, 2007)................................................................................................ 13

<u>State Cases</u>

*Bosland v. Warnock Dodge, Inc., 197 N.J. 543, 964 A.2d 741 (2009)*................... 10

*Brown v. Brown*, 208 N.J. Super. 372, 506 A.2d 29 (App. Div. 1986)..................... 3

*Circle Chevrolet Co. v. Giordano, Halleran & Ciesla*, 142 N.J. 280, 662 A.2d 509 (1995)........................................................................... 3

*Delta Funding Corp. v. Harris*, 189 N.J. 28, 912 A.2d 104 (2006) ......................... 5

*DiTrolio v. Antiles*, 142 N.J. 253, 662 A.2d 494 (1995) ............................................. 6

*Jewish Ctr. of Sussex County v. Whale*, 86 N.J. 619, 432 A.2d 521
(1981) ............................................................................................................... 7

*LaSalle Nat'l Bank v. Johnson*, 2006 WL 551563 (N.J. Super. Ct. Ch.
Div. March 3, 2006) ................................................................................. 3, 5, 6

*Margulies v. Chase Manhatten Mortgage Corp.*, 2005 WL 2923580
(N.J. Super. Ct. App. Div. Nov. 7, 2005) .............................................. 12

*MetLife Capital Fin. Corp. v. Washington Ave. Assoc. L.P.*, 159 N.J.
484, 732 A.2d 493 (1999) ........................................................................ 12

*NCP Litig. Trust v. KPMG*, 187 N.J. 353, 901 A.2d 871 (2006) ....................... 11

*Olds v. Donnelly*, 150 N.J. 424, 696 A.2d 633 (1997) .......................................... 3

*Ryno, Inc. v. First Nat'l Bank of South Jersey*, 208 N.J. Super. 562,
506 A.2d 762 (App. Div. 1986) ................................................................. 4

*Sovereign Bank, FSB v. Kuelzow*, 297 N.J. Super. 187, 687 A.2d 1039
(App. Div. 1997) ......................................................................................... 4

*United Jersey Bank v. Kensey*, 306 N.J. Super. 540, 704 A.2d 38
(App. Div. 1997) ....................................................................................... 10

Federal Statutes

12 U.S.C. § 2605 ................................................................................................... 15

State Statutes

N.J.S.A. § 31:1-3 .................................................................................................. 14

N.J.S.A. §§ 31:1-1 ............................................................................................... 13

N.J.S.A. §§ 56:12-14 to -18 ................................................................................. 15

N.J.S.A. 22A:4-8 .................................................................................................... 9

N.J.S.A. 2A:50-57 .................................................................................................. 9

iv

Court Rules

N.J. Ct. R. 4:30A .................................................................................... 3

N.J. Ct. R. 4:64-5 .................................................................................. 3

N.J. Ct. R. 4:65-6 .................................................................................. 9

I.    COLEMAN FAILS TO ALLEGE SUBJECT MATTER JURISDICTION.

Coleman's claim that she paid more in attorneys' fees than provided under the applicable FHA schedule is rebutted by her own allegations.  Coleman paid "foreclosure fees of $900" when she reinstated her loan, which is less than the $1,300 fee provided under the FHA schedule. (Complaint, paras. 34, 50.) Because this is the only claim she asserts on a "national" class basis, she cannot circumvent CAFA's mandatory exception to federal jurisdiction over "home state" controversies. The complaint therefore fails to allege subject matter jurisdiction.

Coleman responds to her failure to allege jurisdiction with two arguments. First, with respect to foreclosure attorneys' fees, she argues that because the final judgment of foreclosure (which was later vacated) awarded attorneys' fees of $1,104.02, and the payoff and reinstatement quotes itemize attorneys' fees of $900.30, "[e]ither the judgment is incorrect or the payoff is incorrect as to the correct amount of attorneys' fees incurred." (Opposition, p. 3.) Coleman's argument fails because she only reimbursed $900 in fees, and in any event, both these figures are less than the $1,300 in fees Chase paid its foreclosure counsel as provided in the FHA schedule. Coleman never alleges that these fees were unincurred because such an allegation would be baseless.

Second, with respect to costs, Coleman argues she reimbursed Chase for costs in excess of what Chase actually incurred. To support this argument she

1

points to her allegation that the amount of costs she paid when she reinstated her mortgage exceed the costs provided in the final judgment of foreclosure (Opposition, p. 3), but this allegation is irrelevant to whether the costs were or were not incurred. Further, as more fully set forth below in Section V of this reply, there are numerous reasons why Coleman properly reimbursed costs that were not included in the final judgment of foreclosure when she reinstated her loan.

Because Coleman fails to allege federal jurisdiction under CAFA, the Court should dismiss the complaint under Rule 12(b)(1).

II.   THE ENTIRE CONTROVERSY BARS ALL COLEMAN'S CLAIMS.

Coleman fails to identify any factual or legal basis to avoid the application of the entire controversy doctrine. Coleman's arguments against imposing the entire controversy doctrine are as follows:

> First, the doctrine does not apply to foreclosure actions; second, the cause of action arose after the entry of the 2002 foreclosure judgment; third, the Defendant's continuing course of conduct from 2002 through 2007 provides an independent basis for suit.

(Opposition, p. 13.) None has merit.

First, Coleman provides no authority to support her assertion that the entire controversy doctrine "does not apply to foreclosure actions." Oddly, in the very next sentence of her brief she concedes the point when she states "[t]he entire controversy doctrine as it applies to foreclosure actions is codified in R:4:64-5." (Opposition, p. 13.)

2

Under N.J. Ct. Rules 4:30A and 4:64-5, the entire controversy doctrine applies to foreclosures, and bars all foreclosure defenses and germane counterclaims not raised in a foreclosure action. All Coleman's claims relate to the amount of foreclosure charges and interest she paid to reinstate her mortgage. The "computation of the amounts due" is a "germane" foreclosure matter under N.J. Ct. Rule 4:64-5. *LaSalle Nat'l Bank v. Johnson*, 2006 WL 551563, at *2 (N.J. Super. Ct. Ch. Div. March 3, 2006) (citation omitted).

Coleman's second argument that "[t]he key to the entire controversy doctrine is that the cause of action be known at the time of the institution of the foreclosure proceeding" (Opposition, p. 13) was rejected by the New Jersey Supreme Court in *Circle Chevrolet Co. v. Giordano, Halleran & Ciesla*, 142 N.J. 280, 290, 662 A.2d 509, 513 (1995), *abrogated on other grounds*, *Olds v. Donnelly*, 150 N.J. 424, 696 A.2d 633 (1997): "[t]he entire controversy doctrine applies to constituent claims that arise during the pendency of the first action[.]" In so holding, that court looked to *Brown v. Brown*, 208 N.J. Super. 372, 380, 506 A.2d 29, 33 (App. Div. 1986), which held:

> Leaving out of the litigation a claim which belongs in that bundle and saving it for another day has precisely the same consequences whether the claim arose prior to institution of the action or after it. In either case, the judgment rendered in the action will not be conclusive of the entire controversy, and the consequent risk of future litigation finally to resolve it cannot but gravely undermine all that the parties have attempted to accomplish in the original litigation[.] (Citations omitted).

The only authority Coleman cites is *Ryno, Inc. v. First Nat'l Bank of South Jersey*, 208 N.J. Super. 562, 570, 506 A.2d 762, 766 (App. Div. 1986), which undercuts her argument.   The *Ryno* court considered the breadth of the entire controversy doctrine in the foreclosure context and held "any conduct of a mortgagee known to the mortgagor prior to the institution of a foreclosure that *could* be the basis of an independent action . . . could be raised as an equitable defense in foreclosure."   *Id.* (emphasis added.)   It did not use any terms of limitation, and nothing in *Ryno* (which pre-dates *Circle Chevrolet*) restricts the entire controversy doctrine to claims arising before a foreclosure action is filed.

Coleman argues that because she reinstated her mortgage in January 2006, several years after the judgment of foreclosure was entered in August 2002, "the issues raised by the Defendant's actions in 2006 could not have been brought as a counterclaim."   (Opposition, p. 14.)   However, the foreclosure court retained jurisdiction when Coleman reinstated her mortgage.   In New Jersey, a "final judgment" does not extinguish a foreclosure court's jurisdiction, which is retained until at least such time as the deed is conveyed following a sheriff's sale. *Sovereign Bank, FSB v. Kuelzow*, 297 N.J. Super. 187, 196, 687 A.2d 1039, 1043 (App. Div. 1997).  Instead of disputing the reinstatement amount in the underlying foreclosure action, Coleman paid it without protest and pursuant to "settlement." Then she filed this putative class action alleging claims based upon her

4

reinstatement payment.[1]

Coleman provides no coherent explanation for her third argument that "the actions of the Defendant represent a continuing course of conduct with the Plaintiff from 2002 through 2007." (Opposition, pp. 14-15.) She cites *Delta Funding Corp. v. Harris*, 189 N.J. 28, 912 A.2d 104 (2006), which addresses the enforceability of an arbitration clause, but involves neither the entire controversy doctrine nor any "continuing course of conduct" theory.

Finally, Coleman's attempt to distinguish *LaSalle Nat'l Bank*, 2006 WL

---

[1] Coleman does not argue (or allege) that she "discovered" her claims after the underlying foreclosure action was dismissed.   Because Coleman had been represented by her counsel in this lawsuit for four years when she made her reinstatement payment, it seems her intention all along was to make the payment without dispute, then turn around and file a separate "class action" lawsuit.

In *Allen v. LaSalle Bank, N.A.*, Civ. No. 08-2240 (AET) (Manning Suppl. Decl., Ex. A), Allen asserted claims against a lender and its agents based upon allegedly improper foreclosure and bankruptcy fees and costs contained in various communications, including a payoff quote.   Allen was represented by the same counsel as Coleman in the instant case, and just as in this case, she also had been represented by those same counsel at the time of the underlying foreclosure action. In granting dismissal of *Allen's* federal claims, Judge Thompson held,

> The Court finds that each of these alleged overcharges and deceptive statements would be readily recognized as overcharges by a competent attorney representing a debtor in a foreclosure action. Such an attorney can be assumed to be familiar with the provisions of his or her own client's mortgage agreement.   Similarly, such an attorney would be familiar with the usual costs associated with prosecuting a foreclosure action and would be on guard for overcharges of costs and fees normally assessed in such actions. Therefore, the Court concludes that none of these alleged overcharges and deceptive statements would in fact deceive a competent attorney representing a debtor in a foreclosure action. (*Id* at 11.)

551563; *In re 865 Centennial Ave. Assoc. Ltd. P'ship*, 200 B.R. 800 (Bankr. D.N.J. 1996); and *Crispino v. Chem. Bank New Jersey (In re Crispino)*, 160 B.R. 749 (Bankr. D.N.J. 1993) fails.[2]

Coleman made a reinstatement payment in the underlying foreclosure when she was represented by the same counsel as in this case, and now asserts claims in this putative class action based upon her reinstatement payment. She is engaging in the type of "manipulat[ion of] the judicial system to get the monetary damages [s]he could have sought in the first action" that the New Jersey Supreme Court identified as the very purpose for the entire controversy doctrine. *DiTrolio v. Antiles*, 142 N.J. 253, 276, 662 A.2d 494, 506 (1995) Consequently her claims are barred.

## III. COLEMAN'S BREACH OF CONTRACT CLAIM FAILS BECAUSE NO CONTRACT PROVISION WAS BREACHED.

[2] *LaSalle Nat'l Bank*, 2006 WL 551563, at *3 holds that a mortgagor's defenses to foreclosure based upon the mortgagee's failure to comply with HUD regulations requiring the mortgagee to arrange a face-to-face interview was a matter that is "germane" to the foreclosure action. *In re 856 Centennial Ave.*, 200 B.R. at 815, holds that a New Jersey Banking Act claim asserted after a foreclosure is barred under the entire controversy doctrine because "[t]he claim arises from the same core set of facts upon which the foreclosure action and debtor's defenses . . . are based." *In re Crispino*, 160 B.R. at 756, holds that "any claim the debtor might have made against [the mortgagee] regarding the debt in question is barred by application of the entire controversy doctrine to the default judgment obtained in the New Jersey Superior Court." Coleman does not even attempt to distinguish other cases cited in Chase's opening brief that also stand for the proposition that her claims are barred because she failed to raise them in her underlying foreclosure action.

6

For her argument that she has plead a breach of contract claim, Coleman cites provisions of her mortgage that expressly authorized Chase to collect the charges she complains about. (Opposition, p. 16.) Coleman does not identify (because she does not allege) any charges she reimbursed when she reinstated her loan that Chase was not entitled to recover under the mortgage. The Court should dismiss her breach of contract claim because she fails to allege what contract provisions Chase allegedly breached, and fails to provide Chase with any other facts that would put Chase on notice of this claim.

IV.    COLEMAN'S INTENTIONAL MISREPRESENTATION CLAIM FAILS BECAUSE SHE CANNOT ALLEGE REASONABLE RELIANCE.

Coleman concedes she has not (because she cannot) alleged the essential element of reasonable reliance on an alleged misrepresentation. Instead, she argues reasonable reliance is not required to state a claim for fraud, and she must only allege actual reliance. Coleman misstates the law. In *Union Trust Co. of Maryland v. Wakefern Food Corp.*, Civ. No. 86-728 (CSF), 1989 WL 120756, at *20 (D.N.J. Sept. 8, 1989) the court examined the reasonable reliance requirement under New Jersey law and held that reliance is unreasonable where it permits a plaintiff to ignore her "actual knowledge of falsehood[.]" The court examined *Jewish Ctr. of Sussex County v. Whale*, 86 N.J. 619, 626 n.1, 432 A.2d 521, 524 n.1 (1981), which Coleman relies on, and found that case to hold reasonable reliance does not require a plaintiff to "follow a policy of *caveat auditor*,"

7

imposing a duty to investigate to uncover a falsehood.

That is not the issue here. Coleman cannot allege reasonable reliance because (according to her own allegations) she knew the reinstatement quote she received contained higher taxed fees and costs figures than were contained in the foreclosure judgment previously entered against her. There was nothing for her to investigate further; rather, according to her theory of the amounts due, she had actual knowledge the reinstatement quote was false when she paid it.

## V.    THE INTENTIONAL MISREPRESENTATION AND CONSUMER FRAUD ACT CLAIMS SHOULD BE DISMISSED UNDER RULE 9(b).

Coleman's intentional misrepresentation and NJCFA claims fail to comply with Rule 9(b) because she fails to allege with particularity the "various loan charges" allegedly misrepresented to her or any unlawful conduct under the NJCFA. To sidestep this issue, Coleman argues the reinstatement quote "misrepresented that the amount due in attorneys' fees and costs in the foreclosure [w]as $6,691.73" when the "legal amount due was $1,600.52 as reflected in the final judgment of foreclosure." (Opposition, pp. 18-19.) Her theory is that the inclusion of any charge in the reinstatement quote besides those stated in the foreclosure judgment is a misrepresentation, but this is wrong. As the following examples demonstrate, a theory of liability based on simply comparing the foreclosure judgment and the reinstatement quote fails to comply with Rule 9(b) because it does not put Chase on notice of its alleged misrepresentation:

8

- First, the foreclosure judgment[3] that Coleman now argues established the amount of charges she should pay was "vacated and set aside" by the foreclosure court in its January 20, 2006 order dismissing the foreclosure pursuant to settlement. (Manning Decl., Ex. E). When Coleman made her reinstatement payment to Chase, she entered into an independent agreement to vacate the foreclosure judgment and reinstate the mortgage. This is why the foreclosure court's January 20, 2006 order expressly found that the foreclosure "action has been amicably settled between the parties," and ordered the foreclosure judgment "vacated and set aside" and the mortgage "reinstated and in full force and effect as if the above-entitled action had never been instituted."

- Second, under New Jersey Court Rule 4:65-6, Chase could seek an order directing the Sheriff to pay additional sums until the deed was conveyed following a Sheriff's sale. But Chase was not required to obtain such an order before sending the reinstatement quote or receiving payment.[4]

- Third, under New Jersey procedural rules for taxed costs, certain costs are automatically added to the judgment amount without the judgment being amended. For instance, N.J.S.A. 22A:4-8 provides that the Sheriff is entitled to recover costs expended to schedule and hold Sheriff's sales and to receive commissions. Regardless of whether the foreclosure settles or proceeds to sale, these amounts are automatically added to the foreclosure judgment and were properly included in Colman's reinstatement quote. *Loehwing v. Washington Mut. Bank (In re Loehwing),* 320 B.R. 281, 289 (Bankr. D.N.J. 2005).

Coleman's argument that the reinstatement quote was fraudulent because it contained charges that differed from a vacated four-year old foreclosure judgment, which was subject to amendment, and to which charges could be automatically

---

[3] Coleman's statutory right to reinstate terminated upon the entry of the foreclosure judgment. N.J.S.A. 2A:50-57(a).

[4] The foreclosure docket discloses that on September 18, 2002 the foreclosure court entered an order directing the Sheriff to pay Chase additional sums of $3,343.45 because Chase "has advanced sums of money subsequent to the Final Judgment for taxes, etc." (Manning Suppl. Decl., Ex. B.) As a public record, the Court may take judicial notice of this document.

added, fails to satisfy Rule 9(b).  To comply with Rule 9(b) Coleman must allege with particularity both those charges that she contends were improper, and a coherent theory sufficient to put Chase on notice of why she contends such charges were improper.  See, e.g., *Boyle v. D'Onofrio*, 99 F. Supp. 2d 541, 549 (D.N.J. 2000) (conclusory allegation that documents contained false and misleading information failed to plead fraud with particularity because the allegation did not explain how or why the documents were fraudulent).  She fails to do so.

Coleman's reliance on *Bosland v. Warnock Dodge, Inc.*, 197 N.J. 543, 964 A.2d 741 (2009) in support of her NJCFA (and her derivative TCCWNA claim) is misplaced.  *Bosland* addresses whether a plaintiff may proceed with a NJCFA claim (and a derivative TCCWNA claim) without requesting a refund of the claimed overcharge before instituting litigation.  This holding is irrelevant because Chase makes no argument concerning this issue.  197 N.J. at 547, 964 A.2d at 743.

## VI.  THE NEGLIGENCE CLAIM IS BARRED BY THE ECONOMIC LOSS DOCTRINE AND FAILS BECAUSE COLEMAN ALLEGES NO DUTY.

Coleman fails to address Chase's arguments concerning her negligence claim.  It fails because a lender generally owes no extra-contractual duty to a borrower and Coleman alleges no facts that would give rise to such a duty here. *United Jersey Bank v. Kensey*, 306 N.J. Super. 540, 553, 704 A.2d 38, 45 (App. Div. 1997).  It is also barred by the economic loss doctrine because her negligence allegations are "essentially contractual in nature" and she alleges no actual physical

10

harm to herself or her property.  *Bubbles N' Bows, LLC v. Fey Publ'g Co.*, Civ.A.No. 06-5391 (FLW), 2007 WL 2406980, at *10 (D.N.J. Aug. 20, 2007). Coleman merely argues she was "emotional[ly] upset from the Defendant's egregious actions[.]"  (Opposition, p. 21.)  This neither provides a basis for an extra-contractual duty of care nor overcomes the economic loss doctrine.[5]

## VII.   THE GOOD FAITH AND FAIR DEALING CLAIM FAILS BECAUSE THE MORTGAGE AUTHORIZES THE COMPLAINED OF CHARGES.

As described in Chase's opening brief, Coleman's mortgage agreement expressly authorized Chase to recover the charges she complains about – interest payments and attorneys' fees and charges incurred in the foreclosure action against her.  Because the implied duty of good faith and fair dealing cannot "alter the clear terms of an agreement and may not be invoked to preclude a party from exercising its express rights under such an agreement," Coleman's claim fails as a matter of law.  *Fleming Cos., Inc. v. Thriftway Medford Lakes, Inc.*, 913 F. Supp. 837, 846 (D.N.J. 1995) (citation omitted).

Coleman wrongly argues that "Chase made this same exact argument which this court rejected" in *Barrows v. Chase Manhattan Mortgage Corp.*, 465 F. Supp. 2d 347, 366 (D.N.J. 2006).  In *Barrows,* Chase only moved to dismiss the breach of the duty of good faith and fair dealing claim based upon lack of standing under

---

[5] Coleman also cites to *NCP Litig. Trust v. KPMG*, 187 N.J. 353, 901 A.2d 871 (2006), which involves a litigation trust's claims against an auditor on behalf of a bankrupt corporation, and is irrelevant to Coleman's negligence claim.

11

Rule 12(b)(1), not Rule 12(b)(6), and no contract terms were before the Court.[6]

## VIII.  THE UNJUST ENRICHMENT CLAIM FAILS BECAUSE COLEMAN ALLEGES AN EXPRESS CONTRACT WITH CHASE

Coleman concedes claims for breach of contract and unjust enrichment may coexist only if the subject matters of the two claims are distinct.  (Opposition, p. 25.)  According to Coleman's allegations, the subject matter of her two claims is exactly the same.  Coleman alleges Chase was unjustly enriched when it "collected monies that are not due and owing under applicable contract law, because the contract or other applicable law does not permit Chase to collect such fees and charges."  (Complaint, para. 77.)  Because Coleman's argument is that the mortgage agreement establishes the charges she was required to pay, her contract claim is identical to her unjust enrichment claim, and should be dismissed.

## IX.  COLEMAN'S CLAIMS UNDER VARIOUS NEW JERSEY STATE COURT RULES AND STATUTES RELATING TO TAXED COSTS FAIL BECAUSE NONE PROVIDES A PRIVATE RIGHT OF ACTION.

Coleman concedes that courts will not imply a private right of action unless a statute demonstrates a legislative intent to create such a right.  (Opposition, p.

---

[6] Coleman's claim also fails because she does not allege that Chase interfered with her "enjoying the fruits of the contract, namely . . . the loan," as is required to state a claim for breach of the duty of good faith and fair dealing under *Margulies v. Chase Manhatten Mortgage Corp.*, 2005 WL 2923580, at *6 (N.J. Super. Ct. App. Div. Nov. 7, 2005).  In response to *Margulies*, Coleman cites *MetLife Capital Fin. Corp. v. Washington Ave. Assoc. L.P.*, 159 N.J. 484, 732 A.2d 493 (1999), but there the court did not find that a breach of the covenant of good faith had occurred, and only affirmed a remand to the trial court for an accounting.

32.)   She then fails to identify any hint that the Legislature enacted the Fair Foreclosure Act, or any of the other procedural statutes under which she seeks to assert claims, with the purpose of providing a private right of action relating to payments to reinstate mortgages.   She likewise fails to cite any authority for the notion that there is a private right of action for alleged violations of the New Jersey State Court Rules under which she also seeks to assert claims.   Coleman also fails to address the fact that her arguments for inferring a private right of action under these various foreclosure rules and statutes were previously rejected by this court in *Whittingham v. Amended Mortgage Elec. Registration Serv., Inc.*, Civ. No. 06-3016 (RBK), 2007 WL 1456196, at *6 (D.N.J. May 15, 2007).   Accordingly, the court should dismiss Coleman's claims under Counts VII, VIII and IX.

## X.   COLEMAN'S "FORFEITURE OF INTEREST" CLAIM FAILS BECAUSE SHE DOES NOT ALLEGE THAT CHASE CHARGED INTEREST ABOVE THE PERMITTED RATE.

New Jersey's usury statute prohibits charging an interest rate above a statutory maximum set under section 1(b) of the statute.   *See* N.J.S.A. §§ 31:1-1, *et seq*.   Coleman does not allege (or argue) that Chase charged interest above this statutory maximum.   For this reason alone her claim should be dismissed.

Nevertheless, Coleman argues that she states a claim because she alleged that Chase collected the contract rate on her loan after entry of a final judgment of foreclosure, not the judgment interest rate.   (Opposition, pp. 35-36.)   Coleman

relies on section 3 of New Jersey's usury statute, which gives a borrower in certain proceedings a defense where a lender charges a "higher rate of interest ... than was or is allowed by the law of the place where the contract was made or is to be performed." N.J.S.A. § 31:1-3. According to Coleman, the judgment interest rate is set by a court rule, and Chase violated section 3 because it charged the contract rate rather than the judgment interest rate, even though Coleman does not allege that the contract rate was usurious under section 1(b). (Opposition, p. 36.)

Coleman's position requires a reading of section 3 in isolation, and ignores section 1(b), which is contrary to well-settled rules of statutory construction. *See Disabled in Action of Pa. v. Se. Pa. Transp. Auth.*, 539 F.3d 199, 210 (3d Cir. 2008) (a court must ensure "that every word in a statute has meaning and avoid interpreting one part of a statute in a manner that renders another part superfluous") (citations omitted). Here, when read as a whole, the usury statute requires Coleman to allege Chase charged interest above the statutory maximum set in section 1(b). She has not and her claim should therefore be dismissed.[7]

---

[7] Moreover, Coleman brings her claim under section 31:1-3 of New Jersey's usury statute, which can only be asserted by a borrower in defense of an action enforcing a note. *See* N.J.S.A. § 31:1-3. Coleman does not dispute this, but instead points to section 31:1-4 of the usury statute (nowhere referenced in her complaint) to argue that her claim is authorized under *that* section. However, her claim still fails because she has not alleged that Chase charged a usurious interest rate – a necessary prerequisite to stating a claim under section 31:1-4 – and because the foreclosure judgment she relies on was vacated and the mortgage was reinstated.

14

## XI.    THE  TRUTH-IN-CONSUMER  CONTRACT  ACT  CLAIM  FAILS BECAUSE SHE ALLEGES NO UNLAWFUL CONTRACT OR NOTICE.

Coleman argues that she states a claim under New Jersey's Truth-In-Consumer Contract, Warranty and Notice Act, N.J.S.A. §§ 56:12-14 to -18, for two reasons, neither of which save her claim.  First, she argues that "to the extent . . . the terms of the mortgage and note entitle[s Chase] to be reimbursed for the attorneys fees and costs in the foreclosure in excess of the amount allowed under New Jersey law and FHA regulations, those clauses violate" the Act.  (Opposition, pp. 37-38.)  But Coleman bases her claim under the Act on the reinstatement quote, not her note and mortgage.  Second, Coleman argues the quotes she received are "notices" covered under the Act because, under RESPA, a borrower may inquire regarding her account, and a loan servicer then must send a "written notification" containing certain information to the borrower.  12 U.S.C. § 2605(e).  But there are no factual allegations in the complaint suggesting the quotes she complains about are written notifications sent under RESPA.  Because, as Chase showed in its opening brief, the payoff and reinstatement quotes are not notices, contracts, or warranties covered under the Act, Coleman's claim should be dismissed.

Respectfully submitted,

/s/ Francis X. Manning

Francis X. Manning
Andrew K. Stutzman
STRADLEY, RONON, STEVENS &
YOUNG, LLP
A Pennsylvania Limited Liability
Partnership
Woodland Falls Corporate Park
200 Lake Drive East, Suite 100
Cherry Hill, NJ 08002
(856) 321-2400
fmanning@stradley.com
astrutzman@stradley.com

Of Counsel
LeAnn Pedersen Pope (*pro hac vice*)
Stephen R. Meinertzhagen (*pro hac vice*)
Burke, Warren, MacKay & Serritella, P.C.
330 North Wabash Avenue, 22nd Floor
Chicago, IL 60611
(312) 840-7000
lpope@burkelaw.com
smeinertzhagen@burkelaw.com

09135\00292\583272v1

16