IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| STACEY COLEMAN,<br>   Plaintiff,<br><br>  v.<br><br>CHASE HOME FINANCE, LLC,<br>   Defendant. | CIVIL NO. 08-2215(NLH)(JS)<br><br>**OPINION** |

**APPEARANCES:**

Lewis G. Adler, Esquire
Law Office of Lewis Adler
26 Newton Avenue
Woodbury, NJ 08096
 *Attorney for plaintiff*

Francis X. Manning, Esquire
Stradley, Ronon, Stevens & Young, LLP
Woodland Falls Corporate Park
200 Lake Drive East
Suite 100
Cherry Hill, NJ 08002
 *Attorney for defendant*

**HILLMAN**, District Judge

  This putative class action case concerns plaintiff's claims that defendant charged excessive attorney's fees and costs in plaintiff's state court foreclosure action.  Previously, when first considering defendant's motion to dismiss all of plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court discovered that subject matter jurisdiction under the Class Action Fairness Act may be lacking, and ordered the parties to undertake jurisdictional discovery.  Such discovery has been completed, and defendant has again moved to dismiss plaintiff's claims for lack of

subject matter jurisdiction and for failure to state a claim.  For the reasons expressed below, defendant's motion will be granted.

## BACKGROUND

The following background was included in the Court's prior Opinion and will be restated here for reference:  On October 25, 2001, Chase Manhattan Mortgage Corporation[1] instituted a foreclosure action against plaintiff Stacey Coleman in New Jersey Superior Court, Chancery Division.  On August 1, 2002, the Chancery Court entered a final judgment in favor of Chase in the amount of $90401.53, plus interest and counsel fees, and ordered the sale of Coleman's home to satisfy the monies due.  On November 4, 2005, Chase provided Coleman with reinstatement figures.  On January 17, 2006, Coleman reinstated her mortgage by paying $18,658.24, which included $6691.73 for fees and costs.  On January 20, 2006, the foreclosure action was dismissed without prejudice, with the Chancery Court noting that the action was amicably settled between the parties.

Coleman brings this case against Chase asserting numerous causes of action based on her claim that Chase demanded, and was paid, fees in excess of $5,000 of what is permitted by Fair Housing Act regulations[2] and New Jersey statute and court rules.  She

---

[1] Defendant Chase Home Finance, LLC is the successor-by-merger to Chase Manhattan Mortgage Corporation.

[2] Since the Court first reviewed Coleman's complaint, Coleman filed an amended complaint adding a claim pursuant to the FHA,

2

purports to bring these claims on her behalf and on behalf of similarly situated individuals who have also paid these allegedly excessive fees.[3]

### DISCUSSION

Previously, Chase moved to dismiss Coleman's claims by contending that they are barred by the entire controversy doctrine and otherwise fail to state a claim. Coleman opposed Chase's motion. On an independent review of Coleman's complaint, however, the Court found that subject matter jurisdiction may be lacking. Coleman asserted that this Court has jurisdiction over her case pursuant to 28 U.S.C. § 1332(d)(2), the Class Action Fairness Act (CAFA), which provides, in relevant part, that "district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which . . .

---

Title VIII, as amended, 42 U.S.C. § 3604(a).

[3]Counsel for plaintiff has brought essentially identical claims on behalf of numerous other state court foreclosure defendants against other mortgage lending companies. As recently noted by Judge Irenas in Rivera v. Washington Mut. Bank, Civ. A. No. 09-0021, 637 F. Supp. 2d 256, 258 (D.N.J. 2009), "the Court has had particular difficulty ascertaining the alleged facts of this case. No doubt this difficulty stems from the obvious fact that Plaintiffs' counsel has drafted one generic complaint for at least ten other cases--all filed in this district by the same attorneys, all proposing the same class, seven of which were filed on the same day as this case." Indeed, plaintiff's counsel has two other cases pending before this Court--Oliver v. American Home Mortage, Civ. A. No. 09-0001, and Ogbin v. Citifinancial Mortage Company, Inc., Civ. A. No. 09-0023.

. (A) any member of a class of plaintiffs is a citizen of a State different from any defendant." The Court noted that Coleman had not properly pleaded this Court's subject matter jurisdiction because, applying the CAFA jurisdictional requirement for unincorporated associations, Coleman stated that Chase is organized under the laws of Delaware, but she did not state where Chase has its principal place of business. Thus, it was not clear whether Coleman, a New Jersey citizen, is a citizen of a different state from Chase.

The Court also found that even if Coleman cured her jurisdictional statement, and, therefore, subject matter jurisdiction had been properly averred pursuant to § 1332(d)(2), CAFA has an exception to federal jurisdiction over "home state" controversies. See Hirschbach v. NVE Bank, 496 F. Supp. 2d 451, 458 (D.N.J. 2007) (citing Judiciary Committee Report on Class Action Fairness Act, S. Rep. No. 109-14, at 28 (2005), as reprinted in 2005 U.S.C.C.A.N. 3, 28) (providing a detailed analysis of CAFA and "home state" controversies). This "home state" exception, explained in 28 U.S.C. §§ 1332(d)(3) and (4), identifies certain class actions over which subject matter jurisdiction may not exist, despite satisfaction of § 1332(d)(2). The home state exception has both a mandatory and a discretionary facet. Hirshbach, 496 F. Supp. 2d at 459. A district court must decline jurisdiction over a class action in which two-thirds or more of the members of all

4

proposed plaintiff classes in the aggregate and the primary defendants are citizens of the state in which the action was originally filed. 28 U.S.C. § 1332(d)(4). A district court has discretion to decline jurisdiction where the class composition is greater than one-third but less than two thirds of the class are citizens of the forum state, and where the primary defendants are citizens of the forum state. 28 U.S.C. § 1332(d)(3).

In the prior Opinion, the Court found that if Chase was a citizen of New Jersey, this case presents a clear "home state" case, which requires the declination of subject matter jurisdiction. The Court explained:

> Coleman describes the potential class as "1) Individuals who have had home loans held or serviced by the Defendant in the State of New Jersey from sixteen years prior to the filing of the complaint through the date of class certification, 2) individuals who received a payoff or reinstatement from Defendant whose home loan was in default, 3) individuals who were charged attorneys fees and/or other costs which were in excess of the amount actually incurred and/or in excess of the amount allowed by law." (Compl. ¶ 8.) Based on this description, it appears that at least two-thirds of the class are New Jersey citizens. Thus, under the mandatory jurisdictional provision of CAFA, the Court would be required to dismiss the case for lack of subject matter jurisdiction if Chase is a citizen of New Jersey.
> A review of the discretionary factors further supports dismissal if it is determined that Chase is a citizen of New Jersey. The claims of the potential class are all based on New Jersey state law and New Jersey court rules, and no national or interstate interests are implicated. Further, Coleman's attorney had previously filed suit in New Jersey state court asserting the same claims, albeit with a different named plaintiff, although it appears that Coleman would have been a class member had the class been certified. (See Def. Ex. A.) Consequently, the "interests of justice and looking at

5

>     the totality of the circumstances," § 1332(d)(3),
>     warrants that the Court would be likely to decline
>     subject matter jurisdiction if Chase is a citizen of New
>     Jersey.  Compare Hirshbach, 496 F. Supp. 2d at 461
>     (declining to exercise jurisdiction under CAFA based on
>     the number of class members hailing from the state in
>     which the action was originally filed).

(May 11, 2009 Op. at 9-10.)

Following jurisdictional discovery, where it was determined that Chase is indeed a citizen of New Jersey, Coleman amended her CAFA claims to redefine the proposed "national" class: "1) Individuals who have had FHA home loans held or serviced by the Defendant from sixteen years prior to the filing of the complaint through the date of class certification, 2) individuals who received a payoff or reinstatement from Defendant whose home loan was in default, 3) individuals who were charged attorneys fees and/or other costs which were in excess of the amount actually incurred and/or in excess of the amount allowed by FHA regulation." (Amend. Compl. ¶ 8.)  Coleman also defines a subclass for claims arising under New Jersey law.  (Id. ¶ 9.)

In its renewed motion to dismiss, Chase argues that Coleman has not cured the subject matter jurisdiction problem.  Chase points out that the FHA fee schedule applicable to Coleman[4] allowed

---

[4]As pointed out by Chase, Coleman pleads two different dates for her foreclosure judgment--August 1, 2001 and August 1, 2002. The correct date is August 1, 2002.  Coleman alleges that the cap on FHA fees was $1,000 at the time of her foreclosure, and that Chase's charge of $1004 was in violation of that cap.  The cap applicable to Coleman, however, was $1,300, which was effective October 1, 2001.

6

for $1,300 in fees, which causes to be without merit Coleman's allegation that Chase's demand of $1,004 in fees violates the FHA. Further, Chase points out that Coleman admittedly paid only $900 in foreclosure fees, which is within the $1,300 cap allowed by the FHA. Thus, without any valid FHA claim, Chase argues that Coleman cannot maintain a "national" class.[5] Without a national class, all that remains of Coleman's CAFA claims are state causes of action-- i.e., a clear "home state" case--and subject matter jurisdiction is therefore lacking.

Coleman counters that she paid $6691.73 in fees and costs, which were not itemized and could contain hidden attorney's fees. Coleman states that under the FHA, Chase may only charge for services actually incurred, and she claims that she paid over ten times what is allowed by the FHA for fees and costs. Accordingly, Coleman claims she has a valid national class and has established subject matter jurisdiction.

In response, Chase states that Coleman's attempt to lump fees and costs into one FHA-violative sum is improper. First, she has admitted that she paid $900 for attorney's fees, which is less than

---

[5] It is axiomatic that a class plaintiff must have a valid claim in her own right to have standing to pursue the same claims on behalf of a class. Simon v. Eastern Ky. Welfare Rights Organization, 426 U.S. 26, 40 n.20 (1976) (quoting Warth v. Seldin, 422 U.S. 490, 502 (1975)) (stating that named plaintiffs who represent a class "must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent'").

7

the $1,300 FHA cap on fees. Second, with regard to the remainder of the costs she paid, Coleman makes no allegation that Chase did not actually incur those costs, and is therefore not entitled to them.[6] Simply arguing that she paid certain fees and costs, but not providing any indication that those fees and costs were in violation of FHA regulations, is insufficient to state a FHA claim, and, accordingly, insufficient to establish subject matter jurisdiction under CAFA.

It is questionable whether Coleman's proposed class action based on Chase's alleged violation of the FHA can sustain what is otherwise an unarguably "home state" case.[7] Coleman's complaint makes it clear that the FHA-allowed attorney's fees she paid were proper, and no where does she allege that Chase did not actually

---

[6]Coleman takes issue with the differing fees and costs listed in the final foreclosure judgment and the pay off and reinstatement quotes. In its brief discussing Coleman's intentional misrepresentation and consumer fraud claims, Chase explains why the amounts differ: (1) the final foreclosure judgment was vacated pursuant to an agreement between Coleman and Chase; (2) New Jersey court rule permits Chase to include in the pay off and reinstatement quotes money advanced for taxes, etc., even though that amount may be ultimately paid by the Sheriff following a Sheriff's sale; and (3) under New Jersey court rules, certain costs, such as Sheriff's sale costs, are automatically added to a judgment, even if the foreclosure settles. These discrepancies are reconciled upon resolution of the foreclosure action. (Def. Reply at 8-9.)

[7]With the addition of an FHA claim, this Court's subject matter jurisdiction may be predicated on 28 U.S.C. § 1331 without consideration of CAFA jurisdictional requirements. Because, however, the issue of subject matter jurisdiction under CAFA was left unresolved following the Court's May 11, 2009 Opinion, it will still be considered here.

incur or was not entitled to the costs she paid. Instead, Coleman intimates that because the costs were not itemized, she may have actually paid more than $1,300 in attorney's fees because those fees were hidden in the costs.

This claim is a very speculative one on which to base subject matter jurisdiction.[8] The Court has an independent obligation to determine subject matter jurisdiction, and it is well-established that "the basis upon which jurisdiction depends must be alleged affirmatively and distinctly and cannot be established argumentatively or by mere inference." S. Freedman and Co., Inc. v. Raab, 180 Fed. Appx. 316, 320 (3d Cir. 2006) (citation omitted). Further, jurisdictional determinations under CAFA "should be made largely on the basis of readily available information." Hirshbach, 496 F. Supp. 2d at 460 (citation omitted). Without, however, an itemization of the costs incurred by Chase, which the Court could not consider on a motion to dismiss unless it is a document that can be judicially noted, the Court cannot definitely determine the invalidity of Coleman's FHA claim. Thus, this tenuous basis for jurisdiction is nonetheless a basis, and therefore the Court will not dismiss Coleman's case for lack of subject matter jurisdiction.

---

[8]As noted above, because plaintiff has now alleged a federal claim, subject matter jurisdiction may be laid over that claim pursuant to 28 U.S.C. § 1331, and over plaintiff's state law claims pursuant to 28 U.S.C. § 1367. If the Court were to substantively find that plaintiff's FHA claim fails, the Court could then decline to exercise its supplemental jurisdiction to hear plaintiff's state law claims.

9

The Court, however, finds availing Chase's other argument for dismissal--the entire controversy doctrine.[9]

The fundamental principle of New Jersey's entire controversy doctrine, codified in Rule 4:30A of the New Jersey Rules of Civil Procedure[10] and applicable in federal court, Bennun v. Rutgers State University, 941 F.2d 154, 163 (3d Cir. 1991), is that "the adjudication of a legal controversy should occur in one litigation in only one court," and "is a reflection of the constitutional unification of the state courts and the comprehensive jurisdiction vested in the Superior Court established under our Constitution, which recognized the value in resolving related claims in one adjudication so that 'all matters in controversy between parties may be completely determined.'" Mystic Isle Development Corp. v. Perskie & Nehmad, 662 A.2d 523, 529 (N.J. 1995) (quoting N.J. Const., art. VI, § 3, ¶ 4).

The entire controversy doctrine serves three fundamental purposes: "(1) the need for complete and final disposition through the avoidance of piecemeal decisions; (2) fairness to parties to the action and those with a material interest in the action; and

---

[9] If the Court did not dismiss Coleman's case based on the entire controversy doctrine, Chase, of course, would be free to file another motion to substantively address the costs issue.

[10] Rule 4:30A of the New Jersey Rules of Civil Procedure, provides that "[n]on-joinder of claims required to be joined by the entire controversy doctrine shall result in the preclusion of omitted claims to the extent required by the entire controversy doctrine . . . ." N.J. Ct. R. 4:30A.

(3) efficiency and the avoidance of waste and the reduction of delay." DiTrolio v. Antiles, 662 A.2d 494, 502 (N.J. 1995). It is meant to constrain a plaintiff from "withhold[ing] part of a controversy for separate litigation even when the withheld component is a separate and independently cognizable cause of action." Paramount Aviation Corp. v. Agusta, 178 F.3d 132, 137 (3d Cir. 1999).

In determining whether successive claims constitute one controversy for purposes of the doctrine, the central consideration is whether the claims "ar[o]se from related facts or the same transaction or series of transactions" as the state court claims. Fields v. Thompson Printing Co., 363 F.3d 259, 265 (3d Cir. 2004). (quoting DiTrolio, 662 A.2d at 502 (1995)). The Supreme Court of New Jersey has explained that it is a "commonality of facts, rather than commonality of issues, parties or remedies that defines the scope of the controversy." DiTrolio, 662 A.2d at 503. It is the knowledge of the existence of a cause of action during the first proceeding that invokes the entire controversy doctrine. Maertin v. Armstrong World Industries, Inc., 241 F. Supp. 2d 434, 456 (D.N.J. 2002) (citing New Jersey state court cases). The party has such knowledge if she "knows, or should have known, of facts which establish that an injury has occurred and that fault for that injury can be attributed to another." Id. (citation omitted); Brown v. Brown, 506 A.2d 29, 30 (N.J. Super. Ct. App. Div. 1986)

(concluding that "the entire controversy doctrine ordinarily requires joinder or attempted joinder of constituent causes arising *pendente lite*").

The "boundaries of the doctrine are not limitless," however. Mystic Isle, 662 A.2d at 529. It is well recognized that the entire controversy doctrine does not bar related claims which have not arisen or accrued during the pendency of the original action. McNally v. Providence Washington Ins. Co., 698 A.2d 543 (N.J. Super. Ct. App. Div. 1997). Further, it is an equitable doctrine, and its application is flexible, with a case-by-case appreciation for fairness to the parties. Paramount Aviation Corp. v. Agusta, 178 F.3d 132, 137 (3d Cir. 1999).

The entire controversy doctrine is applicable in the foreclosure context. See In re Mullarkey, 536 F.3d 215, 228 (3d Cir. 2008) (citing to Leisure Technology-Northeast v. Klingbeil Holding Co., 349 A.2d 96 (N.J. 1975) and stating that the case "reiterates the importance of the entire controversy doctrine and confirms that it is applicable to foreclosure proceedings"). New Jersey Court Rule 4:64-5, which governs the joinder of claims in foreclosure, somewhat narrows the scope of the doctrine, however. Id. That rule provides,

> Unless the court otherwise orders on notice and for good cause shown, claims for foreclosure of mortgages shall not be joined with non-germane claims against the mortgagor or other persons liable on the debt. Only germane counterclaims and cross-claims may be pleaded in foreclosure actions without leave of court. Non-germane

>     claims shall include, but not be limited to, claims on
>     the instrument of obligation evidencing the mortgage
>     debt, assumption agreements and guarantees. . . . .

N.J. Ct. R. 4:64-5. Thus, the entire controversy doctrine applies to foreclosure proceedings, but extends only to "germane" counterclaims. In re Mullarkey, 536 F.3d at 228 (citing Leisure Tech., 349 A.2d at 98-99).

Here, Coleman's claims are barred by the entire controversy doctrine. Coleman claims that Chase was only entitled to $1600.52 in taxed costs, inclusive of attorney's fees and costs, for its prosecution of its foreclosure action. Coleman claims that this figure was ordered by the Chancery Court in the August 1, 2002 Judgment of foreclosure in accordance with New Jersey Court Rules. Coleman claims, however, that Chase charged her, and she paid, $6691.73 in costs pursuant to Chase's November 4, 2005 reinstatement quote. Thus, Coleman contends that she overpaid by $5091.21, and that Chase's demand is violative of New Jersey state law and court rules.

Coleman, however, was required to bring her claims in the foreclosure action. First, it is clear that her claims based on the allegedly improper charges arose from Chase's foreclosure action. But for the foreclosure action, Chase never would have imposed such charges onto Coleman. Second, Coleman became aware of the overcharges during the pendency of the foreclosure action. The August 2002 Chancery Court order stated that Chase was entitled to

13

$1600.52 in associated costs, but then in November 2005 when it issued its reinstatement quote, Chase assessed $6691.73 in costs. The foreclosure action was still active when Coleman received the reinstatement quote.[11] Thus, Coleman became aware during the pendency of the foreclosure action that the fees Chase charged her were in excess of the court order.  Even if Coleman did not know specifically that the fees were arguably in violation of New Jersey court rule and law, at a minimum, she was aware that Chase was charging her an amount that differed from the August 2002 court order.[12]

---

[11]Chase states that the four-year pendency of the foreclosure action was due to Coleman filing three successive bankruptcy petitions.  Even though this fact is not relevant to the issue of whether the entire controversy is applicable, the Court may take judicial note of the bankruptcy filings when considering a motion to dismiss pursuant to Rule 12(b)(6). Southern Cross Overseas Agencies, Inc. v. Kwong Shipping Group Ltd., 181 F.3d 410, 426 (3d Cir. 1999).

[12]Chase points out that Coleman's current counsel also represented her in the foreclosure action and her bankruptcy actions.  As Judge Thompson commented when considering a motion to dismiss similar claims filed by Coleman's counsel on behalf of another client, whom he also represented in that client's foreclosure and bankruptcy proceedings,

> The Court finds that each of these alleged overcharges and deceptive statements would be readily recognized as overcharges by a competent attorney representing a debtor in a foreclosure action. Such an attorney can be assumed to be familiar with the applicable state court statutes and rules limiting allowable costs, attorneys fees and interest and is certainly familiar with the provisions of his or her own client's mortgage agreement.  Similarly, such an attorney would be familiar with the usual costs associated with prosecuting a foreclosure action and would be on guard

Third, Coleman's claims are germane to her foreclosure action, and, accordingly, could have been brought in the foreclosure action. The New Jersey Appellate Division has addressed on several occasions whether a claim is germane to the foreclosure, and whether it should have been brought in the foreclosure action in lieu of the institution of a subsequent action in contravention of the entire controversy doctrine. For example, in Leisure Technology-Northeast v. Klingbeil Holding Co., 349 A.2d 96 (N.J. 1975), the defendant to a foreclosure action filed an answer and counterclaim alleging that the mortgage lender's fraudulent actions caused him to default on the loan. The Chancery Court judge granted the lender's motion to strike the affirmative defense, and transferred the counterclaim to the Law Division. The appeals court reversed, finding that the entire controversy doctrine required the counterclaim to be heard in the foreclosure action, and concomitantly, found that the counterclaim was germane. The court explained,

> The use of the word 'germane' in the language of the rule undoubtedly was intended to limit counterclaims in foreclosure actions to claims arising out of the mortgage transaction which is the subject matter of the

---

  for overcharges of costs and fees normally assessed in
  such actions. Therefore, the Court concludes that none
  of these alleged overcharges and deceptive statements
  would in fact deceive a competent attorney representing
  a debtor in a foreclosure action.

Allen v. LaSalle Bank, N.A., Civ. A. No. 3:08-2240 (D.N.J. Jan. 30, 2009).

15

> foreclosure action.  We see no intention to prohibit or restrict counterclaims in a more narrow sense. . . . Here the thrust of the counterclaim is the assertion that plaintiff had breached the underlying agreement in relation to which the mortgage was executed and interfered with defendants' rights under that agreement. In the usually understood sense of the word, these claims were germane to the foreclosure action.  We are persuaded that the single controversy doctrine to which we have referred above requires a liberal rather than a narrow approach to the question of what issues are 'germane.'

Leisure Technology, 349 A.2d at 98-99 (internal citations omitted).

Similarly, in Joan Ryno, Inc. v. First Nat. Bank of South Jersey, 506 A.2d 762, 767 (N.J. Super. Ct. App. Div. 1986), the plaintiff instituted a separate action regarding a lender's breach of the mortgage contract rather than raising that claim as a defense to the foreclosure.  In the second action, the trial judge precluded the establishment of damages relating to the foreclosure, but permitted the establishment of damages relating to the breach of the mortgage contract.  The appeals court reversed, finding that the entire controversy doctrine required that both issues were required to be raised in the foreclosure action.  The court explained,

> We are satisfied that if the single controversy doctrine applied then any claim that plaintiff could have otherwise asserted against defendant by reason of the breach of the commitment should have been barred. . . . In not precluding the second action which involved a component of what plaintiff itself claimed was a particular controversy, it allowed a result hardly consistent with the purpose of the doctrine to eliminate delay, avoid harassment and wasted time of the parties, avoid clogging of the courts and promote fundamental fairness. Our point is that once the doctrine was held

>applicable, the breach of the commitment and all damages from it were part of a single controversy which included the foreclosure so that plaintiff could not make any claim for breach of the commitment in this later action.

Renyo, 506 A.2d at 766-67 (internal citations omitted).

These cases support that Coleman's claims here are germane to the foreclosure action and should have been brought there. It is clear that Coleman's dispute over the foreclosure fees arose out of the mortgage transaction which is the subject matter of the foreclosure action, and are therefore "germane," in the "usually understood sense of the word," to the foreclosure action. Because they are germane, pursuant to Rules 4:30A, 4:64-5, and 4:7-1[13], Coleman was required to assert her claims in the foreclosure action.

This case presents a textbook example of the purpose of the entire controversy doctrine. Had Coleman asserted her counterclaim in the foreclosure action in November 2005 when she became aware of the alleged excessive charges, the Chancery Court judge handling the foreclosure could have addressed the issue in the proper

---

[13]N.J. Ct. R. 4:7-1 provides, "Except as otherwise provided by R. 4:64-5 (foreclosure actions) and R. 4:67-4 (summary actions), a pleading may state as a counterclaim any claim against the opposing party whether or not arising out of the transaction or occurrence that is the subject matter of the opposing party's claim. A defendant, however, either failing to comply with R. 4:30A (entire controversy doctrine) or failing to set off a liquidated debt or demand or a debt or demand capable of being ascertained by calculation, shall thereafter be precluded from bringing any action for such claim or for such debt or demand which might have been so set off."

context--that is, during the four-year long case involving Coleman and Chase and the foreclosure of Coleman's home. By withholding her claims and then instituting an action here, Coleman prevented the resolution of the fees issue, and transformed a state court foreclosure issue between the two parties into an independent, federal court, putative class action. To allow such a result would be inconsistent "with the purpose of the doctrine to eliminate delay, avoid harassment and wasted time of the parties, avoid clogging of the courts and promote fundamental fairness." Renyo, 506 A.2d at 766-67 (citation omitted).[14] Consequently, Coleman's claims must be dismissed.[15]

---

[14] If Coleman were to argue that a class action could not have been brought as a counterclaim to a foreclosure action in the Chancery Court, and, therefore, her claims should not be barred by the entire controversy doctrine, such an argument, even if true, would not permit her claims here. Coleman was required to assert any affirmative defenses to the foreclosure and advance any counterclaims arising out of the foreclosure in the foreclosure action. With the fees issue and putative class action properly before the Chancery Court, it would have been for the Chancery Court to decide whether such claims could be advanced. If the Chancery Court judge determined that such claims could not be maintained in the foreclosure action, and no appeal was taken, the claims could have then been severed and transferred to the Law Division. See, e.g., Leisure Technology-Northeast, Inc. v. Klingbeil Holding Co., 349 A.2d 96, 99 (N.J. Super. Ct. App. Div. 1975) (reversing chancery judge's severance and transfer of counterclaims to the law division because the counterclaims were germane to the foreclosure and required to be asserted there pursuant to the entire controversy doctrine).

[15] Even if the entire controversy doctrine did not bar plaintiff's claims, this Court would be inclined to follow the reasoning of Judge Irenas, who substantively considered--and dismissed--the same claims advanced here in Rivera v. Washington Mut. Bank, Civ. A. No. 09-0021, 637 F. Supp. 2d 256 (D.N.J.

18

**CONCLUSION**

For the reasons expressed above, defendant's motion to dismiss will be granted.  An appropriate order will be entered.


Date: November 10, 2009              s/ Noel L. Hillman

At Camden, New Jersey              NOEL L. HILLMAN, U.S.D.J.

---

2009), Martino v. Everhome Mortg., Civ. A. No. 09-0011, 639 F. Supp. 2d 484  (D.N.J. 2009), Skypala v. Mortgage Electronic Registration Systems, Inc., Civ. A. No. 08-5867, 2009 WL 2762247 (D.N.J. Sept. 1, 2009), and Perkins v. Washington Mut., FSB, 2009 WL 2835781 (D.N.J. Sept. 4, 2009).