# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY
### (CAMDEN VICINAGE)

**LEWIS G. ADLER, ESQUIRE**
**26 NEWTON AVENUE**
**WOODBURY, NJ 08096**
**(856)845-1968**
**ATTORNEY FOR PLAINTIFFS**

| | |
|---|---|
| **STACY COLEMAN, fka Stacy Kovilaritch individually and as a class representative On behalf of others similarly situated** <br> **Plaintiff,** <br><br> **vs.** <br><br> **CHASE HOME FINANCE, LLC. Successor by merger to CHASE MANHATTAN MORTGAGE CORP. and John Doe 1-100 and John Doe Servicers 1-100** <br> **Defendant.** | **CASE NO.** <br> **Case No. 1:08-cv-2215 (NLH)(JS)** <br><br> **Civil Action** <br><br> **CERTIFICATION OF COUNSEL IN SUPPORT OF MOTION TO FOR RECONSIDERATION.** |

I, Lewis G. Adler, Esq., of full age, do hereby certify:

1.      I am an attorney at law of the State of New Jersey and, together with Roger C. Mattson, Esq. represent the Plaintiffs in the within matter. As such, I am fully familiar with the facts and circumstances surrounding this case. I make this certification in support of the motion of Plaintiffs for an order to file an amended complaint.

2.      A copy of the first amended complaint is attached. Exhibit 1

3.      A copy of the courts decision of November 10, 2009 is attached. Exhibit 2

I hereby certify that the foregoing statements made by me are true and accurate. I am aware that if any of the foregoing statements made by me are willingly false, I am subject to punishment.

Dated: November 19, 2009            _/s/Lewis G. Adler, Esquire__
                                                            Lewis G. Adler, Esq.

Exhibit 1

First Amended Complaint

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
(CAMDEN VICINAGE)

**LEWIS G. ADLER, ESQUIRE**
**26 NEWTON AVENUE**
**WOODBURY, NJ 08096**
**(856)845-1968**
**ATTORNEY FOR PLAINTIFF**
_____

|  |  |
|---|---|
| | : |
| **STACY COLEMAN , fka Stacy Kovilaritch:** | |
| **individually and as a class representative** | **:** |
| **On behalf of others similarly situated** | **:** |
| **Plaintiff,** | **:** |
| | **: 1:08-cv-2215 (NLH)(JS)** |
| **vs.** | **:** |
| | **:    CIVIL ACTION** |
| **CHASE HOME FINANCE, LLC.** | **:** |
| **Successor by merger to** | **:    FIRST AMENDED** |
| **CHASE MANHATTAN MORTGAGE** | **:      CLASS ACTION** |
| **CORP.  and John Doe 1-100** | **:      COMPLAINT AND** |
| **and John Doe Servicers 1-100** | **:  JURY TRIAL DEMAND** |
| **Defendant.** | **:** |

_____

Plaintiff, by her attorney, individually, and as private attorneys general, and on behalf of all others similarly situated, hereby makes the following  complaint:

Plaintiff, STACY COLEMAN fka Stacy Kovilaritch, residing at 169 Columbia Avenue, Thorofare, County of Gloucester and State of New Jersey, by way of Complaint against the Defendant, says:

PARTIES

1.      The Plaintiff, a New Jersey citizen owns and resides at the residential property located at 169 Columbia Avenue, Thorofare, County of Gloucester, New Jersey.

2.      The Defendant, CHASE Home Finance, LLC  a Delaware limited liability company is the successor by merger  to CHASE MANHATTAN MORTGAGE, CORPORATION, a NEW JERSEY Corporation, (Chase), with its principal place of business being 194 Wood Avenue South, Iselin, NJ solicits and does business throughout the State of New Jersey, inclusive of Gloucester County.

VENUE AND JURISDICTION

3.      This action is a civil action over which this Court has original jurisdiction pursuant to 28 USC 1332(d), as amended by the Class Action Fairness Act, Pub. L. No. 109-2,119 Sta. 4 (2005). This is a class action in which at least one member of the class of the Plaintiff is a citizen of a state different from that of the Defendant and the amount in controversy exceeds the sum of $5,000,000.00, exclusive interest and costs.

4.      Plaintiff seeks to represent a class and pursue a class recovery under          . See 28 USC 1332(d)(1)(B) (defining "class action" as "any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute…authorizing an action to be brought by 1 or more representative persons as a class action.")

5.      The diversity requirement of Section 1332(d)(2), as amended by the Class Action Fairness Act, is satisfied when "any member of a class of plaintiffs is a citizen of a State different from any defendant" Id. 1332(d)(2)(A).

6.   The Defendant is a Delaware Limited Liability Company with its principal place of business in New Jersey.

7.   The Plaintiff is a resident of the State of New Jersey.

8.   The proposed class will not be composed of or limited to citizens from the state of Delaware or New Jersey. The Plaintiff proposes a national class as 1) Individuals who have had FHA home loans held or serviced by the Defendant from sixteen years prior to the filing of the complaint through the date of class certification, 2) individuals who received a payoff or reinstatement statement from the Defendant whose home loan was in default, 3) individuals who were charged attorneys fees and/or other costs which were in excess of the amount actually incurred and/or in excess of the amount allowed by FHA regulation.

9.   A subclass exists for claims from six years prior to the filing of the complaint through the date of class certification which includes claims under the New Jersey Consumer Fraud Act and the New Jersey Truth-In-Consumer Contracts, Warranty and Notice Act.

10. The class damages sought by the Plaintiff are to be aggregated for purposes of calculating the amount in controversy.  The Plaintiff will be seeking actual damages, treble damages and punitive damages plus attorneys fees and costs of suit. The Plaintiff anticipates that the damages will average $5000.00 per class member.

11. The Defendant has averaged 600 to 1000 foreclosures per year since 2002. The class size is anticipated to be in excess of 3000 members. The total aggregated damages would be at least $15,000,000.00.

CLASS ACTIONS ALLEGATIONS

12. The Plaintiff brings this action on  behalf of all persons similarly situated and pursuant to Fed. R.Civ.P. 23 as a class action on behalf of a nationwide class of persons as defined in paragraph 8 above.

13. The claims of the named class representative and the absent class members have a common origin and share a common basis. Their claims originate from the same illegal, fraudulent, unconscionable and/or negligent business practices of the Defendant, and the Defendant acts in the same way toward the Individual Plaintiff and the members of the class. As such, the individual Plaintiff has been a victim of the unconscionable business practices.

14. The Plaintiff proposes a class as 1) Individuals who have had home loans held or serviced by the Defendant, Chase in the State of New Jersey from sixteen years prior to the filing of the complaint through the date of class certification; and 2)  who received a payoff or reinstatement statement from the Defendant whose home loan was in default; 3)and who were charged attorneys fees and/or other costs which were in excess of the amount actually incurred and/or in excess of the amount allowed by law.

A)      A subclass exists for claims from six years prior to the filing of the complaint through the date of class certification which includes claims under the New Jersey Consumer Fraud Act and New Jersey Truth-In-Consumer Contracts, Warranty and Notice Act.

15. The Plaintiff proposes a national class as 1) Individuals who have had FHA home loans held or serviced by the Defendant, Chase from sixteen years prior to the

filing of the complaint through the date of class certification; and 2) who received a payoff or reinstatement statement from the Defendant whose home loan was in default; 3)and who were charged attorneys fees and/or other costs which were in excess of the amount actually incurred and/or in excess of the amount allowed by FHA regulation.

16. At all times relevant hereto, Chase has engaged in a uniform scheme and course of conduct to inflate their profits by charging and collecting various fees not authorized by the loan documents or applicable law. The components of this scheme involve common tactics in which the Defendant has been overcharging defaulting borrowers of residential mortgages in the following manner, including but not limited to:

a) they charged attorney fees in both foreclosure and bankruptcy which were in excess of those allowed by statute and court rule;

b) they charged attorneys fees and costs in excess of those actually incurred;

c) costs of suit charged to the class was excessive in violation of statute and court rule;

d) recording fees charged were excessive of the actual fee incurred;

e) over charging of sheriff's commissions by failing to properly credit deposits and monies returned from the sheriff;

f) charging excessive interest by continuing to charge the contract rate after a judgment of foreclosure was entered when entitled to the judgment interest rate;

g) other excessive charges, such as charging the borrower for obtaining a certificate of regularity which is not a cost which can be charged to a borrower.

17. The proposed class representative states a claim upon which relief can be granted that is typical of the claims of absent class members. If brought and prosecuted

individually, the claims of each class member would necessarily require proof of the same material and substantive facts, rely upon the same remedial theories, and seek the same relief.

18. The claims and remedial theories pursued by the named class representative are sufficiently aligned with the interests of absent class members to ensure that the individual claims of the class will be prosecuted with diligence and care by the individual Plaintiff as class representative.

19. The members of the class are so numerous that joinder of all members is impracticable. The Defendant engage in thousands of foreclosures per year. The class is ascertainable as the names and addresses of all class members can be identified in the business records maintained by the Defendant.

20. Questions of fact and law common to the class that predominate include but are not limited to:

I.       Did Chase breach their contractual obligations to the class members by having imposed or collected amounts that are not due and owing by contract or applicable law including interest, default related fees, costs, attorneys fees and charges?

II.      Did Chase engage in unfair and/or deceptive acts and practices with respect to each Class member that includes one or more of the following:

a.       Imposing and collecting unnecessary and excessive fees and charges not authorized by the loan documents or by applicable law;

b.       Imposing and collecting excessive interest;

c.       Misleading or otherwise misinforming customers about the amounts properly due and owing;

d.      Engaging in conduct that violates state and federal consumer protection laws; and

e.      Harassing or otherwise treating customers unfairly and without regard to obligations of good faith and fair dealing.

III.    Did Chase engage in unfair and/or deceptive acts and practices in violation of the New Jersey Consumer Fraud Act with respect to each Class member that includes one or more of the following:

a.      Imposing and collecting unnecessary and excessive fees and charges not authorized by the loan documents or by applicable law;

b.      Imposing and collecting excessive interest;

c.      Misleading or otherwise misinforming customers about the amounts properly due and owing;

d.      Engaging in conduct that violates state and federal consumer protection laws; and

e.      Harassing or otherwise treating customers unfairly and without regard to obligations of good faith and fair dealing.

IV.    Did Chase represent to the Plaintiff that they are entitled to collect various loan charges that were not legally due and owing?

V.     Did Chase collect monies that are not due and owing under applicable law which resulted in unjust enrichment of the Defendant Chase?

21. The named individual Plaintiff is willing and prepared to serve the Court and proposed class in a representative capacity with all of the obligations and duties material thereto. The individual Plaintiff will fairly and adequately protect the interests of the class

and has no interest adverse to, or which directly and irrevocably conflict with, the interests of the other class members.

22. The self-interest of the named class representative is co-extensive with and not antagonistic to those of the absent class members. The proposed representative will undertake to well and truly protect the interests of the absent class members.

23. The named individual Plaintiff has engaged the services of counsel indicated below. Said counsel are experienced in complex class litigation, will adequately prosecute this action and will assert, protect, and otherwise well represent the named class representative and absent class members.

24. The prosecution of separate actions by individual members of the class would create a risk of adjudications with respect to individual members of the class which would, as a practical matter, be dispositive of the interests of other members of the class who are not parties to the action, or could substantially impair or impede their ability to protect their interests.

25. The prosecution of separate actions by individual members of the class would create a risk of inconsistent or varying applications with respect to individual members of the class which would establish incompatible standards of conduct for the parties opposing the class. Such incompatible standards and inconsistent or varying adjudications, on what would be necessarily the same essential facts, proof and legal theories, would also create and allow ot exist inconsistent and incompatible rights within the class.

26. The Defendant has acted or refused to act on grounds generally applicable to the class, making final declaratory or injunctive relief appropriate.

27. The questions of law and fact common to members of the class predominate over any questions affecting only individual members.

28. A class action is superior to other available methods for the fair and efficient adjudication of the controversies herein in that:

a)      individual claims by the class members are impractical as the costs of pursuit far exceed what any one Plaintiff or class member has at stake;

b)      as a result, there has been very little litigation over the controversies herein; and individual members of the class have no interest in prosecuting and controlling separate actions; and

c)      the proposed class action is manageable.


BACKGROUND

29. The mortgage and note dated October 28, 1997 executed by the Plaintiff are documents signed under seal which was originated by Eastern American Mortgage, Co.

**30.** Eastern American Mortgage, Co. was a non-depository licensed lender licensed in the State of New Jersey pursuant to NJSA   17:11C-1.  et seq.

31. The loan was assigned from Eastern American Mortgage Co. to Chase Manhattan Mortgage Corporation on or about October 28, 1997.

32. The Defendant, Chase through its agents and attorneys, Phelan Hallinan & Schmieg, PC began foreclosure proceedings against the Plaintiff on the mortgage on or about October 26, 2001 under the caption Chase Manhattan Mortgage Corporation v. Stacey Kovilaritch et al.; Superior Court of New Jersey, Chancery Division, Gloucester County,  Docket No. F-18980-01.

33. On or about August 1, 2002, the Defendant obtained a final judgment and writ of execution from the Superior Court. Exhibit A.

34. The Plaintiff reinstated the mortgage with Chase on or about January 17, 2006 by paying approximately $18,658.24 as reflected in the reinstatement quote of November 4, 2005 by Nicole Riley which included mortgage arrears of $11,966.21, foreclosure fees of $900 and foreclosure costs of $5791.73. Exhibit B.

35. The payoff as of November 3, 2005 was alleged to be $89,245.62 by Chase as reflected in the payoff quote prepared by Nicole Riley. Exhibit C.

36. The final judgment allowed total taxed costs of only $1600.52 inclusive of attorneys fees and all costs of suit.

37. The Defendant demanded and was paid costs and fees of $6691.73 which was $5091.21 over the amount allowed in the judgment.

38. The reinstatement and payoff quotes provided by Chase to the Plaintiff included excess and/or unincurred charges including attorneys fees and costs of suit which were in excess of the amount allowed under the law and final judgment.

39. The Defendant in calculating both the payoff and reinstatement quotes continued to use the contract rate of interest and not the judgment rate of interest.

40. The Plaintiff paid the full amount demanded by Chase to reinstate the mortgage.

41. Upon receipt of the reinstatement funds from the Plaintiff, the Defendant failed to reinstate the mortgage, and vacate and/or dismiss the foreclosure.

42. On or about April 4, 2007 the Plaintiff paid off the mortgage with Chase in full by paying the amount of $72,198.60 as reflected in the attached HUD-1. Exhibit D.

10

FACTUAL ALLEGATIONS:
<u>DEFENDANT'S WRONGFUL CONDUCT</u>

43.    At all times relevant hereto, Chase has engaged in a uniform scheme and course of conduct to inflate their profits by charging and collecting various fees not authorized by the loan documents or applicable law.  The components of this scheme involve common tactics in which the Defendant has been overcharging defaulting borrowers of residential mortgages in the following manner, including but not limited to:

a)    they charged attorney fees in both foreclosure and bankruptcy which were in excess of those allowed by FHA regulations, statute and court rule;

b)    they charged attorneys fees and costs in excess of those actually incurred;

c)    costs of suit charged to the class was excessive in violation of statute and court rule;

d)    recording fees charged were excessive of the actual fee incurred;

e)    over charging of sheriff's commissions by failing to properly credit deposits and monies returned from the sheriff;

f)    charging excessive interest by continuing to charge the contract rate after a judgment of foreclosure was entered when entitled to the judgment interest rate;

g)    other excessive charges, such as charging the borrower for obtaining a certificate of regularity which is not an expense which can be charged to a borrower.

<u>COUNT I</u>

<u>BREACH OF CONTRACT</u>

44.     Plaintiff realleges and incorporates by reference all preceding allegations of law and fact as if they were set forth fully herein.

45.     Chase services loans evidenced by standard form notes and mortgages which are executed under seal, the relevant provisions of which are uniform.

46.     In the instant case, the mortgage note provides in paragraph 7(C)" If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this note to the extent not prohibited by applicable law."

47.     The mortgage provides in paragraph 10 that "Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding."

48.     The mortgage is an FHA mortgage subject to the regulations of the Secretary.

49.     The FHA regulations 24 CFR 203.552(b) provides that "*reasonable and customary* fees must be predicated upon the actual cost of work performed including out-of-pocket expenses. Directors of HUD Area and Insuring Offices are authorized to

establish maximum fees and charges which are reasonable and customary in their areas. Except as provided in this part, no fee or charge shall be based on a percentage of either the face amount of the mortgage or the unpaid principal balance due on the mortgage."

50.     The Secretary by regulation effective December 1, 1998 defined reasonable and customary attorneys' fees in New Jersey to be capped at $1000.00. The figure was increased to $1300 effective October 1, 2001. The figure was last increased to $1350 effective September 1, 2005.

51.     Chase in the final judgment of foreclosure dated August 1, 2001 requested a total fee of  $1104.00; $1054 based upon a percentage of the unpaid principal balance due on the mortgage plus the statutory minimum of $50.

52.     Chase's fee request in the final judgment was in excess of the amount allowed under the regulations by $104 an over 10% premium.

53.     Chase's fee request in the reinstatement quote of $6691.73 which was paid by the Plaintiff was in excess of the amount allowed by the FHA regulations, the final judgment of foreclosure and New Jersey Law.

54.     Chase has imposed or collected amounts that are not due and owing by contract or applicable law including interest, default related fees, costs, attorneys fees and other charges in violation of paragraph 7(C) of the Note and paragraph 10 of the mortgage.

55.     Chase has breached its contracts with plaintiff and members of the class.

56.     Plaintiff and Class members are entitled to relief for breach of contract.

WHEREFORE, the Plaintiff demands judgment against the Defendant for damages, attorney's fees, and cost of suit.

<u>COUNT II</u>

<u>INTENTIONAL MISREPRESENTATION</u>

57.     Plaintiff realleges and incorporates by reference all preceding allegations of law and fact as if they were set forth fully herein.

58.     Chase has represented to the Plaintiff that Chase is entitled to collect various loan charges that were not legally due and owing as Chase demanded $6691.73 in taxed costs inclusive of attorneys fees and costs of suit in its payoff statement of November 3, 2005 and reinstatement quote dated November 4, 2005. (Exhibit B, & C)

59.     The representations of Chase concerning the right to collect such fees and charges were false as the judgment in the foreclosure allowed a total of $1600.52 in taxed costs inclusive of attorney's fees and costs of suit.

60.     Chase knew or should have known that such representations were false as the judgment in the foreclosure allowed a total of $1600.52 in taxed costs inclusive of attorney's fees and costs of suit. (Exhibit A)

61.     Chase provided the payoff statement on the loan with the intention that the Plaintiff rely on the statement as the amount due to pay off her mortgage.

62.     Plaintiff relied upon Chase's false representations concerning its entitlement to collect such fees and charges to her detriment as she paid the full amount demanded by Chase.

63.     Plaintiff's reliance was reasonable and justifiable in the circumstances.

64.     Plaintiff has suffered damages of at least $5091.21.

65.     Plaintiff and other class members are entitled to relief for misrepresentation.

WHEREFORE, the Plaintiff demands judgment against the Defendant for damages, punitive damages, attorney's fees, and cost of suit.

## COUNT III

### NEGLIGENCE

66.     Plaintiff realleges and incorporates by reference all preceding allegations of law and fact as if they were set forth fully herein.

67.     Chase owed plaintiff and other Class members a duty of care with respect to servicing their mortgage loans  that those loans were secured by an interest in each homeowners' family residence and that lack of care would result in overpayments causing great hardship.

68.     Chase's conduct with respect to Plaintiff and other Class members was far below applicable standards for mortgage loan servicing.

69.     Chase's conduct was negligent with respect to Plaintiff and other Class members.

70.     As a direct and proximate result of the negligence listed above Plaintiff and the other Class members have suffered damages and are entitled to relief for Chase's negligence.

WHEREFORE, the Plaintiff demands judgment against the Defendant for damages, attorney's fees, and cost of suit.

COUNT IV:

BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING

71.     Plaintiff realleges and incorporates by reference all preceding allegations of law and fact as if they were set forth fully herein.

72.     New Jersey recognizes a duty of good faith and fair dealing with respect to conduct encompassed by contractual relations.

73.     Chase's conduct as aforesaid breached said duty.

74.     Plaintiff and members of the Class are entitled to relief for Chase's breach.

WHEREFORE, the Plaintiff demands judgment against the Defendant for damages, attorney's fees, and cost of suit.

COUNT V:  UNJUST ENRICHMENT

75.     Plaintiff realleges and incorporates by reference all preceding allegations of law and fact as if they were set forth fully herein.

76.     Chase has engaged in unlawful collection activities.

77.     Chase has collected monies that are not due and owing under applicable contract law, because the contract or other applicable law does not permit Chase to collect such fees and charges.

78.     Said conduct sounds in equity under the common law of unjust enrichment,  money had & received, and constructive trust.

79.     Chase has been unjustly enriched by its conduct of at least $5091.21.

80.     Plaintiffs and Class members have suffered loss by virtue of Chase's conduct.

81.    Plaintiffs and members of the Class are entitled to relief for unjust enrichment.

WHEREFORE, the Plaintiff demands judgment against the Defendant for damages, attorney's fees, and cost of suit.

## COUNT VI:

## UNFAIR AND DECEPTIVE ASSESSMENT AND COLLECTION OF FEES

82.    Plaintiff incorporates by reference all the foregoing paragraphs.

83.    In the course and conduct of their loan servicing and collection, defendant in numerous instances, has represented, expressly or by implication, that fees assessed and collected by Chase were (a) allowed under, the mortgage contract and (b) permitted by law.

84.    In the instant case, the final judgment in the foreclosure allowed total taxed costs of $1600.52. Chase demanded and collected $6691.73. This is an overpayment and overcharge of $5091.21.

85.    On numerous occasions, the fees assessed and collected by Chase were (a) not allowed under the mortgage contract and/or (b) not permitted by law. Nonetheless, Chase improperly assessed and collected these fees.

86.    Defendants' actions have caused and are likely to cause substantial injury to consumers. This injury is not reasonably avoidable by consumers and not outweighed by countervailing benefits to consumers or competition.

87.    Defendants' acts or practices constitute unfair and deceptive acts or practices in or affecting commerce in violation of Section 5(a) of the Federal Trade

Commission Act, 15 U.S.C. §45(a) which constitutes a violation of the New Jersey Consumer Fraud Act and are therefore actionable by the Plaintiff.

88.     The actions of the Defendant constitute  per se unconscionable business practices in violation of the New Jersey Consumer Fraud Act.  N.J.S.A. 56:8-2 et seq.

89.     The Plaintiff has suffered an ascertainable loss of at least $5091.21.

WHEREFORE, the Plaintiff demands judgment against the Defendant for damages, treble damages, attorney's fees, and cost of suit.

<u>COUNT VII:</u>

<u>Fair Foreclosure Act</u>

90.  The Plaintiff repeats each and every allegation of the previous paragraphs and incorporate them by reference herein as if they were set forth fully herein.

91. The Fair Foreclosure Act limits the amount of costs and attorney's fees which may be collected from a debtor in a mortgage foreclosure. Specifically,  N.J.S.A. 2A:50-57 (b)(3) of the Act prohibits the charging of attorneys fees and costs in excess of those allowed by the New Jersey court rules.

92. The Defendants' charges for costs and attorneys fees were far in excess of the amount allowed pursuant to the statute and court rules.

93. The Defendant was allowed a total of $1600.52 in attorney fees and taxed costs pursuant to the final judgment.

94.The Defendant was paid $6691.73.

95. The Plaintiff demands a return of the $5091.21 in excess charges.

96. The Defendants' acts or practices in violation of the Fair Foreclosure Act are either directly actionable under the act or constitute unconscionable business practices in violation of the New Jersey Consumer Fraud Act.  N.J.S.A. 56:8-2.

97.     The actions of the Defendant constitute  per se unconscionable business practices in violation of the New Jersey Consumer Fraud Act.  N.J.S.A. 56:8-2 et seq.

98.     The Plaintiff has suffered an ascertainable loss of at least $5091.21.

WHEREFORE, the Plaintiff demands judgment against the Defendant for damages, treble damages, attorney's fees, and cost of suit.


## COUNT VIII

### New Jersey State Court Rule

99.     The Plaintiff repeats each and every allegation of the previous count and incorporates them by reference herein.

100.    The Defendant's charges for costs and attorneys fees were in excess of the amount allowed pursuant to New Jersey court rule R 4:42-9(a)(4) and R 4:42-10 (a).

101.    The Defendant was allowed a total of $1600.52 in attorney fees and taxed costs pursuant to the final judgment.

102.    The Defendant was paid $6691.73.

103.    The Plaintiff demands a return of the $5091.21 in excess charges.

104.    The Plaintiff requests the return of the excess charges with interest.

105.    The Defendants' acts or practices in violation of the New Jersey Court Rules are either directly actionable under the act or constitute unconscionable business practices in violation of the New Jersey Consumer Fraud Act.  N.J.S.A. 56:8-2.

106.    The actions of the Defendant constitute  per se unconscionable business practices in violation of the New Jersey Consumer Fraud Act.  N.J.S.A. 56:8-2 et seq.

107.    The Plaintiff has suffered an ascertainable loss of at least $5091.21.

WHEREFORE, the Plaintiff demands judgment against the Defendant for damages, treble damages, attorney's fees, and cost of suit.


## COUNT IX

## Excessive Taxed Costs in Violation of State Statutes


108.    The Plaintiff repeats each and every allegation of the previous count and incorporates them by reference herein.

109.    The Defendant's charges for costs  were in excess of the amount allowed pursuant to New Jersey law including but not limited to

a)      NJSA 22A:2-10 which allows costs in a foreclosure of $50.00;

b)      NJSA 22A:2-10 which allows costs for a writ of execution of $10.00;

c)      NJSA 22A:2-8 which allows the filing fee of $200;

d)      NJSA 2A:15-13 which allows a maximum of $50 for the filing of the  lis pendens;

e)      NJSA 22A:2-8 which allows a maximum of $35 for service of process per defendant;

f)      NJSA 22A:2-8 which allows for the actual costs of service of process by publication;

g)      NJSA 22A:2-8 which allows for the actual costs of service of process by mail;

110. The Plaintiff requests the return of the excess charges with interest.

111. The Defendants' acts or practices in violation of these statutes are either directly actionable under these acts or constitute unconscionable business practices in violation of the New Jersey Consumer Fraud Act. N.J.S.A. 56:8-2.
The actions of the Defendant constitute  per se unconscionable business practices in violation of the New Jersey Consumer Fraud Act. N.J.S.A. 56:8-2 et seq.

112. The Plaintiff has suffered an ascertainable loss of at least $5091.21.

WHEREFORE, the Plaintiff demands judgment against the Defendant for damages, treble damages, attorney's fees, and cost of suit.


## COUNT X

### New Jersey Consumer Fraud Act

113. The Plaintiff repeats each and every allegation of the previous counts and incorporates them by reference herein as if they were set forth fully herein.

114. The Defendant has charged and received the illegal and/or excessive charges as outlined previously. The Defendant's charges for costs and attorneys fees were in excess of the amount allowed pursuant to New Jersey court rules R 4:42-9(a)(4) & R 4:42-10 (a) and the applicable FHA regulations.

115. The Defendant was allowed a total of $1600.52 in attorney fees and taxed costs pursuant to the final judgment.

116. The Defendant was allowed only $1000 for attorneys fees under the applicable FHA regulations.

117. The Defendant demanded and was paid $6691.73 for attorneys' fees and costs of the foreclosure.

118.  The actions of the Defendant constitute  per se unconscionable business practices in violation of the New Jersey Consumer Fraud Act.  N.J.S.A. 56:8-2 et seq.

119.    The Plaintiff has suffered an ascertainable loss of at least $5091.21.

WHEREFORE, the Plaintiff demands judgment against the Defendant for damages, treble damages, attorney's fees, and cost of suit.


## COUNT XI

### Forfeiture of Interest

120.  The Plaintiff repeats each and every allegation of the previous counts and incorporates them by reference herein as if they were set forth fully herein.

121.  The Defendants have charged and received the illegal and/or excessive interest on the loan; specifically by collecting the contract rate of interest after the entry of the final judgment of foreclosure which requires the collection of the judgment interest rate.

122.  NJSA 31:1-3 provides that upon the collecting of illegal interest; all interest upon the loan is forfeited and only the principle may be collected.

123. The Plaintiff demands  a return of all interest paid on the mortgage pursuant to NJSA 31:1-3.

WHEREFORE, the Plaintiff demands judgment against the Defendant for return of all interest paid on the loan, attorney's fees, and cost of suit.

## COUNT XII

## Truth-In-Consumer Contract, Warranty and Notice Act

124.     The Plaintiff repeats each and every allegation of the previous counts and incorporates them by reference herein as if they were set forth fully herein.

125.     The Defendant's  notices for reinstatement and payoff included  illegal and/or excessive charges  on the loan; specifically by charging excessive costs of suit, excessive attorneys fees, excessive interest and other charges as outlined previously.

126.     The notices which demanded such illegal payments are a violation of the Truth-In-Consumer Contracts, Warranty and Notice Act.  N.J.S.A. 56:12-14

127.     The Plaintiff has been injured as a direct and proximate result of the Defendant's actions.

WHEREFORE, the Plaintiff demands judgment against the Defendant for damages, statutory penalty of $100, attorney's fees, and cost of suit.

## COUNT XIII

## John Doe Parties

119.         In addition to the persons named as defendants, there may be others whose names are unknown to the Plaintiff and/or after diligent inquiry has not been able to ascertain. They are made parties to this action under the designation of John Does1-100.

120.         John Doe Servicer 1-100 are the unknown servicers of mortgages held by the Defendant Chase.

## PRAYER FOR RELIEF

Wherefore Plaintiff requests that this court certify a class pursuant to Rule 23 and award:

1.      Actual, special, and general damages according to proof;

2.      Statutory damages and penalties;

3.      Restitution and disgorgement according to proof;

4.      Injunctive relief against Defendant to ensure uniform standards of servicing conduct towards all class members and to prevent future wrongful conduct;

5.      Prejudgment interest at the maximum legal rate;

6.      Punitive, exemplary and enhanced damages according to proof;

7.      Statutory punitive treble damages;

8.      An accounting;

9.      A return of all interest paid upon the mortgages;

10.     Declaratory Judgment as necessary to correct the wrongs inflicted on them;

11.     Litigation Expenses and Costs of the proceedings herein;

12.     Reasonable attorneys' fees; and

13.     All such other further relief as the Court deems just.

## DESIGNATION OF TRIAL COUNSEL

The undersigned and  Roger C. Mattson, Esq. are designated as trial counsel.

<u>DEMAND FOR JURY TRIAL</u>

PLEASE TAKE NOTICE that Plaintiff hereby demands a trial by jury as to all

issues of  fact and/or law.        <u>CERTIFICATION</u>

I  hereby certify that, to the best of my knowledge and belief, the matter in

controversy is not the subject of any other action pending in any court or of a pending

arbitration proceeding.


                                           **____/s/ Lewis G. Adler Esquire_____**

**Dated: _6/3//09_____**                     **LEWIS G. ADLER, ESQ.**
                                       **26 Newton Avenue**
                                       **Woodbury, NJ 08096**
                                     **(856) 845-1968**
                                     **Attorney for Plaintiff**

# Exhibit A

CH-3403
**FEDERMAN and PHELAN, P.C.**
By: Rosemarie Diamond, Esquire
51 Haddonfield Road
Suite 210
Cherry Hill, NJ 08002
(856) 665-0856
Attorneys for Plaintiff

**FILED**
SUPERIOR COURT OF NJ

AUG 01 2002

**D.F.P.**

| CHASE MANHATTAN MORTGAGE CORPORATION PLAINTIFF | SUPERIOR COURT OF NEW JERSEY CHANCERY DIVISION GLOUCESTER COUNTY |
|---|---|
| | DOCKET NO: F-18980-01 |
| STACEY A. KOVILARITCH, ET AL. DEFENDANT(S) | CIVIL ACTION FINAL JUDGMENT |

This matter having been opened to the Court by Federman and Phelan, P.C., attorney's

for plaintiff, and it appearing that service of the Summons, Complaint and Amendment has been

made upon the defendants, in accordance with the Rules of this Court and default having been

entered against all non-answering defendants; and plaintiff's obligation, Mortgage and

assignment of Mortgage having been presented and marked as exhibits by the Court, and proof

having been submitted of the amount due on the plaintiff's Mortgage  and sufficient cause

appearing:

It is on this _____ day of _____ August _____ 2002, ORDERED and

ADJUDGED that the plaintiff is entitled to have the sum of $ 90401.53 together with lawful

interest from  July 16, 2002 together with costs of this suit to be taxed including counsel fee of

$1054.02 raised and paid in the first place out of the mortgaged premises, and it is further

ordered that the plaintiff, its assignee or purchaser at sale recover against the following

defendants:

Stacey A. Jovilaritch

and all parties holding under said defendants the possession of the premises so mentioned and described in the said Complaint and Amendment with the appurtenances; and it is further

ORDERED and ADJUDGED that the mortgaged premises be sold to raise and satisfy the several sums of money due, in the first place to the plaintiff, Chase Manhattan Mortgage Corporation, in the sum of $90401.53 together with lawful interest thereon to be computed as aforesaid, the plaintiff's costs to be taxed, with interest thereon, and that an execution for the purpose by duly issued out of this Court directed to the Sheriff of Gloucester County, commanding said Sheriff to make sale according to law of the mortgaged premises, as described in the Complaint, and out of the money arising from said sale, that said Sheriff pay in the first place, to the plaintiff, said plaintiff's debt, with interest thereon as aforesaid and said plaintiff's costs with interest thereon as aforesaid, and in case more money shall be realized by the said sale than shall be sufficient to satisfy such several payments as aforesaid, that such surplus be brought into this Court to abide the further Order of this Court and that the Sheriff aforesaid make a report of the aforesaid sale without delay as required by the rules of this Court, and it is further

ORDERED and ADJUDGED that the defendants in this cause, and each of them stand absolutely debarred and foreclosed of and from all equity of redemption of, in and to said mortgaged premises described in the Complaint, when sold as aforesaid by virtue of this judgment

This judgment shall not affect the right of any person protected by the provisions of the New Jersey Tenant Anti-Eviction Statute (N.J.S.A. 2A; 18-61.1 et seq.)

Neil H. Shuster, P.J. Ch.

Respectfully recommended:
R. Dr:34:6 OFFICE OF FORECLOSURE

# Superior Court of New Jersey

**DOCKET NO.** F- *189 /0 -01*

**CHANCERY DIVISION**

**COUNTY**

**COSTS OF:** **PLAINTIFF-** _____

_____

_____

_____ 

**_____ PLAINTIFF**

**vs.**

**DEFENDANT-** _____

_____

_____

**_____ DEFENDANT**

_____

| | |
|---|---|
| **ATTORNEY'S ALLOWANCE BY STATUTE** | $ 50.00 |
| **FILING FEES PAID TO CLERK** | 175.00 |
| **COUNSEL FEE ALLOWED UNDER R.4:42-9** | 1054.02 |
| **SHERIFF'S FEES FOR SERVICE** | 6 |
| **SEARCH COSTS ALLOWED UNDER R.4:42-10** | 290 |
| **PRINTING COSTS FOR PUBLICATION** | 15 |
| **COST OF FILING LIS PENDENS** | 10.00 |
| **MOTIONS** | |
| **OTHER** | |
| **TOTAL COSTS** | $ 1600.52 |

**DATE TAXED AND FILED:** _____ , 2002

**ATTORNEY** _____

*Donald F. Phelan*

**CLERK, SUPERIOR COURT**

-156- (2/97)

# Exhibit B

# PHELAN HALLINAN & SCHMIEG, PC

400 Fellowship Road, Suite 100
Mt. Laurel, NJ 08054
(856) 813-5500
Fax (856) 813-5501

Nicole.Reilly@fedphe.com

Nicole Reilly
Legal Assistant Ext. 7569

Representing Lenders in
Pennsylvania and New Jersey

November 3, 2005

Stacey A. Kovilaritch
1633 E. Columbia Avenue
West Deptford, NJ  08086

## Payoff Quote

RE: Stacey A. Kovilaritch
   1633 E. Columbia Avenue, West Deptford, NJ 08086
   LOAN#: 1500378863
   OUR FILE #: CH-3403

Dear Sir/Madam:

Please see below, **payoff** figures, on the above referenced account, per your request.
Please submit a certified check or money order payable to **CHASE HOME FINANCE LLC** for
89,245.62 and forward same to be received in this office, at above address, **no later than**
11/18/05.

| | |
|---|---|
| The amount due under the mortgage is | **$81,169.52** |
| Foreclosure fees | **$900.30** |
| Foreclosure cost | **$7,175.80** |
| The total due to payoff this mortgage is | **$89,245.62** |

## ***THESE FIGURES ARE SUBJECT TO CHANGE AND FINAL VERIFICATION.***

Very truly yours,

*Nicole Reilly*

Reinstatement/Pay off

*This is an attempt to collect a debt. Any information received will be used for that purpose. If you have received a
discharge in bankruptcy, this is not and should not be construed as an attempt to collect a debt. We are only
proceeding against the real estate secured by the mortgage.

# Exhibit C

# PHELAN HALLINAN & SCHMIEG, PC

400 Fellowship Road, Suite 100
Mt. Laurel, NJ 08054
(856) 813-5500
Fax (856) 813-5501

Nicole.Reilly@fedphe.com

Nicole Reilly
Legal Assistant, Ext. 7569

Representing Lenders in
Pennsylvania and New Jersey

November 4, 2005

Stacey A. Kovilaritch
1633 E. Columbia Avenue
West Deptford, NJ  08086

# <u>Reinstatement Quote</u>

Re:   Stacey A. Kovilaritch
      Loan No.: 1500378863
      Premises: 1633 E. Columbia Avenue, West Deptford, NJ
      Our File No.: CH-3403

Dear Sir/Madam:

Please see below **reinstatement** figures on the above referenced account, per your request.
Please submit one certified check or money order payable to **CHASE HOME FINANCE LLC**
for **$18,658.24** to be received in this office, at above address, **no later than 11/10/05.**

| | |
|---|---|
| The arrears on the mortgage are | $11,966.21 |
| Foreclosure fees | $900.30 |
| Foreclosure cost | $5,791.73 |
| The total due to reinstate the mortgage is | **$18,658.24** |

# THESE FIGURES ARE SUBJECT TO CHANGE AND FINAL VERIFICATION.***

Very truly yours,

Nicole Reilly

Nicole Reilly

*This is an attempt to collect a debt. Any information received will be used for that purpose. If you have received a
discharge in bankruptcy, this is not and should not be construed as an attempt to collect a debt. We are only
proceeding against the real estate secured by the mortgage.

# Exhibit D

# SILK ABSTRACT COMPANY

**SETTLEMENT STATEMENT**

form HUD-1A (3/86).HH. RESPA

Optional Form for Transactions without Sellers

U.S. Department of Housing and Urban Development

OMB Approval No. 2502-0265 (expires 11/30/2009)

File Number: **NJ-07-21735** Loan Number: **TAM014248**

Mtg. Ins. Case Number:

Settlement Date: 03/26/2007 Disbursement Date: 03/30/2007

Settlement Agent: **Silk Abstract Company**

Telephone: 610-994-8600 Fax: 610-994-8700

Place of Settlement: **1000 Germantown Pike, Suite J-4**
**Plymouth Meeting, PA 19482**

Name & Address of Borrower:
**Stacey A. Coleman**
**169 Columbia Avenue, Thorofare, NJ 08086**

Name and Address of Lender:
**BNC Mortgage, Inc.**
**1901 Main Street, Irvine, CA 92614**

Property Location: **169 Columbia Avenue, Thorofare, NJ 08086 Township of West Deptford**

TitleExpress Settlement System

## L. Settlement Charges

| | | |
|---|---|---|
| **800. Items Payable in Connection with Loan** | | |
| 801. Loan Origination Fee 0.624% to BNC Mortgage, Inc. | 899.00 | |
| 802. Loan Discount 1.000% to BNC Mortgage, Inc. | 1,440.00 | |
| 803. Appraisal Fee to MBA Appraisals | 350.00 | |
| 804. Credit Report | | |
| 805. Broker Fee to FAMILY HOME LENDING CORP | 3,000.00 | |
| 806. Flood Cert Fee to First American Flood data | 17.00 | |
| 807. Assumption Fee | | |
| 808. | | |
| 809. | | |
| 810. | | |
| 811. | | |
| **900. Items Required by Lender to be Paid in Advance** | | |
| 901. Interest From 03/30/2007 to 04/01/2007 @$28.4600 per day | 56.92 | |
| 902. Mortgage Insurance Premium for to | | |
| 903. Hazard Insurance Premium for to | | |
| 904. | | |
| **1000. Reserves Deposited with Lender** | | |
| 1001. Hazard Insurance 4 mo. @ $ 33.58 per month | 134.32 | |
| 1002. Mortgage Insurance mo. @ $ per month | | |
| 1003. City Property Tax mo. @ $ per month | | |
| 1004. County Property Tax 4 mo. @ $ 212.00 per month | 848.00 | |
| 1005. School Taxes mo. @ $ per month | | |
| 1006. mo. @ $ per month | | |
| 1007. mo. @ $ per month | | |
| 1008. mo. @ $ per month | | |
| 1009. Aggregate Analysis Adjustment | -0.28 | |
| **1100. Title Charges** : | | |
| 1101. Settlement or closing fee to Silk Abstract Company | 375.00 | |
| 1102. Abstract or title search | | |
| 1103. Title examination | | |
| 1104. Title insurance binder | | |
| 1105. Elec. Document Delivery Fee to Silk Abstract Company | 50.00 | |
| 1106. Notary/Clerical Fees | | |
| 1107. Attorney's fees | | |
| (includes above items No. ) | | |
| 1108. Title Insurance to Silk Abstract Company | 621.40 | |
| (includes above items No. ) | | |
| 1109. Lender's Policy $ 144, 000.00 - 473.00 | | |
| 1110. Owner's Policy $ - | | |
| 1111. Alta 8.1-EPL, Alta 9-Ins to Silk Abstract Company | 30.00 | |
| 1112. Alta 6-ARM, Survey End to Silk Abstract Company | 50.00 | |
| 1113. Clsg Service Ltr to Stewart Title Guaranty Company | 25.00 | |
| **1200. Government Recording and Transfer Charges** | | |
| 1201. Recording Fees : Mortgage $220.00 | 220.00 | |
| 1202. Realty Transfer Fee | | |
| 1203. Release of Mortgage(s) | | |
| 1204. Mortgage Tax | | |
| 1205. | | |
| **1300. Additional Settlement Charges** | | |
| 1301. Mgt. Satisfaction Demand Fee to Silk Abstract Company | 75.00 | |
| 1302. Pest Inspection | | |
| 1303. Wire Fee to Silk Abstract Company | 20.00 | |
| 1304. Courier Fee to Silk Abstract Company | 64.00 | |
| 1305. Deed Preparation to Ronald G. Wirk, Esquire | | |
| 1306. | | |
| 1307. | | |
| 1308. | | |
| **1400. Total Settlement Charges** (enter on line 1602) | 8,295.36 | |

## M. Disbursement to Others

| | |
|---|---|
| 1501. Payoff:10-15003768863-000 to Chase Home Finance LLC | 72,198.60 |
| 1502. PAYMENT to FARM FAMILY CAUSALTY | 33.00 |
| 1503. 07 2ND QUARTER TAXES to Tax Collector | 635.86 |
| 1504. WATER AND SEWER to Tax Collector | 386.52 |
| 1505. | |
| 1506. | |
| 1507. | |
| 1508. | |
| 1509. | |
| 1510. | |
| 1511. | |
| 1512. | |
| 1513. | |
| 1514. | |
| 1515. | |
| 1516. | |
| 1517. | |
| 1518. | |
| 1519. | |
| **1520. TOTAL DISBURSED** (enter on line 1603) | 73,253.98 |

## N. NET SETTLEMENT

| | |
|---|---|
| 1600. Loan Amount | 144,000.00 |
| 1601. PLUS Cash/Check from Borrower | 0.00 |
| 1602. MINUS Total Settlement Charges (line 1400) | 8,295.36 |
| 1603. MINUS Total Disbursements to Others (line 1520) | 73,253.98 |
| 1604. EQUALS Disbursements to borrower (after expiration of any applicable rescission period required by law) | 62,450.66 |

I have carefully reviewed the HUD-1A Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of the HUD-1A Settlement Statement.

The HUD-1A Settlement Statement which I have prepared is a true and accurate account of this transaction. I have caused or will cause the funds to be disbursed in accordance with this statement.
SETTLEMENT AGENT: DATE:

Exhibit 2

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| STACEY COLEMAN,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>CHASE HOME FINANCE, LLC,<br>　　　　Defendant. | CIVIL NO. 08-2215(NLH)(JS)<br><br>**OPINION** |

**APPEARANCES:**

Lewis G. Adler, Esquire
Law Office of Lewis Adler
26 Newton Avenue
Woodbury, NJ 08096
　　*Attorney for plaintiff*

Francis X. Manning, Esquire
Stradley, Ronon, Stevens & Young, LLP
Woodland Falls Corporate Park
200 Lake Drive East
Suite 100
Cherry Hill, NJ 08002
　　*Attorney for defendant*

**HILLMAN**, District Judge

　　This putative class action case concerns plaintiff's claims that defendant charged excessive attorney's fees and costs in plaintiff's state court foreclosure action. Previously, when first considering defendant's motion to dismiss all of plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court discovered that subject matter jurisdiction under the Class Action Fairness Act may be lacking, and ordered the parties to undertake jurisdictional discovery. Such discovery has been completed, and defendant has again moved to dismiss plaintiff's claims for lack of

subject matter jurisdiction and for failure to state a claim. For the reasons expressed below, defendant's motion will be granted.

<u>**BACKGROUND**</u>

The following background was included in the Court's prior Opinion and will be restated here for reference: On October 25, 2001, Chase Manhattan Mortgage Corporation[1] instituted a foreclosure action against plaintiff Stacey Coleman in New Jersey Superior Court, Chancery Division. On August 1, 2002, the Chancery Court entered a final judgment in favor of Chase in the amount of $90401.53, plus interest and counsel fees, and ordered the sale of Coleman's home to satisfy the monies due. On November 4, 2005, Chase provided Coleman with reinstatement figures. On January 17, 2006, Coleman reinstated her mortgage by paying $18,658.24, which included $6691.73 for fees and costs. On January 20, 2006, the foreclosure action was dismissed without prejudice, with the Chancery Court noting that the action was amicably settled between the parties.

Coleman brings this case against Chase asserting numerous causes of action based on her claim that Chase demanded, and was paid, fees in excess of $5,000 of what is permitted by Fair Housing Act regulations[2] and New Jersey statute and court rules. She

_____

[1]Defendant Chase Home Finance, LLC is the successor-by-merger to Chase Manhattan Mortgage Corporation.

[2]Since the Court first reviewed Coleman's complaint, Coleman filed an amended complaint adding a claim pursuant to the FHA,

purports to bring these claims on her behalf and on behalf of similarly situated individuals who have also paid these allegedly excessive fees.[3]

**DISCUSSION**

Previously, Chase moved to dismiss Coleman's claims by contending that they are barred by the entire controversy doctrine and otherwise fail to state a claim.  Coleman opposed Chase's motion.  On an independent review of Coleman's complaint, however, the Court found that subject matter jurisdiction may be lacking. Coleman asserted that this Court has jurisdiction over her case pursuant to 28 U.S.C. § 1332(d)(2), the Class Action Fairness Act (CAFA), which provides, in relevant part, that "district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which . . .

---

Title VIII, as amended, 42 U.S.C. § 3604(a).

[3]Counsel for plaintiff has brought essentially identical claims on behalf of numerous other state court foreclosure defendants against other mortgage lending companies.  As recently noted by Judge Irenas in <u>Rivera v. Washington Mut. Bank</u>, Civ. A. No. 09-0021, 637 F. Supp. 2d 256, 258 (D.N.J. 2009), "the Court has had particular difficulty ascertaining the alleged facts of this case.  No doubt this difficulty stems from the obvious fact that Plaintiffs' counsel has drafted one generic complaint for at least ten other cases--all filed in this district by the same attorneys, all proposing the same class, seven of which were filed on the same day as this case."  Indeed, plaintiff's counsel has two other cases pending before this Court--<u>Oliver v. American Home Mortgage</u>, Civ. A. No. 09-0001, and <u>Ogbin v. Citifinancial Mortgage Company, Inc.</u>, Civ. A. No. 09-0023.

. (A) any member of a class of plaintiffs is a citizen of a State different from any defendant." The Court noted that Coleman had not properly pleaded this Court's subject matter jurisdiction because, applying the CAFA jurisdictional requirement for unincorporated associations, Coleman stated that Chase is organized under the laws of Delaware, but she did not state where Chase has its principal place of business. Thus, it was not clear whether Coleman, a New Jersey citizen, is a citizen of a different state from Chase.

The Court also found that even if Coleman cured her jurisdictional statement, and, therefore, subject matter jurisdiction had been properly averred pursuant to § 1332(d)(2), CAFA has an exception to federal jurisdiction over "home state" controversies. See Hirschbach v. NVE Bank, 496 F. Supp. 2d 451, 458 (D.N.J. 2007) (citing Judiciary Committee Report on Class Action Fairness Act, S. Rep. No. 109-14, at 28 (2005), as reprinted in 2005 U.S.C.C.A.N. 3, 28) (providing a detailed analysis of CAFA and "home state" controversies). This "home state" exception, explained in 28 U.S.C. §§ 1332(d)(3) and (4), identifies certain class actions over which subject matter jurisdiction may not exist, despite satisfaction of § 1332(d)(2). The home state exception has both a mandatory and a discretionary facet. Hirshbach, 496 F. Supp. 2d at 459. A district court must decline jurisdiction over a class action in which two-thirds or more of the members of all

4

proposed plaintiff classes in the aggregate and the primary
defendants are citizens of the state in which the action was
originally filed.  28 U.S.C. § 1332(d)(4).  A district court has
discretion to decline jurisdiction where the class composition is
greater than one-third but less than two thirds of the class are
citizens of the forum state, and where the primary defendants are
citizens of the forum state.  28 U.S.C. § 1332(d)(3).

In the prior Opinion, the Court found that if Chase was a
citizen of New Jersey, this case presents a clear "home state"
case, which requires the declination of subject matter
jurisdiction.  The Court explained:

> Coleman describes the potential class as "1)
> Individuals who have had home loans held or serviced by
> the Defendant in the State of New Jersey from sixteen
> years prior to the filing of the complaint through the
> date of class certification, 2) individuals who received
> a payoff or reinstatement from Defendant whose home loan
> was in default, 3) individuals who were charged attorneys
> fees and/or other costs which were in excess of the
> amount actually incurred and/or in excess of the amount
> allowed by law."  (Compl. ¶ 8.)  Based on this
> description, it appears that at least two-thirds of the
> class are New Jersey citizens.  Thus, under the mandatory
> jurisdictional provision of CAFA, the Court would be
> required to dismiss the case for lack of subject matter
> jurisdiction if Chase is a citizen of New Jersey.
> A review of the discretionary factors further
> supports dismissal if it is determined that Chase is a
> citizen of New Jersey.  The claims of the potential class
> are all based on New Jersey state law and New Jersey
> court rules, and no national or interstate interests are
> implicated.  Further, Coleman's attorney had previously
> filed suit in New Jersey state court asserting the same
> claims, albeit with a different named plaintiff, although
> it appears that Coleman would have been a class member
> had the class been certified.  (See Def. Ex. A.)
> Consequently, the "interests of justice and looking at

5

the totality of the circumstances," § 1332(d)(3),
warrants that the Court would be likely to decline
subject matter jurisdiction if Chase is a citizen of New
Jersey. <u>Compare</u> <u>Hirshbach</u>, 496 F. Supp. 2d at 461
(declining to exercise jurisdiction under CAFA based on
the number of class members hailing from the state in
which the action was originally filed).

(May 11, 2009 Op. at 9-10.)

Following jurisdictional discovery, where it was determined

that Chase is indeed a citizen of New Jersey, Coleman amended her

CAFA claims to redefine the proposed "national" class: "1)

Individuals who have had FHA home loans held or serviced by the

Defendant from sixteen years prior to the filing of the complaint

through the date of class certification, 2) individuals who

received a payoff or reinstatement from Defendant whose home loan

was in default, 3) individuals who were charged attorneys fees

and/or other costs which were in excess of the amount actually

incurred and/or in excess of the amount allowed by FHA regulation."

(Amend. Compl. ¶ 8.)  Coleman also defines a subclass for claims

arising under New Jersey law.  (<u>Id.</u> ¶ 9.)

In its renewed motion to dismiss, Chase argues that Coleman

has not cured the subject matter jurisdiction problem.  Chase

points out that the FHA fee schedule applicable to Coleman[4] allowed

_____

[4]As pointed out by Chase, Coleman pleads two different dates
for her foreclosure judgment--August 1, 2001 and August 1, 2002.
The correct date is August 1, 2002.  Coleman alleges that the
cap on FHA fees was $1,000 at the time of her foreclosure, and
that Chase's charge of $1004 was in violation of that cap.  The
cap applicable to Coleman, however, was $1,300, which was
effective October 1, 2001.

for $1,300 in fees, which causes to be without merit Coleman's
allegation that Chase's demand of $1,004 in fees violates the FHA.
Further, Chase points out that Coleman admittedly paid only $900 in
foreclosure fees, which is within the $1,300 cap allowed by the
FHA. Thus, without any valid FHA claim, Chase argues that Coleman
cannot maintain a "national" class.[5] Without a national class, all
that remains of Coleman's CAFA claims are state causes of action--
i.e., a clear "home state" case--and subject matter jurisdiction is
therefore lacking.

Coleman counters that she paid $6691.73 in fees and costs,
which were not itemized and could contain hidden attorney's fees.
Coleman states that under the FHA, Chase may only charge for
services actually incurred, and she claims that she paid over ten
times what is allowed by the FHA for fees and costs. Accordingly,
Coleman claims she has a valid national class and has established
subject matter jurisdiction.

In response, Chase states that Coleman's attempt to lump fees
and costs into one FHA-violative sum is improper. First, she has
admitted that she paid $900 for attorney's fees, which is less than

---

[5]It is axiomatic that a class plaintiff must have a valid
claim in her own right to have standing to pursue the same claims
on behalf of a class. Simon v. Eastern Ky. Welfare Rights
Organization, 426 U.S. 26, 40 n.20 (1976) (quoting Warth v.
Seldin, 422 U.S. 490, 502 (1975)) (stating that named plaintiffs
who represent a class "must allege and show that they personally
have been injured, not that injury has been suffered by other,
unidentified members of the class to which they belong and which
they purport to represent'").

the $1,300 FHA cap on fees. Second, with regard to the remainder

of the costs she paid, Coleman makes no allegation that Chase did

not actually incur those costs, and is therefore not entitled to

them.[6] Simply arguing that she paid certain fees and costs, but

not providing any indication that those fees and costs were in

violation of FHA regulations, is insufficient to state a FHA claim,

and, accordingly, insufficient to establish subject matter

jurisdiction under CAFA.

It is questionable whether Coleman's proposed class action

based on Chase's alleged violation of the FHA can sustain what is

otherwise an unarguably "home state" case.[7] Coleman's complaint

makes it clear that the FHA-allowed attorney's fees she paid were

proper, and no where does she allege that Chase did not actually

---

[6]Coleman takes issue with the differing fees and costs
listed in the final foreclosure judgment and the pay off and
reinstatement quotes. In its brief discussing Coleman's
intentional misrepresentation and consumer fraud claims, Chase
explains why the amounts differ: (1) the final foreclosure
judgment was vacated pursuant to an agreement between Coleman and
Chase; (2) New Jersey court rule permits Chase to include in the
pay off and reinstatement quotes money advanced for taxes, etc.,
even though that amount may be ultimately paid by the Sheriff
following a Sheriff's sale; and (3) under New Jersey court rules,
certain costs, such as Sheriff's sale costs, are automatically
added to a judgment, even if the foreclosure settles. These
discrepancies are reconciled upon resolution of the foreclosure
action. (Def. Reply at 8-9.)

[7]With the addition of an FHA claim, this Court's subject
matter jurisdiction may be predicated on 28 U.S.C. § 1331 without
consideration of CAFA jurisdictional requirements. Because,
however, the issue of subject matter jurisdiction under CAFA was
left unresolved following the Court's May 11, 2009 Opinion, it
will still be considered here.

incur or was not entitled to the costs she paid.  Instead, Coleman
intimates that because the costs were not itemized, she may have
actually paid more than $1,300 in attorney's fees because those
fees were hidden in the costs.

This claim is a very speculative one on which to base subject
matter jurisdiction.[8]  The Court has an independent obligation to
determine subject matter jurisdiction, and it is well-established
that "the basis upon which jurisdiction depends must be alleged
affirmatively and distinctly and cannot be established
argumentatively or by mere inference."  <u>S. Freedman and Co., Inc.
v. Raab</u>, 180 Fed. Appx. 316, 320 (3d Cir. 2006) (citation omitted).
Further, jurisdictional determinations under CAFA "should be made
largely on the basis of readily available information."  <u>Hirshbach</u>,
496 F. Supp. 2d at 460 (citation omitted).  Without, however, an
itemization of the costs incurred by Chase, which the Court could
not consider on a motion to dismiss unless it is a document that
can be judicially noted, the Court cannot definitely determine the
invalidity of Coleman's FHA claim.  Thus, this tenuous basis for
jurisdiction is nonetheless a basis, and therefore the Court will
not dismiss Coleman's case for lack of subject matter jurisdiction.

---

[8]As noted above, because plaintiff has now alleged a federal
claim, subject matter jurisdiction may be laid over that claim
pursuant to 28 U.S.C. § 1331, and over plaintiff's state law
claims pursuant to 28 U.S.C. § 1367.  If the Court were to
substantively find that plaintiff's FHA claim fails, the Court
could then decline to exercise its supplemental jurisdiction to
hear plaintiff's state law claims.

The Court, however, finds availing Chase's other argument for dismissal--the entire controversy doctrine.[9]

The fundamental principle of New Jersey's entire controversy doctrine, codified in Rule 4:30A of the New Jersey Rules of Civil Procedure[10] and applicable in federal court, Bennun v. Rutgers State University, 941 F.2d 154, 163 (3d Cir. 1991), is that "the adjudication of a legal controversy should occur in one litigation in only one court," and "is a reflection of the constitutional unification of the state courts and the comprehensive jurisdiction vested in the Superior Court established under our Constitution, which recognized the value in resolving related claims in one adjudication so that 'all matters in controversy between parties may be completely determined.'" Mystic Isle Development Corp. v. Perskie & Nehmad, 662 A.2d 523, 529 (N.J. 1995) (quoting N.J. Const., art. VI, § 3, ¶ 4).

The entire controversy doctrine serves three fundamental purposes: "(1) the need for complete and final disposition through the avoidance of piecemeal decisions; (2) fairness to parties to the action and those with a material interest in the action; and

---

[9]If the Court did not dismiss Coleman's case based on the entire controversy doctrine, Chase, of course, would be free to file another motion to substantively address the costs issue.

[10]Rule 4:30A of the New Jersey Rules of Civil Procedure, provides that "[n]on-joinder of claims required to be joined by the entire controversy doctrine shall result in the preclusion of omitted claims to the extent required by the entire controversy doctrine . . . ." N.J. Ct. R. 4:30A.

(3) efficiency and the avoidance of waste and the reduction of delay." DiTrolio v. Antiles, 662 A.2d 494, 502 (N.J. 1995). It is meant to constrain a plaintiff from "withhold[ing] part of a controversy for separate litigation even when the withheld component is a separate and independently cognizable cause of action." Paramount Aviation Corp. v. Agusta, 178 F.3d 132, 137 (3d Cir. 1999).

In determining whether successive claims constitute one controversy for purposes of the doctrine, the central consideration is whether the claims "ar[o]se from related facts or the same transaction or series of transactions" as the state court claims. Fields v. Thompson Printing Co., 363 F.3d 259, 265 (3d Cir. 2004). (quoting DiTrolio, 662 A.2d at 502 (1995)). The Supreme Court of New Jersey has explained that it is a "commonality of facts, rather than commonality of issues, parties or remedies that defines the scope of the controversy." DiTrolio, 662 A.2d at 503. It is the knowledge of the existence of a cause of action during the first proceeding that invokes the entire controversy doctrine. Maertin v. Armstrong World Industries, Inc., 241 F. Supp. 2d 434, 456 (D.N.J. 2002) (citing New Jersey state court cases). The party has such knowledge if she "knows, or should have known, of facts which establish that an injury has occurred and that fault for that injury can be attributed to another." Id. (citation omitted); Brown v. Brown, 506 A.2d 29, 30 (N.J. Super. Ct. App. Div. 1986)

11

(concluding that "the entire controversy doctrine ordinarily requires joinder or attempted joinder of constituent causes arising *pendente lite*").

The "boundaries of the doctrine are not limitless," however. <u>Mystic Isle</u>, 662 A.2d at 529. It is well recognized that the entire controversy doctrine does not bar related claims which have not arisen or accrued during the pendency of the original action. <u>McNally v. Providence Washington Ins. Co.</u>, 698 A.2d 543 (N.J. Super. Ct. App. Div. 1997). Further, it is an equitable doctrine, and its application is flexible, with a case-by-case appreciation for fairness to the parties. <u>Paramount Aviation Corp. v. Agusta</u>, 178 F.3d 132, 137 (3d Cir. 1999).

The entire controversy doctrine is applicable in the foreclosure context. <u>See</u> <u>In re Mullarkey</u>, 536 F.3d 215, 228 (3d Cir. 2008) (citing to <u>Leisure Technology-Northeast v. Klingbeil Holding Co.</u>, 349 A.2d 96 (N.J. 1975) and stating that the case "reiterates the importance of the entire controversy doctrine and confirms that it is applicable to foreclosure proceedings"). New Jersey Court Rule 4:64-5, which governs the joinder of claims in foreclosure, somewhat narrows the scope of the doctrine, however. <u>Id.</u> That rule provides,

> Unless the court otherwise orders on notice and for good cause shown, claims for foreclosure of mortgages shall not be joined with non-germane claims against the mortgagor or other persons liable on the debt. Only germane counterclaims and cross-claims may be pleaded in foreclosure actions without leave of court. Non-germane

12

> claims shall include, but not be limited to, claims on
> the instrument of obligation evidencing the mortgage
> debt, assumption agreements and guarantees. . . . .

N.J. Ct. R. 4:64-5.  Thus, the entire controversy doctrine applies

to foreclosure proceedings, but extends only to "germane"

counterclaims.  In re Mullarkey, 536 F.3d at 228 (citing Leisure

Tech., 349 A.2d at 98-99).

Here, Coleman's claims are barred by the entire controversy

doctrine.  Coleman claims that Chase was only entitled to $1600.52

in taxed costs, inclusive of attorney's fees and costs, for its

prosecution of its foreclosure action.  Coleman claims that this

figure was ordered by the Chancery Court in the August 1, 2002

Judgment of foreclosure in accordance with New Jersey Court Rules.

Coleman claims, however, that Chase charged her, and she paid,

$6691.73 in costs pursuant to Chase's November 4, 2005

reinstatement quote.  Thus, Coleman contends that she overpaid by

$5091.21, and that Chase's demand is violative of New Jersey state

law and court rules.

Coleman, however, was required to bring her claims in the

foreclosure action.  First, it is clear that her claims based on

the allegedly improper charges arose from Chase's foreclosure

action.  But for the foreclosure action, Chase never would have

imposed such charges onto Coleman.  Second, Coleman became aware of

the overcharges during the pendency of the foreclosure action.  The

August 2002 Chancery Court order stated that Chase was entitled to

13

$1600.52 in associated costs, but then in November 2005 when it
issued its reinstatement quote, Chase assessed $6691.73 in costs.
The foreclosure action was still active when Coleman received the
reinstatement quote.[11]   Thus, Coleman became aware during the
pendency of the foreclosure action that the fees Chase charged her
were in excess of the court order.   Even if Coleman did not know
specifically that the fees were arguably in violation of New Jersey
court rule and law, at a minimum, she was aware that Chase was
charging her an amount that differed from the August 2002 court
order.[12]

---

[11]Chase states that the four-year pendency of the foreclosure
action was due to Coleman filing three successive bankruptcy
petitions.   Even though this fact is not relevant to the issue of
whether the entire controversy is applicable, the Court may take
judicial note of the bankruptcy filings when considering a motion
to dismiss pursuant to Rule 12(b)(6).   Southern Cross Overseas
Agencies, Inc. v. Kwong Shipping Group Ltd., 181 F.3d 410, 426
(3d Cir. 1999).

[12]Chase points out that Coleman's current counsel also
represented her in the foreclosure action and her bankruptcy
actions.   As Judge Thompson commented when considering a motion
to dismiss similar claims filed by Coleman's counsel on behalf of
another client, whom he also represented in that client's
foreclosure and bankruptcy proceedings,

> The Court finds that each of these alleged overcharges
> and deceptive statements would be readily recognized as
> overcharges by a competent attorney representing a
> debtor in a foreclosure action. Such an attorney can be
> assumed to be familiar with the applicable state court
> statutes and rules limiting allowable costs, attorneys
> fees and interest and is certainly familiar with the
> provisions of his or her own client's mortgage
> agreement.   Similarly, such an attorney would be
> familiar with the usual costs associated with
> prosecuting a foreclosure action and would be on guard

14

Third, Coleman's claims are germane to her foreclosure action, and, accordingly, could have been brought in the foreclosure action. The New Jersey Appellate Division has addressed on several occasions whether a claim is germane to the foreclosure, and whether it should have been brought in the foreclosure action in lieu of the institution of a subsequent action in contravention of the entire controversy doctrine. For example, in <u>Leisure Technology-Northeast v. Klingbeil Holding Co.</u>, 349 A.2d 96 (N.J. 1975), the defendant to a foreclosure action filed an answer and counterclaim alleging that the mortgage lender's fraudulent actions caused him to default on the loan. The Chancery Court judge granted the lender's motion to strike the affirmative defense, and transferred the counterclaim to the Law Division. The appeals court reversed, finding that the entire controversy doctrine required the counterclaim to be heard in the foreclosure action, and concomitantly, found that the counterclaim was germane. The court explained,

> The use of the word 'germane' in the language of the rule undoubtedly was intended to limit counterclaims in foreclosure actions to claims arising out of the mortgage transaction which is the subject matter of the

> for overcharges of costs and fees normally assessed in such actions. Therefore, the Court concludes that none of these alleged overcharges and deceptive statements would in fact deceive a competent attorney representing a debtor in a foreclosure action.

<u>Allen v. LaSalle Bank, N.A.</u>, Civ. A. No. 3:08-2240 (D.N.J. Jan. 30, 2009).

15

> foreclosure action.  We see no intention to prohibit or
> restrict counterclaims in a more narrow sense. . . .
> Here the thrust of the counterclaim is the assertion that
> plaintiff had breached the underlying agreement in
> relation to which the mortgage was executed and
> interfered with defendants' rights under that agreement.
> In the usually understood sense of the word, these claims
> were germane to the foreclosure action.  We are persuaded
> that the single controversy doctrine to which we have
> referred above requires a liberal rather than a narrow
> approach to the question of what issues are 'germane.'

Leisure Technology, 349 A.2d at 98-99 (internal citations omitted).

Similarly, in Joan Ryno, Inc. v. First Nat. Bank of South

Jersey, 506 A.2d 762, 767 (N.J. Super. Ct. App. Div. 1986), the

plaintiff instituted a separate action regarding a lender's breach

of the mortgage contract rather than raising that claim as a

defense to the foreclosure.  In the second action, the trial judge

precluded the establishment of damages relating to the foreclosure,

but permitted the establishment of damages relating to the breach

of the mortgage contract.  The appeals court reversed, finding that

the entire controversy doctrine required that both issues were

required to be raised in the foreclosure action.  The court

explained,

> We are satisfied that if the single controversy doctrine
> applied then any claim that plaintiff could have
> otherwise asserted against defendant by reason of the
> breach of the commitment should have been barred. . . .
> In not precluding the second action which involved a
> component of what plaintiff itself claimed was a
> particular controversy, it allowed a result hardly
> consistent with the purpose of the doctrine to eliminate
> delay, avoid harassment and wasted time of the parties,
> avoid clogging of the courts and promote fundamental
> fairness. Our point is that once the doctrine was held

16

applicable, the breach of the commitment and all damages
from it were part of a single controversy which included
the foreclosure so that plaintiff could not make any
claim for breach of the commitment in this later action.

Renyo, 506 A.2d at 766-67 (internal citations omitted).

These cases support that Coleman's claims here are germane to
the foreclosure action and should have been brought there.  It is
clear that Coleman's dispute over the foreclosure fees arose out of
the mortgage transaction which is the subject matter of the
foreclosure action, and are therefore "germane," in the "usually
understood sense of the word," to the foreclosure action.  Because
they are germane, pursuant to Rules 4:30A, 4:64-5, and 4:7-1[13],
Coleman was required to assert her claims in the foreclosure
action.

This case presents a textbook example of the purpose of the
entire controversy doctrine.  Had Coleman asserted her counterclaim
in the foreclosure action in November 2005 when she became aware of
the alleged excessive charges, the Chancery Court judge handling
the foreclosure could have addressed the issue in the proper

---

[13]N.J. Ct. R. 4:7-1 provides, "Except as otherwise provided
by R. 4:64-5 (foreclosure actions) and R. 4:67-4 (summary
actions), a pleading may state as a counterclaim any claim
against the opposing party whether or not arising out of the
transaction or occurrence that is the subject matter of the
opposing party's claim. A defendant, however, either failing to
comply with R. 4:30A (entire controversy doctrine) or failing to
set off a liquidated debt or demand or a debt or demand capable
of being ascertained by calculation, shall thereafter be
precluded from bringing any action for such claim or for such
debt or demand which might have been so set off."

17

context--that is, during the four-year long case involving Coleman
and Chase and the foreclosure of Coleman's home.  By withholding
her claims and then instituting an action here, Coleman prevented
the resolution of the fees issue, and transformed a state court
foreclosure issue between the two parties into an independent,
federal court, putative class action.  To allow such a result would
be inconsistent "with the purpose of the doctrine to eliminate
delay, avoid harassment and wasted time of the parties, avoid
clogging of the courts and promote fundamental fairness." Renyo,
506 A.2d at 766-67 (citation omitted).[14]  Consequently, Coleman's
claims must be dismissed.[15]

---

[14]If Coleman were to argue that a class action could not have
been brought as a counterclaim to a foreclosure action in the
Chancery Court, and, therefore, her claims should not be barred
by the entire controversy doctrine, such an argument, even if
true, would not permit her claims here.  Coleman was required to
assert any affirmative defenses to the foreclosure and advance
any counterclaims arising out of the foreclosure in the
foreclosure action.  With the fees issue and putative class
action properly before the Chancery Court, it would have been for
the Chancery Court to decide whether such claims could be
advanced.  If the Chancery Court judge determined that such
claims could not be maintained in the foreclosure action, and no
appeal was taken, the claims could have then been severed and
transferred to the Law Division. See, e.g., Leisure Technology-
Northeast, Inc. v. Klingbeil Holding Co., 349 A.2d 96, 99 (N.J.
Super. Ct. App. Div. 1975) (reversing chancery judge's severance
and transfer of counterclaims to the law division because the
counterclaims were germane to the foreclosure and required to be
asserted there pursuant to the entire controversy doctrine).

[15]Even if the entire controversy doctrine did not bar
plaintiff's claims, this Court would be inclined to follow the
reasoning of Judge Irenas, who substantively considered--and
dismissed--the same claims advanced here in Rivera v. Washington
Mut. Bank, Civ. A. No. 09-0021, 637 F. Supp. 2d 256 (D.N.J.

## <u>CONCLUSION</u>

For the reasons expressed above, defendant's motion to dismiss will be granted.  An appropriate order will be entered.


Date: November 10, 2009                          <u>  s/ Noel L. Hillman      </u>

At Camden, New Jersey                            NOEL L. HILLMAN, U.S.D.J.

---

2009), <u>Martino v. Everhome Mortg.</u>, Civ. A. No. 09-0011, 639 F.
Supp. 2d 484  (D.N.J. 2009), <u>Skypala v. Mortgage Electronic</u>
<u>Registration Systems, Inc.</u>, Civ. A. No. 08-5867, 2009 WL 2762247
(D.N.J. Sept. 1, 2009), and <u>Perkins v. Washington Mut., FSB</u>, 2009
WL 2835781 (D.N.J. Sept. 4, 2009).

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

STACEY COLEMAN,

        Plaintiff,

    v.

CHASE HOME FINANCE, LLC,

        Defendant.

CIVIL NO. 08-2215(NLH)(JS)

**ORDER**

For the reasons expressed in the Court's Opinion filed today,

IT IS HEREBY on this 10th day of November, 2009

ORDERED that defendant Chase Home Finance, LLC's motion to dismiss [29] is GRANTED; and it is further

ORDERED that the Clerk of the Court shall mark this matter as CLOSED.

                              s/ Noel L. Hillman

At Camden, New Jersey           NOEL L. HILLMAN, U.S.D.J.